## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CONSTANTINE ANGUS,<br><br>     Plaintiff,<br><br>v.<br><br>MADISON MANAGEMENT<br>SERVICES, LLC and FREEMAN<br>MATHIS & GARY, LLP,<br><br>     Defendants. | Civil Action No.<br>1:24-cv-03626-LMM-LTW |

## DEFENDANT MADISON MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Madison Management Services, LLC ("Madison"), by and through its undersigned counsel, hereby moves to dismiss the Complaint filed by Plaintiff Constantine Angus ("Plaintiff") [ECF No. 1–1] for failure to state a claim upon which relief can be granted, respectfully showing this Court as follows:

## I. INTRODUCTION

This action is an unavailing attempt by Plaintiff to revive a claim under the Fair Debt Collection Practices Act ("FDCPA") against Madison, in its capacity as a *loan servicer* for CWS Investments, Inc.—despite Plaintiff's previous FDCPA claim against CWS being *dismissed with prejudice* in the

*Angus I* action[1]. In short, Plaintiff alleges that by sending periodic billing statements to Plaintiff, Madison has somehow violated the FDCPA, and related Georgia Fair Business Practices Act ("GFBPA"). But as detailed herein, Plaintiff has failed to state any viable FDCPA or GFBPA claim under which relief can be granted, particularly because those statutes do not even apply to the loan transaction at issue here.

Indeed, the relevant loan that is the subject of Plaintiff's Complaint is not a consumer "debt" subject to the provisions of the FDCPA or the GFBPA, but rather is a commercial, business debt. Moreover, even if the loan were subject to the FDCPA or GFBPA, Plaintiff has failed to present any facts demonstrating that Madison engaged in any prohibited conduct under either statute. Madison's periodic statements are not false or misleading, and do not misrepresent the character, amount, or legal status of the relevant indebtedness. Additionally, Plaintiff's allegations regarding the six specific communications received from Madison are insufficiently pled, and accordingly do not proffer any grounds upon which to predicate an actionable FDCPA or GFBPA claim.

Plaintiff has thus failed to state a claim under either statute upon which any relief can be granted. Accordingly, dismissal of all Counts asserted against

---

[1] *Constantine Angus v. CWS Investments, Inc.*, No. 1:24-cv-00478-ELR-JEM (N.D. Ga.) ("*Angus I*").

Madison, with prejudice, is warranted.

## II. RELEVANT FACTUAL BACKGROUND [2]

### A.    The Secondary Loan and Plaintiff's Business

Plaintiff is the chief executive officer (CEO) and registered agent of Petra Realty, Inc. ("Petra"), a Georgia for-profit corporation incorporated in 2005. (*See* Certified Copies[3] of Petra Realty Inc. Documents, attached hereto as **"Exhibit 1"** [ECF No. 12–1] (the "Petra Records")). On February 7, 2007, Plaintiff obtained two separate loans from Home America Mortgage, Inc. ("HAM") to purchase certain real property located at 2128 East Main Street, Snellville, Georgia 30078 (the "Property"). (*Angus I* Am. Compl. ¶ 54). The

---

[2]    Although a motion to dismiss under Rule 12(b)(6) concerns only the well-plead allegations of a complaint, a court may properly consider a document not referred to or attached to that complaint if the document is: (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024); *see also infra* § IV(A).

Accordingly, the factual allegations and exhibits presented in Plaintiff's Verified Complaint [*Angus I* ECF No. 1–1 at 3-57] and First Amended Complaint [*Angus I* ECF No. 12] in *Angus I* (hereinafter referred to as the "*Angus I* Original Complaint" and "*Angus I* Amended Complaint," respectively), as well as the exhibits attached hereto, may properly be considered by this Court in ruling on this motion. Those allegations and exhibits are central to the claims presented herein, and their authenticity is not challenged. For the Court's convenience, a copy of the operative *Angus I* Amended Complaint was previously filed in this action along with Defendants' Motion to Stay All Proceedings. [*See* ECF No. 3–1].

[3]    If certified as correct by a custodian or other person authorized to make such certification, a certified copy of an official public record is *self-authenticating*. FED. R. EVID. 902(4)(a).

second of these loans—*i.e.*, the *secondary* loan at issue in this case—is secured by a recorded security deed (the "Security Deed"), under which Plaintiff, as "Borrower," granted a security interest in the Property to HAM, as "Lender." (*Id.* ¶ 59; *Angus I* Original Compl. Ex. 2).

