# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CONSTANTINE ANGUS,<br><br>        Plaintiff,<br><br>v.<br><br>MADISON MANAGEMENT SERVICES, LLC and FREEMAN MATHIS & GARY, LLP,<br><br>        Defendants. | Civil Action No.<br>1:24-cv-03626-LMM-LTW |

## DEFENDANT FREEMAN MATHIS & GARY, LLP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Freeman Mathis & Gary, LLP ("FMG"), by and through its undersigned counsel, hereby moves to dismiss the Complaint filed by Plaintiff Constantine Angus ("Plaintiff") [ECF No. 1–1] for failure to state a claim upon which relief can be granted, respectfully showing this Court as follows:

## I. INTRODUCTION

In his Complaint, Plaintiff improperly attempts to extend claims previously asserted against FMG's client, CWS Investments, Inc. ("CWS")—claims that were ***fully dismissed*** in the *Angus I* action[1]—against FMG

---

[1]    *Constantine Angus v. CWS Investments, Inc.*, No. 1:24-cv-00478-ELR-

directly. The dispute in both *Angus I* and this action concerns CWS's exercise of certain remedies under the terms of a validly executed and recorded security deed assigned to CWS. That security deed granted a security interest in certain real property purchased by Plaintiff using two loans. When Plaintiff defaulted on his secondary loan obligations, CWS presented Plaintiff an opportunity to cure the default by paying a loan reinstatement amount. When Plaintiff did not cure the default, CWS accelerated the debt and initiated nonjudicial foreclosure proceedings.

In response, Plaintiff brought suit against CWS in January 2024, alleging that CWS violated the federal Fair Debt Collection Practices Act ("FDCPA"), as well as Georgia state law. This case was thereafter initiated in August 2024, against FMG, as CWS's *counsel*, and Madison Management Services, LLC ("Madison"), as CWS's *loan servicer*. Here, Plaintiff alleges nearly identical federal and state law causes of action against FMG, but **omits** much of the factual material included in the *Angus I* pleadings. As such, on August 19, 2024, Defendants moved for a stay of all proceedings in this case pending resolution of *Angus I* [ECF No. 3], which was subsequently granted on September 9, 2024 [ECF No. 8].

On January 2, 2025, Judge Eleanor L. Ross dismissed the *Angus I* action

_____

JEM (N.D. Ga.) ("*Angus I*").

in its entirety, thereby lifting the stay in this matter. [*See* ECF No. 9–1]. While the final ruling in *Angus I* is not determinative of the outcome of this case, Plaintiff has similarly failed to state any cognizable claim for relief here, such that dismissal of all Counts of the Complaint asserted against FMG is warranted. Specifically, Plaintiff's Complaint heavily relies on two major contentions previously proffered in *Angus I*: (*i*) that FMG falsely represented that CWS is the holder of the promissory note evidencing the secondary loan obligation (the "Promissory Note"); and (*ii*) that FMG falsely represented that the secondary loan debt is valid despite it being previously "charged off."

But as demonstrated herein, FMG was engaged only in the enforcement of CWS's security interest under the Security Deed, and is therefore not a "debt collector" subject to the FDCPA. This fatal flaw notwithstanding, Plaintiff has further failed to adequately plead factual material demonstrating that FMG has engaged in any prohibited conduct under either the FDCPA or the related Georgia Fair Business Practices Act ("GFBPA"). Moreover, Plaintiff has failed to demonstrate that FMG published any untrue or derogatory information concerning Plaintiff's financial condition sufficient to maintain a wrongful attempted foreclosure claim. For these reasons, and those discussed more fully below, dismissal of all claims asserted against FMG, with prejudice, is warranted.

