## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CONSTANTINE ANGUS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| -versus- | ) | Civil Action No. |
| MADISON MANAGEMENT | ) | 1:24-cv-03626-LMM-LTW |
| SERVICES, LLC and | ) | |
| FREEMAN MATHIS & GARY, LLP, | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S AMENDED COMPLAINT

**COMES NOW** the plaintiff, **CONSTANTINE ANGUS**, who files his

Amended Complaint pursuant to authority at F.R.Civ.P. 15(a)(1)(B), and in

response to the defendant's Motion to Dismiss, by substituting the Original

Complaint with this amended and supplemental filing, which shows and alleges as

follows:

## I.
## PARTIES TO THIS ACTION

1.

The plaintiff in this action, **Constantine Angus**, is an individual named as a

"borrower" on a secondary promissory note and security deed executed in favor of

Home America Mortgage, Inc. (HAM) on 02/07/2007, as part of a residential

"single family" loan transaction resulting in the purchase of property at 2128 E.

Main Street, Snellville, GA 30078.

2.

The defendant, **Madison Management Services, LLC** (hereinafter
"Madison"), is a foreign limited liability company (Nevada) having a registered
agent and office in this state and may be personally served with process and
summons by delivery to its registered agent, Incorp Services, Inc., at the
registered office located at 9040 Roswell Rd., Suite 500, Atlanta, GA 30350.

3.

The defendant, **Freeman, Mathis & Gary, LLP** (hereinafter "FMG"), is a
law firm operated as a domestic limited liability partnership and may be personally
served with process and summons by delivery to a partner or managing agent at its
principal office address located at 100 Galleria Parkway, Suite 1600, Atlanta, GA
30339-5948.

## II.
## PLAINTIFF'S CAUSE OF ACTION

4.

The plaintiff's claims against the defendants arise under the Fair Debt
Collection Practices Act (FDCPA), at 15 USC § 1692, et seq., and the Georgia Fair
Business Practices Act (FBPA), at OCGA § 10-1-391, et seq.

## III.
## JURISDICTION AND VENUE

### 5.

The defendants reside in this district, have acknowledged and waived further service of summons and process, and are subject to the venue and jurisdiction of this Court pursuant to 28 USC § 1331.

### 6.

This action was originally filed as Cobb Superior Court Civil Action Number 24GC04935, and was removed to this court by the defendants on 08/16/2024.

## IV.
## FACTUAL ALLEGATIONS

### A.
### Consumer Mortgage Loans Approved by Home America Mortgage, Inc.

### 7.

Two (2) residential "single family" mortgage loans were originated, approved, and funded by the lender, Home America Mortgage, Inc. (HAM), for the plaintiff's purchase of real property improved by the construction of a residential structure, and located at 2128 E. Main St., Snellville, GA 30078.

8.

HAM's origination, approval, and funding of plaintiff's residential "single family" mortgage loans constituted the offer and sale of "*consumer financial products and services*," as defined at 12 CFR § 1006.2(f).

9.

The loan proceeds paid by HAM, were accepted subject to the terms and conditions found in promissory notes executed by the plaintiff.

10.

The plaintiff also executed deeds to secure debt on the primary and secondary mortgage loans, granting HAM a security interest in the real property at 2128 E. Main St., Snellville, GA 30078, and allowing HAM to initiate in rem non-judicial foreclosure proceedings to recover amounts owed by the plaintiff after a default on the promissory note.

11.

The secondary security deed provided by HAM and recorded at Gwinnett Deed Book 47597, Page 348, is identified by the words, "*Georgia Security Deed-Single Family-Secondary Lien.*"[1]

---

[1] Ex.3.

12.

The secondary security deed executed by the plaintiff includes and incorporates a "*Family Rider*" identified as a "*Multistate 1-4 Family Rider-FannieMae/FreddieMac UNIFORM INSTRUMENT.*"

13.

The Uniform FannieMae/FreddieMac loan documents used by HAM are approved solely for use in connection with residential consumer mortgage loans and are not approved for use with loans approved for commercial mortgage loans.

**B.**
**HAM Insolvency & Plaintiff's Default on Secondary Loan**

14.

On 11/25/2009, HAM filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy code in the middle district of Florida, referenced as 3:09-bk-10023-JAF.[2]

15.

On 08/28/2011, HAM was administratively dissolved as shown by filings with the Georgia Secretary of State.

---

[2] Ex.9.

16.

The plaintiff's secondary loan receivables were "charged-off" to debt by HAM after the plaintiff failed to deliver payment on the secondary note for more than six (6) months.[3]

17.

The secondary security deed recorded on 02/22/2007 at Gwinnett Deed Book 47597, Page 348 was registered with and names the Mortgage Electronic Registration System, or "MERS" as the "nominee" for HAM.

18.

The secondary security deed and servicing rights on the note remained registered with MERS, as HAM's nominee, from 02/22/2007 until 08/01/2023.[4]

**C.**
**Assignments of Security Deed & Freeman, Mathis & Gary, LLP (FMG)**

19.

More than sixteen (16) years after the secondary loan transaction on 02/07/2007, MERS/HAM assigned the secondary security deed to Windstream Capital, LLC on 08/01/2023.

20.

Windstream Capital, LLC assigned the secondary security deed to CWS Investments, Inc. (CWS) on 08/23/2023.

---

[3] Ex.1.
[4] Ex.3.

21.

The secondary promissory note executed by the plaintiff on 02/07/2007 is not referenced or conveyed by the 08/23/2023 assignment from Windstream Capital, LLC to CWS.[5]

22.

CWS and the defendants in this action have refused to provide the plaintiff with a copy of the note or any other information or document validating the claim that CWS is the owner, assignee, or "present holder" of the secondary promissory note and/or servicing rights associated with the secondary promissory note.

**D.**
**FMG Attempts to Collect on Secondary Promissory Note**

23.

On 10/02/2023, attorney Brian Goldberg, employed by the defendant FMG, and acting in his capacity as the attorney for CWS, sent a collection letter to the plaintiff.[6]

24.

The 10/02/2023 collection letter from FMG expressly informed the plaintiff of his "*rights under the Fair Debt Collection Practices Act (FDCPA)*" and unequivocally stated in all capital letters that the letter was a "*COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.*"

---

[5] Ex.3.
[6] Ex.1.

25.

The 10/02/2023 collection letter from FMG informs the plaintiff that "*CWS Investments, Inc. had retained this firm to collect a debt[,]*" and to "*take action against you and the property.*"

26.

The 10/02/2023 collection letter from FMG alleges that the assignment to CWS secured an "*original indebtedness of $46,950*" and had an "*outstanding balance*" of $119,444.01 that was "*good through October 11, 2023.*"

27.

The 10/02/2023 collection letter from FMG alleges that,to "*cure this breach,*" the plaintiff "*must pay past due payments and late payments and pay to this firm attorney's fees and cost*" in the amount of $75,743.53, and "*(p)ursuant to the terms of said Note and Security Deed.*"

28.

As communicated in FMG's 10/02/2023 collection letter, FMG's allowable attorney's fees under OCGA § 13-1-11 were included in the alleged balance of $75,743.53, which FMG added to the amount claimed as the outstanding principal balance.

**E.**
**11/14/2023 Letter from Plaintiff's Attorney to FMG Demanding Validation of Communications Made in an Attempt to Collect a Debt**

<center>29.</center>

On 11/14/2023, the plaintiff emailed a response letter to FMG attorney Brian Goldberg, the attorney for CWS, requesting that CWS "*provide all information establishing the truth of your statements concerning the character, legal status and amount of the alleged debt.*"

<center>

**F.**
**12/04/2023 Collection Letter from FMG**

</center>

<center>30.</center>

On 12/04/2023, FMG responded to the plaintiff and his undersigned attorney in a letter that failed to validate or verify CWS's status as the assignee, holder, or owner of the secondary promissory note and servicing rights associated with the note.[7]

<center>31.</center>

The 12/04/2023 letter from FMG states that, "*(a)s you correctly note, CWS is seeking fees and interest related to the charged-off loan—which is (sic) has the prerogative to do[,]*" and that "*(d)espite the baseless nature of your legal assertions, which appear to rise to the level of 'lacking substantial justification' (see O.C.G.A. § 9-15-14), CWS is nevertheless willing to extend a loan modification offer to Mr. Angus in relation to the Security Deed and Note.*"

---

[7] Ex.1.