Plaintiff obtained the secondary loan in order to purchase the Property for use as a physical office space for Petra. Indeed, less than a month following Plaintiff's execution of the secondary loan and Security Deed, Petra filed its 2007 Corporate Annual Registration with the Office of the Secretary of State of Georgia, listing the Property address as the "corporation address." (*See* Petra Records at 7). Then, in June 2007, Plaintiff conveyed the Property to Petra by virtue of a quitclaim deed (the "Quitclaim Deed"), filed and recorded in the Gwinnett County, Georgia records.[4] In each of Petra's Corporate Annual Registrations filed between 2007 through 2012, Petra lists the Property address as its corporate address (*See id.* at 7-11). In those same Corporate Annual Registrations, Plaintiff's individual address is listed at 1263 Pensacola Lane, Grayson, Georgia 30017 (the "Personal Address"). (*See id.*).

---

[4]     A true and correct copy of the Quitclaim Deed, recorded at Deed Book 48030, Page 504, Gwinnett County, Georgia records on June 28, 2007, is submitted herewith as **Exhibit "2"** [ECF No. 12–2]. The Court may take judicial notice of the recording of the Quitclaim Deed. *Nazaire v. Deutsche Bank Nat'l Tr. Co.*, No. 1:20-cv-00979-AT, 2020 WL 10227669, at *3 n.4 (N.D. Ga. Mar. 13, 2020), *accord* FED. R. EVID. 901(7), 803(14).

In its Corporate Annual Registrations filed between 2014 and 2021, Petra's corporate address is listed at the Personal Address. (*See id.* at 12-24). However, in each of those Corporate Annual Registrations, the address of Petra's ***registered agent*** (*i.e.*, Plaintiff) is listed at the Property address; despite Plaintiff continuing to list his individual address at the Personal Address[5]. (*See id.*). Petra's Corporate Annual Registrations for 2022, 2023, and 2024 list both the corporation's principal office address and registered agent address at the Property address. (*Id.* at 25).

Moreover, Petra holds itself as doing business at the Property address. A public records search conducted by Digital Forensic Analyst E. Eliot Kramer demonstrates that the Property is zoned for commercial business use, and shows that the principal use of the Property is for Petra's business. (Affidavit of E. Eliot Kramer, attached hereto as **Exhibit "3"** [ECF No. 12–3] (the "Kramer Affidavit") ¶ 8, Ex. M). As of January 29, 2025, the public signage in front of the Property indicates that there are two commercial businesses operating on the Property: Petra and "Kalydaskope". (*Id.* ¶¶ 6, 9, Exs. A-J). Moreover, as of January 30, 2025, the websites for both Petra and Kalydaskope list their business location at the Property address. (*Id.* ¶ 7, Exs. K-L).

---

[5] In the 2016 Corporate Annual Registration, specifically, Plaintiff listed his individual address as both the Personal Address and the Property address. (*See* Petra Records at 18).

Accordingly, the Property is principally used for business and commercial purposes. (*Id.* ¶ 9).

Furthermore, Plaintiff conveyed the property to Petra in June 2007, and does <u>*not*</u> hold himself out as residing at the Property. (*See* Quitclaim Deed). For example, in a Chapter 13 bankruptcy petition filed by Plaintiff in conjunction with the *Angus I* action, Plaintiff listed his residential address as 2214 Shane Drive, Midlothian, Texas 76065. *See In re Constantine Angus*, No. 24-bk-40432-ELM (Bankr. N.D. Tex.) ("*In re Angus*"), Dkt. #1 at 2. Moreover, in each of Petra's Corporate Annual Registrations filed between 2007 and 2021, Plaintiff's individual address is listed at the Personal Address. (Petra Records at 7-24). As such, the secondary loan used to purchase the Property was never intended to be used for Plaintiff's personal, family, or household purposes.