On February 7, 2007, Plaintiff obtained two separate loans from Home America Mortgage, Inc. ("HAM") to purchase certain real property located at 2128 East Main Street, Snellville, Georgia 30078 (the "Property"). (*Angus I* Am. Compl. ¶ 54). The second of these loans (the *secondary* loan) is secured by a recorded security deed (the "Security Deed"), under which Plaintiff, as "Borrower," granted a security interest in the Property to HAM, as "Lender." (*Id.* ¶ 59; *Angus I* Original Compl. Ex. 2). The Security Deed granted HAM certain rights and interests in the Property, including the ability to accelerate the loan and foreclose on the Property in the event Plaintiff failed to cure any default on the secondary loan. (*Angus I* Original Compl. Ex. 2 at 9-10, § 21). HAM's rights and interests in the Security Deed were subsequently

---

[2]  Although a motion to dismiss under Rule 12(b)(6) concerns only the well-plead allegations of a complaint, a court may properly consider a document not referred to or attached to that complaint if the document is: (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024); *see also infra* § IV(A).

Accordingly, the factual allegations and exhibits presented in Plaintiff's Verified Complaint [*Angus I* ECF No. 1–1 at 3-57] and First Amended Complaint [*Angus I* ECF No. 12] in *Angus I* (hereinafter referred to as the "*Angus I* Original Complaint" and "*Angus I* Amended Complaint," respectively), as well as the exhibits attached hereto, may properly be considered by this Court in ruling on this motion. Those allegations and exhibits are central to the claims presented herein, and their authenticity is not challenged. For the Court's convenience, a copy of the operative *Angus I* Amended Complaint was previously filed in this action along with Defendants' Motion to Stay All Proceedings. [*See* ECF No. 3–1].

transferred to several parties, eventually being assigned to CWS on August 14, 2023. (*Angus I* Am. Compl. ¶ 7; *Angus I* Original Compl. Ex. 8).

Around the time that CWS was assigned the rights and interests as the Lender under the Security Deed, Plaintiff stopped paying amounts due under the secondary loan secured thereby. (*See Angus I* Original Compl. Ex. 5; *cf. Angus I* Am. Compl. ¶ 13). On October 2, 2023, CWS, through FMG as counsel, sent Plaintiff two (2) letters via certified mail in a single packet: a fair debt initial communication letter (the "Fair Debt Letter"), and a notice of default letter (the "Notice of Default").[3] The Notice of Default was a required notice under Section 21 of the Security Deed, and provided Plaintiff with an opportunity to cure the default by paying $75,743.53. (*Angus I* Am. Compl. ¶ 14; *Angus I* Original Compl. Ex. 5). The Fair Debt Letter was sent out of an abundance of caution, to ensure CWS's compliance with the FDCPA *in the unlikely event* that Plaintiff was entitled to notification pursuant to 15 U.S.C. § 1692g. (*See* Oct. 2, 2023 Packet).

Plaintiff, through his retained counsel, responded to the Notice of

---

[3] Throughout his pleadings in *Angus I*, as well as herein, Plaintiff conflates these letters, often failing to specifically identify to which one he is referring. (*See, e.g.,* Compl. ¶ 14). Plaintiff attached the Notice of Default to the *Angus I* Original Complaint as Exhibit "5", but did not similarly attach the Fair Debt Letter. For clarity, FMG submits herewith as **Exhibit "1"** a true and correct copy of the packet containing both the Notice of Default and Fair Debt Letter, as well as the relevant certified mailing information (hereinafter, the "Oct. 2, 2023 Packet"). [*See* ECF No. 13–1].

Default and Fair Debt Letter by letter dated November 14, 2023, challenging CWS's rights as Plaintiff's secured creditor, among other contentions. (*Angus I* Am. Compl. ¶¶ 21-22; CWS's Verified Answer and Defenses [*Angus I* ECF No. 8] Ex. 1). CWS, again through FMG as counsel, replied by letter dated December 4, 2023, producing documents and account statements therewith and offering a loan modification to Plaintiff. (*Angus I* Am. Compl. ¶ 26; *Angus I* Original Compl. Ex. 6). Because Plaintiff did not respond to CWS's December 4, 2023 letter, nor cure the default outlined therein, CWS, through FMG as counsel, delivered to Plaintiff a "Foreclosure Notice Sale and Acceleration of Loan" letter (the "Foreclosure Notice") on January 6, 2024. (*Angus I* Am. Compl. ¶ 35; *Angus I* Original Compl. Ex. 1). The Foreclosure Notice provided that the Property was to be sold at a nonjudicial foreclosure sale on February 6, 2024, as authorized under the Security Deed. (*Angus I* Am. Compl. ¶ 36; *Angus I* Original Compl. Ex. 1).