32.

Without providing proof that CWS has ownership or contractual authority to assume servicing or accrue interest and fees as the owner or holder of the note, the 12/04/2023 collection letter from FMG misleadingly refers to "*the security deed and promissory note assigned to CWS[.]*"

**G.**
**01/05/2024 Collection Letter & Notice of Foreclosure from FMG**

33.

On 01/05/2024, FMG sent the plaintiff another letter stating that, "*the total amount of the debt that you owe is One Hundred Twenty One Thousand Six Hundred Eighty Six & 57/100 dollars ($121,686.57), which is good through January 21, 2024. Demand is hereby made for payment thereof.*"

34.

The 01/05/2024 letter also contains the unequivocal statement identifying FMG as a "debt collector" and stating that it is a "*COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.*"[8]

35.

The 01/05/2024 letter states that additional interest may be added to the balance "*at the rate specified in the Promissory Note[,]*" and that "*CWS*

---

[8] Ex.1.

*Investments, Inc. is the entity with authority to negotiate, amend, and modify the terms of the Note and Security Deed.*"

<div align="center">36.</div>

The 01/05/2024 letter attempts to collect a debt by demanding that the plaintiff personally make payment to CWS under the "*terms of your Note*" and alleges that CWS Investments, Inc. is "*the holder of the Promissory Note and Deed to Secure Debt*" for the plaintiff's secondary loan executed on 02/07/2007.

<div align="center">37.</div>

Following the portion of FMG's 01/05/2024 collection letter demanding that the plaintiff personally make payment to CWS to avoid enforcement of contractual rights by CWS as the holder of the plaintiff's secondary promissory note, the letter notifies the plaintiff of non-judicial foreclosure proceedings initiated under the secondary security deed.

<div align="center">

**H.**
**CWS Stock Offering & SEC Disclosures**

</div>

<div align="center">38.</div>

On 04/07/2022, CWS filed a Form 1-A "Offering Statement" with the Securities Exchange Commission (SEC).[9]

---

[9] Ex.4.

39.

On 02/02/2023, CWS filed a Form D "Notice of Exempt Offering of Securities" with the SEC.

40.

In an amended offering circular filed with the SEC on 08/19/2024, CWS discloses investment risks associated with its purchase of mortgage debt securities.

41.

At page 4, under the heading "*Incomplete Due Diligence*," CWS discloses that "*[CWS] performs significant "due diligence" on the Notes prior to purchase. This includes the review of any available information about the loans and the underlying collateral. Despite best efforts, it is impossible to review all of the information about a given loan and there is no assurance that all of the information that was provided/obtained is accurate. It is also possible that we have reached inaccurate conclusions concerning the information we have reviewed (emphasis supplied).*"

42.

At page 31 of the 09/21/2023 offering circular, under the heading "*Asset Backed Securities*," CWS states that it is *not* selling "asset backed securities" but is offering investment in "debt securities," as defined at 17 CFR § 230.261(c), and that CWS *will invest almost exclusively in non-performing mortgage loans[.]*"

43.

At page 31 of an 09/21/2023 offering circular, CWS defines the term "*UPB*"
with its statement that "*(i)nvestors can purchase non-performing loans at prices
significantly below **outstanding balances, otherwise known as 'the UPB'**
(emphasis supplied). The investor can then rehabilitate the loans or reclaim the
property, thus generating an attractive return on the original investment. This is
the primary goal of this investor.*"

44.

At page 60 of an "*explanatory note*" to the offering circular, dated
08/19/2024, under the heading "*Legal Proceedings*," CWS refers to the plaintiff's
secondary mortgage loan in this case, referencing the "*outstanding balance*" on
"*(a) loan with a **UPB of $46,950** (emphasis supplied), currently owned in
Georgia.*"[10]

45.

Page 42 of the CWS offering circular describes the CWS debt securities,
which include the assignment of plaintiff's secondary security deed, "*to include
single family homes and smaller, multi-family residential properties.*"

---

[10] Ex.4.

<p style="text-align:center">46.</p>

CWS's Balance sheet, at page 38, describes the securities as *"Residential Mortgage Loans, Held-for-Sale."*

<p style="text-align:center">**I.**</p>

<p style="text-align:center">**Advertising Communications by CWS CEO Chris Seveney**</p>

<p style="text-align:center">47.</p>

Chris Seveney, the CEO of CWS Investments, Inc., doing business as "7e Investments," advertises the business conducted by CWS as "*note investing*" in podcasts and on the "7e Investments" website and landing pages.[11]

<p style="text-align:center">48.</p>

Seveney advertises CWS's "*fix and flip*" business model to potential investors, stating, *"(w)e fix and flip mortgages, but what does that mean? Close your eyes and think about a house that you drive by that is vacant and rundown. You want to buy that house. The first question is, how do you make money with that house?"*

<p style="text-align:center">49.</p>

Seveney then compares the practice of "flipping" homes to CWS's "fix and flip" approach to the purchase and sale of defaulted, non-performing residential mortgage loans.

---

[11] Ex.5.

<p style="text-align:center">14</p>

50.

Seveney rhetorically asks in the online advertisement, *"What are you going to do with that home?"* His answer is that, "*(y)ou are going to evaluate it and fix it, whether it needs paint, carpet, or flooring, determine what's needed, solve the problem, which is renovating the property, which is fixing it up. You'll sell it back on the market for market value, which should be a premium over what you paid at a discount plus the effort that you put into it. Very similar to note investing. The difference is instead of the property, you're doing this with the borrower. What you mean by that is you're trying to rework or fix the borrower to get them to pay again. We will buy a loan at a discount, particularly on a single-family home. We'll use the number $100,000 mortgage. We buy it for $60,000.*"

**J.**
**01/21/2025 Collection Letter & Foreclosure Notice by FMG**

51.

On 01/21/2025, FMG sent a letter to the plaintiff demanding payment under the note and informing him of CWS's initiation of foreclosure proceedings under the security deed.[12]

---

[12] Ex.5.

52.

In addition to serving as notice of a non-judicial foreclosure, the 01/21/2025 letter attempts to collect a debt from the plaintiff by alleging a contractual right to enforce the promissory note as the "present holder" of the note.[13]

53.

FMG states in the 01/21/2025 letter that FMG "*represents CWS Investments, Inc.[,]*" that CWS is *"the holder of the Promissory Note"* on the plaintiff's secondary loan, and that the letter is a "*COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.*"[14]

54.

The 01/21/2025 letter states that "*the total amount of the debt that you owe is One Hundred Fifty Three Thousand One Hundred Ninety Nine & 46/100 dollars ($153,199.46), which is good through January 21, 2024. Demand is hereby made for payment thereof.*"

55.

The 01/21/2025 letter also states that additional interest may accrue "*at the rate specified in the Promissory Note[,]*" and that "*CWS Investments, Inc. is the*

---

[13] *See Reese v. Ellis, Painter, Rattertree & Adams, LLP, No. 10-14366, 2012 WL 1500108 (11th Cir. May 1, 2012), holding that the inclusion of words stating that the law firm is "acting as a debt collector attempting to collect a debt," had a dual purpose of providing notice of foreclosure and collecting a debt.*

[14] Ex.1.

*entity with authority to negotiate, amend, and modify the terms of the Note and Security Deed.*"

<div align="center">56.</div>

The demand for payment of $153,199.46 in the 01/21/2025 letter excludes the amount of FMG's claim for attorney's fees under OCGA § 13-1-11 (*15% of first $500 + 10% of remaining principal balance, or $4,395.04*), represents an increase of $31,512.89, plus the claim for fees under OCGA § 13-1-11, calculated as $4,395.04, from the prior demand for payment on 01/05/2024.