## B.    The Security Deed and Assignment of Rights to CWS

As previously noted, the secondary loan is secured by the Security Deed, under which Plaintiff originally granted a security interest in the Property to HAM, as "Lender." (*See Angus I* Am. Compl. ¶ 59; *Angus I* Original Compl. Ex. 2). To that end, the Security Deed granted HAM certain rights and interests in the Property, including the ability to accelerate the loan and foreclose on the Property in the event Plaintiff failed to cure any default on the secondary loan. (*Angus I* Original Compl. Ex. 2 at 9-10, § 21). HAM's rights and interests in the Security Deed were subsequently transferred to several parties, eventually

being assigned to CWS on August 14, 2023. (*Angus I* Am. Compl. ¶ 7; *Angus I* Original Compl. Ex. 8).

Around the time that CWS was assigned the rights and interests as the Lender under the Security Deed, Plaintiff stopped paying amounts due under the secondary loan secured thereby. (*See Angus I* Original Compl. Ex. 5; *cf. Angus I* Am. Compl. ¶ 13). On October 2, 2023, CWS, through FMG as counsel, sent Plaintiff certain initial notices and communications regarding Plaintiff's default on the secondary loan. (*See Angus I* Am. Compl. ¶¶ 8, 14; *Angus I* Original Compl. Ex. 5). Plaintiff, through his retained counsel, then responded by letter dated November 14, 2023, challenging CWS's rights as Plaintiff's secured creditor, among other contentions. (*Angus I* Am. Compl. ¶¶ 21-22; CWS's Verified Answer and Defenses [*Angus I* ECF No. 8] (the "*Angus I* Original Answer") Ex. 1). CWS, again through FMG as counsel, replied by letter dated December 4, 2023, producing documents and account statements therewith and offering a loan modification to Plaintiff. (*Angus I* Am. Compl. ¶ 26; *Angus I* Original Compl. Ex. 6).

Because Plaintiff did not respond to CWS's December 4, 2023 letter, nor cure the default outlined therein, CWS, through FMG as counsel, delivered to Plaintiff a "Foreclosure Notice Sale and Acceleration of Loan" letter (the "Foreclosure Notice") on January 6, 2024. (*Angus I* Am. Compl. ¶ 35; *Angus I* Original Compl. Ex. 1). The Foreclosure Notice provided that the Property was

to be sold at a nonjudicial foreclosure sale on February 6, 2024, as authorized under the Security Deed. (*Angus I* Am. Compl. ¶ 36; *Angus I* Original Compl. Ex. 1). Plaintiff did not respond to the Foreclosure Notice, and instead brought suit against CWS on January 19, 2024.

## C.    The *Angus I* Action and Procedural History

In the *Angus I* action, Plaintiff asserted three (3) substantive causes of action against CWS: a federal law claim under the FDCPA, and state law tort claims for fraud and wrongful attempt to foreclose. (*See Angus I* Am. Compl. Counts A–C ¶¶ 86-114; *Angus I* Original Compl. Counts A–C ¶¶ 47-71). CWS subsequently removed the *Angus I* action to this District on the basis of federal-question jurisdiction [*see Angus I* ECF No. 1], and moved to dismiss Plaintiff's Original and Amended Complaints for failure to state a claim [*see Angus I* ECF Nos. 9, 15].

On January 2, 2025, Judge Eleanor L. Ross issued a final Order [*Angus I* ECF No. 24] (the "*Angus I* Order"), adopting in full the Magistrate Judge's Final Report and Recommendation [*Angus I* ECF No. 21] (the "*Angus I* R&R").[6] Plaintiff's FDCPA claim was dismissed **with** prejudice because CWS "is not a 'debt collector,' [and] the FDCPA does not apply to CWS." (*Angus I* R&R at 20).

---

[6]    Copies of the *Angus I* Order and *Angus I* R&R were filed as exhibits to Defendants' Notice of *Angus I* Order and Request for Scheduling Order filed in this action on January 9, 2025. [ECF No. 9].

The Court declined to exercise supplemental jurisdiction over Plaintiff's state law fraud and wrongful attempt to foreclose claims, however, and dismissed those claims ***without prejudice***. (*Angus I* Order at 4).