Plaintiff did not respond to the Foreclosure Notice, and instead brought suit against CWS on January 19, 2024. In the *Angus I* action, Plaintiff asserted three (3) substantive causes of action against CWS: a federal law claim under the FDCPA, and state tort law claims for fraud and wrongful attempt to foreclose. (*See Angus I* Am. Compl. Counts A–C ¶¶ 86-114; *Angus I* Original Compl. Counts A–C ¶¶ 47-71). CWS subsequently removed the *Angus I* action to this District on the basis of federal-question jurisdiction [*see Angus I* ECF

No. 1], and moved to dismiss Plaintiff's Original and Amended Complaints for failure to state a claim [*see Angus I* ECF Nos. 9, 15].

On January 2, 2025, Judge Ross issued a final Order [*Angus I* ECF No. 24] (the "*Angus I* Order"), adopting in full the Magistrate Judge's Final Report and Recommendation [*Angus I* ECF No. 21] (the "*Angus I* R&R").[4] Plaintiff's FDCPA claim was dismissed **with** prejudice because CWS "is not a 'debt collector,' [and] the FDCPA does not apply to CWS." (*Angus I* R&R at 20). The Court declined to exercise supplemental jurisdiction over Plaintiff's state law fraud and wrongful attempt to foreclose claims, however, and dismissed those claims **without prejudice**. (*Angus I* Order at 4).

### III. CLAIMS ASSERTED AGAINST FMG

As noted above, three (3) written letters from CWS to Plaintiff between October 2, 2023 and January 6, 2024 were drafted and transmitted by CWS's retained counsel, FMG. FMG is a law firm located in Atlanta, Georgia, and operates as a Georgia limited liability partnership. (Compl. ¶ 3). Plaintiff alleges that FMG is regularly engaged in the business of collecting debts, and is a "debt collector" under the provisions of the FDCPA. (*Id.* ¶¶ 4, 6, 10). Accordingly, Plaintiff claims that FMG's "communications, acts, and

---

[4]     Copies of the *Angus I* Order and *Angus I* R&R were filed as exhibits to Defendants' Notice of *Angus I* Order and Request for Scheduling Order filed in this action on January 9, 2025. [ECF No. 9].

omissions" may be actionable under both the FDCPA and the related GFBPA. (*Id.* ¶ 9).

To that end, Plaintiff avers that FMG made certain false or misleading representations and engaged in unfair practices in violation of 15 U.S.C. §§ 1692e and 1692f. (*See id.* Count I, ¶¶ 10-47). Plaintiff alleges that FMG's communications, on behalf of CWS, falsely represented the legal status and amount of the relevant debt, and threatened to take unauthorized action, in violation of the FDCPA. (*See, e.g., id.* ¶ 15). In this same fashion, FMG's communications ostensibly constitute unfair and deceptive practices, in violation of the GFBPA. (*See id.* Count II, ¶¶ 71-76). Beyond these statutory claims, Plaintiff also proceeds under a state tort law theory, alleging that FMG has wrongfully attempted to foreclose on the Property. (*See id.* Count III, ¶¶ 77-82).

These alleged statutory violations and tortious acts stem from two primary contentions, both of which were raised, but not decided on the merits, in *Angus I*: (<u>*i*</u>) that FMG falsely represented that CWS is the holder of the Promissory Note (*see id.* ¶ 25); and (<u>*ii*</u>) that FMG falsely represented that the debt owed by Plaintiff was valid despite it being previously "charged off" (*see id.* ¶ 26). However, as discussed herein, these proffered allegations fail to state any cognizable claim for relief because the holder of a security deed is <u>*not*</u> required to also possess the promissory note secured thereby, and because

"charged off" debit is <u>not</u> forgiven.