<div align="center">

**K.**
**Documents Offered to Validate CWS Claim as Holder of Plaintiff's Secondary Note on 04/30/2024**

57.
</div>

On 04/30/2024, CWS produced a copy of the plaintiff's secondary promissory note, together with an undated "Allonge to Note," an "Affidavit of Lost Note," and a "Blanket Power of Attorney."[15]

<div align="center">58.</div>

The affiant's signature on the "Affidavit of Lost Note" is dated 12/15/2010 and the affidavit states in relevant part that "*the original note was misplaced, lost or destroyed.*"

---

[15] Ex.6.

59.

The affidavit was given on behalf of Taylor, Bean & Whitaker Mortgage Corp. (TBW), and is purportedly based on either the affiant's "*independent knowledge*" or "*inquiry of those individuals having knowledge of the facts set forth in the affidavit.*"

60.

The Allonge by TBW is not dated and there is no description in the affidavit regarding the facts and circumstances involved in its creation.

61.

The copy of the lost promissory note is stamped with an endorsement in favor of TBW that is also undated.

62.

The "Blanket Power of Attorney" (POA) provided by CWS is dated 02/19/2001 and names TBW as "attorney in fact" with authority to transfer and assign notes and other mortgage loan documents issued by "*Home America Mortgage, Inc.*"[16]

63.

The POA bears the signature of Gary J. Garrett, as "*President*" of "*Home America Mortgage, Inc.,*" and names Desiree Brown, TBW Treasurer, as a witness.

---

[16] Ex.6.

64.

The statement in the Affidavit of Lost Note from CWS that TBW is the "payee" under the note is unreliable due to the absence of specific material facts, such as the the date of the endorsements appearing on the copy of the promissory note, whether the endorsements were added to the original note before it was lost or added to the copy of the note, and any other facts showing which statements were within the affiant's "*independent knowledge,*" and which statements are based on secondhand statements from unidentified "*individuals having knowledge of the facts set forth in the affidavit.*"

65.

The reliability of the statement in the Affidavit of Lost Note that TBW is the "payee" on the note is further undermined by the apparent "loss" of the original note on an unknown date, the absence of any date on the allonge or stamped note endorsements, discrepancies involving the date on the POA, and the commission of criminal fraud by TBW officers in connection with the purchase and sale of mortgage loans.

66.

As indicated by the face of the 02/19/2001 POA, the "*individuals having knowledge of the facts set forth in the affidavit*" include the TBW Treasurer and witness to the POA, Desiree Brown, and Lee Bentley Farkas, TBW President and

officer/director of HAM1, who were convicted and sentenced for federal crimes in 2011 involving false and fraudulent communications regarding the existence, sale, ownership, and multiple other facts associated with residential mortgage loan transactions.

<div align="center">67.</div>

The deeds and instruments recorded in Gwinnett County fail to include any assignment or conveyance of the plaintiff's secondary security deed from MERS to TBW or any other intermediary assignee.

<div align="center">

**L.**
**Identification of Entities Signing the Blanket POA**

**i.**
**Taylor Bean & Whitaker, LTD, Inc. a/k/a "Home America Mortgage, Inc."**

68.
</div>

The entity known as Taylor, Bean & Whitaker LTD., Inc. (TBWL) was formed on 06/09/1995 in the state of Florida.[17]

<div align="center">69.</div>

On 08/17/1999, TBWL changed its name to Home America Mortgage, Inc. (HAM1), as shown in records maintained by the Florida Secretary of State.[18]

---

[17] Ex.8.
[18] Ex.8.

70.

As shown from the POA, the "*individuals having knowledge of the facts set forth in the affidavit*" from TBW's general counsel include the witness to the POA, Desiree Brown, TBW Treasurer, and TBW President and "Incorporator" of HAM1, Lee Bentley Farkas, who were convicted and sentenced to prison for their roles in a mortgage fraud conspiracy described by the prosecuting U.S. Attorney, Neil McBride, as "*one of the largest, longest-running bank fraud schemes in history that led to the collapse of Colonial Bank and TBW.*"[19]

71.

On 03/06/2022, TBWL/HAM1 changed its name a second time to Community Home Loans, Inc., and was later dissolved on 09/19/2003.[20]

72.

More than a year after the Blanket POA was signed, on 05/02/2002, a new and separate entity known as Home America Mortgage, Inc. (HAM2) was incorporated, as shown from records maintained by the Florida Secretary of State.

73.

The HAM2 entity continued in good standing until its dissolution on 09/21/2023.

---

[19] Ex.7.
[20] Ex.8.

**ii.**

**Home America Mortgage, Inc. as Illegitimate "De Facto" Corporation in GA**

74.

On 03/23/2000, being after the name change from TBWL to HAM1 on 08/17/1999, but before the change to Community Home Loans, Inc. on 03/26/2002, or the incorporation of HAM2, on 05/02/2002, a certificate of authority to conduct business was issued by the GA Secretary of State to an entity operating as Home America Mortgage, Inc. (Florida).[21]

75.

Despite the name change on 03/26/2002 and the subsequent dissolution of Community Home Loans, Inc. f/k/a "Home America Mortgage, Inc.," Home America Mortgage, Inc. (Florida) on 09/19/2003, annual registrations continued to be filed in the State of Georgia under the name Home America Mortgage, Inc. (Florida) as a foreign corporation acting under a certificate of authority.[22]

76.

The annual registrations filed in GA on behalf of Home America Mortgage, Inc. (Florida) bear the names and signatures of officers and agents including Lee Bentley Farkas, Raymond Bowman, James G. Hicks, and Carl Wright, all of whom

---

[21] Ex.10.
[22] Ex.10.

were convicted and received prison sentences in connection with the aforementioned mortgage fraud scheme.[23]

77.

On 02/07/2007, being approximately four (4) years after the dissolution of Community Home Loans, Inc. f/k/a Home America Mortgage, Inc., the plaintiff's mortgage loans were transacted in Gwinnett County, GA.[24]

78.

At no point after its incorporation on 05/02/2002, did the second Florida corporation named Home America Mortgage, Inc. establish a registered agent or office in GA, or obtain a certificate of authority to conduct business in GA.[25]

79.

On 02/07/2007, the only existing corporate entity named Home America Mortgage, Inc. was the Florida entity incorporated on 05/02/2002, after the Blanket POA was signed on 02/19/2001.

80.

The GA entity known as Home America Mortgage, Inc. (Florida) continued to do business under that name after the corporate name change to Community Home Loans, Inc., and after the subsequent dissolution of that entity on 09/19/2003.

---

[23] Ex.10.
[24] Ex.3.
[25] Ex.10.

81.

The plaintiff's 02/07/2007 loans were not transacted with the Florida corporation named in the 02/19/2001 Blanket POA, as that entity had changed its name and was then dissolved years prior to the plaintiff's loans.[26]

82.

The plaintiff's 02/07/2007 loan transactions were also not conducted with the entity incorporated as Home America Mortgage, Inc. in the State of Florida on 05/22/2022, as the annual registrations in GA continued to be filed on behalf of the dissolved entity that was incorporated in Florida as TBWL on 06/09/1995.[27]

83.

The plaintiff's loans on 02/07/2007 were transacted with individuals purportedly acting on behalf of Home America Mortgage, Inc., as an illegitimate "de facto" corporation.

84.

As shown from the face of the plaintiff's secondary security deed, the plaintiff's secondary loan was registered with the Mortgage Electronic Registration System, or "MERS," and MERS is named as the "*nominee for Home America Mortgage, Inc.*" in all subsequent conveyances of the beneficial interests and servicing rights in connection with the loan.[28]

---

[26] Ex.8.
[27] Ex.8.
[28] Ex.3.