### III. CLAIMS ASSERTED AGAINST MADISON

Around the time that the Security Deed was assigned to CWS, Madison entered into an agreement with CWS to serve as CWS's *loan servicer* with regard to the secondary loan secured by the Security Deed. (*See* Compl. ¶ 51). Madison is a loan servicer located in Reno, Nevada, and operates as a Nevada limited liability company registered to do business in Georgia. (*Id.* ¶ 2). Plaintiff alleges that Madison is regularly engaged in the business of collecting debts and is a "debt collector" under the provisions of the FDCPA. (*Id.* ¶¶ 4, 48). Accordingly, Plaintiff claims that Madison's "communications, acts, and omissions" may be actionable under both the FDCPA and GFBPA. (*Id.* ¶ 9).

To that end, Plaintiff claims that Madison made certain false or misleading representations and engaged in unfair practices in violation of 15 U.S.C. §§ 1692e and 1692f. (*See id.* Count II, ¶¶ 48-70). Plaintiff specifically alleges that Madison's communications to Plaintiff falsely represented the legal status and amount of the relevant indebtedness, and threatened to take unauthorized action, in violation of the FDCPA. (*See, e.g., id.* ¶¶ 56, 63). In this same fashion, Madison's communications ostensibly constitute unfair and deceptive practices, in violation of the GFBPA. (*See id.* ¶¶ 71-76). Plaintiff

further asserts that six specific statements received from Madison between November 16, 2023 and March 16, 2024 constitute improper communications, as well as harassment and abuse, in violation of 15 U.S.C. §§ 1692c and 1692d. (*See id.* ¶ 60).

But as discussed below, based on the factual material proffered, Plaintiff fails to state any claim against Madison under either the FDCPA or the GFBPA upon which any relief can be granted.

## IV. ARGUMENT AND CITATION TO AUTHORITY

### A.  Standard for Granting Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint shall be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible*** on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (markings and citations omitted). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To that end, a plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555. While the court must accept as true a plaintiff's factual allegations at the motion to dismiss stage, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), *accord Papasan v. Allain*, 478 U.S. 265, 286 (1986). In short, a pleading fails to state a claim when it "does not contain [factual] allegations that support recovery under any recognizable legal theory." *Hous. Enter. Ins. Co., Inc. v. AmTrust Ins. Co. of Kan., Inc.*, 212 F. Supp. 3d 1330, 1334 (N.D. Ga. 2016) (May, J.).

Lastly, in evaluating a motion to dismiss for failure to state a claim, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

**B.**  **Plaintiff's Complaint Fails to State a Claim Against Madison for Violation of the FDCPA or GFBPA (Count II)**

In Count II of the Complaint, Plaintiff alleges that certain communications received from Madison violate the FDCPA and GFBPA. To state a viable claim under the FDCPA, Plaintiff must adequately allege: (1) that he has been the object of collection activity arising from a consumer "debt"; (2) that Madison is a "debt collector" as defined by the statute; and (3) that

Madison has engaged in an act or omission prohibited by the FDCPA. *Helman v. Bank of Am.*, 685 F. App'x 723, 725-26 (11th Cir. 2017); *Merchant v. Nationwide Recovery Serv., Inc.*, 440 F. Supp. 2d 1369, 1379 (N.D. Ga. 2020). Moreover, "a violation of the FDCPA constitutes a violation of the GFBPA," such that a finding regarding the applicability of the FDCPA is determinative of the applicability of the GFBPA. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012). Here, Plaintiff has failed to state any actionable claim under the FDCPA—and by extension, the GFBPA—because the secondary loan does not constitute a consumer "debt" under the FDCPA or the GFBPA, and because Madison has not engaged in an act or omission prohibited by the FDCPA.

     i)     <u>The Secondary Loan Is Not a "Debt" Subject to the Provisions of the FDCPA or GFBPA as a Matter of Law</u>

To recover under the FDCPA, Plaintiff must make a threshold showing that the money being collected qualifies as a "debt." *Argelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010)). Indeed, "the mere obligation to pay does not constitute a 'debt' under the FDCPA." *Id.* (quoting *Oppenheim*, 627 F.3d at 837). Instead, the FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the

transaction are <u>primarily for personal, family, or household purposes.</u>"[7] 15 U.S.C. § 1692a(5) (emphasis added). The FDCPA accordingly applies only to payment obligations of a (1) *consumer* arising out of (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes.* *Oppenheim*, 627 F.3d at 837 (emphasis in original).