**IV. ARGUMENT AND CITATION TO AUTHORITY**

**A.    Standard for Granting Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint shall be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible*** on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (markings and citations omitted). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To that end, a plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While the court must accept as true a plaintiff's factual allegations at the motion to dismiss stage, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), *accord Papasan v. Allain*, 478 U.S. 265, 286 (1986). In short, a pleading fails to state a claim when it "does not contain [factual] allegations that support recovery under any recognizable legal

theory." *Hous. Enter. Ins. Co., Inc. v. AmTrust Ins. Co. of Kan., Inc.*, 212 F. Supp. 3d 1330, 1334 (N.D. Ga. 2016) (May, J.).

Lastly, in evaluating a motion to dismiss for failure to state a claim, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

## B. Plaintiff's Complaint Fails to State a Claim Against FMG for Violation of the FDCPA or GFBPA (Counts I and II)

In Counts I and II of the Complaint, Plaintiff alleges that certain communications received from FMG violate the FDCPA and GFBPA. To state a viable claim under the FDCPA, Plaintiff must adequately allege: (1) that he has been the object of collection activity arising from a consumer "debt"; (2) that FMG is a "debt collector" as defined by the statute; and (3) that FMG has engaged in an act or omission prohibited by the FDCPA. *Helman v. Bank of Am.*, 685 F. App'x 723, 725-26 (11th Cir. 2017); *Merchant v. Nationwide Recovery Serv., Inc.*, 440 F. Supp. 2d 1369, 1379 (N.D. Ga. 2020). Moreover, "a violation of the FDCPA constitutes a violation of the GFBPA," such that a finding regarding the applicability of the FDCPA is determinative of the applicability of the GFBPA. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298,

1303 (11th Cir. 2012). Here, Plaintiff has failed to proffer sufficient factual material to establish *any* of the elements necessary to maintain a viable FDCPA claim—and by extension, GFBPA claim—specifically because: (*i*) the secondary loan does <u>not</u> constitute a "debt" under the FDCPA or GFBPA; (ii) FMG is <u>not</u> a "debt collector" as defined by the FDCPA; and (*iii*) and FMG has <u>not</u> engaged in an act or omission prohibited by the FDCPA.

    i)    <u>The Secondary Loan Is Not a "Debt" Subject to the Provisions of the FDCPA or GFBPA as a Matter of Law</u>

In the Motion to Dismiss for Failure to State a Claim filed by co-defendant Madison concurrently herewith [*see* ECF No. 12] (the "Madison MTD"), Madison demonstrates that the secondary loan at issue in this action is not a consumer "debt" subject to either the FDCPA or the GFBPA. (*See* Madison MTD at 12-15, § IV(B)(i)). Instead, the secondary loan was obtained for business or commercial purposes related to Plaintiff's business entity, Petra Realty, Inc. (*See also id.* at 3-6, § II(A)). FMG hereby incorporates and adopts the arguments raised in the Madison MTD, which demonstrate that Plaintiff cannot establish the first element necessary to state a viable FDCPA or GFBPA claim upon which relief can be granted.

    ii)    <u>FMG is Not a "Debt Collector" as Defined by the FDCPA as a Matter of Law</u>

Just as the secondary loan is not a "debt" subject to the FDCPA, FMG is not a "debt collector" subject to the FDCPA. In his Complaint, Plaintiff merely

alleges, in conclusory fashion, that FMG is a "debt collector" that is regularly engaged in the collection of debts. (Compl. ¶¶ 4, 6, 10). This level of pleading falls well-below the plausibility standard required to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555 (a plaintiff's pleading obligation "requires more than labels and conclusions"). Plaintiff further alleges that FMG is a "debt collector" because it identified itself as such in the October 2, 2023 Notice of Default to Plaintiff. (*Id.* ¶ 13; *Angus I* Original Compl. Ex. 5). However, "[w]hether a party is an FDCPA debt collector is governed by the statutory definition, not by any self-identification by the party." *Maddox v. Aldridge Pite, LLP*, No. 23-12853, 2024 WL 1475463, at *2 (11th Cir. Apr. 5, 2024) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1214-19 (11th Cir. 2012)).