<div align="center">85.</div>

Upon registration of the secondary loan with MERS on 02/07/2007, the only parties with authority to deactivate the MERS registration were Home America Mortgage, Inc. or a subsequent assignee of MERS.

<div align="center">86.</div>

The plaintiff's secondary loan remained registered with MERS at all times from 02/07/2007 until the assignment from MERS, as nominee for Home America Mortgage, Inc. on 08/01/2023.[29]

<div align="center">

**M.**
**Chapter 11 Bankruptcy Filings by TBW & HAM**

</div>

<div align="center">87.</div>

On 11/25/2009, the second Florida entity named Home America Mortgage, Inc. (HAM2), incorporated on 05/22/2002, filed bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida (Jacksonville), referenced as Docket #: 3:09-bk-10023-JAF.

<div align="center">88.</div>

On 01/20/2010, docket entry 35 in the case serves notice that, "*(a)n order has been entered in this case consolidating this case with the Chapter 11 Bankruptcy cases of Taylor Bean & Whitaker Mortgage Corp., Case No. 3:09-bk-7047 and REO Specialists, LLC, Case No. 3:09-bk-10022 for procedural*

---

[29] Ex.3.

*purposes only and providing for its Joint Administration in accordance with the*

*terms thereof. The docket in Case No.: 3:09-bk-7047-JAF should be consulted for*

*all matters affecting the Jointly-Administered cases."*

89.

In response to the plaintiff's 11/14/2023 validation request, seeking *"all*

*information establishing the truth of your statements concerning the character,*

*legal status and amount of the alleged debt[,]"* FMG produced a letter from TBW

to the plaintiff, dated 10/18/2010, stating that, *"(p)ursuant to a Settlement*

*Agreement approved by the United States Bankruptcy Court for the Middle District*

*of Florida on September 14, 2010, in the case In re: Taylor, Bean & Whitaker*

*Mortgage Corp., Chapter 11 Case No. 3:09-bk-07047-JAF, Taylor, Bean &*

*Whitaker Mortgage Corp. ("TBW") and the FDIC as Receiver for Colonial Bank*

*(the "FDIC") resolved that dispute and agreed that TBW owned your loan subject*

*to a security interest of the FDIC."*[30]

90.

FMG and CWS have improperly relied on the statement in the TBW Notice

Letter, together with the Affidavit of Lost Note, Allonge, undated endorsements,

and Blanket POA, to establish a conveyance of rights in the plaintiff's secondary

---

[30] Ex.9.

note and security deed to TBW, and explain irregularities and a gap in the "chain of title" appearing in the Gwinnett deed records.

91.

According to the statements and documents produced on behalf of CWS, FMG is claiming that the plaintiff's secondary note and servicing rights were internally conveyed from Home America Mortgage, Inc. to TBW at some point in time after 02/07/2007 under authority granted in the Blanket POA dated 02/19/2001.

92.

The Affidavit of Lost Note and Allonge, together with the 10/18/2010 settlement notice from TBW to the plaintiff, were offered to confirm CWS's ownership and status as holder of the note.

93.

The plaintiff's reliance on these documents is improper for the following reasons:

a.) The Home America Mortgage, Inc. (HAM1) entity signing the Blanket POA on 02/19/2001 changed its name, was dissolved, and did not exist on the date of the 02/07/2007 loan transactions;[31]

---

[31] Ex.8.

b.) The Home America Mortgage, Inc. (HAM2) entity, which had a different EIN than HAM1 and reached settlement in the Chapter 11 bankruptcy case on 09/14/2010, is not the entity shown in GA Secretary of State filings.[32]

c.) The 09/14/2010 settlement was between TBW and the FDIC, as receiver for Colonial Bank, and did not involve the plaintiff's secondary loan, which remained registered with MERS, in the absence of any assignments since 02/07/2007.[33]

d.) The loan received by TBW as a result of the 09/14/2010 settlement was the plaintiff's primary loan, as reflected in the 09/30/2010 assignment at Gwinnett Deed Book 50299, Page 561, from "*MERS, as nominee for Home America, to U.S. Bank National Association, acting as Trustee for TBW Mortgage-Backed Trust Series, TBW Mortgage Pass-Through Certificates, Series 2007-2,*" of rights and interest in the primary security deed at Gwinnett Deed Book 47597, Page 330, not the secondary security deed at Deed Book 47597, Page 348.

e.) The 07/12/2023 assignment of security deed from TBW to Windstream Capital, LLC, by Neil Luria, as TBW's court appointed Chief Restructuring Officer, was recorded on behalf HAM2, which was not a party to the plaintiff's loan transactions, and in the absence of any prior assignment of the plaintiff's secondary security deed, which remained registered with MERS.[34]

---

f.)     The 08/01/2023 assignment of the plaintiff's secondary security deed from MERS, as nominee for Home America Mortgage, Inc., recorded at Gwinnett Deed Book 60729, Page 159, confirms the absence of any intervening assignment of the plaintiff's secondary loan between the dates of 02/07/2007 and 08/01/2023.[35]

**N.**
**Agreement Between CWS & Madison Management Services, LLC (Madison)**

94.

On 10/26/2022, CWS contracted with Madison to act as a "loan servicer" on mortgage debt securities purchased by CWS (the agreement).

95.

The preamble to the agreement states "*(t)his Loan Servicing Agreement (the "Agreement") is dated 10/26/2022 and is between Madison Management Services, LLC, a Nevada Limited Liability Company, as Servicing Agent (hereafter referred to as "Servicer"), and CWS Investments Inc, (hereafter referred to as "Client"),* ***who is the originator or transferee and holder of certain promissory notes*** *(emphasis supplied) (the "Notes")[.]"*

96.

Article II., Section 2.0 of the "loan servicing" agreement provides in relevant part that "*[CWS] must supply to Servicer all available relevant documents of the Loan file including, but not limited to Notes, Deed/Mortgages, Modification*

---
[35] Ex.3.

*Agreements, Forbearance Agreements, Assignments or any other document effecting condition of title or payment distribution and showing correctly the Beneficiary, needed by Servicer to complete its tasks, including but not limited to, file setup, servicing functions, and to satisfy regulatory requirements, before servicing functions will be performed, continued, or funds distributed.*"

97.

Article IV., Section 4.0 of the agreement provides that "*[CWS] shall retain custody of the original note and deed of trust for the Loan (or assignment thereof)[.]*"

**O.**
**Madison's Attempts to Collect a Debt from the Plaintiff**

98.

On 11/14/2023, the plaintiff's undersigned attorney delivered notice to Madison that he was representing the plaintiff and directed that all further communications from Madison be sent to his attention.

99.

Since receiving notice from the plaintiff's attorney, Madison has continued to communicate directly with the plaintiff, sending email messages and statements demanding payment.

100.

Madison's collection communications were received by the plaintiff on

08/15/2023, 09/26/2023, 11/09/2023, 11/16/2023, 12/15/2023, 01/05/2024, 02/02/2024, 02/15/2024 and 03/16/2024.[36]

<div align="center">101.</div>

Madison's communications with the plaintiff on 11/16/2023, 12/15/2023, 01/05/2024, 02/02/2024, 02/15/2024 and 03/16/2024 were in violation of 15 USC § 1692c(a)(2) and 15 USC § 1692d.

<div align="center">102.</div>

After receiving the 11/14/2023 notice of representation from plaintiff's attorney, Madison sent the plaintiff a statement on 12/15/2024 demanding payment of $720.00 for "Attorney Fees INV 34057" in addition to amounts allegedly owed under the 02/07/2007 promissory note.

<div align="center">103.</div>

The 12/15/2024 demand for attorney's fees was sent prior to the foreclosure notice from FMG, and is unrelated to any judicial proceeding, judgment, order, or award of attorney's fees against the plaintiff.

<div align="center">104.</div>

Madison's demand for payment of $720.00 for "Attorney Fees INV 34057" constituted a false representation of services rendered or compensation which may be lawfully received by Madison or CWS Investments, Inc. for collection of the

---

[36] Ex.2.

alleged debt in violation of 15 USC § 1692e(2)(B), and the collection of an amount

that was not authorized under any agreement in violation of 15 USC § 1692f(1).