In his Complaint, Plaintiff alleges that the secondary loan constitutes a "debt" through the singular factual allegation that the secondary loan was intended for the purchase of a "single family dwelling." (Compl. ¶ 5). However, at this stage, the Court is not required to accept as true Plaintiff's conclusory allegation that the secondary loan is a "debt." *See Twombly*, 550 U.S. at 555 (a plaintiff's pleading obligation "requires more than labels and conclusions"). Instead, the Court must evaluate the factual material contained in the Complaint, as well as in the documents properly incorporated by reference thereto. *See Iqbal*, 556 U.S. at 678; *Johnson*, 107 F.4th at 1300. To that end, the factual material presented herein demonstrates that rather than using the secondary loan primarily for personal, family, or household purposes, Plaintiff has used the secondary loan for ***business and commercial purposes***.

---

[7]     The GFBPA, which applies to "*consumer transactions*," similarly defines such transactions as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, <u>primarily for personal, family, or household purposes.</u>" O.C.G.A. § 10-1-392(a)(10) (emphasis added).

Plaintiff obtained the secondary loan in February 2007 for the purpose of purchasing the Property to use as a physical office space for Petra. In March 2007, Petra listed the Property address as its "corporation address" on its Corporate Annual Registration (*see* Petra Records at 7); and, in June 2007, Plaintiff conveyed the Property to Petra (*see* Quitclaim Deed). In each of Petra's Corporate Annual Registrations filed since 2007, the Property address has either been listed as its corporate address or its registered agent's address. (*See* Petra Records at 7-25). The Property is zoned for commercial business use, and its principal use is for the operation of Petra's business. (Kramer Aff. ¶ 8, Ex. M). Moreover, both Petra, and another business entity, hold themselves out as conducting business at the Property address. (*Id.* ¶¶ 6-7, 9, Exs. A-L).

By contrast, Plaintiff does **not** hold himself out as residing at the Property. Plaintiff conveyed the Property to Petra in June 2007 (*see* Quitclaim Deed), and in Petra's Corporate Annual Registrations filed between 2007 through 2021, Plaintiff's individual address is listed at the Personal Address (*see* Petra Records at 7-24). Furthermore, in his recent Chapter 13 bankruptcy petition, Plaintiff listed his personal residence at a location in Midlothian, Texas. *See In re Angus*, Dkt. #1 at 2. As such, the secondary loan used to purchase the Property was never intended to be used for Plaintiff's personal, family, or household purposes.

For these reasons, the secondary loan at issue is not a consumer "debt,"

and the FDCPA and GFBPA consequently do not apply to the transaction. Plaintiff therefore cannot obtain any relief under the FDCPA or GFBPA under any recognizable legal theory. For this reason, Plaintiff has failed to establish the first element necessary to state a viable FDCPA or GFBPA claim upon which relief can be granted.

    ii)    <u>Madison Has Not Engaged in Any Act or Omission Prohibited by the FDCPA as a Matter of Law</u>

In the Complaint, Plaintiff alleges two categories of statutory violations against Madison. *First*, Plaintiff alleges that Madison has generally violated 15 U.S.C. §§ 1692e and 1692f by falsely representing that CWS is the holder of the Promissory Note (*see* Compl. ¶ 55), and by falsely representing that the debt owed to Plaintiff is valid despite it being previously "charged off" (*see id.* ¶ 54). 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Likewise, 15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

*Second*, Plaintiff alleges that six (6) specific "communications" ostensibly received from Madison in late 2023 and early 2024 constitute improper communications in violation of both 15 U.S.C. §§ 1692e and 1692f, as well as 15 U.S.C. §§ 1692c and 1692d. 15 U.S.C. § 1692c prohibits certain forms of

direct communications between a debt collector and a consumer; while 15 U.S.C. § 1692d prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." For the reasons discussed below, both of these categories of alleged statutory violations fail to state a claim against Madison as a matter of law.