To that end, the FDCPA defines a "debt collector," in relevant part, as "any person … in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed." 15 U.S.C. § 1692a(6). Based on this language, the United States Supreme Court has held that the FDCPA "***exempts*** entities engaged in *no more than* the 'enforcement of security interests' from the lion's share of its prohibitions." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 481 (2019) (emphasis added). More specifically, with the <u>sole</u> exception of 15 U.S.C. § 1692f(6)—a provision that is not invoked by Plaintiff here—the

FDCPA does not apply to those engaged only in security-interest enforcement. *Id.* at 476. It follows that, "but for § 1692f(6), those who engage in **only nonjudicial foreclosure proceedings are not debt collectors** within the meaning of the [FDCPA]." *Id.* at 477 (emphasis added).

In the instant case, Plaintiff attempts to extend his FDCPA claim to FMG based on three (3) specific communications: the October 2, 2023 Fair Debt Letter, the October 2, 2023 Notice of Default, and the January 6, 2024 Foreclosure Notice. But all three of these allegedly improper communications were attempts by FMG to enforce CWS's *security interest* under the Security Deed. (*See* Oct. 2, 2023 Packet; *Angus I* Original Compl. Exs. 1, 5). Indeed, the Notice of Default was required to be sent pursuant to the Security Deed's notice provisions. (*See Angus I* Original Compl. Ex. 2 at 9, § 21 ("Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.")).

Similarly, the Foreclosure Notice is a required notice under Section 21 of the Security Deed—as well as Georgia law (*see* O.C.G.A. § 44-14-162.2)—for CWS to exercise the power of sale and other remedies contemplated thereby. (*See id.* at 9-10, § 21 ("If the default is not cured on or before the date specified in the [Notice of Default], Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower.")). The Fair Debt

Letter, for its part, was sent contemporaneously with the Notice of Default out of an abundance of precaution, to comply with the FDCPA *in the unlikely event* that Plaintiff was entitled to notification pursuant to 15 U.S.C. § 1692g.

Thus, the Foreclosure Notice, Notice of Default, and Fair Debt Letter were communications authorized—and required—for FMG to enforce CWS's security interest granted by Plaintiff under the Security Deed. Specifically, the Foreclosure Notice was an attempt by FMG to engage in a nonjudicial foreclosure on behalf of CWS, such that that communication may not serve as a basis for alleging that FMG is a "debt collector" under the FDCPA. *See Obduskey*, 586 U.S. at 477. Likewise, the Notice of Default was both a required notice under the Security Deed, as well as a precondition for CWS to later exercise its right to seek nonjudicial foreclosure as a remedy, such that it also is unactionable under the FDCPA. Indeed, the FDCPA's exclusion of "the enforcement of security interests" also excludes "*the legal means required to do so.*" *Id.* at 480 (italics added) (acknowledging that nonjudicial foreclosure may involve "antecedent steps required under state law," as well as "notice to the homeowner").

Thus, even taking the factual allegations of Plaintiff's Complaint as true for the purposes of this motion, the Notice of Default, Fair Debt Letter, and Foreclosure Notice were mere attempts to enforce CWS's security interests under the Security Deed. Because FMG's communications with Plaintiff were

limited to such enforcement, FMG is not a "debt collector" under the plain language of the FDCPA. *See id.* at 476-77. Accordingly, FMG cannot be subject to the cited provisions of the FDCPA sufficient for Plaintiff to maintain a cognizable claim upon which relief can be granted.

iii) <u>FMG Has Not Engaged in Any Act or Omission Prohibited by the FDCPA or GFBPA as a Matter of Law</u>