105.

On 02/06/2024, the plaintiff filed a Chapter 13 Bankruptcy petition in the

U.S. Bankruptcy Court for the Northern District, State of Texas, Case No.:

24-40432-ELM, effecting an automatic stay against Madison's collection efforts.

106.

Madison continued its collection efforts after receiving notice of the

bankruptcy filing and automatic stay by sending the plaintiff demands for payment

on 02/15/2024 and 03/16/2024 in violation of 15 USC § 1692e(5), 15 USC §

1692c, and 15 USC § 1692d.

107.

Madison's communications in violation of the FDCPA directly and

proximately caused actual harm and injury to the plaintiff by inducing

psychological distress that was accompanied by personal physical symptoms and

financial loss.

108.

As the direct and proximate result of Madison's communications in violation

of the FDCPA, the plaintiff experienced harm and injury in the form of fear,

anxiety, a feeling of helplessness, an inability to sleep, exhaustion, lethargy,

inability to concentrate on tasks, obsessive thoughts, restlessness, embarrassment, and confusion.

<center>109.</center>

As the direct and proximate result of Madison's communications in violation of the FDCPA, the plaintiff incurred financial injury due to absence from work and diminished productivity, attorney's fees, court fees, and other costs associated with investigating and defending against FMG's collection efforts.

<center>110.</center>

The plaintiff is entitled to recover his damages, attorney's fees and litigation expenses from FMG pursuant to 15 USC § 1692k, including all actual damages, statutory damages up to $1,000.00, and his reasonable attorney's fees.

<center>

**V.**
**Scope of FDCPA Coverage**

**A.**
**Defendant's Attempt to Collect "Debt" Under 15 USC § 1692a(5)**

111.
</center>

A "debt" is defined at 15 USC 1692a(5) as "*any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.*"

112.

At 12 CFR § 1006.1(c)(2), the FDCPA "*applies to debt collectors only when they are collecting debt related to a consumer financial product or service as defined in § 1006.2(f).*"

113.

A "consumer financial product or service" is defined at 12 CFR § 1006.2(f) and 12 CFR § 1002.5 to include loans "*offered or provided for use by consumers primarily for personal, family, or household purposes*" or attempts to collect a debt that was "*offered, or provided in connection with a consumer financial product or service.*"

114.

The primary and secondary loans issued by HAM on 02/07/2007 were offered or provided to the plaintiff as residential "single family" mortgage loans for the purchase of real property improved by a "single family" residential structure.

115.

The defendants are attempting to collect a debt from the plaintiff that arose from a transaction involving the plaintiff's purchase of a "consumer financial product" from HAM.

116.

The defendants' attempts to collect a debt from HAM are "consumer financial services" under 12 CFR § 1006.2(f) and 12 USC § 5481(15)(A)(x) and are covered under the FDCPA.

117.

In collection letters to the plaintiff, dated 10/02/2023, 12/04/2023, 01/05/2024 and 01/21/2025, FMG includes the cautionary "mini Miranda" language at 15 USC § 1692e(11), identifying itself as a "*debt collector attempting to collect a debt*" and notifies the plaintiff of his "*right to validate the debt in question*" under 15 USC § 1692g.

118.

The collection letters from FMG to the plaintiff, dated 01/05/2024 and 01/21/2025 issue a "*demand for payment*" and a threat to "*take action*" against the plaintiff on behalf of CWS, as the alleged "holder" of an in personam claim based on contractual rights under a promissory note, in addition to notifying the plaintiff of in rem non-judicial foreclosure proceedings under the assigned security deed.

119.

Madison's attempts to collect a debt from the plaintiff were in the form of billing statements and emailed demands for payment of amounts allegedly

authorized under the secondary promissory note allegedly held by CWS, and contained no reference to foreclosure proceedings.

## VI.
## PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

### 120.

The plaintiff herein references and incorporates the factual allegations at Sections IV and V above in support of his claims against the defendants.

## COUNT ONE
## FDCPA CLAIM AGAINST FMG

### 121.

FMG has attempted and continues to attempt collection of a "debt" arising out of a transaction on 02/07/2007 involving the sale of a "consumer financial product or service" by Home America Mortgage, Inc. in the form of a "single family" mortgage loan that was offered or provided by the lender for personal, family, or household purposes associated with the plaintiff's purchase of real property improved by a single family residential structure.

### 122.

The debt that FMG is attempting to collect, as described in paragraph 112 above and referenced throughout the Amended Complaint, is covered by the definition provided under the FDCPA, at 15 USC § 1692a(5).

123.

FMG is a "debt collector" within the meaning of 15 USC § 1692a(6) as "*a law firm that uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.*"

124.

FMG informed the plaintiff of his right to validation under the FDCPA and identified itself as a "*debt collector*" who is "*attempting to collect a debt*" in collection letters addressed to the plaintiff on 10/02/2023, 12/04/2023, 01/05/2024 and 01/21/2025 (the "FMG collection letters").

125.

On their website, Freeman, Mathis & Gary, LLP discuss their debt collection experience, stating that, "*(o)ur clients in this area include financial institutions, as well as businesses, both large and small. Our attorneys represent creditors in all types of collection proceedings, litigating claims to judgments, garnishment, discovering and attaching assets among other services.*"

126.

In Heintz v. Jenkins, the Supreme Court expressly held that the FDCPA

"*applies to the litigating activities of [debt-collector] lawyers.*" See Heintz v.

Jenkins, 514 U.S. 291, 294, 115 S.Ct. 1489, 1490, 131 L.Ed.2d 395 (1995).

127.

In Miljkovic v. Shafritz & Dinkin, P.A., "*a debt collector's communications*

*with a consumer's attorney, including those communications required by § 1692c,*

*are subject to §§ 1692d–1692f of the Act to the same extent as a debt collector's*

*communications with the consumer himself.*" See Miljkovic v. Shafritz & Dinkin,

P.A., 791 F.3d 1291, 1302-3 (11th Cir. 2015).

128.

The FMG collection letters included calculations of interest and fees in

connection with the amount of an alleged debt, demands for payment of a debt, and

statements concerning the character and legal status of a debt allegedly owed to

CWS.

129.

FMG's communications of the amount, character and legal status of the

alleged debt to CWS were misleading and deceptive due to CWS's inadequate

knowledge or possession of information and documents necessary to verify the

statements in the FMG letters.

130.

In an SEC "offering circular" filed in connection with a public stock offering
to investors in CWS's business purchasing residential mortgage debt securities,
CWS disclosed the risks posed by its "*improper due diligence*" and the possibility
of "*inaccurate conclusions*" based on the loan information available to CWS.

131.

CWS and FMG had notice of: irregularities and discrepancies in the
recorded assignments referencing the plaintiff's secondary security deed; the
unexplained absence or prior loss of the original promissory note; missing loan
numbers in recorded assignments, the existence of two (2) separate entities named
Home America Mortgages, Inc.; the prior conviction of TBW and Home America
Mortgage officers pursuant to their involvement in a conspiracy to commit fraud
by repeatedly selling mortgage loans, selling loans that did not exist, falsifying
documents in connection with loans, and destroying loan documents.

132.

The loan and conveyance documents provided to the plaintiff by FMG on
04/30/2024, the recorded assignments of the plaintiff's secondary security deed,
and documents relied on by CWS as periodic billing statements on the plaintiff's
secondary note, are materially incomplete, factually inconsistent, and fail to
support the unequivocal communications in FMG's collection letters.

133.

The FMG collection letters contain false, deceptive and misleading statements regarding the amount of plaintiff's alleged debt, in violation of 15 USC § 1692e(2)(A).

134.

In the absence of payments credited to the principal balance, communications of the outstanding principal balance remaining due on the plaintiff's secondary mortgage loan have changed depending on who is making the communication.

135.