### a) Madison's Communications Do Not Violate the FDCPA or GFBPA as a Matter of Law

As noted, Plaintiff alleges that Madison's communications with Plaintiff generally violate the FDCPA and GFBPA based on two principle contentions: (1) that Madison falsely represented that CWS is the holder of the Promissory Note (*see* Compl. ¶ 55); and (2) that Madison falsely represented that the debt owed by Plaintiff is valid despite it being previously "charged off" (*see id.* ¶ 54). These assertions form the basis of Plaintiff's claim that Madison's communications constitute false or misleading representations under 15 U.S.C. § 1692e, and that Madison's actions constitute unfair or deceptive practices under 15 U.S.C. § 1692f and O.C.G.A. § 10-1-393(a). But even accepting either of Plaintiff's contentions as true, Plaintiff has nonetheless failed to state a claim for relief as a matter of well-established Georgia law.

As to Plaintiff's <u>first</u> assertion regarding CWS's status as the holder of the Promissory Note, it is undisputed that CWS is the named assignee of the

Security Deed. (Compl. ¶ 8). In Georgia, "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed ***even if it does not also hold the note***." *You v. J.P. Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013) (emphasis added); *see also Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1343 (N.D. Ga. 2014) ("[U]nder Georgia law, possession of the promissory note is not required for the non-judicial foreclosure sale of a security deed."). Indeed, Georgia's statue governing the transfer of security deeds "supports the conclusion that the deed holder possesses full authority to exercise the power of sale upon the debtor's default, *regardless of its status with respect to the note*." *You*, at 433 (italics added), *accord* O.C.G.A. § 44-14-64(b). It necessarily follows that "to the extent that Plaintiff is alleging that [CWS] failed to produce the original promissory note, Plaintiff has failed to state a claim upon which relief can be granted." *Tonea*, 6 F. Supp. 3d at 1343.

As to Plaintiff's <u>second</u> assertion regarding the validity of the debt, Plaintiff alleges that that the secondary loan was "charged off" as bad debt by HAM prior to 2011. (Compl. ¶ 17). But "charged off" debt is **<u>not</u>** forgiven, and a third-party purchaser thereof may attempt to collect the full amount of the debt. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016). Accordingly, and contrary to Plaintiff's conclusory allegations, "attempting to collect a debt that has been charged off ***does not misrepresent***

*the character, amount, or legal status of the debt*." *Ervin v. Cap. Mgmt. Servs. LP*, No. 1:22-cv-01848-MLB-CMS, 2023 WL 9051459, at *6 (N.D. Ga. Nov. 6, 2023) (citations omitted), *contra* 15 U.S.C. § 1692e(2)(A). Thus, as a matter of law, Madison's communications regarding CWS's security interest in purportedly "charged off" debt cannot constitute a false, misleading, or deceptive practice under the FDCPA or the GFBPA.

For these reasons, Plaintiff cannot, as a matter of law, predicate a general FDCPA claim for false or misleading representations under 15 U.S.C. § 1692e, nor for unfair or deceptive practices under 15 U.S.C. § 1692f, on allegations of CWS's lack of ownership of the Promissory Note or the validity of the ostensibly "charged off" secondary loan debt. CWS is authorized to exercise its remedies under the Security Deed regardless of whether it also holds the Promissory Note. *See You*, 743 S.E.2d at 433; *Tonea*, 6 F. Supp. 3d at 1343. Likewise, "charged off" debt is not forgiven. *See Hinkle*, 827 F.3d at 1297-98. Accordingly, Plaintiff has failed to state a claim for relief against Madison under the FDCPA, and by extension, the GFBPA.

### b) Madison's Six Specifically-Cited Communications Do Not Violate the FDCPA or GFBPA as a Matter of Law

In addition to the above general allegations, Plaintiff claims that six (6) specific "communications" received from Madison after November 14, 2023 violate certain provisions of the FDCPA. These six "communications" were

allegedly received on (*i*) November 16, 2023; (*ii*) December 15, 2023, (*iii*) January 5, 2024, (*iv*) February 2, 2024, (*v*) February 15, 2024, and (*vi*) March 16, 2024. (Compl. ¶ 60). Plaintiff alleges that all of these "communications" were in violation of 15 U.S.C. §§ 1692c(a)(2) and 1692d, because they were made directly from Madison to Plaintiff, despite Plaintiff informing Madison of his retention of counsel in the November 14, 2023 letter. (*See Angus I* Original Answer Ex. 1). Plaintiff further alleges that the December 15, 2023 "communication" improperly sought to recover attorney's fees (*see* Compl. ¶ 63) and suggests that the February 15 and March 16, 2024 "communications" violate the automatic bankruptcy stay (*see id.* ¶ 65).