Even assuming *arguendo* that FMG can be considered a "debt collector" under the FDCPA, Plaintiff has nonetheless failed to proffer sufficient factual allegations demonstrating that FMG has engaged in prohibited conduct under either the FDCPA or the GFBPA. *See Helman*, 685 F. App'x at 725-26; *Merchant*, 440 F. Supp. 2d at 1379. As to the FDCPA, Plaintiff specifically alleges that FMG has falsely represented the legal status of the relevant debt and threatened to engage in unauthorized actions in violation of 15 U.S.C. §§ 1692e(1), 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1). (*See* Compl. ¶¶ 15, 20). As to the GFBPA, Plaintiff alleges that FMG's communications constitute unfair and deceptive acts and practices, in violation of O.C.G.A. § 10-1-393(a). (*See id.* ¶ 72). However, FMG's non-debt-collector status under the FDCPA notwithstanding, Plaintiff has failed to state any claim for relief under any of the statutory provisions invoked.[5]

---

[5] As a preliminary aside, the GFBPA mandates that in any action brought by a private party, "the Attorney General *shall* be served by certified or registered mail or statutory overnight delivery with a copy of the initial

As alluded to above, Plaintiff's contention that FMG engaged in certain prohibited conduct under the FDCPA and GFBPA relies on two principle assertions: (1) that FMG falsely represented that CWS is the holder of the Promissory Note (*see id.* ¶ 25); and (2) that FMG falsely represented that the debt owed by Plaintiff is valid despite it being previously "charged off" (*see id.* ¶ 26). These assertions ostensibly serve as the basis that FMG's communications constitute "false or misleading representations" under 15 U.S.C. § 1692e, and that FMG's actions constitute unfair or deceptive practices under 15 U.S.C. § 1692f and O.C.G.A. § 10-1-393(a). But even accepting both of Plaintiff's contentions as true, Plaintiff has nonetheless failed to state a claim for relief as a matter of well-established Georgia law.

### a) As a Matter of Law, CWS is Authorized to Enforce its Security Interest under the Security Deed Regardless of Whether it Also Holds the Promissory Note

It is undisputed that CWS is the named assignee of the Security Deed. (Compl. ¶ 8). In Georgia, "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed ***even if it does not also hold the note***." *You v. J.P. Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013) (emphasis added); *see also Tonea v. Bank of Am., N.A.*, 6

---

complaint." O.C.G.A. § 10-1-399(g) (italics added). There is no allegation that Plaintiff complied with this statutory requirement. Accordingly, Plaintiff's failure to fulfill statutory prerequisites of the GFBPA further imperil his GFBPA claim.

F. Supp. 3d 1331, 1343 (N.D. Ga. 2014) ("[U]nder Georgia law, possession of the promissory note is not required for the non-judicial foreclosure sale of a security deed."). Indeed, Georgia's statue governing the transfer of security deeds "supports the conclusion that the deed holder possesses full authority to exercise the power of sale upon the debtor's default, *regardless of its status with respect to the note*." *You*, at 433 (italics added), *accord* O.C.G.A. § 44-14-64(b). It necessarily follows that, "to the extent that Plaintiff is alleging that [CWS] failed to produce the original promissory note, Plaintiff has failed to state a claim upon which relief can be granted." *Tonea*, 6 F. Supp. 3d at 1343.

Thus, Plaintiff's allegations regarding CWS's failure to possess the Promissory Note are *wholly immaterial* to CWS's ability to exercise its remedies under the Security Deed. Those remedies are the sole basis upon which FMG delivered the Notice of Default, Fair Debt Letter, and Foreclosure Notice to Plaintiff. (*See* Oct. 2, 2023 Packet; *Angus I* Original Compl. Exs. 1, 5). Accordingly, even accepting Plaintiff's assertions regarding CWS's lack of ownership of the Promissory Note as true, Plaintiff cannot maintain a viable FDCPA or GFBPA claim against FMG based on that ostensible lack of ownership alone.