In its offering circular filed with the SEC, CWS stated that the "outstanding balance" on plaintiff's secondary loan was $46,950.00. In FMG's 10/02/2023 collection letter, the outstanding balance is alleged as $43,700.48. Periodic statements from Madison to the plaintiff state that the outstanding principal balance is $46,595.00.

136.

FMG's 10/02/2023 collection letter states that interest is accruing on the plaintiff's alleged debt at the rate of $13.88 per diem.

137.

At the rate of 10.875% per annum, as stated in the copy of the promissory note provided to the plaintiff on 04/30/2024, the per diem interest rate is $13.02 based on the principal balance calculated from the 10/02/2023 FMG collection letter. The per diem rate is $13.98 based on the $46,950.00 "outstanding balance" stated in the CWS offering circular. The per diem rate is $13.88 based on the $46,595.00 principal balance stated in the billing statement from Madison on 11/16/2023.

138.

Sixty five (65) days later, the 01/05/2024 FMG collection letter states that the outstanding balance owed by the plaintiff, including principal, interest and fees, is $121,686.57, representing an increase of $2,245.79. At the rate of $13.88 per diem, accrued interest from 10/02/2023 to 01/05/2024 would be $902.20. Late charges at the rate of $22.13 per month would be $66.39, for a total of $968.59.

139.

On 01/21/2025, three hundred eighty four (384) days after the 01/05/2024 collection letter, FMG demanded payment of $153,199.46 from the plaintiff, allegedly consisting of principal, interest, and fees. The amount demanded represents an increase of $31,512.89 since 01/05/2024. At the rate of $13.88 per

diem, accrued interest would be $5,329.92, and including late fees at $22.13 per month would add $265.56, for a total increase of $5,595.48.

<center>140.</center>

The FMG collection letters also contain false, deceptive, and misleading statements concerning CWS's legal status as the "holder" of the plaintiff's secondary promissory note.

<center>141.</center>

The assignment of security deed from Windstream Capital, LLC to CWS did not convey rights and interest as holder of the promissory note.

<center>142.</center>

CWS's interest in the promissory note is premised TBW's alleged conveyance of the plaintiff's promissory note from Home America, Inc. to itself, on some unspecified date occurring between 02/19/2001 and 12/15/2010. under authority granted in a "Blanket Power of Attorney" (POA), signed on behalf of "Home America Mortgage, Inc." on 02/19/2001.

<center>143.</center>

CWS's claim to ownership of the note is premised on an irregularity in the chain of title showing an assignment of plaintiff's secondary security deed, which was still registered with MERS, as nominee for Home America Mortgage, Inc., from TBW to Windstream Capital, LLC.

<center>42</center>

144.

After failing to honor plaintiff's request to produce any documents validating CWS's claim to ownership of the note for more than five (5) months, CWS produced an "Affidavit of Lost Note," undated note endorsements, and the POA, on 04/30/2024.

145.

As set out above and shown from the plaintiff's exhibits to this Amended Complaint, the POA was executed by a subsidiary or affiliate of TBW, Taylor, Bean & Whitaker LTD, Inc. that had changed its name to Home America Mortgage, Inc. in 1999. The new entity, known as Home America Mortgage, Inc., changed its name again to Community Home Loans, Inc. the year after the POA was signed, and is now dissolved.

146.

The plaintiff's lender named in the 02/07/2007 loan documents is also named Home America Mortgage, Inc., but was not incorporated until 05/22/2002, more than a year after the POA was signed.

147.

FMG and CWS are relying on the ineffectual POA to prove the validity of undated endorsements stamped on a copy of the lost promissory note by TBW.

148.

FMG and CWS are also aware that Desiree Brown, the Treasurer and

witness named on the POA, together with the TBW President, Lee Bentley Farkas,

were convicted and sentenced to prison terms for crimes that involved the creation

and dissemination of fraudulent loan documents showing the sale of non-existent

mortgage loans and loans owned by other entities.

149.

The documents produced on 04/30/2024 fail to show the date on which

TBW allegedly received the plaintiff's note, and fails to establish the date that

CWS allegedly received rights under the note, and whether the note was allegedly

conveyed to CWS by TBW, or Windstream Capital, LLC, or MERS, or Home

America Mortgage, Inc.

150.

FMG has attempted to collect an alleged consumer debt by making false

statements of the amount of the debt in violation of 15 USC § 1692e(2)(A) and 15

USC § 1692e(10), has unfairly and unconscionably attempted to collect amounts

from the plaintiff that are not authorized under the plaintiff's secondary promissory

note and security deed, in violation of 15 USC § 1692f(1), and has made false,

deceptive and misleading statements to the plaintiff and his attorney regarding the

legal status of the alleged debt in violation of 15 USC § 1692e(2)(A) and 15 USC § 1692e(10).

<center>151.</center>

The plaintiff is entitled to recover his statutory and actual damages, plus reasonable attorney's fees and litigation expenses from FMG pursuant to 15 USC § 1692k.

<center>**COUNT II**
**FDCPA VIOLATIONS BY MADISON MANAGEMENT**
**SERVICES, LLC**</center>

<center>152.</center>

Madison is a "debt collector" under 15 USC § 1692a(6) that is regularly engaged in the collection of debts owed, due, or asserted to be owed or due another.

<center>153.</center>

Madison used the mail and email as instrumentalities of interstate commerce to attempt collection of an alleged debt from the plaintiff through communications and acts in violation of the FDCPA.

<center>154.</center>

Madison's communications were an attempt to collect a debt from the plaintiff and falsely, deceptively and misleadingly represented the character, legal status and amount of an alleged debt in violation of 15 USC § 1692e(2)(A) and 15

<center>45</center>

USC § 1692e(10).

155.

Madison's communication of information in its ostensible role as a "loan servicer" are actionable as they were for more than one purpose and were intended to induce payment, as contemplated at Lamirand v. Fay Servicing, LLC, No. 20-14286, 2022 U.S. App. LEXIS 18290 (11th Cir. July 1, 2022).

156.

In all communications from Madison to the plaintiff, occurring after the assignment of plaintiff's secondary security deed to CWS on 08/23/2023, Madison lacked authority to "service" the plaintiff's secondary loan, as the assignment to CWS did not convey servicing rights under the secondary note.

157.

In all communications from Madison to the plaintiff, occurring after the assignment of plaintiff's secondary security deed to CWS on 08/23/2023, Madison lacked authority to "service" the plaintiff's secondary loan, Madison had no lawful authority to demand the payment of retroactive interest on the plaintiff's secondary note under 12 CFR § 1026.41(f), as the note was charged off to debt by the original lender no later than 2009, and periodic statements from the lender ceased without being resumed.

<center>158.</center>

On 11/16/2023, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(10), and 15 USC § 1692f(1) by falsely, deceptively, and misleadingly demanding payment of $76,691.17, as an overdue amount consisting of interest and charges accrued over a stated period of "*4978 days*."

<center>159.</center>

On 11/16/2023, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(2)(A), and 15 USC § 1692f(1) by falsely, deceptively, and misleadingly demanding payment of unauthorized and unspecified "charges and fees" totaling $3,647.32."

<center>160.</center>

On 12/15/2023, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(10), and 15 USC § 1692f(1) by falsely, deceptively, and misleadingly demanding payment of $77,155.99, as an overdue amount consisting of interest and charges accrued over a stated period of *"5007 days*."

<center>161.</center>

On 12/15/2023, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(10), and 15 USC § 1692f(1) by falsely, deceptively, and misleadingly demanding payment of unauthorized and unspecified "charges and fees" totaling $3,669.45."

162.

On 01/15/24, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(10), and 15 USC § 1692f(1) by falsely, deceptively, and misleadingly demanding payment of $78,340.81, as an overdue amount consisting of interest and charges accrued over a stated period of *"5038 days*."

163.

On 01/15/2024, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(10), and 15 USC § 1692f(1) by falsely, deceptively, and misleadingly demanding payment of unauthorized and unspecified "*charges and fees*" totaling $4,411.58.