As a threshold matter, Plaintiff has not sufficiently detailed the nature of these six "communications" sufficient to satisfy federal pleading requirements. Indeed, Plaintiff is *required* to give Madison "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (ellipses omitted), *accord* FED. R. CIV. P. 8(a)(2). A complaint does not suffice if it merely tenders "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (markings omitted) (quoting *Twombly*, 550 U.S. at 557). Here, with the exception of the purported December 15, 2023 "communication"—which Plaintiff confusingly claims occurred on December 15, **2024** in other numbered paragraphs (*see* Compl. ¶¶ 61-62)—Plaintiff does not in any manner describe the five other "communications" referenced in the

Complaint.

This level of pleading does not provide Madison fair notice of the alleged wrongdoing contained in such "communications," and therefore fails to satisfy applicable federal pleading standards. This procedural defect notwithstanding, and even accepting Plaintiff's bare-bones allegations as true, Plaintiff has failed to state a claim under the FDCPA.

1) <u>All Six Communications Were Monthly Statements Required to be Sent to Plaintiff under TILA</u>

Plaintiff alleges that Madison services the secondary loan secured by the Security Deed "by delivering monthly billing statements that depicted the loan as delinquent." (Compl. ¶ 53). Thus, given the periodic dating of the alleged "communications," along with Plaintiff's lack of description regarding the contents thereof, Madison assumes that Plaintiff is referencing periodic billing statements sent to Plaintiff. Indeed, in closed-end consumer transaction secured by a dwelling (*i.e.*, mortgages), Regulation Z of the federal Truth in Lending Act *requires* that "[a] servicer of a transaction … provide the consumer, for each billing cycle, a periodic statement." 12 C.F.R. § 1026.41(a)(2). To that end, "a mortgage servicer who is subject to the FDCPA with respect to a mortgage loan is **not liable** under the FDCPA for complying with certain servicing rule provisions, including requirements to provide … a periodic statement for each billing cycle as required by 12 [C.F.R. §] 1026.41."

12 C.F.R. pt. 1006 (Supp. I 2023).

Plaintiff is therefore stuck in a catch-22 of his own making, under which he cannot obtain any relief under the FDCPA. If, as Plaintiff alleges, the secondary loan is a consumer debt secured by a dwelling (*see* Compl. ¶ 5), then Madison cannot be held liable under the FDCPA for complying with the periodic statement requirements of TILA. *See* 12 C.F.R. pt. 1006 (Supp. I 2023). Conversely, if Plaintiff asserts that the debt is not a consumer debt such that the statements are not sent pursuant to TILA, then the FDCPA does not even apply. (*See* discussion *supra* § IV(B)(i)). Either way, Plaintiff has failed to state a claim upon which he may obtain any cognizable relief under the FDCPA.

2) <u>The Purported Language in the December 15, 2023 Statement Does Not Violate the FDCPA as a Matter of Law</u>

In Paragraph 61 of the Complaint, Plaintiff alleges that Madison sent Plaintiff a "statement … demanding payment of $720.00 for '*Attorney Fees INV 34057*' in addition to amounts allegedly owed under the 02/07/2007 promissory note." (Italics in original). Plaintiff alleges, in different paragraphs, that the date of this "statement" is December 15, 2023 and December 15, 2024, respectively. (*Compare* Compl. ¶¶ 59-60 *with* 61-62). Regardless, Plaintiff alleges that Madison's demand for the payment of certain attorney's fees in this statement violates two specific provisions of the FDCPA: (*i*) 15 U.S.C. § 1692e(2)(B), which prohibits a debt collector from falsely representing "any

services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt"; and (*ii*) 15 U.S.C. § 1692f(1), which prohibits, "[t]he collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

But here, Madison, as the loan servicer for CWS, was permitted to seek attorneys' fees under the agreement securing the secondary loan ***signed by Plaintiff***—that is, the Security Deed. (*See Angus I* Original Compl. Ex. 2). The Security Deed provides that if "Borrower fails to perform the covenants and agreements contained in this Security Agreement … then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property," which includes, but is not limited to, "paying *reasonable attorneys' fees*." (*Id.* at 6, § 8 (italics added)). Accordingly, CWS, and by extension its privy, Madison, are authorized to seek reasonable attorneys' fees under the terms of the applicable Security Deed. Therefore, the alleged content of the December 15, 2023 statement, even when assumed as true, fails to establish any claim for relief under either 15 U.S.C. §§ 1692e(2)(B) or 1692f(1).