### b) As a Matter of Law, CWS is Authorized to Collect Upon "Charged Off" Debt, as Such Debt is Not Forgiven

Plaintiff alleges that the secondary loan was "charged off" as bad debt by

HAM prior to 2011. (Compl. ¶ 17). But "charged off" debt is **not** forgiven, and a third-party purchaser thereof may attempt to collect the full amount of the debt. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016). Accordingly, and contrary to Plaintiff's conclusory allegations, "attempting to collect a debt that has been charged off ***does not misrepresent the character, amount, or legal status of the debt***." *Ervin v. Cap. Mgmt. Servs. LP*, No. 1:22-cv-01848-MLB-CMS, 2023 WL 9051459, at *6 (N.D. Ga. Nov. 6, 2023) (citations omitted), *contra* 15 U.S.C. § 1692e(2)(A). Thus, as a matter of law, FMG's attempt to enforce CWS's security interest upon purportedly "charged off" debt cannot constitute a false, misleading, or deceptive practice under the FDCPA or the GFBPA.

For the foregoing reasons, FMG's communications encapsulated in the Notice of Default, Fair Debt Letter, and Foreclosure Notice do not constitute false, misleading, unfair, or deceptive material in violation of the FDCPA or GFBPA, as a matter of well-established Georgia law. Even if FMG can be considered a "debt collector" subject to the FDCPA (which it cannot), Plaintiff has nevertheless failed to proffer sufficient factual allegations demonstrating a violation of either statute upon which he may obtain any recognizable form of relief. Dismissal of Plaintiff's FDCPA and GFBPA claims contained in Counts I and II, to the extent asserted against FMG, is therefore warranted.

**C.   Plaintiff's Complaint Fails to State a Claim Against FMG for Wrongful Attempt to Foreclose (Count III)**

Under Georgia law, "an attempted wrongful foreclosure claim exists when, in the course of a foreclosure action that was not completed, a defendant makes a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and damages were sustained as a direct result of the publication." *100 Lakeside Trail Tr. v. Bank of Am., N.A.*, 804 S.E.2d 719, 725 (Ga. Ct. App. 2017) (markings omitted) (quoting *Sparra v. Deutsche Bank Nat'l Tr. Co.*, 785 S.E.2d 78, 83 (Ga. Ct. App. 2016)). Here, Plaintiff alleges that by publishing the Notice of Sale Under Power attached to the Foreclosure Notice (*see Angus I* Original Compl. Ex. 1 at 4-6), FMG published "untrue and derogatory information" concerning Plaintiff's financial condition. (Compl. ¶ 78). As with his claims in Counts I and II, Plaintiff's allegation that FMG published "untrue" information turns on the same two contentions that: FMG falsely claimed that CWS is the owner of the Promissory Note (*id.* ¶ 79), and that FMG falsely stated that Plaintiff owed over $121,000.00 to CWS (*id.* ¶ 80).

For all of the reasons previously discussed, any disputes as to ownership of the Promissory Note are irrelevant to CWS's ability to exercise the power of sale and foreclose on the Property under the Security Deed. *See You*, 743 S.E.2d at 433; *Tonea*, 6 F. Supp. 3d at 1343. Similarly, the allegation that FMG

falsely stated the amount Plaintiff owed to CWS is incorrect because "charged off" debt is not forgiven. *See Hinkle*, 827 F.3d at 1297; *Ervin*, 2023 WL 9051459, at \*6. Whether FMG falsely stated the amount Plaintiff owed to CWS is further *immaterial* to this analysis because Plaintiff has failed to allege that FMG published information about <u>his</u> financial condition that was "untrue." *See Sparra*, 785 S.E.2d at 83 (affirming dismissal where plaintiff admitted he missed mortgage payments such that the information about his financial condition was not untrue). Here, Plaintiff does **not** dispute that he has ceased paying his secondary loan obligations, or that he had previously made payments thereupon.[6]