164.

On 01/15/2024, Madison violated 15 USC § 1692e(2)(A), 15 USC § 1692e(10), and 15 USC § 1692e(5) by falsely, deceptively, and misleadingly demanding that the plaintiff pay an "*Attorney's Fees Invoice*" in the absence of any request for legal services by the plaintiff and in the absence of any lawful obligation on the part of the plaintiff to make payment, in the amount of $720.00.

165.

Madison was instructed by the plaintiff's attorney on 11/14/2023 to direct all subsequent communications to his attention.[37]

---

[37] Ex.11.

166.

None of Madison's communications involved notice of foreclosure proceedings, and all communications from Madison included demands for payment of an alleged debt.

167.

Despite being instructed in writing, on 11/14/2023, to cease communication with the plaintiff and to direct all communications regarding the alleged debt to plaintiff's attorney, Madison continued to communicate directly with the plaintiff by mail and email for the purpose of demanding payment of the alleged debt, in violation of 15 USC § 1692b(6), 15 USC § 1692c(2), and 15 USC § 1692d.

168.

The plaintiff is entitled to recover his statutory and actual damages, plus reasonable attorney's fees and litigation expenses from FMG pursuant to 15 USC § 1692k.

**COUNT III**
**PLAINTIFF'S CLAIMS UNDER THE GA FBPA**

169.

Pursuant to 15 USC § 1692l(a), "*a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act.*"

170.

The Georgia Fair Business Practices Act, at OCGA § 10-1-391(b), states that

"*(i)t is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended.*"

171.

OCGA § 10-1-393(a) states that any "*unfair or deceptive act or practice in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful.*"

172.

The defendants in this action are "persons" within the meaning set forth at OCGA § 10-1-322(a)(24).

173.

The plaintiff herein realleges and incorporates the content of paragraphs 10-69 of this Complaint, as if stated herein verbatim, in support of his claim against the defendants for violations of Georgia's Fair Business Practices Act, at OCGA 10-1-361, et seq.

174.

The defendants acts and communications with the plaintiff, as described

herein above, constitute unfair and deceptive acts and practices in violation of OCGA § 10-1-391(b), authorizing an award of relief to the plaintiff under OCGA § 10-1-399.

<div align="center">175.</div>

The defendants' actions in violation of OCGA § 10-1-391(b) were committed intentionally and are sufficient to authorize an award of three times (3x) the plaintiff's actual damages under OCGA § 10-1-399(c), plus his reasonable attorneys' fees and expenses of litigation under OCGA § 10-1-399(d).

<div align="center">

**COUNT IV**
**FMG's WRONGFUL ATTEMPT TO FORECLOSE**

</div>

<div align="center">176.</div>

As the legal representative for CWS Investments, Inc., FMG initiated foreclosure proceedings against the plaintiff's property for the first time on or about 01/05/2024.[38]

<div align="center">177.</div>

As stated in the letter, FMG's authority to initiate foreclosure proceedings on behalf of CWS arose under the terms of a security deed executed by the plaintiff on 02/07/2007 and recorded at Gwinnett Deed Book 47597, Page 348, which secured payment of a secondary residential mortgage note in the original principal amount of $46,950.00.

---

[38] Ex.1.

178.

In addition to notifying the plaintiff of a non-judicial foreclosure of the security interest assigned to CWS on 08/23/2023, the 01/05/2024 letter from FMG identified CWS as the "holder of the Promissory Note" associated with the assigned security deed.

179.

In the 01/05/2024 letter, FMG also demanded payment from the plaintiff in the amount of $121,686.57, as the accelerated balance owed by the plaintiff, allegedly consisting of unpaid principal on the $46,950.00 loan, together accrued interest and fees calculated under the terms of the promissory note.

180.

In addition to the demand for payment of $121,686.57, FMG demanded attorney's fees under OCGA § 13-1-11, calculated as 15% of the first $500.00 owed as principal and interest and 10% of the remaining principal and interest, if payment was not received within ten days of receiving the 01/05/2024 notice.

181.

FMG initiated foreclosure proceedings on behalf of CWS on 01/05/2024, after receiving communications from the plaintiff, dated 11/14/2023, that disputed the truth or accuracy of statements FMG's prior collection letter, dated 10/02/2023,

and requested validation of CWS's status as the alleged holder of the plaintiff's secondary promissory note and of the amount allegedly owed to CWS.[39]

182.

As alleged in detail in Section IV. of this Amended Complaint, the plaintiff's dispute was based on irregularities in the "chain of title," as shown from the existence of a recorded assignment from TBW to Windstream Capital, LLC on 07/12/2023 that was outside the chain of title on the plaintiff's secondary security deed.[40]

183.

In response to the plaintiff's request, FMG produced documents on 12/04/2023, consisting of billing statements to the plaintiff a loan in the amount of $46,595.00, that failed to identify the "lender" or correct loan number, and were unaccompanied by evidence that MERS, as nominee for Home America Mortgage, Inc., had ever transferred the secondary note or servicing rights on the plaintiff's secondary loan after 02/07/2007 and before the assignment to Windstream on 08/01/2023.

184.

In addition to the billing statements, the documents produced by FMG included a letter from Taylor, Bean & Whitaker Mortgage Corp. to the plaintiff,

---

dated 10/18/2010, stating that, "*(p)ursuant to a Settlement Agreement approved by the United States Bankruptcy Court for the Middle District of Florida on September 14, 2010, in the case In re: Taylor, Bean & Whitaker Mortgage Corp., Chapter 11 Case No. 3:09-bk-07047-JAF, Taylor, Bean & Whitaker Mortgage Corp. ("TBW") and the FDIC as Receiver for Colonial Bank (the "FDIC") resolved that dispute and agreed that TBW owned your loan subject to a security interest of the FDIC.*"

185.

In the absence of any recorded assignment or other known document conveying the plaintiff's secondary security deed to TBW, as an alleged successor in interest to MERS, as nominee for Home America Mortgage, Inc. and predecessor in interest to CWS, FMG relied on the 10/18/2010 letter and the prior billing statements to support its assumption that ownership of the plaintiff's secondary loan was previously owned by TBW.

186.

On 02/01/2024, the plaintiff obtained an emergency restraining order to prohibit the foreclosure proceedings initiated against the plaintiff's property in the Gwinnett County Superior Court action filed against CWS, referenced as Gwinnett CAFN: 23-A-00569-5.

187.

After removing the case to federal court, FMG filed a motion to dissolve the

TRO, which was denied on 02/06/2024, and which falsely alleged that the chain of

title for the secondary security deed included TBW as a predecessor in interest,

referencing a "*Security Deed to U.S. Bank National Association, acting as Trustee*

*for TBW Mortgage-Backed Trust Series, TBW Mortgage Pass-Through*

*Certificates, Series 2007-2, by assignment filed on September 30, 2010 and*

*recorded in Deed Book 50299, Page 561, Gwinnett County, Georgia records[.]*"

188.

The assignment recorded at Deed Book 50299, Page 561 conveys rights and

interest in the plaintiff's primary security deed, originally recorded at Gwinnett

Deed Book 47597, Page 330.[41]

189.

On 04/30/2024, FMG produced an Affidavit of Lost Note, dated 12/15/2010,

which stated that the note had been lost, misplaced or destroyed, but asserting that

TBW was the "payee" on the note.

---

[41] Ex.3.

190.

Without specification, the affidavit ambiguously and equivocally stated that it was based on either "independent knowledge" or statements communicated to the affiant by other unidentified individuals.[42]

191.

The affidavit was produced along with the 02/19/2001 POA discussed in Section IV., which granted TBW to transfer assets held by an entity identified as "Home America Mortgage, Inc."

192.

As discussed above, the entity granting the POA was an affiliate of TBW that had temporarily changed its name to Home America, Inc., and which subsequently changed its name again to Community Home Loans before its dissolution in 2003, four (4) years prior to the plaintiff's loan transactions on 02/07/2007.