3) <u>The Purported February 15, 2024 and March 16, 2024 Statements Do Not Violate the Automatic Bankruptcy Stay or the FDCPA, as a Matter of Law</u>

Plaintiff also alleges that Madison's alleged statements on February 16, 2024 and March 16, 2024 violated the automatic bankruptcy stay, and by extension the FDCPA. (Compl. ¶ 65). As noted previously, Plaintiff filed a

Chapter 13 bankruptcy petition in the Northern District of Texas on February 6, 2024. (*Id.* ¶ 64 (citing *In re Angus*). That bankruptcy case, however, was dismissed just two (2) days later, on **February 8, 2024**. *See In re Angus*, Dkt. 13 ¶ 5. Under 11 U.S.C. § 362(c)(2)(B), the automatic bankruptcy stay continues "until the earliest of … the time the case is dismissed." As such, the automatic bankruptcy stay imposed under federal law was *lifted* on February 8, 2024. By Plaintiff's own allegations, the relevant statements were received on February 15, 2024 and March 16, 2024—**after** the lifting of the bankruptcy stay. Accordingly, Plaintiff's contention that these communications violated the automatic bankruptcy stay, and by extension the FDCPA, are wholly unfounded and facetious, and fail to state any actionable claim for relief.

For all of the foregoing reasons, Plaintiff has failed to state any claim against Madison under the FDCPA, or the GFBPA, under which any form of relief can be granted.

## C. Plaintiff's Complaint Fails to State a Claim Against Madison for Punitive Damages or Attorney's Fees and Costs (Counts IV)

Plaintiff brings an additional count for punitive damages and attorney's fees and costs of litigation. (Compl. Count IV, ¶¶ 83-87). This count is for specific *remedies*, however, and is therefore derivative of the substantive causes of action addressed above. Because Plaintiff has failed to state a plausible claim for relief on each of those substantive claims, Plaintiff has

likewise failed to state a plausible claim for any of the remedies requested in Count IV.

## V. CONCLUSION

Based on the foregoing, dismissal of all Counts asserted against Madison in Plaintiff's Complaint, with prejudice, is warranted.

Respectfully submitted this 30th day of January, 2025.

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Madison*
*Management Services, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **DEFENDANT MADISON MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** has been prepared in compliance with Local Rule 5.1(C) in Century Schoolbook, 13-point font. I further certify that the foregoing brief is limited in length to twenty-five (25) pages, and complies with the Standing Order Regarding Civil Litigation issued by the Honorable Leigh Martin May.

This 30th day of January, 2025.

> */s/ Brian S. Goldberg*
> Brian S. Goldberg
> Georgia Bar No. 128007
> Cameron N. Regnery
> Georgia Bar No. 333041
>
> **FREEMAN MATHIS & GARY, LLP**
> 100 Galleria Parkway, Suite 1600
> Atlanta, Georgia 30339
> (T): 770-818-0000
> (F): 833-330-3669
> Brian.Goldberg@fmglaw.com
> Cameron.Regnery@fmglaw.com
>
> *Attorneys for Defendant Madison*
> *Management Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day electronically submitted the foregoing **DEFENDANT MADISON MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF filing system, which will automatically send electronic notification of the same to the following counsel of record:

William R. Carlisle
CARLISLE LAW FIRM
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com
*Attorney for Plaintiff*

This 30th day of January, 2025.

| | |
|---|---|
| | */s/ Brian S. Goldberg* |
| **FREEMAN MATHIS & GARY, LLP** | Brian S. Goldberg |
| 100 Galleria Parkway, Suite 1600 | Georgia Bar No. 128007 |
| Atlanta, Georgia 30339 | Cameron N. Regnery |
| (T): 770-818-0000 | Georgia Bar No. 333041 |
| (F): 833-330-3669 | |
| Brian.Goldberg@fmglaw.com | *Attorneys for Defendant Madison* |
| Cameron.Regnery@fmglaw.com | *Management Services, LLC* |