Additionally, for the sake of argument, even if FMG had published information about CWS's *security interest* that was untrue, "untrue information about the [secured creditor's] security interest … could not constitute untrue and derogatory information concerning [the debtor's] financial condition." *100 Lakeside*, 804 S.E.2d at 725 (affirming dismissal of a wrongful attempt to foreclose claim where it was "undisputed that the promissory note is in default"). Therefore, even if FMG had published untrue information regarding the Security Deed (which it did not), that in and of itself would not constitute untrue or derogatory information concerning *Plaintiff's*

---

[6] This fact alone estops Plaintiff from attempting to challenge CWS's rights as Plaintiff's secured creditor under the Security Deed.

financial condition. Plaintiff thus has failed to plead any factual allegations upon which to state a plausible claim for relief for wrongful attempt to foreclose.

These pleading defects aside, Plaintiff himself has suggested that Defendant's attempt to foreclose on the Property was not "wrongful" in recent papers filed in the *Angus I* action. *See Johnson*, 107 F.4th at 1300 (a court may consider documents outside of the complaint that are central to the plaintiff's claims and undisputed). Indeed, in Plaintiff's Response to CWS's Motion for Attorney's Fees and Costs filed January 24, 2025, Plaintiff notes that "[w]hile [CWS] *may have been lawfully permitted to foreclose its security interest under the [S]ecurity [D]eed*, its demand for payments as the alleged owner of the [P]romissory [N]ote was a false representation of its legal status as the 'holder' of the [N]ote." [*Angus I* ECF No. 27 at 10 (emphasis added)]. But CWS's ability to properly foreclose is derived *solely* from its security interest under the Security Deed, not the Promissory Note. (*See Angus I* Original Compl. Ex. 2 at 9-10, § 21). Plaintiff thus tacitly acknowledges that CWS—as the valid assignee of the Security Deed (*see* Compl. ¶ 8)—is permitted to foreclose its security interest under the Security Deed, such that FMG's attempt to initiate nonjudicial foreclosure proceedings on CWS's behalf cannot be "wrongful."

For these reasons, Plaintiff has failed to proffer sufficient factual

allegations demonstrating FMG's publishing of "untrue" or "derogatory" information concerning *Plaintiff's* financial condition. Additionally, Plaintiff acknowledges that CWS is permitted to foreclose on its security interest under the Security Deed, which it effectuated by and through FMG's publishing of the required Foreclosure Notice. Accordingly, Plaintiff fails to state a claim for wrongful attempt to foreclose upon which any relief can be granted, thereby warranting dismissal of Count III with prejudice.

**D.  Plaintiff's Complaint Fails to State a Claim Against FMG for Punitive Damages and Attorney's Fees and Costs (Counts IV)**

Plaintiff brings an additional count for punitive damages and attorney's fees and costs of litigation. This count is for specific *remedies*, however, and is therefore derivative of the substantive causes of action addressed above. Because Plaintiff has failed to state a plausible claim for relief on each of those substantive claims, Plaintiff has likewise failed to state a plausible claim for any of the remedies requested in Count IV.

**V. CONCLUSION**

Based on the foregoing, dismissal of all Counts asserted against FMG in Plaintiff's Complaint, with prejudice, is warranted.

[*signatures on following page*]

Respectfully submitted this 30th day of January, 2025.

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Freeman Mathis & Gary, LLP*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **DEFENDANT FREEMAN MATHIS & GARY, LLP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** has been prepared in compliance with Local Rule 5.1(C) in Century Schoolbook, 13-point font. I further certify that the foregoing brief is limited in length to twenty-five (25) pages, and complies with the Standing Order Regarding Civil Litigation issued by the Honorable Leigh Martin May.

This 30th day of January, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Freeman
Mathis & Gary, LLP*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically submitted the foregoing **DEFENDANT FREEMAN MATHIS & GARY, LLP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF filing system, which will automatically send electronic notification of the same to the following counsel of record:

William R. Carlisle
CARLISLE LAW FIRM
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com
*Attorney for Plaintiff*

This 30th day of January, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Freeman Mathis & Gary, LLP*