193.

Additionally, the suspicious facts and circumstances in connection with the POA were exacerbated by the name of TBW's witness, Desiree Brown, and the discovery that the dissolved entity signing the POA had been incorporated by Lee Bentley Farkas, both of whom were convicted and sentenced to prison for their

---

[42] Ex.6.

involvement in a fraudulent conspiracy involving the falsification of loan documents related to Home America Mortgage, Inc., Colonial Bank, and other lenders.[43]

194.

Based on TBW's ostensible authority to convey Home America Mortgage loan documents under the POA, TBW's affiant produced a copy of the secondary promissory note that was stamped with an endorsement to TBW and an allonge to the note executed on behalf of TBW.

195.

The documents created by TBW are entirely inconsistent with FMG's prior production and reliance on the 10/18/2010 notice letter from TBW, referencing a transfer of plaintiff's loan as the result of a settlement agreement between TBW and the "*FDIC, as receiver for Colonial Bank*" arising out of TBW's bankruptcy proceedings.

196.

The TBW documents produced on 04/30/2024 failed to resolve questions arising in connection with the incorporation of a second entity in the name of Home America Mortgage, Inc. in the State of Florida on 05/02/2002, after the POA

---

[43] Ex.7.

was signed, and which had a different EIN number than the entity that signed the POA.

197.

The TBW documents produced on 04/30/2024 were also inconsistent with the plaintiff's registration of the secondary loan with MERS, naming MERS as nominee for Home America Mortgage, Inc., and requiring any subsequent conveyance of the beneficial interest and servicing rights in the loan to be transacted through MERS, unless and until the registration was deactivated.[44]

198.

In the absence of additional evidence, the recorded documents appearing of record show that the secondary security deed and servicing rights associated with the secondary mortgage loan were was registered with MERS on 02/07/2007, that rights under the security deed were transferred to Windstream Capital, LLC by the assignment dated 08/01/2023, and there is no evidence of the assignment of servicing rights as part of the 08/01/2023 assignment.

199.

On 01/21/2025, FMG initiated foreclosure proceedings a second time, demanding payment of $153,199.46, without showing how this amount was calculated and without resolving the numerous inconsistencies and holes in its

---

[44] Ex.12.

theory that TBW is a predecessor in interest with regard to the plaintiff's secondary note and servicing rights.

<p style="text-align:center">200.</p>

As the plaintiff's loan was approved and funded as a "single family" residential mortgage loan used for the purchase of real property improved by a residential structure, the lender and loan servicer were under the obligation to send periodic statements under Regulation Z to the Truth in Lending Act, at 12 CFR § 1026.41.

<p style="text-align:center">201.</p>

The plaintiff stopped making payments to the lender no later than 2009, causing Home America Mortgage, Inc. to charge off the loan to debt after 180 days of non-payment.

<p style="text-align:center">202.</p>

The entity known as Home America, Inc. (Florida) was dissolved in 2003 but continued using the name in the State of Georgia as an illegitimate, de facto corporation until its certificate of authority was revoked on 08/28/2011. The other entity known as Home America, Inc. ceased business operations and filed bankruptcy in 2009.

203.

As the registered lender on the secondary loan, "Home America Mortgage, Inc." discontinued servicing under the exemption at 12 CFR § 1026.41(e).

204.

Under 12 CFR § 1026.41(f), FMG and CWS are prohibited from seeking retroactive accruals of interest and fees under the secondary note for the period extending from 02/07/2007 through 08/23/2023.

205.

By initiating foreclosure proceedings against the plaintiff's property at 2128 E. Main Street, Snellville, GA 30078, the defendant knowingly and intentionally published derogatory and untrue information concerning the debtor's financial condition that directly resulted in damage to the plaintiff.

206.

The defendant's 01/05/2024 and 01/21/2025 foreclosure notices falsely state that CWS Investments, Inc. is the "present holder" of the plaintiff's secondary promissory note executed on 02/07/2007 in favor of Home America Mortgage, Inc. in the original principal amount of $46,950.00.

207.

FMG's foreclosure notices contain the knowing and intentionally false statements that the plaintiff owes CWS the sums of $121,686.57 on 01/05/2024, and $153,199.46 on 01/21/2025.

208.

The plaintiff has been impacted financially, physically, emotionally, and psychologically by the defendant's tortious and wrongful conduct, and its false and disparaging communications regarding the plaintiff.

209.

The plaintiff has incurred damages and pecuniary loss as the direct result of the defendant's wrongful attempts to foreclose on his property by demanding improperly calculated and unlawfully inflated demands for payment to avoid the foreclosure.

210.

FMG's attempts to foreclose are wrongful as the plaintiff is willing and able to satisfy and obtain a release of the security interest claimed by CWS, but his efforts have been hindered by FMG and CWS's demands for payment in amounts that are unsupported by the evidence of CWS's rights and interest in the loan, and in excess of amounts authorized under the loan, and with no itemization or breakdown of the principal, interest, and other charges or fees.

211.

The circumstances created by FMG's conduct have caused the plaintiff to experience extreme and excessive stress, both physically and emotionally, or psychologically. The plaintiff's physical symptoms have included increased heart rate, agitation and distraction, restlessness, sleeplessness, anxiety, depression, and fear over the prospect of losing the property at 2128 E. Main Street, Snellville, GA 30078.

212.

The plaintiff is entitled to all actual, special and general tort damages for the FMG's publication of false and derogatory information concerning the plaintiff's indebtedness and financial condition, which has forced the plaintiff to expend time, effort, and money to disprove and correct the false statements, and to rehabilitate his title and credit reputation.

## COUNT V
## PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

213.

Pursuant to OCGA § 51-12-5.1, the defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

214.

The plaintiffs seek an award of punitive damages in an amount sufficient to

punish, penalize, or deter the defendant from committing similar conduct.

## COUNT VI
### Attorney's Fees & Costs

215.

The defendant's conduct, as set out above and herein, is tortious, stubbornly litigious, in bad faith, has caused unnecessary trouble and expense, and lacks substantial justification, authorizing an award of attorney's fees under OCGA § 13-6-11, OCGA § 51-12-7 and OCGA § 9-15-14(b).

## VII.
### PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff demands a money judgment awarding damages, as follows:

a.) On Counts I & II, an award of statutory damages up to $1,000.00 against each defendant, under 15 USC § 1692k;

b.) On Counts I - IV, an award of actual and general tort damages under 15 USC § 1692k and OCGA § 51-1-1, et seq., as compensation for injury proximately resulting from the defendants' FDCPA violations, including amounts for physical, emotional, and/or psychological injury, in amounts to be determined by the enlightened conscience of an impartial jury;

c.) On Count III, trebling of all damages awarded on Counts I-IV, under paragraph b.), pursuant to OCGA § 10-1-399 based on the intentional, deceptive, and reckless nature of the defendant's conduct;

d.) On Count V, an award of punitive damages awarded under OCGA 51-12-5.1, based on the defendants' intentional and malicious conduct, committed with reckless disregard for the consequences of their actions, in an amount sufficient to punish and deter the defendant from committing similar acts;

e.) On Count VI, an award of all reasonable attorney's fees, costs, and expenses of litigation under OCGA § 51-12-7, OCGA § 13-6-11, OCGA § 10-1-399, and 15 USC § 1692k;

f.) all other and further relief deemed proper.

Date: 02/13/2025

Respectfully submitted,
*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Appellant
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com

## Certification Under L.R. 7.1D

*\*\*This Amended Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).\*\**

## CERTIFICATE OF SERVICE

I certify that I have this day electronically submitted the Plaintiff's

**Amended Complaint** to the Clerk of Court using the CM/ECF filing system,

which will automatically send electronic notification of the same to the following

counsel of record: Brian Goldberg (brian.goldberg@fmglaw.com), Cameron

Regnery, at (cameron.regnery@fmglaw.com).

Respectfully submitted,

*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Appellant
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com