

# MERS® System Procedures Manual

Release 24.2

Effective Date: November 17, 2024

© 2024 MERSCORP Holdings, Inc. All rights reserved.



# Contents

Introduction ........................................................................................................................................ 1
  Conventions in Use in This Document ..................................................................................... 1
  MERS® System Overview .......................................................................................................... 1
    *Types of Loans Registered on MERS® System* ........................................................................ 1
    *MERS Loans* ............................................................................................................................. 2
    *Registering Loans before Closing* ........................................................................................... 2
    *MIN Record Overview* .............................................................................................................. 2
    *Other MERS® System Services* ................................................................................................ 3
  Supporting Documentation ........................................................................................................ 3
MERS® System Membership ............................................................................................................. 4
  Requirements: MERS® System Membership ............................................................................. 4
    *Loans Closed by a Lite Member* ............................................................................................... 4
      Requirements: Loans Closed by a Lite Member ..................................................................... 5
    *Loans Closed by a Lite-R Member* ........................................................................................... 5
      Requirements: Loans Closed by a Lite-R Member ................................................................. 5
  Procedure: Member Integration ................................................................................................ 5
  Membership Changes ................................................................................................................ 6
    *Requirements: Membership Changes* ...................................................................................... 6
    *Procedure: Membership Changes* ............................................................................................ 6
  Member Information ................................................................................................................... 7
    *Requirements: Maintaining Member Information* ...................................................................... 7
    *Procedure: Maintaining Member Information* ............................................................................ 8
    *Information Maintained by MERSCORP* .................................................................................... 8
  Member Resignation ................................................................................................................. 9
    *Requirements: Member Resignation* ........................................................................................ 9
    *Procedure: Member Resignation* ............................................................................................ 10
    *Certificates of Ownership* ....................................................................................................... 10
      Procedure: Certificates of Ownership .................................................................................. 10
      System Actions: Certificates of Ownership .......................................................................... 11
MERS® System Security ................................................................................................................. 11
  MERS® System User IDs ......................................................................................................... 11
  Requirements: System Security .............................................................................................. 12
  Third-Party Vendors ................................................................................................................ 12
  Associated Members ............................................................................................................... 13
  XML and Batch Inquiry Transactions ...................................................................................... 13
    *XML Inquiry* ............................................................................................................................ 13
    *Batch Inquiry* .......................................................................................................................... 13
Mortgage Identification Number ("MIN") ........................................................................................ 14
  Procedure: Creating a MIN ...................................................................................................... 14
Loan Registration ............................................................................................................................ 14
  Requirements: Loan Registration ............................................................................................ 15
    *Requirements: All Loan Registrations* .................................................................................... 15
    *Requirements: MOM Loan Registrations* ................................................................................ 16



*Requirements: Non-MOM Loan Registrations* ........................................................................... 16
Requirements: MERS® System Data Integrity ............................................................................. 16
Procedures: Loan Registration ................................................................................................... 19
*Procedure: MERS Loan Registration* ...................................................................................... 19
*Procedure: Completing a Pre-Closing Registration* ............................................................... 20
*Procedure: Re-registration after Reversal* .............................................................................. 20
*Procedure: Re-registration after Deactivation* ....................................................................... 20
System Actions: Loan Registration ............................................................................................. 21
Registration Reversal .................................................................................................................. 22
*Requirements: Registration Reversal* ..................................................................................... 23
*Procedure: Registration Reversal* ........................................................................................... 23
*System Actions: Registration Reversal* ................................................................................... 24
**MERS® RON Video Storage** .......................................................................................................... **24**
RON Closing Provider LOB .......................................................................................................... 25
Requirements: MERS® RON Video Storage ............................................................................... 25
*Video Upload Requirements* ................................................................................................... 25
*File Name, Notary Name, and Commission Number Requirements* ...................................... 26
Procedure: Upload RON eClosing Video .................................................................................... 27
System Actions: Upload RON eClosing Video ............................................................................. 27
***Previously Registered Loan*** ................................................................................................... 27
***Unregistered Loan*** ................................................................................................................. 27
Procedure: Download RON eClosing Video ................................................................................ 28
*System Actions: Download RON eClosing Video* .................................................................... 28
Procedure: View RON Event Log ................................................................................................. 29
**Interim Funding Interests** ............................................................................................................. **29**
Requirements: Removing Interim Funding Interests ................................................................. 29
Procedure: Removing an Interim Funding Org ID ....................................................................... 30
System Actions: Removing an Interim Funding Org ID ............................................................... 30
**Transfers** ....................................................................................................................................... **30**
Transfer of Beneficial Rights ...................................................................................................... 31
*Requirements: TOB Transactions* ........................................................................................... 31
*TOB Option 1 Transfer* ............................................................................................................ 32
Procedure: TOB Option 1 Transfer ........................................................................................ 32
System Actions: TOB Option 1 Transfer ................................................................................. 33
*TOB Option 2 Transfer* ............................................................................................................ 33
Procedure: TOB Option 2 Transfer ........................................................................................ 34
System Actions: TOB Option 2 Transfer ................................................................................. 34
Transfer of Servicing Rights ........................................................................................................ 36
*Requirements: TOS Transactions* ........................................................................................... 37
*Procedure: TOS Transaction* ................................................................................................... 37
*System Actions: TOS Transaction* ........................................................................................... 38
TOS/TOB Combination ................................................................................................................ 40
*Requirements: TOS/TOB Combo Transactions* ....................................................................... 40
*Procedure: TOS/TOB Combo Transaction* .............................................................................. 40
*System Actions: TOS/TOB Combo* ........................................................................................... 41
Member-to-Member Petitions .................................................................................................... 43



*Requirements: Member-to-Member Petition* ..................................................... *43*

*Procedure: Member-to-Member Petition* ..................................................... *43*

Member Notice of Default ("NOD") Dispute ............................................................. 43

*Procedure: Member NOD Dispute* ..................................................... *43*

**MIN Record Deactivation** ............................................................................................ **44**

Inactive MIN Record Deidentification and Archival Processes ................................ 45

*Inactive MIN Record SSN and TIN Deidentification* ..................................................... *45*

*Inactive MIN Record Archival Process* ..................................................... *46*

Paid in Full Deactivation .......................................................................................... 47

*Requirements: Paid in Full Deactivation* ..................................................... *47*

*Procedure: Paid in Full Deactivation* ..................................................... *47*

*System Actions: Paid in Full Deactivation* ..................................................... *48*

Transfer to Non-MERS Status Deactivation .............................................................. 48

*Requirements: Transfer to Non-MERS Status Deactivation* ..................................................... *48*

*Procedure: Transfer to Non-MERS Status Deactivation* ..................................................... *48*

*System Actions: Transfer to Non-MERS Status Deactivation* ..................................................... *49*

Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation ................ 49

*Requirements: Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation* ............... *49*

*Procedure: Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation* ..................... *50*

*System Actions: Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation* ............. *50*

Deactivation Reversals ............................................................................................ 50

*Requirements: Deactivation Reversals* ..................................................... *51*

*Procedure: Deactivation Reversals* ..................................................... *51*

*System Actions: Deactivation Reversals* ..................................................... *51*

**MERS® Automated Document Request Service** ..................................................... **51**

Automated Document Request Participant Requirements ........................................ 52

Automated Lien Release Processing ........................................................................ 52

*System Actions: Automated Lien Release Processing* ..................................................... *53*

**Modification Agreements** ............................................................................................ **54**

Requirements: Modification Agreements ................................................................. 54

Procedure: Modification Agreements ....................................................................... 54

System Actions: Modification Agreements ............................................................... 54

**Construction and CEMA Loans** ............................................................................... **55**

Requirements: Construction and CEMA Loans ....................................................... 55

Procedures: Construction Loans ............................................................................. 55

*Procedure: Construction Loan Modified to Become Permanent* ..................................................... *55*

*Procedure: Construction Loan Paid off by Permanent Loan* ..................................................... *56*

Procedure: CEMA Loan Registration ....................................................................... 56

System Actions: Construction and CEMA Loans ..................................................... 56

**Assumption of Mortgage** ........................................................................................... **56**

Requirements: Assumption of Mortgage ................................................................. 57

Procedure: Assumption of Mortgage ....................................................................... 57

System Actions: Assumption of Mortgage ............................................................... 57

**Property Preservation** ................................................................................................ **57**

Procedure: Property Preservation Member Updates ................................................ 58



Procedure: Property Preservation MIN Updates ..............................................................................58
System Actions: Property Preservation ...........................................................................................58
**MERS® System Quality Assurance Program .....................................................................58**
Requirements: MERS® System QA Program ..................................................................................59
MERS® System QA Plan ..................................................................................................................59
*Requirements: MERS® System QA Plan .................................................................................. 59*
*Procedure: MERS® System QA Plan Submission...................................................................... 59*
Annual Report...................................................................................................................................60
*Requirements: Annual Report ................................................................................................... 60*
*Procedure: MERS® System Annual Report Submission ............................................................ 60*
Data Reconciliation...........................................................................................................................60
*Requirements: Data Reconciliation ........................................................................................... 61*
*Member Reconciliation Extract (MRE) ...................................................................................... 61*
*MERS Loan Data Reconciliation Requirements ........................................................................ 61*
Conditionally-Required Field Criteria ............................................................................63
Quality Assurance Reviews ..............................................................................................................64
*Requirements: Quality Assurance Reviews ............................................................................... 64*
**MERSCORP Mail Services..................................................................................................64**
Requirements: Service of Process and Other Mail ..........................................................................65
Procedure: Unidentified Mail ...........................................................................................................65
**Corporate Resolution Management System ....................................................................66**
Requirements: CRMS .......................................................................................................................67
Procedure: Requesting a Corporate Resolution Appointing Signing Officers .................................68
Procedure: Signing Officer Certification ..........................................................................................69
Procedure: Rule 3 Exception ...........................................................................................................69
Procedure: Requesting a Signing Authority Agreement ("SAA").....................................................70
Procedure: Terminating a Signing Authority Agreement ("SAA").....................................................70
Procedure: Deactivating the Member's CRMS Account....................................................................71
Procedure: Quarterly Attestation .....................................................................................................71
System Actions: CRMS Statuses for Org IDs and SAA Relationships .............................................72
System Actions: Changes in Status of MERS® System Membership ...............................................72
System Actions: Auto-Submission of Request for a Corporate Resolution.......................................73
**MERS Documents .................................................................................................................73**
Requirements ...................................................................................................................................74
*General Requirements ............................................................................................................... 74*
*Document-Specific Requirements.............................................................................................. 76*
*State-Specific Requirements...................................................................................................... 78*
**Borrower Disputes ...............................................................................................................79**
Requirements: Borrower Disputes....................................................................................................79
Procedure: Borrower Disputes .........................................................................................................80
**Disciplinary Actions ............................................................................................................80**
Lockout Status ..................................................................................................................................80
**MERSCORP Help Desk .........................................................................................................81**
Contacting Help Desk .......................................................................................................................81
Receiving Email Communications from MERSCORP ........................................................................81



MERSCORP and MERS Email Messages .......................................................................82
**Reporting** .....................................................................................................................**83**
Requirements: MERS® System Reports ......................................................................83
Procedure: Retrieving Reports ....................................................................................84
**Involuntary TOS to a MERS® System Member** .............................................................**84**
Procedure: Involuntary TOS (Option 2 Investor) .........................................................84
Procedure: Involuntary TOS (Option 1 Investor) .........................................................85
System Actions: Involuntary TOS Transaction ............................................................85
**Glossary** .......................................................................................................................**85**
**Appendix A: MERS Signing Officer Primer** ...............................................................**100**
**Appendix B: Tracking iRegistration Loans** ...............................................................**114**
Requirements: iRegistration Loans ............................................................................115
Procedures: iRegistration Loans ...............................................................................115
*Procedure: iRegistration Loan Registration*................................................................ *116*
*Procedure: iRegistration to Non-MOM Conversion* ..................................................... *116*
*Procedure: iRegistration for REO Property* ................................................................. *117*
*Procedure: Completing a Pre-Closing iRegistration*..................................................... *117*
*Procedure: iRegistration after Reversal* ...................................................................... *117*
*Procedure: iRegistration after Deactivation* ................................................................ *118*
iRegistration Transfer Transactions............................................................................118
iRegistration Loan Deactivation .................................................................................118
*Tracking iRegistration Foreclosure Activity* ................................................................ *118*
iRegistration Data Reconciliation Requirements ........................................................119



# Introduction

The MERS® System Procedures Manual ("Procedures") forms part of the Governing Documents that govern the relationship between each Member, the MERS Entities, and MERS® System. The Procedures set out requirements pertaining to MERS® System membership including, but not limited to, the use of MERS® System, Corporate Resolution Management System ("CRMS"), and MERS® RON Video Storage, the MERS® System Quality Assurance Program, MERS Documents, and Mortgage Electronic Registration Systems, Inc. ("MERS") Signing Officers. This version of the Procedures replaces and supersedes, in their entirety, any and all previously published Procedures in place up to the effective date noted on the cover page. Each Member is bound by the Procedures and any amendments made to it. If a Member believes that there is a conflict between the requirements set forth in the Procedures and the requirements of any trading partner or jurisdiction, the Member should contact the MERSCORP Holdings, Inc. ("MERSCORP") Help Desk at helpdesk@mersinc.org.

## Conventions in Use in This Document

- Certain terms or items in this document have special formatting applied to them:
  - **MERS® System Reports:** MERS® System reports are formatted in italic font (e.g., *Registration Rejects/Warnings (RG) Report*).
  - **Glossary Terms:** Terms defined in the Glossary have the first letter of each word in the term capitalized. The first time that a Glossary term is used in a chapter of the Procedures, it is formatted in green font and includes a link to the term in the Glossary (e.g., Assignment to MERS).
- The step-by-step instructions in the procedures generally cover processing transactions on the MERS® System User Interface (UI). For information on submitting transactions using the Flat-File or XML system-to-system interface, refer to the MERS® System Integration Handbook.

## MERS® System Overview

MERS® System is the electronic registry owned and operated by MERSCORP that tracks changes in servicing rights and beneficial ownership interests in registered Mortgage loans as reported by Members.

MERS® System is neither a legal System of Record nor a replacement for perfecting a mortgage lien interest in the public land records. Mortgage servicing rights and beneficial ownership interests *are not* transferred on the system; once such transfers have occurred, they are reported by MERS® System Members to be tracked only.

## Types of Loans Registered on MERS® System

There are three (3) types of Mortgage loans that can be registered on MERS® System:

- MOM loans: MERS is named as the original Mortgagee in the Security Instrument.
- Non-MOM loans: MERS is named as Mortgagee post-origination as a result of an Assignment to MERS.
- iRegistration loans: MERS holds no interest in the Mortgage. iRegistration loans are optionally registered on MERS® System for tracking purposes only. iRegistration requirements are set forth in Appendix B: Tracking iRegistration Loans on MERS® System.

A Member uses the Registration transaction to register a loan on MERS® System. The result of a successful *Registration* transaction is the creation of a MIN Record for the loan on MERS® System.


The following Mortgage loans are not permitted to be: (i) closed as a MOM loan, (ii) assigned to MERS post-origination as a Non-MOM, or (iii) registered on MERS® System:

- Loans with a borrower who is participating in a state sponsored confidentiality program (i.e., the borrower's name or address does not appear in the public record).

- Loans with a Security Instrument listing multiple properties.

## MERS Loans

For MERS Loans, MERS acts as the Mortgagee in the public land records and as Nominee for the Lender and its successors and assigns. During the closing of a MOM loan, the borrower and Lender agree to name MERS as Mortgagee on the Mortgage. The Lender then records the Mortgage in the public land records and registers the loan on MERS® System.

Mortgage Electronic Registration Systems, Inc. ("MERS") can be named as the Mortgagee on the following types of loans and therefore MERS® System supports the registration of these types of Mortgage loans including, but not limited to, securitized loans, reverse mortgage loans, condominium loans, co-op loans, CEMA Loans, and Construction Loans.

## Registering Loans before Closing

Loans are generally registered on MERS® System post-closing, but the registration can be initiated before closing using the Pre-Closing Registration transaction. A Pre-Closing MIN Record is not active, so it cannot be updated, transferred, or deactivated, but it can be reversed if it was registered in error or a correction is required. Once the loan closes, the registration is completed using the Post-Closing Registration transaction.

## MIN Record Overview

This section provides a general overview as to how MIN Records associated with MERS Loans are maintained on MERS® System.

- Once registered, a MERS Loan remains active on MERS® System for so long as MERS remains Mortgagee, and the Servicer and Investor remain Members.

- Any eClosing video associated with the loan may optionally be uploaded to the MERS® RON Video Storage solution up to 10-days prior to its registration on MERS® System or MERS® eRegistry. See MERS® RON Video Storage for more information.

- While a MERS Loan remains active:

  o The Servicing Member ensures that the data in the MIN Record is maintained such that it matches the data on the Member's System of Record.

  o If the contractual servicing rights or beneficial ownership interests of a registered loan are transferred to another Member, the transfer is reported to MERS® System.

  o If the contractual servicing rights or beneficial ownership interests of a registered loan are transferred to a non-Member, or the Servicer or Investor cease being Members and do not transfer their respective interest to another Member:

    ▪ An Assignment from MERS or UCC-3 is sent for Recordation, and

    ▪ The MIN Record is deactivated on MERS® System.

  o Any assumption of the loan is reported to MERS® System.



- o If a Construction Loan is converted to a permanent Mortgage loan, that Modification Agreement is reported to MERS® System.

- When MERS no longer holds an interest in a Mortgage, the MIN Record is deactivated on MERS® System, putting it in an inactive MIN Status.

  - o Once a MIN Record has been in an inactive status for:

    - ▪ Seven (7) years, MERS® System deidentifies the SSN and TIN for all named Borrowers.

    - ▪ Ten (10) years, MERS® System archives the MIN Record retaining a limited subset of data on MERS® System for historical tracking purposes, which is accessible to any Member that knows the MIN.

  - o See SSN and TIN Deidentification and Inactive MIN Record Archival Process for details.

- MERS® System displays the MIN Status of a MIN Record to Primary Organizations, Associated Members, and the registering Member. All other Members see the following summary statuses instead: *Active*, Pre-Closing, Registration Reversal, and *Inactive*.

Note: If the registering Member is not the Servicer or Subservicer of a loan, MERS® System displays the MIN Status for a period of time that ends six (6) calendar days after the Registration Date or when the first TOS transaction is completed, whichever is shorter. After this time, the registering Member receives the above summary statuses.

## Other MERS® System Services

MERSCORP offers the following additional services that provide limited access to the loan information on MERS® System:

- MERS® ServicerID: Allows the public to obtain contact information for the current Servicer of a registered Mortgage loan upon verification of certain identifying information related to the loan. A borrower of a loan may also optionally obtain the name of the Investor by providing additional self-identifying information.

- MERS® Link: A service offered through MERS® System that allows Members to retrieve summary information for registered Mortgage loans, including the loan's current Servicer and any Property Preservation Company associated with the property.

- MERS® RON Video Storage: Optional service that provides Members access to the eClosing videos associated with a Mortgage loan registered on MERS® System and/or MERS® eRegistry.

- MERS® Automated Document Request: Optional service that provides Members who also use Simplifile® Document Builder with an API between the two applications to streamline the document preparation process for supported document types. See Automated Document Request Service for more information.

## *Supporting Documentation*

When reviewing the Procedures, Members may wish to refer to the following documents, which are available on MERSCORP's Member website members.mersinc.org:

- MERS® System Rules of Membership ("Rules"): Forms part of the Governing Documents and sets out terms and conditions of MERS® System membership.

- MERS® System User Guide: Provides step-by-step instruction for using the browser-based user interface for MERS® System ("MERS® System UI).

- MERS® System Integration Handbook: Provides the technical specifications for transacting with MERS® System using the Flat File or XML System-to-System interface.



- **MERS® RON Video Storage User Guide**: Provides step-by-step instructions and procedures for uploading and downloading RON eClosing videos using the MERS® System user interface.
- **MERS® RON Video Storage Integration Handbook**: Provides the technical specifications for uploading and downloading RON eClosing videos to the MERS® RON Video Storage Solution.
- **MERS® System Reports Handbook**: Provides descriptions of available MERS® System reports.

Note: The user credentials for the Member website are the same credentials used to access MERS® System. Contact your internal MERS® System Administrator for assistance.

# MERS® System Membership

Each organization that intends to become a Member goes through an application, approval, and Integration process as applicable to its membership type and intended use of MERS® System.

## *Requirements: MERS® System Membership*

- MERS® System membership is required:
  - To originate MOM loans or
  - Service or be the note owner or Note Holder of a MERS Loan.
  - For Warehouse Lenders and Interim Funders that intend to have their Interim Funding Interest reflected on MERS® System.
  - For Subservicers if a Servicer intends to name the Subservicer on its loans registered on MERS® System.
  - For Vendors that intend to perform transactions on MERS® System on behalf of another Member pursuant to a contractual agreement.
  - For Members acting as a Vendor pursuant to a Signing Authority Agreement ("SAA").
  - To be a participant of MERS® eRegistry or the MERS® RON Video Storage solution.
- Any Member that accesses borrower information from MERS® System affirms that it neither uses nor intends to use that information (other than information which the Member already possesses) as a factor in determining a consumer's eligibility for credit or insurance to be used primarily for personal, family or household purposes, for employment, for a government issued license, or to continue to retain an existing credit account, or in assessing a consumer's credit or payment risks with respect to an existing obligation.
- A Servicer is not required to name a Subservicer on its registered loans. The field may be used at the Servicer's discretion. If a Servicer needs its Subservicer to process transactions and/or receive mail service on its behalf, the Subservicer must be a Member and be named on the relevant MIN Records.
- The Servicer of a MERS Loan is responsible for complying with the requirements set forth in the Governing Documents. These responsibilities remain with the Servicer even if a Subservicer or Vendor is named on the Servicer's MIN Records.

## Loans Closed by a Lite Member

Lite Members close MOM loans and sell and transfer their MERS Loans along with servicing rights within 120 days of the Note Date. Once a Lite Member closes a MOM Loan, it registers the loan on MERS® System and maintains the associated MIN Record while it is named the Servicer in accordance with the requirements set forth in the Governing Documents.

 **MERS®**

## *Requirements: Loans Closed by a Lite Member*

- A Lite Member can originate MOM Loans only when its MERS® System membership is active. If a Lite Member resigns its membership or its membership is terminated, that organization is prohibited from originating MOM Loans as of the date its membership becomes inactive.

- Because a Lite Member has the security access needed to register loans on the MERS® System, it should generally be the entity registering its closed MOM Loans and doing so in accordance with the requirements set forth in the Governing Documents.

- If the Investor of a MOM Loan originated by a Lite Member registers a loan on MERS® System on behalf of a Lite Member, the Investor must register the loan in accordance with the requirements set forth in the Governing Documents. This includes the requirement that only active Lite Members can originate MOM Loans. The Investor must also identify the Lite Member in the Originating Org ID field and itself in the **Investor** field. The Investor must not name itself, nor any Member other than the loan originator, in the **Originating Org ID** field.

- Members that purchase loans from a Lite Member should have a process in place to ensure that the membership status of the Lite Member was active when the loan originated.

## Loans Closed by a Lite-R Member

MERS® System Lite-R Members close MOM loans for immediate sale to an Investor that will register the loans on MERS® System. Lite-R Members do not have MERS® System access necessary to register loans, perform MIN Updates, or deactivate MIN Records and can only be named in the Originating Org ID field on MERS® System.

## *Requirements: Loans Closed by a Lite-R Member*

- Because Lite-R Members cannot register loans on MERS® System, it is the responsibility of the intended Investor of a loan closed by a Lite-R Member to register the loan in accordance with the requirements set forth in these Procedures.

- If the intended Investor does not purchase a loan, the intended Investor is still responsible for registering the loan, ensuring that an Assignment from MERS or UCC-3 is prepared and executed in accordance with the applicable document requirements (see MERS Documents) and sent for Recordation, and deactivating the loan on MERS® System consistent with these Procedures. The intended Investor is also responsible for all Rule 13 and 14 obligations with respect to the loan as if it had purchased the loan.

- If the intended Investor fails to undertake any of the aforementioned actions in a timely manner, the MERS Entities may undertake such action, and the intended Investor shall reimburse the MERS Entities for all related costs and expenses. To identify the intended Investor of a loan, MERSCORP may rely upon the loan commitment or similar document.

## Procedure: Member Integration

1. An organization submits a Membership Application to MERSCORP using MERS® eApplication.

2. If MERSCORP approves the organization's application for membership, it works with the organization to complete the MERS® System Integration process as applicable to the Member's membership type and intended use of MERS® System.

   o An organization that intends to function as a RON Closing Provider must execute the *MERS® RON Video Storage Addendum* as part of its Integration.


- o An organization that intends to use the MERS® RON Video Storage solution but not as a RON Closing Provider must execute the *MERS® RON Video Storage Terms and Conditions* as part of its Integration.
- o An organization that intends to use the MERS® Automated Document Request service must execute the *MERS® Automated Document Request Addendum* as part of its Integration.

# *Membership Changes*

Members are required to notify MERSCORP of certain changes that may necessitate an update to the Member's membership or its Member Profile. Upon notification of a change, MERSCORP will review the change and advise the Member of any impact of the change and of any additional steps that may be required.

## Requirements: Membership Changes

- Members are required to notify MERSCORP of the following types of changes or activities that affect the Member Profile of their Org ID or Affiliate Org ID:
  - o Changes to legal ownership
  - o Changes to legal name
  - o Mergers or acquisitions
  - o Sales or transfers of all or substantially all of a Member's assets
  - o Changes to d/b/a names, trade names, or fictitious names
  - o Changes to membership type or membership tier level
  - o Changes to Lines of Business on MERS® System
  - o Changes to options on MERS® System that the Member cannot update itself (see Information Maintained by MERSCORP)
- The membership changes listed above must be requested by an individual identified as a mandatory contact for the Member's Org ID utilizing the MERS® Change Request Form on the Member website.
- Where not legally prohibited and sufficient time exists, a Member must notify MERSCORP in writing at least:
  - o 30 calendar days before a corporate name change becomes effective or
  - o 90 calendar days before a merger with or acquisition by another organization.

Note: See Rule 1, Section 4 of the Rules for additional information about mergers and acquisitions.

## Procedure: Membership Changes

1. Submit a MERS® Change Request Form to request the change. Include any supporting documentation specified in the form.

2. Respond timely to requests for clarification or additional information.

3. Take any additional steps that may be requested by MERSCORP to facilitate the change.

4. Update any contact information on MERS® System that is affected by the change, (e.g., mandatory contact information or corporate mailing address).

5. MERSCORP processes the change request and provides the Member with any additional instructions.


> Note: Certain changes may require the submission of a new Membership Application, the resignation of an Org ID or membership, or the transfer or deactivation of MIN Records on MERS® System. MERSCORP cannot advise a Member on the impact of a change until the *MERS® Change Request Form* and any supporting documentation has been received and reviewed.

# Member Information

A Member can view all the information in its Member Profile at any time. Some of this information can be changed by the Member, but the remainder can only be changed by MERSCORP. See Information Maintained by MERSCORP for details.

## Requirements: Maintaining Member Information

- At least monthly, a Member is required to review and reconcile the information in its Member Profile to ensure that it is accurate and current, including the following contacts:
  - Accounts Billing
  - Customer Service - Primary
  - Executive Sponsor
  - Legal
  - Operational - Primary
  - Quality Assurance Officer
  - System Administrator - Primary
  - Technical
  - MERS® RON Video Storage
- A Member's MERS® System contacts must be employees of the Member organization or temporary employees employed by the Member, including contract attorneys.
- A Member's MERS® System contacts must not be employees of a MERS® System Vendor that performs functions on behalf of the Member.
- If the email address used for a MERS® System contact is a distribution list on a Member 's email server, the Member is responsible for ensuring the distribution list remains accurate and up-to-date.
- If a distribution list or mailbox is used as the email address for one of the MERS® System contacts, the other fields for that contact must identify an individual in the Member organization.
- The email addresses a Member provides for its MERS® System contacts must be valid email addresses that are issued by the Member on its corporate email system for the purpose of business correspondence. Public email domains are not permitted.
- A Member must report changes to its document handling preferences using the MERS® Change Request Form.
- If a Member uses the My MERS® feature, it must maintain its customized Org ID lists.
- If a Member uses the Transaction Default Settings feature, it must maintain the information it has provided.

If MERSCORP is unable to reach a Member after repeated attempts, it may issue a final no-contact notice to the Member's Executive Sponsor. If the Member fails to respond to the final notice, MERSCORP may interpret the failure to respond as the Member's intent to resign and then begin the Resignation of the uncommunicative Member's membership on its behalf. See Member Resignation for details.

 MERS®

# Procedure: Maintaining Member Information

A Member maintains the following information in its Member Profile:

| Member Profile Component | Instructional Guidance |
|---|---|
| Member Corporate Address and Contact Information | Member Information - Name & Address Quick Reference Guide ("QRG") |
| MERS® System Contacts | Member Information - Contacts QRG |
| Member Options | A Member may update certain fields in its Member Options (see Member Information - Options QRG). MERSCORP updates the other fields (see Information Maintained by MERSCORP). |
| Relationships (with third-party organizations) | • Member Information - Relationships QRG<br>• My MERS® QRG<br>• eRegistry Relationships QRG<br>• Vendor Relationships QRG |
| Reports | • Reports - QRG |
| Transaction Default Settings | • Transaction Default Settings - QRG |

# Information Maintained by MERSCORP

MERSCORP maintains the information in the Member Profile listed in the table below. A Member can view this information at any time, but cannot update it. To request a change to this information, a Member must complete and submit the MERS® Change Request Form.

| Member Profile Component | Field |
|---|---|
| Name | • Org ID<br>• Company Name (see Membership Changes for details)<br>• Overnight Mail Special Instructions |
| General | All fields on page |
| Lines of Business | All fields on page |
| Options | • Document Handling Instructions (All)<br>• Days in pending foreclosure<br>• Bill Client<br>• Investor Options (All)<br>• Servicer Options (All, including Agency ID)<br>• Subservicer Options (All)<br>• Registration By Others (All)<br>Contact the Help Desk to update Document Handling Instructions. |
| eRegistry Options | All fields on page |
| eRegistry Certificate Information | All fields on page |



# *Member Resignation*

A Member may initiate the resignation of its MERS® System membership by providing written notice of Resignation to MERSCORP.

## Requirements: Member Resignation

- Member Resignation requests must be emailed to helpdesk@mersinc.org.

- Within sixty (60) calendar days of MERSCORP's acknowledgment, the Resigning Member must take the following actions on MERS® System:

  o For active MIN Records where the Resigning Member is named as Servicer:

    ▪ If the servicing rights to the loan have been sold to a new Servicer that is a Member, a Transfer of Servicing Rights ("TOS") transaction must be initiated to that Member, or

    ▪ If the servicing rights have been sold to a party that is not a Member, or if the Resigning Member will retain servicing rights to the loan, an Assignment from MERS or UCC-3 must be sent for Recordation, and the MIN Record must be deactivated as Transfer to Non-MERS Status (see Transfer to Non-MERS Status).

  o For active MIN Records where the Resigning Member is named as Investor:

    ▪ If the beneficial rights to the loan have been sold to a new Investor that is a Member, a Transfer of Beneficial Rights ("TOB") transaction must be initiated by coordinating with the registered Servicer or Subservicer, or

    ▪ If the beneficial rights have been sold to a party that is not a Member, or if the Resigning Member will retain beneficial rights to the loan, an Assignment from MERS or UCC-3 must be sent for Recordation, and the MIN Record must be deactivated as Transfer to Non-MERS Status (see Transfer to Non-MERS Status).

  o For active MIN Records where the Resigning Member is named as Subservicer, the Servicer or Subservicer must perform a MIN Update to remove the Org ID from the Subservicer field (see MIN Update QRG).

  o For active MIN Records where the Resigning Member is named as Interim Funder, the Interim Funder must remove its Org ID from the Interim Funder field (see Release Interim Funder Interests QRG).

- Within the same sixty (60) calendar days noted above, the Resigning Member must also:

  o Meet any other conditions that MERSCORP may set for the Resignation of its membership, including the removal of the Resigning Member from any active eNotes on MERS® eRegistry.

  o Remediate all outstanding Rules and Procedures violations that MERSCORP has notified the Member of (see Disciplinary Actions).

  o Execute the *Completion of Resignation of Membership Attestation Form* to indicate that all applicable requirements set forth in Rule 1 of the Rules have been satisfied and email the executed form to helpdesk@mersinc.org.

- The Resigning Member is responsible for the prompt payment of any fees, charges, and assessments invoiced to it, including any invoices it receives after its Resignation.

- If the Resigning Member fails to complete the Resignation Requirements, the MERS Entities reserve the right to complete the Member's Resignation, which may include any of the following actions:

  o Assign or release the interest held by MERS in the Member's MERS Loans. Any assignment shall be from MERS to the Servicer, Subservicer, or Investor, unless the Investor directs MERS to assign MERS's interest to another entity.

  o Send the executed Assignments from MERS, UCC-3s, or Lien Releases for Recordation.



- o Deactivate the MIN Records associated with the Member's MERS Loans.
- o Send written notice to the Servicer, Subservicer, or Investor of any applicable MERS Loans at least 30 calendar days before deactivating the MIN Records or sending the executed Assignments from MERS, UCC-3s, or Lien Releases for Recordation.
- o Charge the Resigning Member for any costs incurred in completing the Resignation Requirements.
- Once Resignation is complete, the Resigned Member remains liable and obligated under the terms of the Governing Documents.

## Procedure: Member Resignation

1. A Member submits its Member Resignation request in writing by email to helpdesk@mersinc.org.

2. MERSCORP acknowledges the Member's request to resign in writing.

3. Once the Resignation Requirements are complete, MERSCORP resigns the Member's MERS® System membership.

# Certificates of Ownership

The Certificate of Ownership ("Certificate") process allows an authorized representative of an active Member ("Authorized Requestor") to claim MIN Records that incorrectly name a Resigning Member or Resigned Member as the current Servicer, Subservicer, or Investor.

MERSCORP grants an Org ID access to the Certificate process based upon Member request. Access to the Certificate process is obtained by providing the following information to SO-MERS-certificates@theice.com:

- The list of Org IDs for which access to the Certificate process is being requested.
- The name of each employee to be identified as an Authorized Requestor of the Member.
- The MERS® System User ID of each Authorized Requestor. The User ID must be active, and the associated user name must match the name of the Authorized Requestor.
- The business email address of the Authorized Requestor. The domain must match that of the Org ID.

By submitting this information, the Member asserts that the Authorized Requestor is authorized to commit the Member to the transfer transactions and resulting fees.

Once an Org ID has access to the Certificate process, the Authorized Requestor can submit online Certificates to authorize MERSCORP to initiate MIN Record transfer transactions to the active Member on behalf of Resigned Members or Resigning Members.

## *Procedure: Certificates of Ownership*

1. The Authorized Requestor logs on to the Online Certificate Submission request form and provides the following information to create the Certificate request:

- o The Certificate type.
- o The Org IDs of the previous Servicer, Subservicer, and Investor.
- o The Org IDs of the new Servicer, Subservicer, and Investor.
- o The list of MIN Records to be transferred.

2. Once the Authorized Requestor submits the Certificate, it is automatically forwarded to MERSCORP for review and approval.



### *System Actions: Certificates of Ownership*

Once a transfer transaction resulting from a Certificate has been initiated on MERS® System by MERSCORP, an email is sent from SO-MERS-certificates@theice.com to the Member's Operational - Primary contact that contains the Transfer Batch number to be confirmed.

# MERS® System Security

MERS® System uses ICE Single Sign-on ("ICE SSO") for user authentication. ICE SSO allows an authenticated user to access MERS® System, MERS® eRegistry, MERS® Member Website, and many other MERS® Corporate Applications in the same browser session without having to log on again.

ICE SSO provides an added layer of authentication with Two Factor Authentication (2FA). After a user enters valid login credentials, ICE SSO sends a random numeric code to the user's email address which must be entered on the *MERS® Login* page before access to MERS® System is granted.

ICE SSO supports an optional IP whitelisting feature at the Org ID level, which can be overridden at a user level. When IP whitelisting is enabled, ICE SSO only grants access to an Org ID from a range of IP addresses provided by the Member.

ICE SSO login credentials consist of a user's Global ID (user's work email address) and password. MERS® System users can change or reset their current password through ICE SSO using their work email address. User email addresses are updated by the Help Desk and update automatically for all ICE SSO enabled applications.

Any attempt to access MERS® System is denied until a user satisfies all the requirements of ICE SSO configured for the user's Org ID.

Note: The XML password for an Org ID is managed by a Member in MERS® System.

## *MERS® System User IDs*

A user's MERS® System User ID is used to track user actions for auditing purposes and is included in certain MERS® System reports to identify the user.

A Member's internal MERS® System Administrator (Primary and/or Secondary) is responsible for establishing and maintaining the security settings that control access to its Org ID on MERS® System, including the following User ID management tasks:

- Create and maintain the security roles that align with the Member's operations.
- Create and maintain a unique User ID for each employee of the Member that requires online access to MERS® System and/or Member website.
- Enable, disable, and "delete" User IDs.

Note: While a "deleted" User ID cannot be used to access MERS® System, it is not actually deleted; it remains in MERS® System for display on reports and milestones. Once deleted, a User ID can be reinstated, but only for the same user.

When a new user is created in MERS® System, a Global ID is automatically created for the user in ICE SSO with access to the Member Website and other supporting MERS® Corporate Applications provisioned for the user. Changes to a MERS® System User ID automatically update the user's SSO Global ID but not the user's MERS® eRegistry User ID. See the MERS® System User Guide or System Administrator QRG for step-by-step instructions.



# Requirements: System Security

- MERS® System User IDs and ICE SSO login credentials:
    - o Must not be shared by multiple individuals and
    - o Must only be provided to employees of the Member or temporary employees retained by the Member either through an agency or directly.
- A Member must set up a Vendor relationship in the Member Profile of its Org ID to grant a third-party Vendor access to perform functions on behalf of the Member.
- A Vendor must access MERS® System using its own Org ID.
- When a Vendor submits transactions to MERS® System using the Flat-File or XML interface, the Vendor's Org ID must be included in the field that identifies the Vendor.
- Once a Member ends a relationship with a Vendor, the Member must promptly remove the Vendor relationship from the Member Profile of its Org ID.
- At least one User ID for the Member must have the ability to maintain the Member Profile, and the person associated with the User ID must be responsible for reviewing and updating this information.
- Security roles that are no longer required by the Member must be deleted.
- A user's MERS® System access must be promptly disabled or deleted upon employee termination or resignation and must be modified as appropriate when the employee's duties and responsibilities change with respect to MERS® System.
- User access to MERS® System must be reviewed at least annually to determine if any changes are necessary based on the employee's current duties and responsibilities.

Note: When conducting a MERS® System user access review, it is important to consider that the logon credentials also provide a user with access to the Member website.

- Transaction Data Requirements:
    - o Each Member is responsible for ensuring that the information it submits to a particular MERS® System environment is appropriate for the intended purpose of that environment:
    - o The MERS® System Production environment is the "live" environment that Members use to register and maintain MOM, Non-MOM, and iRegistration Mortgage loans.
        - ▪ The data a Member submits to the Production environment must be accurate and align with the corresponding data in the Member's System of Record.
        - ▪ Members must not submit fictitious data or test transactions to the Production environment.
    - o The MERS® System Training environment is the "Production-like" MERS® System environment that Members use for training purposes and to test changes to their applications that interface with MERS® System before promoting new code to their production systems.
        - ▪ Data submitted to the Training environment must be test data (e.g., deidentified).
        - ▪ Members must not submit actual customer data to the Training environment.

## Third-Party Vendors

Subject to approval by MERSCORP, a Member may grant security access to its Org ID to third-party Vendors to process the following transactions on its behalf:

|   |   |   |   |   |
|---|---|---|---|---|
| o | Registrations | o | Transfers | o | Deactivations |
| o | Updates | o | Inquiries | | |



A third-party Vendor's access to MERS® System must comply with the requirements set forth in Rule 9 of the Rules regarding information ownership and use, including the preservation of the security and confidentiality of nonpublic personal information.

The Member sets up this access by creating a relationship with a Vendor in MERS® System (see Vendor Relationships QRG for instructions).

**A Member is not permitted to set up a User ID under its Org ID for a third-party.**

## Associated Members

MERS® System allows a Servicer or Subservicer to name other active Members as an Associated Member on a MIN Record which grants them inquiry-only access to that MIN Record. The following types of Associated Members are available:

- Collateral Agent
- Government Housing Agency
- Mortgage Insurance Co.
- Warehouse/Gestation Lender
- Participation Investor
- Other

- FHLB/FRB
- Master Servicer
- Trustee
- Alternate Custodian
- Property Preservation Company

Associated Members can choose to receive the optional *Change Notification (VB)* and *MIN Milestones (VA)* reports for the MIN Records on which they are named.

The addition of Associated Members at Registration is reported on the *Registration Verification (RF)* or *Seasoned Registration Rejects/Warnings (RB)* report. Further changes to Associated Members are reported on the *Maintenance Verification (MA)* report.

## XML and Batch Inquiry Transactions

MERS® System provides two (2) different methods for Members and their Vendors to perform automated searches on registered loans based on MIN, property address, or borrower Social Security Number ("SSN"): XML Inquiry and Batch Inquiry. For Archived MIN Records, a limited subset of data from the MIN Record is retained on MERS® System for historical tracking purposes, and is accessible to Members using the MIN as the search criteria.

## XML Inquiry

XML Inquiry is a synchronous or real-time method of submitting search requests to MERS® System through the XML Interface. It is available during and outside normal processing hours but not while maintenance is being performed. Both Summary and Status Inquiries are supported. The fields included in the search results vary based on the requesting Member's affiliation to the MIN Record.

## Batch Inquiry

Batch Inquiry is an asynchronous method of submitting search requests to MERS® System through the Flat-file Interface. It is available during normal processing hours but not while maintenance is being performed. Both Summary and Status Inquiries are supported. The fields included in the search results vary based on the requesting Member's affiliation to the MIN Record. Batch Inquiry is not "real-time" like XML Inquiry, but Batch Inquiry can support a much higher volume of inquires compared to XML Inquiry.

 **MERS**®

For more information about XML and Batch Inquiry, including the data returned in the Summary and Status Inquiries and the transaction limits of each, see the MERS® System Integration Handbook.

# Mortgage Identification Number ("MIN")

The Mortgage Identification Number ("MIN") is an 18-digit number that uniquely identifies a Mortgage loan registered on MERS® System. A MIN is assigned to a loan at or prior to closing and cannot be duplicated or reused. To process information on MERS® System, the MIN associated with the loan must be provided. The MIN is also placed on any MERS Document sent for Recordation (see MERS Documents for details).

A MIN consists of a three-part, 18-digit string in the following format:



- **Component One (1):** The seven (7) digit Org ID that uniquely identifies a Member. In the example above, the Org ID is **9594567**.
- **Component Two (2):** A unique, ten (10) digit Sequence Number assigned by the Member. The Sequence Number can be an internal reference number used by the Member, or it can be randomly generated. In the example above, the Sequence Number is **0123456789.**
- **Component Three (3):** A one (1) digit Check Digit calculated by the Member using the Mod 10 Weight 2 Algorithm. In the example above, the check digit is **eight (8).**

MERS® System validates a MIN at Registration by checking for duplicate MINs, ensuring the Check Digit is correct, and validating the first seven digits of the MIN match an Org ID setup on MERS® System.

## *Procedure: Creating a MIN*

1. The Member uses the seven-digit Org ID assigned by MERSCORP for component 1 of the MIN.

2. The Member determines the unique ten (10) digit Sequence Number for component 2 of the MIN.

3. The Member generates the Check Digit for component 3 of the MIN. See the MERS® System Integration Handbook for the step-by-step calculation of the Check Digit.

Note: Most Loan Origination Systems ("LOS") are capable of generating MINs programmatically. Members interested in the MIN generation capabilities of their LOS should contact the company supporting their LOS.

# Loan Registration

The Registration transaction is used to enter the required information on MERS® System to report that a MERS Loan exists. The result of a successful Registration is the creation of a MIN Record for the loan.

A *Registration* transaction may be submitted using the MERS® System UI or the Flat-File or XML interfaces.



Note: The *Registration* transaction is also used to register an iRegistration loan on MERS® System. See Procedures: iRegistration Loans for details.

Once a Mortgage loan is registered on MERS® System, the eClosing video associated with the loan can be uploaded to the MERS® RON Video Storage solution by a RON Closing Provider. While the eClosing video is available in the MERS® RON Video Storage solution, it can be downloaded by the RON Closing Provider that uploaded the video and the current Investor, Servicer, or Subservicer named on the MIN Record. See the MERS® RON Video Storage chapter for details.

# Requirements: Loan Registration

In this section, the requirements for registering a loan on MERS® System are organized into the following categories:

- All Loan Registrations: These requirements apply to all loan registrations.

- MOM Loan Registrations: These requirements apply to all MOM loan registrations.

- Non-MOM Loan Registrations: These requirements apply to all Non-MOM loan registrations.

In addition, the MERS® System Data Integrity requirements apply to all loan registrations unless noted otherwise.

## Requirements: All Loan Registrations

- All applicable conditionally-required loan information on MERS® System must be provided at Registration with the exception of the Originating Organization for a Non-MOM loan.

- The purchaser of an unregistered MERS Loan must take the necessary steps to ensure that it is registered on MERS® System no later than seven (7) calendar days after the date upon which the purchaser begins servicing the loan on its System of Record.

  Note: While a Member that purchases an unregistered MERS Loan can request that the seller register it on MERS® System, the purchaser, as the current Servicer, remains responsible for ensuring that the loan is compliant with the requirements set forth in the Governing Documents.

- Once a MIN Record has been correctly deactivated on MERS® System, if a Member re-registers the loan, it must be re-registered using the same MIN. Upon re-registration:

  o If the Mortgage has been assigned to MERS, the loan must be re-registered as a Non-MOM even if it was a MOM loan when initially registered.

  o If the Mortgage has been assigned to an entity other than MERS, the loan must be re-registered as an iRegistration.

- When a Member will be registering a Mortgage on both MERS® eRegistry and MERS® System, the same MIN must be used to identify both registrations.

  o Because MERS® eRegistry is the system of record evidencing control of Digital Assets, the status of a MIN Record on MERS® System should generally reflect the status of any corresponding Digital Asset on MERS® eRegistry. Example scenarios:

    ▪ An active Digital Asset on MERS® eRegistry should typically have a corresponding MIN Record on MERS® System that is also in an active status unless the mortgage lien has been assigned from Mortgage Electronic Registration Systems, Inc. in anticipation of a foreclosure or bankruptcy filing.

    ▪ It would be unlikely that there is a reason for an active Digital Asset on MERS® eRegistry to have a corresponding MIN Record on MERS® System in an inactive status of Paid in Full.



- ▪ While used infrequently, the following inactive Electronic Record statuses on MERS® eRegistry can correspond to a MIN Record on MERS® System in an Active status:
  - ✓ Paper Replacement
  - ✓ Converted to Paper
  - ✓ Transferred to Proprietary Registry
  - ✓ Charged Off

## Requirements: MOM Loan Registrations

- The MOM Security Instrument or UCC-1 must be prepared and executed in accordance with the applicable document requirements (see MERS Documents) and must be sent for Recordation even if the jurisdiction does not require it.
- A Member must register on MERS® System any MOM loan that it has closed, or any unregistered MOM loan that it has purchased or otherwise acquired.
- A MOM loan must be registered no later than seven (7) calendar days after the Note Date, or Funding Date for refinance loans or loans in escrow states, even if the rights to the loan are immediately sold to a non-Member.

## Requirements: Non-MOM Loan Registrations

- The Assignment to MERS or UCC-3 must be prepared and executed in accordance with the applicable document requirements (see MERS Documents) and must be sent for Recordation even if the jurisdiction does not require it.
- A Member must register on MERS® System any loan with a Mortgage that it has assigned to MERS post-origination, or any unregistered Non-MOM it has purchased or otherwise acquired.
- A Non-MOM loan must be registered no later than seven (7) calendar days after the Assignment to MERS or UCC-3 was executed even if the rights to the loan are immediately sold to a non-Member.
- When MERS becomes Mortgagee for a previously registered iRegistration loan, the Conversion transaction must be performed no later than seven (7) calendar days after the Assignment to MERS or UCC-3 was executed.
- The Originating Organization on a Non-MOM loan must be provided no later than 90 calendar days after the Registration Date.

## Requirements: MERS® System Data Integrity

The MERS® System Data Integrity requirements help ensure that the data on MERS® System matches the corresponding data on the Member's System of Record.

When registering a loan on MERS® System, the registering Member must validate that the data on MERS® System matches its System of Record. If the data for an active MIN Record needs to be updated after the loan has been registered, the Member performing the MIN Update must validate that the data being updated on MERS® System matches the corresponding data on its System of Record. The Member's System of Record is the source of data for MERS® System.

The following data integrity requirements apply to the data on the Servicer's System of Record or to the Subservicer's System of Record if one is named on MERS® System.


| MERS® System Field… | Must Match on the Member's System of Record … |
|---|---|
| MIN Record Status | The loan's status. |
| Original Borrower Name(s) | The exact name(s) of the original individual borrowers. |
| Current Borrower Name(s) | The exact full name of each current individual Borrower, including middle name or initial. For a borrower with only one name see Corporate Name(s) below. |
| Corporate Name(s) | One of the following:<br>• The exact name(s) of the non-individual borrower(s), or<br>• The exact name of a borrower with only one name. |
| Primary Borrower SSN or Tax ID ("TIN") | The Primary Borrower's valid SSN or TIN, except as follows:<br>• **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:** Used for foreign national with no SSN or TIN.<br>• **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:** A temporary placeholder used while a Member investigates a Borrower Dispute or when a borrower contacts the Member directly to initiate the dispute.<br>• No other placeholder values are permitted for SSN or TIN.<br>• SSN or TIN must not be entered into any other field on MERS® System.<br>• SSN is required for a Primary Borrower, and TIN is conditionally required for a corporate borrower. |
|  | Note: Each Member is responsible for ensuring that any process it uses to register a loan or update Borrower SSN/TIN accurately populates the full SSN/TIN to the MIN Record. MERS® System reports can be used to verify the last four digits of SSN/TIN. |
| Property Address | The property address associated with the loan.<br>• Street Number is not required for a property without a street number like a rural route address.<br>• For a Co-op, the unit number is entered in the Unit Number field. |
| County/Place Code | The county where the property is located (County Name, FIPS Code, or ANSI Code). When possible, use either the County or Place code to reduce the possibility of **County Unknown** warnings in your transactions. |
| Note Date | The date of the Note.<br>• Note Date is optional on MERS® System for a Pre-Closing.<br>• For a CEMA Loan, the date of the consolidated Note. |
| Note Amount | The amount of the Note except as follows:<br>• For a reverse Mortgage loan, the Maximum Principal Amount from the Note.<br>• For a CEMA Loan, the amount from the consolidated Note. |
| MOM Indicator | Identifies how MERS acquired its present interest as Mortgagee. |
| Lien Type | The type of lien associated with the loan (1st lien or subordinate lien). |
| Owner Occupied | The designation of the property's occupancy at origination (Yes, No). |
|  | Note: The Servicing Member may, at its discretion, update the value of the Owner Occupied field to reflect the current owner occupancy status of the property. Each Member is responsible for ensuring that their internal policy for |


| MERS® System Field… | Must Match on the Member's System of Record … |
|---|---|
| | determining whether a property is owner occupied is reflected on MERS® System. |
| Investor | The entity that owns or holds the promissory note secured by a Mortgage. |
| Servicer | The entity that owns the Servicing Rights of a Mortgage loan. If the Investor is the owner of the Mortgage Servicing Rights, but another entity performs the primary servicing obligations for the loan, the entity that performs the primary servicing obligations for the loan is the Servicer for the purposes of this definition. |
| Subservicer | The entity that the Servicer of a loan has contracted with to perform certain servicing functions for the loan. |
| Property Preservation Company | The name of the Property Preservation Company maintaining the property on behalf of the Servicer. |
| Originating Org ID | For MERS Loans, the Org ID of the loan originator if that entity was a Member at origination. The organization's name and Org ID displays in the Originating **Organization** field. Required for all MOM loans with a Note Date after March 31, 2012. |
| Original Note Holder | For MERS Loans, the name of the entity that originated the loan if it was not a Member at origination. The organization's name displays in the **Originating Organization** field. Either the Original Note Holder or Originating Org ID is required for all Non-MOM loans with a Note Date after March 31, 2012. |
| Co-Borrower SSN or TIN | The Co-Borrower's valid SSN or TIN except as follows:<br><br>• **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:** Used for foreign national with no SSN or TIN.<br><br>• **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:** A temporary placeholder used while a Member investigates a Borrower Dispute or when a borrower contacts the Member directly to initiate the dispute.<br><br>• No other placeholder values are permitted for SSN or TIN.<br><br>• SSN or TIN must not be entered into any other MERS® System field.<br><br>Note: Each Member is responsible for ensuring that any process it uses to register a loan or update Borrower SSN/TIN accurately populates the full SSN/TIN to the MIN Record. MERS® System reports can be used to verify the last four digits of SSN/TIN. |
| Investor Loan Number | The number assigned by an Agency Investor to identify a Mortgage loan. Required if the Agency requires it at Registration.<br><br>• Investor Loan Number must be provided on MERS® System if required by the Agency Investor.<br><br>• Once the Investor Loan Number field is populated with the correct value, it generally should not change unless the loan is sold to another Investor. |
| Agency ID | The number assigned by an Agency Investor to identify a mortgage company.<br><br>• Agency ID must be provided on MERS® System if required by an Agency Investor at Registration.<br><br>• Once the Agency ID field is populated with the correct value, it generally should not change unless the loan is sold to another Investor. |



| MERS® System Field… | Must Match on the Member's System of Record … |
|---|---|
| FHA/VA/MI | The FHA, VA, or MI Case number associated with the loan. The FHA, VA, or MI Case number must be provided on MERS® System if required by an Agency Investor. |
| Pool Number | The number assigned to a group of loans by an Agency Investor.<br><br>• The Pool Number must be provided on MERS® System if required by the Agency Investor at Registration.<br><br>• Once the Pool Number field is populated with the correct value for a loan, it generally should not change unless the loan is sold to another Investor. |
| Securitization | The name of the Trust for loans pooled in rated securities.<br><br>Example: ABC Trustee 2010-10 or ABC as Indenture Trustee of the 2008HE3-2trust<br><br>For non-Agency securitizations, the name designated for the Trust in the prospectus must be placed in the Securitization field. |

## *Procedures: Loan Registration*

In this section, the procedures for registering a MERS Loan on MERS® System are organized into the following categories:

- Procedure: MERS Loan Registration: This procedure applies to all MERS Loan registrations unless another procedure in this section addresses a scenario particular to a specific registration.

- Procedure: Completing a Pre-Closing Registration: This procedure applies to all loan registrations that were initially registered using the Pre-Closing transaction.

- Procedure: Re-registration after Reversal: This procedure applies to all MIN Records with a status of Registration Reversal for which the loan is being re-registered using the same MIN.

- Procedure: Re-registration after Deactivation: This procedure applies to all deactivated MIN Records for which the loan is being re-registered using the same MIN.

## Procedure: MERS Loan Registration

For step-by-step instructions on registering a MERS Loan using the MERS® System UI, see one of the following QRGs: Registration, Pre-Closing, or Post-Closing.

1. Except for a Pre-Closing, the Lender and borrower close the loan. Any MERS Document to be recorded in the public land records is prepared and executed in accordance with the applicable document requirements (see MERS Documents) and promptly sent for Recordation.

2. The registering Member enters the MIN assigned to the loan on the *Register a MIN* page.

3. The registering Member completes the fields on the *Registration Details* page, adhering to the following instructions as applicable:

   o Select the appropriate value for the MOM indicator (i.e., MOM or Non-MOM). This step is optional for a Pre-Closing.

   o If the loan is being registered before it has closed, select the **Yes** Pre-Closing button.

   o Identify other Members with an interest in a loan as needed. This step is optional for a Pre-Closing.

   o Enter loan information exactly as it appears on the Member's System of Record as specified in Requirements: MERS® System Data Integrity.



4. The registering Member submits the Registration.

Refer to System Actions: Loan Registration for details on the system actions that occur after a loan is registered on MERS® System.

# Procedure: Completing a Pre-Closing Registration

If a loan was registered on MERS® System prior to closing using the Pre-Closing *Registration* transaction, the Registration is completed using the Post-Closing Registration transaction once the loan has closed (see Post-Closing QRG).

1. Once the loan has closed, the registering Member enters the loan's MIN on the *Register a MIN* page to access the MIN Record created by the Pre-Closing transaction.

3. The information from the Pre-Closing displays on the *Registration Details* page.

4. The registering Member verifies all loan information and updates it as needed to ensure it matches the Member's System of Record and as specified in Requirements: MERS® System Data Integrity.

5. The registering Member submits the Registration.

Refer to System Actions: Loan Registration for details on the system actions that occur after a loan is registered on MERS® System.

# Procedure: Re-registration after Reversal

A loan with a MIN Status of **Registration Reversal** can be re-registered as a MOM, Non-MOM, iRegistration, and/or a Pre-Closing. During the re-registration process, the loan information can be updated including the Servicer and Investor Org IDs (see Re-registration after Reversal QRG).

1. The registering Member enters the MIN assigned to the loan on the *Register a MIN* page.

2. MERS® System displays a summary of the loan information along with the *Re-Registration* menu.

3. The registering Member:

   o Enters the Org ID of any new Primary Organization including Servicer and Investor, and

   o Verifies all loan information and updates it to ensure that it matches the Member's System of Record and as specified in Requirements: MERS® System Data Integrity.

4. The registering Member re-registers the loan.

5. The registering Member reports any assumptions that occurred since the Registration Reversal transaction was processed (see Assumption of Mortgage).

Refer to System Actions: Loan Registration for details on the system actions that occur after a loan is re-registered on MERS® System.

# Procedure: Re-registration after Deactivation

If a loan correctly deactivated on MERS® System for any reason except Foreclosure Complete or Paid in Full subsequently needs to be re-registered, it is re-registered using the same MIN (see Re-registration after Deactivation QRG).

1. The registering Member enters the MIN assigned to the loan on the *Register a MIN* page.

2. MERS® System displays the loan information on the *Registration Details* page.



3. The registering Member:

   o Enters the Org ID of any new Primary Organization including Servicer and Investor, and

   o Verifies all loan information and updates it to ensure that it matches the Member's System of Record and as specified in Requirements: MERS® System Data Integrity.

4. The registering Member re-registers the loan.

5. The registering Member reports any assumptions that occurred since the loan's deactivation (see Assumption of Mortgage).

Refer to System Actions: Loan Registration for details on the system actions that occur after a loan is re-registered on MERS® System.

# System Actions: Loan Registration

After the Registration of a loan on MERS® System, the following events occur:

- A MIN Record is created for a newly registered loan with a status of **Active (Registered)** or **Pre-Closing**.

- For a Re-registration, the status of the existing MIN Record changes to **Active (Registered)** or **Pre-Closing** for a Registration Reversal or a Deactivation Reversal.

- The appropriate registration or conversion transaction is listed on the *Milestones* page. For a Post-Closing registration, the Registration Date reflects the date that the Post-Closing registration was processed.

- The appropriate registration fee appears on the Member's next monthly invoice from MERSCORP:

   o The fee is normally charged to the Member that submitted the *Registration* transaction.

   o The exception to this rule is for a Vendor with an Org ID configured to bill the Member on whose behalf the Vendor submits transactions. In this scenario, the fee is charged to the Member for whom the Vendor submitted the registration and not the Vendor.

- Successful Registrations are reported on one of the following optional verification reports:

   - *Conversion Verification (CF)*
   - *Registration Verification (RF)*
   - *Seasoned Registration Verification (RA)*
   - *Pre-Closing Registration Verification (PF)*
   - *Registration Reversal Verification (RK)*

- Successful Registrations are reported to Associated Members on the *MIN Milestones (VA) Report*.

- Unsuccessful Registrations submitted through the Flat-File Interface are reported on one of the following mandatory reject reports:

   - *Conversion Rejects/Warnings (CG)*
   - *Registration Rejects/Warnings (RG)*
   - *Seasoned Registration Rejects /Warnings (RB)*
   - *Pre-Closing Registration Rejects/Warnings (PG)*
   - *Registration Reversal Rejects/Warnings (RL)*

- If the current primary borrower SSN, property, and first lien information of a newly registered MIN Record matches another active MIN Record, it is reported on the mandatory *MINs for the Same Primary Borrower SSN, Property, and First Lien- Daily (RH) Report* and the *MINs for the Same Primary Borrower SSN, Property, and First Lien- Monthly (RI) Report*.

- If the MIN of a newly registered loan on MERS® System matches the MIN of a Digital Asset registered on MERS® eRegistry, and the borrower names or property address information on the two MINs do not match, the MIN is listed on the *Mismatched MIN/eNote Record (EJ) Report*.



- If an Originating Organization is not entered on a Non-MOM within sixty (60) calendar days after registration, it is reported on the *MINs Without Originating Organization (QE) Report* if the Note Date is after March 31, 2012.

- If MERS® System determines that the data in the *Registration* transaction may contain fictitious or test data prohibited in the Production environment:

  o MERS® System registers the loan and returns a warning message to the Member:

    ▪ For online Registrations, the warning displays to the user on the *Success* page.

    ▪ For Batch Registrations, the warning is returned in the appropriate MERS® System Report

    ▪ For XML Registrations, the warning is returned in the *XML Response* from MERS® System.

  o The Member must review the *Registration* transaction to verify that it corresponds to a loan in its System of Record. Upon the Member's review:

    ▪ If the data in the *Registration* transaction is valid and corresponds to a loan in the Member's System of Record, no further action is required.

    ▪ If the *Registration* transaction is a test for which no loan exists, the *Registration* must be reversed using the *Registration Reversal* transaction. See Registration Reversal.

    ▪ If the *Registration* transaction is not a test but contains some fictitious or test data, that prohibited data must be replaced with the correct data from the Member's System of Record.

- If the Member that registered a loan is not the Servicer or Subservicer named on the MIN Record, the registering Member:

  o Can update the MIN Record for a period of time that ends six (6) calendar days after the Registration Date.

  o Cannot update the MIN Record if a TOS transaction is completed during the six (6) calendar days following the Registration Date unless it is named as the Servicer or Subservicer on the MIN Record after the transfer occurs.

  o Has no access to a MIN Record once it can no longer update the MIN Record unless it is also named as a Primary Organization or an Associated Member.

- Only the Servicer or Subservicer can update the MIN Record on or after the seventh day following the Registration Date.

- Any data in the Funding Date field is automatically removed sixty (60) days after Registration and is reported on the *Maintenance Verification (MA) Report* and documented on the *MIN Audit* page.

## Registration Reversal

- The Registration Reversal transaction is used in the limited circumstances detailed in this section to correct errors in the registration of a loan on MERS® System. Other loan information errors must be corrected by the Servicer or Subservicer through a MIN Update.

- **The Registration Reversal transaction is not a Deactivation transaction.** It is not the correct transaction to deactivate a MERS Loan because a Lien Release, Assignment from MERS or UCC-3 has been sent for Recordation or MERS's interest has otherwise been extinguished (e.g., in foreclosure or bankruptcy). For the correct deactivation transaction to use in these contexts, see MIN Record Deactivation.

- A Registration Reversal may be submitted through the MERS® System UI or Flat-File Interface.


# Requirements: Registration Reversal

- For a loan registered on MERS® System as a MOM or Non-MOM loan, the Registration Reversal transaction must be performed no later than seven (7) calendar days after determining that MERS was never the Mortgagee.

  o This might occur in the following scenarios:

    ▪ A loan is rescinded by the borrower during the rescission period, and the Mortgage is never sent for Recordation.

    ▪ A loan is registered as a Pre-Closing, does not close at a later date, and a Mortgage is never sent for Recordation.

    ▪ A loan is mistakenly registered as a MERS Loan, but MERS is not the Mortgagee.

      ✓ If the Member intends to track the loan on MERS® System, it must be re-registered as an iRegistration loan (see iRegistration Loan Registration).

- If MERS was ever Mortgagee, a Registration Reversal is only appropriate in the following limited circumstances:

  o A loan was erroneously registered using a different MIN than that which appears on the Mortgage. The Registration Reversal transaction must be used to reverse the initial Registration and then the loan must be re-registered using the correct MIN.

  o If a Member erroneously sent a MOM Security Instrument for Recordation on a loan that did not close, the lien must be released and the loan registration must be reversed using the Registration Reversal transaction. See Requirements: Paid in Full Deactivation for the requirements to which the Lien Release, UCC-3, or Deed-in-Lieu must conform.

  o A loan was registered identifying an incorrect Servicer and/or Investor. The Registration Reversal transaction must be used to reverse the initial registration, and the loan must be re-registered using the same MIN with the correct Servicer and Investor identified.

  o A MERS Loan was incorrectly registered as an iRegistration. The Registration Reversal transaction must be used to reverse the initial registration, and the loan must be correctly re-registered using the same MIN to identify it as a MOM or Non-MOM loan.

  o If incorrect information was entered for a Pre-Closing loan before the loan closes, the Registration Reversal transaction may be performed and the loan re-registered with the correct information.

Note: Another option for resolving a discrepancy between the MIN used to register a loan on MERS® System and the MIN appearing on the corresponding Mortgage recorded in the public land records is to send a document (e.g., *Mortgagee's MIN Affidavit*) for Recordation to clarify that the MIN associated with the loan on MERS® System is correct.

# Procedure: Registration Reversal

To perform a Registration Reversal:

1. The Servicer, Subservicer, or Member that registered the loan verifies that the *Registration* can be reversed.

   o The Registration cannot be reversed while a MIN Record is in a pending transfer transaction (TOS, TOB, or TOS/TOB Combo).

   o The Servicer or Subservicer can perform a Registration Reversal at any time so long as the Servicer and Investor named on the MIN Record at Registration have not changed as the result of a completed transfer transaction.


- o If the Member that registered the loan is not the Servicer or Subservicer, the registering Member can reverse the Registration for a period of time that ends six (6) days after the Registration Date.
- o Once a transfer transaction is completed on a MIN Record:
  - ▪ The Registration can only be reversed if the Servicer and Investor fields on the MIN Record contain the same Org ID.
  - ▪ The registering Member can no longer reverse the Registration (if the transfer completed during the six (6) days following the Registration Date) unless it is named as the Servicer or Subservicer on the MIN Record after the transfer occurs.

2. The Servicer, Subservicer, or Member that registered the loan processes the Registration Reversal if it determines that a Registration Reversal is appropriate (see Reversals QRG).

## System Actions: Registration Reversal

When the Registration Reversal transaction is performed on a MIN Record:

- The MIN Record status changes from **Active (Registered)** to **Registration Reversal.**
- The MIN Record is no longer returned on MERS® ServicerID.
- All reversed registration information is retained for use if the loan is re-registered.
- No fee is incurred for a Registration Reversal, but the applicable Registration fee is assessed for the initial registration and any subsequent re-registration of the loan.
- The *Registration Reversal* is listed on the *Milestones* page.
- Successfully processed Registration Reversal transactions are reported on the optional *Registration Reversal Verification (RK) Report*.
- Unsuccessful **Registration Reversals** submitted through the Flat-File Interface are reported on the *Registration Reversal Rejects/Warnings (RL) Report*.

# MERS® RON Video Storage

The MERS® Remote Online Notarization ("RON") Video Storage solution ("RON Video Storage") provides the mortgage industry a reliable, secure, long-term storage repository for the eClosing videos associated with mortgage loans registered on MERS® System and/or MERS® eRegistry. The RON Video Storage solution also supports the upload of eClosing videos for loans that are not yet registered on MERS® System or MERS® eRegistry. A successfully uploaded eClosing video for an unregistered loan is held for 10 days after its upload date to await the loan's subsequent registration. An eClosing video uploaded to RON Video Storage solution is an Authorized Member Copy of the Notary Retention Copy.

RON eClosing videos can be uploaded to and downloaded from the RON Video Storage solution manually using the MERS® System user interface or programmatically using the MERS® System XML Interface. An eClosing video uploaded to the solution using the XML Interface can be optionally verified before committing it to the solution by providing the video's MD5 hash value in the *Commit Upload Request*. An eClosing video that has had its MD5 hash value successfully verified during the upload process is identified in the solution as a Hashed Authorized Member Copy.

Only a Member with an Org ID that has the RON Closing Provider Line of Business (LOB) is able to upload eClosing videos to the RON Video Storage solution. During upload, a security scan is performed on the file and a digital fingerprint is generated to uniquely identify the video to ensure that future downloads match the


originally uploaded video. The RON Video Storage solution encrypts video files at rest. eClosing videos with the same filename can be uploaded for the same MIN and are not over-written.

Once a video is uploaded to the RON Video Storage solution, it is stored and remains available for the duration of the Storage Period and is destroyed thereafter. While the video is available, it can be downloaded by the RON Closing Provider that uploaded the video and the following rights holders associated with the loan:

- **MERS® System:** Current Investor, Servicer, Subservicer.
- **MERS® eRegistry:** Current Controller, Master Servicer, Subservicer.

RON Video Storage Participants can also submit a RON *XML Inquiry* transaction to request information about registered loans with eClosing videos stored in the solution.

# RON Closing Provider LOB

The **RON Closing Provider** LOB is assigned to an Org ID by MERSCORP to authorize that Member to upload eClosing videos to the RON Video Storage solution and download a copy of its previously uploaded videos for verification purposes. An Org ID assigned only the **RON Closing Provider** LOB cannot perform other MIN Record transactions on MERS® System, but the **RON Closing Provider** LOB can be assigned to an Org ID along with any other LOB except Vendor/Service Provider to provide the Org ID permission to perform MIN Record transactions.

# Requirements: MERS® RON Video Storage

## Video Upload Requirements

The following requirements apply to the upload of an eClosing video to RON Video Storage:

- An eClosing video must only be uploaded to the RON Video Storage solution at the instruction of a Directing Member that has express permission to receive and retain an Authorized Member Copy of the eClosing video from the RON Notary or, if applicable in a particular state, the RON Closing Provider whose platform created the eClosing video.
- Each eClosing video submitted to the RON Video Storage solution for upload must be:
  - o Identical to the Notary Retention Copy,
  - o Tamper-sealed when created or otherwise unmodified since its creation, and
  - o Consist of an accurate, complete audio-video recording, compliant with applicable notarial law and consisting of one or more notarial acts conducted in a single session.
- The following data from the mortgage loan is required during upload and must match the corresponding value stored on MERS® System and/or MERS® eRegistry:
  - o MIN
  - o The last 4-digits of a Borrower's SSN or TIN
  - o The ZIP Code associated with the Property
- The following data about the Notary Public that witnessed the eClosing is required when uploading a RON eClosing video:

| | |
|---|---|
| • Notary Public Name | • Notary Commission Number |
| • Notary Commission State | • Notary Commission Expiration Date |

Note: Enter the literal "None" in the **Notary Commission Number** field if the state issuing the Notary Public's commission does not use a number to identify a specific notary public.



- The following additional data is also required when uploading a RON eClosing video:
  - RON Video Type
  - Authorizing Member Org ID (Member authorizing upload of their copy of the RON video)

    Only the following Members on a MIN Record may be the Authorizing Member:
    - MERS® System: Current Investor, Servicer, Subservicer, or Originating Org ID
    - MERS® eRegistry: Current Controller, Master Servicer, or Subservicer
- The eClosing video file must meet the following requirements:
  - Total video size must be less than or equal to (≤) 575 Megabytes (MB).
  - The video must have one of the following file extensions:

    | | | | | |
    |---|---|---|---|---|
    | ▪ .AVI | ▪ .M4V | ▪ .MOV | ▪ .MP4 | ▪ .WEBM |
    | ▪ .MPEG | ▪ .MPG | ▪ .OGB | ▪ .OGV | ▪ .WMV |

- The Directing Member and the Member uploading an eClosing video are responsible for ensuring that the video is associated with the correct MIN and/or Electronic Record.

## File Name, Notary Name, and Commission Number Requirements

The following requirements apply to the **File Name, Notary Name,** and **Notary Commission Number** fields when uploading an eClosing video to the RON Video Storage solution:

- Leading or trailing spaces are trimmed from the data provided for the **File Name**, **Notary Name**, and **Notary Commission Number** fields.
- The **File Name** and **Notary Commission Number** fields:
  - Are alphanumeric and support the following additional characters:

    | Name | Symbol | Name | Symbol |
    |---|---|---|---|
    | Space | | Hyphen | - |
    | Underscore | _ | Full Stop | . |

  - Must contain values that:
    - Include at least one letter or number,
    - Start with a letter or number, and
    - Not end with a dot.
- The **Notary Commission Number** and **Notary Name** fields have a maximum permitted length of 100 characters.
- The File Name field has a maximum permitted length of 255 characters.
- The **Notary Name** field is alphanumeric and also support the following additional characters:

    | Name | Symbol | Name | Symbol | Name | Symbol |
    |---|---|---|---|---|---|
    | At Sign | @ | Dash | - | Ampersand | & |
    | Hash Tag | # | Full Stop | . | Comma | , |
    | Parentheses | ( ) | Question Mark | ? | Single Quote | ' |
    | Underscore | _ | Colon | : | Double Quote | " |
    | Forward Slash | / | Space | | | |



# *Procedure: Upload RON eClosing Video*

The process to upload a RON eClosing video to the RON Video Storage solution begins after the Notary Public has witnessed the borrowers close the mortgage loan with the eClosing memorialized as a video file using the RON Closing Provider's platform.

1. A Member with the RON Closing Provider LOB uploads the eClosing video to the RON Video Storage solution:

   o For step-by-step instructions on manually uploading an eClosing video using MERS® System, see the Upload RON eClosing Video QRG.

   o For technical information on using an XML API client to programmatically upload an eClosing video to the RON Video Storage solution, see the MERS® RON Video Storage Integration Handbook.

2. Once the RON video is successfully uploaded, it is committed to storage and a confirmation message is returned.

# *System Actions: Upload RON eClosing Video*

The actions the MERS® RON Video Storage solution performs for a successfully uploaded eClosing video varies based on whether the loan was previously registered on MERS® System or MERS® eRegistry. For details see:

- Previously Registered Loan or
- Unregistered Loan

## Previously Registered Loan

When a video is successfully uploaded for a loan registered on MERS® System or MERS® eRegistry, the RON Video Storage solution:

- Generates a digital fingerprint of the video to uniquely identify the file to ensure that future downloads match the originally uploaded video.
- Encrypts the video at rest in the database.
- Associates the eClosing video with the loan by:

  o Setting the **RON Video** indicator on the MIN and/or Electronic Record to **Yes**, and

  o Recording the upload in the *RON Event Log* for the loan.
- Reports the upload on the *RON Video Submission Verification (VS) Report* if your organization has this optional report enabled in its Member Profile.
- Creates a billing record that will appear on the next monthly invoice of the Member that uploaded the video.

## Unregistered Loan

When a video is successfully uploaded for a loan that is not yet registered on MERS® System or MERS® eRegistry, the RON Video Storage solution:

- Generates a digital fingerprint of the video to uniquely identify the file.
- Encrypts the video at rest in the database.
- Reports the pending eClosing video on the mandatory *RON Video Storage Cycling (VC) Report* while it awaits the loan's registration during the 10-day cycling window.


- If the loan is registered during the 10-day cycling window, the standard RON video upload validations are performed.
  - If the validations pass, the RON Video Storage solution:
    - Associates the eClosing video with the loan by:
      - ✓ Setting the **RON Video** indicator on the MIN and/or Electronic Record to **Yes**, and
      - ✓ Recording the upload in the *RON Event Log* for the loan.
    - Reports the association of the eClosing video with the registered loan on the *VC Report* with a final status of **Accepted**.
    - Reports the video upload on the optional *VS Report*.
    - Creates a billing record that will appear on the next monthly invoice of the Member that uploaded the video with the upload date set to the date that the video was matched to the loan.
  - If any upload validation fails during the *Registration* process, the RON Video Storage solution:
    - Rejects the pending RON video upload and permanently deletes it from the solution.
    - Reports the rejected video upload on the Member's *VC Report* with a final status of **Rejected**.
- If the loan is not registered during the 10-day cycling window, the RON Video Storage solution:
  - Expires the pending RON video upload and permanently deletes it from the solution.
  - Reports the expired video upload on the Member's *VC Report* with a final status of **Expired**.

The ten (10) day cycling window for RON Videos is provided as a convenience to the mortgage industry to facilitate the matching of a recently committed RON video to its associated loan and does not relieve a Member from its obligation to register loans in compliance with the timeframes set forth in the Registration chapter of the Procedures.

Note: Members are not billed for rejected or expired video uploads, and no entry is recorded in the *RON Event Log* for rejected or expired video uploads if the loan is subsequently registered.

## *Procedure: Download RON eClosing Video*

1. After an eClosing video is stored in the RON Video Storage solution, it is available for download using the loan's MIN as search criteria.
   - For step-by-step instructions on manually downloading an eClosing video using MERS® System, see the Download RON eClosing Video QRG.
   - For technical information on using an XML API to programmatically download an eClosing video to the RON Video Storage solution, see the MERS® RON Video Storage Integration Handbook.
2. Once the video is successfully downloaded, a confirmation message is returned.

## System Actions: Download RON eClosing Video

When a video download is successfully initiated, the RON Video Storage solution:

- Validates the video's digital fingerprint against the value generated when the file was uploaded.
- Records the download in the *RON Event Log* for the MIN.
- Reports the download to the Member on the optional *RON Video Retrieval Verification (VR) Report*.
- Creates a billing record that will appear on the next monthly invoice of the Member that downloaded the video.



## *Procedure: View RON Event Log*

The MERS® System *RON Event Log* page allows a Member to review the list of RON Video events that have occurred for a loan registered on MERS® System and/or MERS® eRegistry.

1. The user searches for the *RON Event Log* for a registered loan using its MIN, and the *Event Log* details display to the user.

   Note: A RON Closing Provider only has access to events in the *RON Event Log* that are associated with eClosing videos that it uploaded.

   For step-by-step instructions on reviewing the RON Event Log for a registered loan , see the View RON Event Log QRG.

# Interim Funding Interests

A warehouse lender provides funds to a Lender to fund a Mortgage loan for a borrower and has an Interim Funding Interest in the loan prior to its sale in the secondary market. The warehouse lender may require that its interest in the loan be reported to MERS® System. MERS® System provides the following two fields to track Interim Funding Interests prior to the loan's sale to the permanent Investor:

- **Interim Funder:**

  o An optional Primary Organization field that is entered by the Member registering the loan to report the warehouse lender's interest in the loan.

  o An Interim Funder can only be added to a Flow Loan if the Servicer and Investor fields have the same Org ID. When this condition is not met, the Warehouse/Gestation Lender field can be used.

  o An Interim Funder's Org ID is removed from a MIN Record:

    ▪ Automatically when a TOB Option 1 Batch is completed, or

    ▪ By the Interim Funder when it no longer has an interest in the loan.

- **Warehouse/Gestation Lender:**

  o An optional Associated Member field that is entered by the Member registering the loan to reflect the warehouse lender's interest in the loan.

  o A Warehouse/Gestation Lender's Org ID is removed from a MIN Record:

    ▪ Automatically when a TOB Option 1 Batch is completed,

    ▪ Automatically when a TOS Batch or TOS/TOB Combo Batch is completed, or

    ▪ By the Servicer or Subservicer when the Warehouse/Gestation Lender no longer has an interest in the loan.

## *Requirements: Removing Interim Funding Interests*

Once a Member no longer has an interim financial interest in a registered loan, its Org ID must be removed from the **Interim Funder** or **Warehouse/Gestation Lender** fields if it was not automatically removed by a completed Transfer Batch.

- A Member removes its Org ID from the **Interim Funder** field using the *Release Interim Funder Interests* transaction.

- The Servicing Member removes a Member's Org ID from the **Warehouse/Gestation Lender** field using the *MIN Update* transaction.



## *Procedure: Removing an Interim Funding Org ID*

An Interim Funder's or Warehouse/Gestation Lender's Org ID may be removed from a MIN Record by MERS® System during the completion of a Transfer Batch or by a Member using the MERS® System UI or Flat-File Interface.

- **Interim Funder:** An Interim Funder removes its Org ID from a MIN Record using the *Release Interim Funder Interests* transaction (see Release Interim Funder Interests QRG).

- **Warehouse/Gestation Lender:** The Servicer or Subservicer removes the Warehouse/Gestation Lender's Org ID using a MIN Update (see MIN Update QRG).

## *System Actions: Removing an Interim Funding Org ID*

- When a TOB Option 1 Batch is completed, any Interim Funder or Warehouse/Gestation Lender named on a MIN Record is removed.

- When a TOS Batch or TOS/TOB Combo Batch is completed, any Warehouse/Gestation Lender named on a MIN Record is removed.

- The removal of an Interim Funder or Warehouse/Gestation Lender from a MIN Record appears on the *Milestones* page.

- The removal of an Interim Funder from a MIN Record is reported on the optional *Release of Security Interests by Interim Funder (IB) Report*.

- The removal of a Warehouse/Gestation Lender from a MIN Record is reported on the optional *MIN Milestones (VA)* and *Change Notification* (*VB*) *Reports*.

- Completed TOB Option 2 Batches that name an Interim Funder or Warehouse/Gestation Lender are reported on the *Co-Existing Security Interests (IA) Report*.

- If a **Release Interim Funder Interests** transaction is rejected, it is reported on the mandatory *Interim Funder Rejects (IC) Report*.

- If a MIN Update to remove *a* Warehouse/Gestation Lender is rejected, it is reported on the mandatory *Maintenance Rejects/Warnings (MB) Report*.

# Transfers

There are three (3) types of transfer transactions on MERS® System, which are used to report that the contractual servicing rights or the beneficial ownership interests of a registered loan are transferred to another Member:

- Transfer of Beneficial Rights ("TOB")

- Transfer of Servicing Rights ("TOS")

- TOS/TOB Combination ("TOS/TOB Combo")

Servicing rights and beneficial ownership interests are not transferred on, through, or by MERS® System. MERS® System only tracks changes in these interests as reported by Members.

For instructions on processing *Transfer* transactions on the MERS® System UI, please refer to:

- Transfer of Beneficial Rights, Option 1 QRG

- Transfer of Beneficial Rights, Option 2 QRG

- TOB Option 2 Confirmations QRG

- Transfer of Servicing Rights QRG



- TOS Transfer Confirmations QRG
- Transfer Transactions Responsibilities QRG
- MERS® System User Guide

Note: In the transfer-related requirements, the designations of "new" and "old" reflect the Member's relationship to a loan after the *Transfer* transaction has completed on MERS® System. For example, the Member identified as the current Servicer in a TOS Batch is referenced in the requirements as the "old" Servicer.

# Transfer of Beneficial Rights

The Transfer of Beneficial Rights ("TOB") transaction is used to report the transfer of the beneficial ownership interests of an active, registered Mortgage loan from one Investor to another. A new Document Custodian can also be named as part of the TOB transaction. The current Document Custodian can also be deleted, or it can remain on the MIN Record.

A TOB transaction may be submitted through the MERS® System UI or Flat-File Interface. When a TOB transaction is initiated, a Transfer Batch is created on MERS® System for the MIN Records to be reported as transferred. There are two types of TOB transactions on MERS® System: Option 1 and Option 2. The option used depends on the Member Profile of the purchasing Investor:

- Option 1: The TOB Option 1 transaction is used by Agency Investors to report that the beneficial rights in a registered loan have been transferred to them.
- Option 2: The TOB Option 2 transaction is used to report the transfer of the beneficial rights in a registered loan to a non-Agency Investor.

Note: If the new Investor is a Non-Member, a Deactivation transaction is used instead of a TOB transaction (see Transfer to Non-MERS Status).

## Requirements: TOB Transactions

- Members are required to report the transfer of beneficial ownership interests in a MERS Loan or iRegistration loan from one Member Investor to another using the TOB transaction.
- Each Member that is a party to a TOB transaction is responsible for ensuring that the TOB Transfer Batch is initiated and confirmed within the timeframes set forth in this section.
- The new Agency Investor must create a TOB Option 1 Batch no later than seven (7) calendar days after the Transfer Date.
- The Servicer or Subservicer must create a TOB Option 2 Batch no later than seven (7) calendar days after the Transfer Date.
- When a Servicer receives the *Transfer of Beneficial Rights Reject (BF) Report* for one of its unregistered loans in a TOB Option 1 Batch, it must ensure that the loan is registered immediately.
- The old and new Investor must reconcile the TOB transaction:
  - The old Investor (i.e., the seller) must verify that its TOB Transfer Batches for the previous month were accepted by the new Investor prior to the Transfer Expiration Date.
  - The new Investor (i.e., the buyer) must verify the MIN Record transfers in the TOB Transfer Batches that name it as the new Investor, accept the correct MIN Record transfers, report any discrepancies to the old Investor, and reject any MIN Record transfers that should not be reported as transferred.


    o   The new Investor must verify that it has confirmed the TOB Transfer Batches naming it as the new Investor for the previous month prior to the Transfer Expiration Date.

    o   The old Investor, Servicer, and/or Subservicer must work with the new Investor to address any rejected MIN Record transfers, making the necessary corrections to allow the new Investor to accept the MIN Record transfers as applicable.

# TOB Option 1 Transfer

A TOB Option 1 Transfer is used by Agency Investors like Freddie Mac, Ginnie Mae, and Fannie Mae to report that the transfer of the beneficial ownership interests of a registered loan has been transferred to them. TOB Option 1 Batches:

- Cannot be canceled,
- Require no Confirmation, and
- Automatically remove any Org IDs from the Interim Funder or Warehouse/Gestation Lender fields on the MIN Record.

Important dates for a TOB Option 1 Batch include:

- Transfer Creation Date: The date on which a TOB Option 1 Batch was created.
- Transfer Date: The date on which the beneficial rights are reported as transferred to the new Investor on MERS® System, which may be the Transfer Creation Date or the current processing date if the Transfer Creation Date is in the past. The Transfer Date cannot be changed for a TOB Option 1 Batch.

## *Procedure: TOB Option 1 Transfer*

1. The TOB Option 1 Transfer process begins when a Member delivers a loan to an Agency Investor per the Agency's specific instructions.

2. The Agency Investor records the transfer of beneficial rights on its own system and then submits a TOB Option 1 transaction to MERS® System to report the transfer.

3. Any MIN Record transfers in the TOB Option 1 Batch that are registered on MERS® System are transferred to the Agency Investor on the Transfer Date.

4. Any MIN Record transfers in the TOB Option 1 Batch for loans that have not been registered by the Transfer Date continue to cycle for up to ten (10) days.

    o   If the registering Member registers the loans within the ten (10) day cycling window, MERS® System processes the TOB Option 1 Batch to the Agency Investor.

    o   If the registering Member registers the loan after the ten (10) day cycling window:

        ▪   The registering Member must name the Agency in the Investor field and contact the Agency for further instruction, or

        ▪   The Agency Investor, at its discretion, can submit another TOB Option 1 Batch for the MIN Record transfer once the loan is registered.

5. Registered loans that are rejected from the TOB Option 1 Batch due to a processing error should be reviewed and resubmitted by the new Investor as appropriate.

6. The current and new Investor reconcile the *TOB* transaction.

Note: Most TOB Option 1 Transfers are system-to-system transactions, but a TOB Option 1 Batch can be created on MERS® System (see Transfer of Beneficial Rights, Option 1 QRG).


## *System Actions: TOB Option 1 Transfer*

- A MIN Record transfer can co-exist in a TOB Option 1 Batch and a TOS Batch.

- A TOB Option 1 Batch replaces any Option 2 Investor named on a MIN Record. The Option 2 Investor is notified in the optional *Investor Removed by Option 1 TOB (BI) Report*.

- MIN Record transfers in concurrent Option 1 and Option 2 TOB Batches are deleted from the Option 2 Batch when the Option 1 Batch processes and reported on the optional *MINs Deleted from Transfer of Beneficial Rights (BH) Report*.

***On the Transfer Date:***

- The Investor and Document Custodian fields are updated on each MIN Record per the TOB transaction.

- The new Investor may update the Agency ID for the MIN Record to identify the Member that sold them the loan.

- Any existing Interim Funder or Warehouse/Gestation Lender named on the MIN Record before the transfer is removed.

- Audit entries for the TOB Option 1 transaction are written to the *Milestones*, *MIN Audit*, and *MIN Transfer Audit* pages for the MIN Record.

- The mandatory *Physical Transfer of Beneficial Rights (BB) Report is generated, identifying each transferred MIN Record*.

- For any unregistered loans in a TOB Option 1 Batch, the Member that should have registered the loan receives the *Transfer of Beneficial Rights Reject (BF) Report* listing its unregistered loans if the Member's Agency ID is included in its Member Profile.

- Unregistered loans in a TOB Option 1 Batch that are in the ten (10) day cycling window are reported to Agency Investors in the mandatory *Transfer of Beneficial Rights Reject (BF) Report*.

The ten (10) day cycling window for *TOB Option 1 Transfers* is provided as a convenience to the mortgage industry to facilitate the transfer of loans to Agency Investors and does not relieve a Member from its obligation to register loans in compliance with the timeframes set forth in the Registration chapter of the Procedures.

# TOB Option 2 Transfer

A TOB Option 2 Transfer is initiated on MERS® System by a Servicer or Subservicer to report the transfer of the beneficial ownership interests of a registered loan to a non-Agency Investor. TOB Option 2 Batches:

- Cannot be used to report a transfer to an Agency Investor,

- Require Confirmation from the current and new Investor, and

- Do not remove Interim Funder or Warehouse/Gestation Lender Org IDs from a MIN Record.

Important dates for a TOB Option 2 Batch include:

- Transfer Creation Date: The date on which a TOB Option 2 Batch was created.

- Transfer Date: The date on which the beneficial rights are reported as transferred to the new Investor on MERS® System.

- Transfer Expiration Date: The date on which a TOB Option 2 Batch expires:

  o MIN Record transfers not fully accepted or rejected by the Transfer Expiration Date remain with the current Primary Organizations and Associated Members.

  o MERS® System sets the Transfer Expiration Date to be 31 calendar days after the Transfer Creation Date or the Transfer Date, whichever is later.



## Procedure: TOB Option 2 Transfer

1. The TOB Option 2 Transfer process begins when two Members enter into a Purchase and Sale Agreement to transfer the beneficial rights of one or more registered loans.

2. The current Servicer or Subservicer creates a TOB Option 2 Batch (see Transfer of Beneficial Rights, Option 2 QRG).

   o All parties named in the TOB Option 2 Batch can view the unexpired Batch in MERS® System. The *MIN Summary* page identifies a MIN Record in a Batch.

   o While the TOB Option 2 Batch is in a **Pending** or **Overdue** status, the initiating Member can:

      ▪ Change the Transfer Date, which removes any previous Confirmations. All MIN Record transfers in the Batch must be confirmed again.

      ▪ Add MINs to the Batch, but the additional MIN Record transfers must be confirmed before the transfers will be reflected on MERS® System.

      ▪ Delete MINs from the Batch that were not yet confirmed by the new Investor.

      ▪ Cancel the entire Batch before the Transfer Expiration Date.

   o Any Member that is a party to the TOB transaction may reject the Transfer Batch at any time before the Transfer Expiration Date, even if its Confirmation is automatic.

3. The current and new Investors confirm the TOB Batch prior to the Transfer Expiration Date (see Transfer Confirmation QRG).

   o If the current Servicer Org ID is also the current Investor, the current Investor's Confirmation is automatic.

   o If a current or new Investor is a Passive Investor, its Confirmation is automatic.

   o The new Investor can change its Confirmations any time prior to the Transfer Date.

   o Interim Funder or Warehouse/Gestation Lender Org IDs do not have to be removed from a MIN Record for a TOB Option 2 Batch to be processed (see Interim Funding Interests).

4. The current Investor, Servicer, or Subservicer works with the new Investor to address any MIN Record transfers rejected from the TOB Option 2 Batch.

5. The current and new Investor reconcile the TOB transaction.

## System Actions: TOB Option 2 Transfer

### Before the Transfer Date (Pending Status):

- A MIN Record transfer can exist in both a TOB Option 2 Batch and a TOS Batch only if the new Servicer and new Investor are the same entity.

- The optional *Pending Transfer of Beneficial Rights (BA) Report* is generated daily listing all TOB Option 2 Batches with a future Transfer Date. Confirmations are reported on the *BA Report* up to the Transfer Date.

- If a MIN Record transfer is rejected, it is reported on the mandatory *Transfer of Beneficial Rights Rejects (BF) Report* for that processing day.

- If a MIN Record transfer is added to or deleted from a TOB Option 2 Batch, including one deactivated while in the Batch, it is reported on the mandatory *Modified Batch –Transfer of Beneficial Rights (BL) Report*.

- A TOB Option 2 Batch is automatically canceled if all of the MIN Record transfers are deleted from the Batch.


- If a TOB Option 2 Batch is canceled, it is reported on the optional *Canceled Transfer of Beneficial Rights (BG)* report.

- MIN Record transfers in concurrent TOB Option 1 and TOB Option 2 Transfer Batches are deleted from the pending Option 2 Batch when the Option 1 Batch processes. The deleted MIN Record transfers are reported on the optional *MINs Deleted from Transfer of Beneficial Rights (BH) Report*.

## On the Transfer Date:

- For each fully-confirmed MIN Record transfer in the TOB Option 2 Batch:

  o The Investor and Document Custodian fields on the MIN Record are updated per the TOB transaction.

  o Audit entries for the TOB Option 2 transaction are written to the *Milestones*, *MIN Audit*, and *MIN Transfer Audit* pages for the MIN Record.

  o The transfer is reported on the mandatory *Physical Transfer of Beneficial Rights (BB) Report* and the optional *MIN Milestones (VA) Report*.

  o The accepted MIN Record transfer is removed from the TOB Option 2 Batch.

- For each rejected MIN Record transfer in the TOB Option 2 Batch:

  o The TOB Option 2 transaction is not processed for the MIN Record, and the current Primary Organizations and Associated Members remain unchanged.

  o The rejected MIN Record transfer is removed from the TOB Option 2 Batch.

  o The rejected MIN Record transfer is reported on the *Physical Transfer of Beneficial Rights (BB) Report*.

  Note: The *BB Report* is NOT cumulative. A Member must review the report each time it is produced to review the activity from the previous cycle.

- If any unconfirmed MIN Record transfers remain in the TOB Option 2 Batch:

  o The status of the Batch is changed to **Overdue**.

  o The unconfirmed MIN Record transfers remain in the overdue Batch and are reported on the mandatory *Overdue Transfer of Beneficial Rights (BC) Report.*

## After the Transfer Date and until the Transfer Expiration Date (Overdue Status):

- Any remaining unconfirmed MIN Record transfers in the overdue TOB Option 2 Batch are reported on the *Overdue Transfer of Rights (BC) Report* until the Batch expires.

- MERS® System processes any newly confirmed or rejected MIN Record transfers each processing day after the Transfer Date and until the Transfer Expiration Date.

- If any unconfirmed MIN Record transfers remain in the Batch twenty (20) calendar days after the Transfer Date, a reminder displays on the MERS® System *Welcome* page for the initiating and confirming Members.

## On the Transfer Expiration Date (Pending Delete Status):

- The TOB Option 2 Batch expires.

- No further Confirmations are accepted for the TOB Option 2 Batch.

- Any unconfirmed MIN Record transfers in the TOB Option 2 Batch are not transferred, and the current Primary Organizations and Associated Members remain unchanged.



- The status of the TOB Option 2 Batch changes from **Overdue** to **Pending Delete** and then it is deleted as part of the work performed for that processing day.

- Any unconfirmed MIN Record transfers are reported on the optional *Expired Transfer of Beneficial Rights (BD) Report*.

# *Transfer of Servicing Rights*

The Transfer of Servicing Rights ("TOS") transaction is used to report the transfer of the Servicing Rights in an active, registered loan from one Servicer to another. A new Subservicer and/or Document Custodian can be named as part of the TOS transaction. The current Document Custodian can also be deleted, or it can remain on the MIN Record.

A TOS transaction may be submitted through the MERS® System UI or Flat-File Interface. When a TOS transaction is initiated, a TOS Batch is created on MERS® System for the MIN Records to be reported as transferred. There is no limit to the number of successive Transfers in which a MIN may be included.

MERS® System classifies Servicing Rights Transfers into two main categories on its monthly invoices and Reports (Flow Servicing Transfer and Seasoned Servicing Transfer) but there is no fee for either category. There is also an Intracompany Transfer, and it too incurs no fee.

Note: If the new Servicer is a Non-Member, a Deactivation transaction is used instead of the TOS transaction. (See Transfer to Non-MERS Status.)

When a new Subservicer is named in a TOS Batch, it is required to confirm the pending *Transfer* on behalf of the new Servicer by default. A Member can over-ride this default behavior by disabling the **Allow New Subservicer to Approve Servicing Transfers** option in its Member Profile to prohibit a new Subservicer in its pending *Transfers* from confirming the TOS Batch on the new Servicer's behalf.

A Member may choose to confirm the pending Seasoned TOS Batches where it is named the current Investor. The **Approval of Transfer Date** option is set by MERSCORP. An Investor cannot confirm Flow Transfers. Important dates for a TOS Batch include:

- Transfer Creation Date: The date on which a TOS Batch was created.

- Sale Date: For Seasoned Servicing Transfers, the date on which the new Servicer purchases the Servicing Rights. For Flow Servicing Transfers, MERS® System sets the Sale Date equal to the Transfer Date.

- Transfer Date: The date on which the responsibility for servicing a loan is reported as transferred to the new Servicer on MERS® System if all necessary Confirmations have been made.

Note: The new Servicer purchases the Servicing Rights on the Sale Date and the Transfer Date should be the date that the new Servicer begins servicing the loans. These dates are specified in the Purchase and Sale Agreement.

- Transfer Expiration Date: The date on which a TOS Batch expires:

   o MIN Record transfers not fully accepted or rejected by the Transfer Expiration Date remain with the current Primary Organizations and Associated Members.

   o MERS® System sets the Transfer Expiration Date to be 31 calendar days after the Transfer Creation Date or the Transfer Date, whichever is later.

Once a TOS transaction is complete, the previous Servicer and/or Subservicer is unable to perform further updates to the transferred MIN Records.



# Requirements: TOS Transactions

- Members are required to report the transfer of the contractual Servicing Rights in a MERS Loan or iRegistration loan from one Servicer to another using the TOS transaction.

- Each Member that is a party to a TOS Batch is responsible for ensuring that the Transfer Batch is initiated and confirmed within the timeframes set forth in this section.

- The Servicer or Subservicer must create a TOS Batch no later than seven (7) calendar days after the Transfer Date.

- The old and new Servicer or Subservicer must reconcile the TOS transaction:

  o The old Servicer or Subservicer must verify that its TOS Batches for the previous month were accepted by the new Servicer(s) or Subservicer(s) prior to the Transfer Expiration Date.

  o The new Servicer or Subservicer must verify the MIN Record transfers in the TOS Batches that name it as the new Servicer or Subservicer, accept the correct MIN Record transfers, report any discrepancies to the old Servicer or Subservicer, and reject any MIN Record transfers that should not be reported as transferred.

  o The new Servicer or Subservicer must verify that it has confirmed the TOS Batches naming it as the new Servicer or Subservicer for the previous month prior to the Transfer Expiration Date.

  o The old Servicer or Subservicer must work with the new Servicer or Subservicer to address any rejected MIN Record transfers, making the necessary corrections to allow the new Servicer and/or Subservicer to accept the MIN Record transfers as applicable.

# Procedure: TOS Transaction

1. The TOS transaction process begins when two Members enter into a Purchase and Sale Agreement to transfer the Servicing Rights of one or more registered loans.

2. The current Servicer or Subservicer creates a TOS Batch (see Transfer of Servicing Rights QRG).

3. Once the TOS Batch is created:

   o All parties named in the TOS Batch can view the unexpired Batch in MERS® System. The *MIN Summary* page identifies a MIN Record in a TOS Batch.

   o If an incorrect Document Custodian or Subservicer is named, the Servicer or Subservicer must cancel and recreate the TOS Batch.

   o While the TOS Batch is in a **Pending** or **Overdue** status, the initiating Member can:

   o Change the Transfer Date, which removes any previous Confirmations. All MIN Record transfers in the Batch must be confirmed again.

     ▪ Add MINs to the Batch, but the additional MIN Record transfers must be confirmed before the transfers will be reported on MERS® System.

     ▪ Delete MINs from the Batch that were not yet confirmed by the new Servicer and/or Subservicer.

     ▪ Cancel the entire Batch before the Transfer Expiration Date.

   o Any Member required to confirm a TOS Batch may reject it any time before the Transfer Expiration Date, even if its Confirmation was automatic.

4. The Confirmation of a TOS Batch is automatic for the current Servicer or Subservicer that initiated the transaction. Any other current Servicer or Subservicer must confirm the TOS Batch (see Transfer Transactions Responsibilities QRG for details).

5. The new Servicer and/or Subservicer confirms the TOS Batch prior to the Transfer Expiration Date (see Transfer Confirmation QRG):



- o If the current Servicer creates the TOS Batch, its confirmation is automatic.
- o If no new Subservicer is in the TOS Batch, the new Servicer confirms the TOS Batch.
- o If a new Subservicer is named in the TOS Batch and the new Servicer has the **Allow New Subservicer to Approve Servicing Transfers** option:
  - ▪ Enabled, the new Subservicer must confirm the pending TOS Batch on behalf of the new Servicer. The new Servicer cannot confirm the pending TOS Batch.
  - ▪ Disabled, both the new Servicer and new Subservicer must confirm the pending TOS Batch.
- o If a current Subservicer creates a TOS Batch naming itself as the new Servicer, and names a new Subservicer, the new Subservicer must confirm the TOS Batch.
- o If an Investor has chosen to confirm its Seasoned Transfers, the Investor must confirm the TOS Batch if it is a Seasoned Transfer.

6. The current Servicer or Subservicer works with the new Servicer or Subservicer to address any MIN Record transfers rejected from the TOS Batch.

7. The current and new Servicers reconcile the TOS transaction.

# System Actions: TOS Transaction

### *Before the Transfer Date (Pending Status):*

- When a TOS Batch is created, MERS® System creates separate batches for Flow and Seasoned MIN Record transfers.
- In a Flow TOS Batch, if the submitted sale and transfer dates are not equal, MERS® System changes the Sale Date to the Transfer Date.
- A MIN Record transfer in a TOS Batch cannot be included in another TOS or TOS/TOB Combo Batch.
- A MIN Record transfer in a TOS Batch can also exist in a TOB Option 1 Batch:
  - o If **some** of the MIN Record transfers in the pending TOS Batch also exist in a TOB Option 1 Batch, MERS® System:
    - ▪ Creates a new TOS Batch to the new Servicer for the duplicate MIN Record transfers,
    - ▪ Removes the duplicate MIN Record transfers from the original TOS Batch,
    - ▪ Carries over any Confirmations made for the duplicate MIN Record transfers, and
    - ▪ Names the Agency as the Investor on the duplicate MIN Records, setting the Agency ID to the value in the TOB Option 1 Batch.
  - o If **all** the MIN Record transfers in the pending TOS Batch also exist in a TOB Option 1 Batch, MERS® System:
    - ▪ Does not create a new TOS Batch,
    - ▪ Names the Agency as the Investor on the MIN Records in the TOS Batch, and
    - ▪ Sets the Agency ID of the MIN Records to the value in the TOB Option 1 Batch.
- A MIN Record transfer in a TOS Batch can also exist in a TOB Option 2 Batch if the new Servicer and new Investor are the same entity.
- The optional *Pending Transfer of Servicing Rights (SA) Report* is generated daily listing all TOS Batches with a future Transfer Date. Confirmations are reported on the S*A Report* up to the Transfer Date.
- If a MIN Record transfer in a TOS Batch is rejected, it is reported on the mandatory *Transfer of Servicing Rejects/Warnings (SF) Report* for that processing day.
- If a MIN Record transfer is added to or removed from a TOS Batch, including one deactivated while in the Batch, it is reported on the mandatory *Modified Batch – Transfer of Servicing Rights (SJ) Report*.


- If a TOB Option 1 Batch replaces an Option 2 Investor named on a MIN Record transfer that is included in a TOS Batch, it is reported on the optional *Current Investor Changed for Pending TOS Rights (SH) Report*.

- If a MIN Record transfer is deleted from a pending TOS Batch because it is also in a TOB Option 1 Batch, it is reported on the optional *MINs Deleted from Pending TOS Rights (SI) Report*.

- A TOS Batch is automatically canceled if all the MIN Record transfers are deleted from the Batch.

- If a TOS Batch is canceled, it is reported on the optional *Canceled Transfer of Servicing Rights (SG) Report*.

### On the Transfer Date:

- For each fully-confirmed, active MIN Record transfer in the TOS Batch:

    o The Servicer and Subservicer fields are updated per the TOS transaction:

        ▪ The previous Servicer and/or Subservicer is unable to perform further updates to the transferred MIN Record.

        ▪ The new Servicer and/or Subservicer can update the MIN Record as needed.

    o Any existing Warehouse/Gestation Lender and/or Property Preservation Company named on the MIN Record before the transfer is removed.

    o Any existing Document Custodian named on a MIN Record remains unless a new Custodian was named as part of the TOS transaction, or the **Delete Current Custodian** option was selected when the TOS transaction was created.

    o Audit entries for the TOS transaction are written to the Milestones, MIN Audit, and MIN Transfer Audit pages for the MIN Record.

    o The transfer is reported on the mandatory *Physical Transfer of Servicing Rights (SC) Report* and the optional *MIN Milestones (VA) Report*.

    o The accepted MIN Record transfer is removed from the TOS Batch.

- For each rejected MIN Record transfer in the TOS Batch:

    o The TOS transaction is not processed for the MIN Record, and the current Primary Organizations and Associated Members remain unchanged.

    o The rejected MIN Record transfer is removed from the TOS Batch and reported on the *Physical Transfer of Servicing Rights (SC) Report*.

    ---
    Note: The *SC Report* is NOT cumulative. A Member must review the report each time it is produced to review the activity from the previous cycle.
    ---

- If any unconfirmed MIN Record transfers remain in the TOS Batch:

    o The status of the Batch is changed to **Overdue**.

    o The unconfirmed MIN Record transfers remain in the overdue Batch and are reported on the mandatory *Overdue Transfer of Servicing Rights (SE)* Report.

### After the Transfer Date and until the Transfer Expiration Date (Overdue Status):

- Any remaining unconfirmed MIN Record transfers in the overdue TOS Batch are reported on the *Overdue Transfer of Servicing Rights (SE) Report* until the Batch expires.

- MERS® System processes any newly confirmed or rejected MIN Record transfers each processing cycle after the Transfer Date and until the Transfer Expiration Date.


- If any unconfirmed MIN Record transfers remain in the Batch twenty (20) calendar days after the Transfer Date, a reminder displays on the MERS® System *Welcome* page for the initiating and confirming Members.

**On the Transfer Expiration Date (Pending Delete Status):**

- The TOS Batch expires.

- No further Confirmations are accepted for the TOS Batch.

- Any unconfirmed MIN Record transfers in the TOS Batch are not transferred, and the current Primary Organizations and Associated Members remain unchanged.

- The status of the TOS Batch changes from **Overdue** to **Pending Delete** and then it is deleted as part of the work performed for that processing day.

- Any unconfirmed MIN Record transfers are reported on the optional *Expired Transfer of Servicing Rights (SD) Report.*

# TOS/TOB Combination

The TOS/TOB Combo transaction is used to report the transfer of both the servicing rights and the Option 2 beneficial rights in a registered loan from one Member to another on the Transfer Date. A new Subservicer and/or Document Custodian can be named as part of the transaction. The current Document Custodian can also be deleted, or it can remain on the MIN Record.

If the servicing rights and beneficial rights are to be transferred to different Org IDs or transferred on different dates, the transfers should be reported separately using the TOS and TOB transactions.

A TOS/TOB Combo transaction may be submitted through the MERS® System UI or Flat-File Interface. When a TOS/TOB Combo transaction is initiated, a TOS/TOB Combo Batch is created on MERS® System for the MIN Records to be reported as transferred.

The TOS/TOB Combo transaction has the same requirements and undergoes the same processing as the TOS and TOB Option 2 transactions (see Transfer of Servicing Rights and TOB Option 2 Transfer) except as noted in this section.

## Requirements: TOS/TOB Combo Transactions

The requirements for a TOS/TOB Combo transactions are the same as those for the TOS and TOB Option 2 transactions (see Requirements: TOB Transactions and Requirements: TOS Transactions).

## Procedure: TOS/TOB Combo Transaction

1. The TOS/TOB Combo transaction process begins when two Members enter into a Purchase and Sale Agreement to transfer the servicing rights and the Option 2 beneficial rights of one or more registered loans.

2. The current Servicer or Subservicer creates a TOS/TOB Combo Batch.

   o A Transfer Date is specified for both the TOS and TOB component of the transaction.

   o The TOB Transfer Date cannot be later than the TOS Transfer Date, but may be a retroactive date within 60 calendar days of the transaction creation date.



3. Once a TOS/TOB Combo Batch is created:

   o All parties named in the TOS/TOB Combo Batch can view the unexpired Batch in MERS® System. The *MIN Summary* page identifies a MIN Record in a Batch.

   o If an incorrect Document Custodian or Subservicer is named in the TOS/TOB Combo Batch, the Servicer or Subservicer must cancel and recreate it.

   o While the TOS/TOB Combo Batch is in a **Pending** or **Overdue** status, the initiating Member can:

      ▪ Change the Transfer Date, which removes any previous Confirmations. All MIN Record transfers in the Batch must be confirmed again.

      ▪ Add MINs to the Batch, but the additional MIN Record transfers must be confirmed before the transfers will be reported on MERS® System.

      ▪ Delete MINs from the Batch that were not yet confirmed by the receiving party.

      ▪ Cancel the entire Batch before the Transfer Expiration Date.

   o Any Member required to confirm a TOS/TOB Combo Batch may reject it any time before the Transfer Expiration Date, even if its Confirmation was automatic.

4. The Confirmation of a TOS/TOB Combo Batch is automatic for the current Servicer or Subservicer that initiated the transaction. Any other current Servicer/Investor or Subservicer must confirm the TOS/TOB Combo Batch (see Transfer Transactions Responsibilities QRG for details).

5. The new Servicer/Investor and/or Subservicer confirm the TOS/TOB Combo Batch prior to the Transfer Expiration Date (see Transfer Confirmation QRG).

   o The new Servicer/Investor only confirms the TOS component of the transaction; the TOB component is not confirmed separately. All other confirmation requirements for a stand-alone TOS Batch apply.

6. The current Servicer or Subservicer works with the new Servicer or Subservicer to address any MIN Record transfers rejected from the TOS/TOB Combo Batch.

7. The previous and new Servicers reconcile the TOS/TOB Combo transaction.

# System Actions: TOS/TOB Combo

## *Before the Transfer Date (Pending Status):*

- When a TOS/TOB Combo Batch is created, MERS® System creates separate batches for Flow and Seasoned MIN Record transfers.

- In a Flow Batch, if the submitted sale and transfer dates are not equal, MERS® System changes the Sale Date to the Transfer Date.

- A MIN Record transfer in a TOS/TOB Combo Batch cannot be included in another TOS/TOB Combo, TOS, or TOB Option 2 Batch.

- A MIN Record transfer in a TOS/TOB Combo Batch can also exist in a TOB Option 1 Batch.

   o If some of the MIN Record transfers in the pending TOS/TOB Combo Batch also exist in a TOB Option 1 Batch, MERS® System:

      ▪ Creates a new TOS Batch to the new Servicer for the duplicate MIN Record transfers,

      ▪ Removes the duplicate MIN Record transfers from the TOS/TOB Combo Batch,

      ▪ Carries over any Confirmations made for the duplicate MIN Record transfers, and

      ▪ Names the Agency as the Investor on the duplicate MIN Records, setting the Agency ID to the value in the TOB Option 1 Batch.



- o If all of the MIN Records transfers in the pending TOS/TOB Combo Batch also exist in a TOB Option 1 Batch, MERS® System:
    - ▪ Changes the TOS/TOB Combo Batch to a TOS Batch retaining the original Batch Number,
    - ▪ Removes the TOB Transfer Date from the TOS Batch,
    - ▪ Names the Agency as the Investor on the MIN Records in the Batch, and
    - ▪ Sets the Agency ID of the MIN Records to the value in the TOB Option 1 Batch.
- TOS/TOB Combo transactions are reported on the TOS Reports. In addition, MIN Record transfers deleted from a TOS/TOB Combo Batch are reported on the *MINs Deleted from Pending TOS Rights (SI) Report*, and the *MINs Deleted from Transfer of Beneficial Rights (BH) Report*.
- For MIN Record transfers in a canceled TOS/TOB Combo Batch, MERS® System automatically reverses the servicing rights transfer at the Sale Date.

## *On the Transfer Date:*

- For each fully-confirmed MIN Record transfer in the TOS/TOB Combo Batch:
    - o The Servicer, Investor, and Subservicer fields are updated per the TOS/TOB Combo transaction:
        - ▪ The previous Servicer and/or Subservicer is unable to perform further updates to the transferred MIN Record.
        - ▪ The new Servicer and/or Subservicer can update the MIN Record as needed.
    - o Any existing Warehouse/Gestation Lender and/or Property Preservation Company named on a MIN Record is removed.
    - o Any existing Document Custodian named on a MIN Record remains unless a new Custodian was named as part of the Transfer, or the **Delete Current Custodian** option was selected when the TOS/TOB Combo Batch was created.
    - o Separate audit entries for the TOS and TOB components of the transaction are written to the *Milestones*, *MIN Audit*, and *MIN Transfer Audit* pages.
    - o The accepted MIN Record transfer is removed from the TOS/TOB Combo Batch.
- Each rejected MIN Record transfer in the TOS/TOB Combo Batch is removed from the Batch with all current Primary Organizations and Associated Members unchanged.
- If any unconfirmed MIN Record transfers remain in the TOS/TOB Combo Batch, the status of the Batch is changed to **Overdue.**

## *After the Transfer Date and until the Transfer Expiration Date (Overdue Status):*

- Any unconfirmed MIN Record transfers in the overdue TOS/TOB Combo Batch are reported on the *Overdue Transfer of Servicing Rights (SE) Report* until the Batch expires.
- MERS® System processes any newly confirmed or rejected MIN Record transfers each processing day after the Transfer Date and until the Transfer Expiration Date.
- If any unconfirmed MIN Record transfers remain in the Batch twenty (20) calendar days after the Transfer Date, a reminder displays on the MERS® System *Welcome* page for the initiating and confirming Members.

## *On the Transfer Expiration Date (Pending Delete Status):*

- The TOS/TOB Combo Batch expires.
- No further Confirmations are accepted for the Batch.


- Any unconfirmed MIN Record transfers in the Batch are not transferred, and all current Primary Organizations and Associated Members remain unchanged.

- The status of the Batch changes from **Overdue** to **Pending Delete** and then it is deleted as part of the work performed for that processing day.

- Any unconfirmed MIN Record transfers are reported on the optional *Expired Transfer of Servicing Rights (SD) Report.*

# Member-to-Member Petitions

The Member-to-Member Petition process allows a Member (the "Petitioner") to request the assistance of MERSCORP when the Petitioner encounters another active Member that is unresponsive to requests to initiate the necessary transactions on MERS® System to reflect the correct Servicer, Subservicer, and/or Investor on one or more MIN Records.

## Requirements: Member-to-Member Petition

The selling Member must be allowed seven (7) calendar days from the Transfer Date (TOB or TOS) to initiate the transfer transaction on MERS® System before the purchasing Member may begin the Member-to-Member Petition process.

## Procedure: Member-to-Member Petition

1. After seven (7) calendar days have elapsed since the Transfer Date, the Petitioner contacts the Help Desk to obtain MERS® System contacts for the selling Member.

2. If the selling Member does not respond to the Petitioner, the Petitioner contacts the Help Desk, which sends the Petitioner the *Member-to-Member Petition* with instructions.

3. The Petitioner completes the *Member-to-Member Petition* and submits the completed form along with exhibits to the Help Desk.

4. MERSCORP notifies the selling Member via email, providing the selling Member fourteen (14) calendar days to respond or resolve the matter.

5. The selling Member is invoiced for the work performed on its behalf.

# Member Notice of Default ("NOD") Dispute

In the event an Investor is involved in a dispute with a Servicer, Subservicer, or warehouse lender, the Members involved shall engage in a good faith effort to resolve their dispute. If necessary, the Investor can ask MERSCORP to prevent activity on the disputed MIN Records by the Servicer and/or Subservicer, correct the disputed MIN Records, and/or transfer the MIN Records to another Servicer and/or Subservicer.

## Procedure: Member NOD Dispute

1. The Investor notifies MERSCORP in writing of the dispute with the other Members and provides proof of ownership.

2. The Investor may ask MERSCORP to:

   o Prevent activity on the disputed MIN Records by the Servicer and/or Subservicer,

   o Correct the disputed MIN Records, or



o   Process a TOS, TOB, or TOS/TOB Combo transaction to report the disputed MIN Records as transferred to a new Servicer and/or Subservicer.

3.   MERSCORP reviews, approves, and processes the request and invoices the Investor for the related processing fees.

# MIN Record Deactivation

The MIN Record of a loan registered on MERS® System is deactivated when:

- MERS no longer holds an interest in the Mortgage (e.g., the lien has been released, the Mortgage has been assigned from MERS, the lien has been stripped or extinguished due to bankruptcy or foreclosure), including in conjunction with the Resignation or its Termination of a Member's membership, or

- An iRegistration will no longer be tracked on MERS® System.

The following MIN Record Deactivation transactions are further explained in the Procedures.

| Transaction | Used When |
|---|---|
| Paid in Full | • The interest held by MERS in the Mortgage securing a loan has been released by the Recordation of a Lien Release or UCC-3, or<br>• MERS's interest in a Mortgage is extinguished by a Deed-in-Lieu. |
| Transfer to Non-MERS Status | • An Assignment from MERS or UCC-3 is sent for Recordation for any reason other than the loan being in default or in bankruptcy (e.g., the servicing rights were sold to an organization that is not a Member),<br>• The Mortgage is a subordinate lien and is wiped out by the foreclosure of a prior lien, or<br>• The Mortgage is a subordinate lien and is extinguished by a lien stripping action in bankruptcy. |
| Deactivate-Assigned from MERS for Default or Bankruptcy | • An Assignment from MERS or UCC-3 is sent for Recordation due to:<br>  ▪ The loan being in default, or<br>  ▪ The borrower filing for bankruptcy protection and the Member intends to file Legal Proceedings. |

iRegistration loans have unique deactivation requirements; see iRegistration Loan Deactivation for details.

When a MIN Record is deactivated on MERS® System:

- Its MIN Status changes from "Active (Registered)" to the name of the *Deactivation* transaction used to deactivate the MIN Record (e.g., "Paid in Full").

- No further update is required by the Servicer or Subservicer unless it was deactivated in error (see Deactivation Reversals) or the Member re-registers the loan on MERS® System (see Procedure: Re-registration after Deactivation).

A *Paid Off* deactivation processed on MERS® eRegistry for an Electronic Record can automatically cascade to a MIN Record on MERS® System if the Participant requesting the deactivation has the **Cascade Transactions** option enabled in its Member Profile and the MIN Record and Electronic Record share the same MIN. The deactivation is identified as *Paid Off – eReg* on reports, milestones, and audit history.

Note: A Deactivation transaction submitted by a Member for a MIN Record that is in a Transfer Batch will not be processed by MERS® System unless it originated from MERS® eRegistry.



# Inactive MIN Record Deidentification and Archival Processes

MERS® System takes the following actions on an inactive MIN Record once it has been in an inactive status for the specified period of time:

- After seven (7) years, MERS® System deidentifies the SSN and TIN for all named Borrowers by replacing the first five (5) digits with the string "97000".

- After ten (10) years, MERS® System archives the MIN Record retaining a limited subset of data on MERS® System for historical tracking purposes, which is accessible to any Member that knows the MIN.

The tables below list the inactive MIN Status values subject to the Deidentification and Archival processes and include the trigger date for each status:

- The following inactive MIN Status values on MERS® System are currently used to deactivate active MIN Records and are subject to the Deidentification and Archival processes:

| Inactive Status | Trigger Date for Process |
|---|---|
| Paid in Full | Deactivation Date |
| Transfer to Non-MERS Status | Deactivation Date |
| Deactivation-Assigned from MERS for Default or Bankruptcy | Deactivation Date |
| Registration Reversal | Registration Date if available, else Pre-Registration Date |
| Pre-Closing | Pre-Registration Date |

- The following inactive MIN Status values on MERS® System are generally no longer used to deactivate active MIN Records but are still subject to the Deidentification and Archival processes:

| Inactive Status | Trigger Date for Process |
|---|---|
| Foreclosure Complete | Deactivation Date |
| Default by Servicer | Deactivation Date |
| Default by Subservicer | Deactivation Date |
| Reinstated or Modified (Option 1), Not Assigned Back to MERS | Deactivation Date |
| Resignation from MERS | Deactivation Date |
| MERS123 Cancelled Preliminary Registration | Pre-Registration Date |

## Inactive MIN Record SSN and TIN Deidentification

Once a MIN Record has been in an inactive status for seven (7) years, MERS® System deidentifies the SSN and TIN for all named Borrowers by replacing the first five (5) digits with the string "97000". Example: 970001234.

- The deidentification process runs nightly and updates all fields in MERS® System that store Borrower SSN and TIN, including audit entries.

- Updates performed by the deidentification process generate audit records, but no entries are generated in MERS® System reports.

- Once Borrower SSN and TIN have been deidentified on an inactive MIN Record:

  o SSN/TIN searches to retrieve information about the deidentified record will return an error stating that no MINs match the submitted search criteria.



- o Members that need to reverse the deactivation of a Deidentified MIN Record must update the record with the actual SSN or TIN of each remaining Borrower before processing the reversal (see Reversals QRG for instructions).

- o A deidentified SSN/TIN on a MIN Record with a status of *Registration Reversal* is updated by the Member as part of the *Re-Registration* transaction.

- o A deidentified SSN/TIN on a MIN Record with a status of *Pre-Registration* is updated as part of the *Post-Closing Registration* transaction.

## Inactive MIN Record Archival Process

Once a MIN Record has been in an inactive status for ten (10) years, MERS® System archives the MIN Record on MERS® System retaining a limited subset of data on MERS® System for historical tracking purposes, which is accessible to any Member that knows the MIN.

- Except for the data retained for tracking purposes, the archival process removes all data, Milestones, and MIN Audit entries from MERS® System, along with any eClosing video associated with the inactive MIN Record in the RON Video Storage Solution.

- The following data remains available on MERS® System after a MIN Record is archived, including the rights holders associated with the MIN Record at the time it was deactivated:

  - o MIN
  - o Servicer
  - o Subservicer
  - o Investor
  - o Deactivation Date
  - o Archived Status

- The **Status** of an Archived MIN Record displays as: "Inactive - all other data has been purged".

- For Mortgage loans registered on both MERS® System and MERS® eRegistry, each registration is archived separately when it meets the archival criteria.

  - o The indicator on MERS® System and MERS® eRegistry that denotes whether the same MIN was used to register the loan or Digital Asset on both applications is updated to "No" if the record has not yet been archived in both applications.

  - o Any eClosing video associated with the MIN is not deleted from RON Video Storage until both the MIN and Electronic Records have been archived.

- Once an inactive MIN Record has been archived, it cannot be restored to MERS® System.

- The data retained for an Archived MIN Record can be retrieved for review using the MIN as search criteria through *Batch Inquiry*, *XML Inquiry* online *MIN Find* search, and MERS® ServicerID.

  - o The data returned to a Member inquiring about an Archived MIN Record is the same for all Members except for Investor Name and Org ID which are returned conditionally based on existing logic in MERS® System for *Inquiry* transactions.

  - o A search using other data as criteria to locate an Archived MIN Record (e.g., Borrower or Property Info) will fail to locate the record because that data is no longer in MERS® System.

- Although the MIN assigned to an Archived MIN Record cannot be reused to register another loan, it can be used to re-register the same loan on MERS® System if needed.

  - o The *Re-Registration* is submitted and processed like a new *Registration* with all applicable system edits enforced.

  - o Any Member can re-register a loan associated with an Archived MIN Record and does not have to be identified in the data associated with the Archived MIN Record.

  - o Upon successful completion of the *Re-registration* transaction:

    - ▪ The subset of data retained from the Archived MIN Record for tracking purposes is deleted.


- The data from the *Re-Registration* is populated to the MIN Record, and its **Status** is set to *Active*.

- No entry from the Archived MIN Record is retained on the *Milestones* or *MIN Audit* pages.

# *Paid in Full Deactivation*

## Requirements: Paid in Full Deactivation

- The Paid in Full transaction must be used to deactivate a MIN Record when the interest held by MERS in the Mortgage securing a loan has been released by the Recordation of a Lien Release or UCC-3, or when MERS's interest in a Mortgage is extinguished by a Deed-in-Lieu.

  - The only time the **Paid in Full** transaction is not the correct transaction to use when the interest held by MERS has been released is when a MOM Security Instrument was erroneously sent for Recordation on a loan that did not close. In this scenario:

    - The Lien Release, UCC-3, or Deed-in-Lieu must conform to the requirements set forth in this section, and

    - The loan registration must be reversed using the Registration Reversal transaction (see Registration Reversal).

  - When a MIN Record is deactivated using the Paid in Full transaction because the loan has been consolidated into a new CEMA Loan, MERSCORP does not require the Recordation of a Lien Release.

- If a Member decides to Charge Off a loan then it may only deactivate the MIN Record as Paid in Full if a Lien Release or UCC-3 is sent for Recordation. Until that occurs, the MIN Record must remain Active because MERS remains the Mortgagee. Alternatively, the Member may send an Assignment from MERS for Recordation and deactivate the MIN Record as Transfer to Non-MERS Status.

- The MIN Record must be deactivated using the Paid in Full transaction no later than seven (7) calendar days after the event or action occurs in the Member's System of Record that represents the decision to execute a Lien Release, UCC-3, or Deed-in-Lieu.

- The Lien Release, UCC-3, or Deed-in-Lieu associated with a Paid in Full MIN Record deactivation must be:

  - Prepared and executed in accordance with the applicable document requirements (see MERS Documents), and

  - Promptly sent for Recordation in accordance with state and Investor guidelines.

## Procedure: Paid in Full Deactivation

To deactivate a MIN Record as Paid in Full on MERS® System:

1. The Servicer or Subservicer receives payment in full, Charges Off the loan, or accepts a short sale or Deed-in-Lieu.

2. The Servicing Member ensures that a Lien Release, UCC-3, or Deed-in-Lieu is prepared and sent for Recordation.

3. The Servicer, or Subservicer if one is named, deactivates the MIN Record as **Paid in Full** (see Paid in Full QRG).

4. For a successfully processed *Paid in Full* deactivation by an Automated Lien Release participant, MERS® System determines if a lien release package request can be generated and sent to Simplifile® Document Builder. See Automated Lien Release Processing for more information.



# System Actions: Paid in Full Deactivation

- When a MIN Record is deactivated as Paid in Full, its status changes to **Paid in Full**, and the current date is set as the deactivation date.

- The **Paid in Full** deactivation appears on the *Milestones* and *MIN Audit* pages for the MIN Record.

- Successful **Paid in Full** deactivations are reported on the optional *Paid in Full Verification (DK), Deactivation Summary (DD)*, and *MIN Milestones (VA) Reports*.

- Unsuccessful **Paid in Full** deactivations submitted through the Flat-File Interface are reported on the mandatory *Payoff Reject (DP) Report*.

# *Transfer to Non-MERS Status Deactivation*

## Requirements: Transfer to Non-MERS Status Deactivation

- The Transfer to Non-MERS Status transaction must be used to deactivate a MIN Record when:

  o An Assignment from MERS or UCC-3 is sent for Recordation for any reason other than the loan being in default or in bankruptcy (e.g., the servicing rights were sold to a non-Member),

  o The Mortgage is a subordinate lien that was wiped out by the foreclosure of a prior lien, or

  o The Mortgage is a subordinate lien and is extinguished by a lien stripping action in bankruptcy.

- The MIN Record must be deactivated as **Transfer to Non-MERS Status** no later than seven (7) calendar days after the event or action in the Member's System of Record that represents the decision to execute the Assignment from MERS or UCC-3 or otherwise deactivate the MIN Record.

- The Assignment from MERS, UCC-3, or other documentation associated with a **Transfer to Non-MERS Status** MIN Record deactivation must be:

  o Prepared and executed in accordance with the applicable document requirements (see MERS Documents),

  o Executed no later than seven (7) calendar days after the event or action that occurs in the Member's System of Record representing the decision to execute the document or deactivate the MIN Record, and

  o Promptly sent for Recordation.

## Procedure: Transfer to Non-MERS Status Deactivation

To deactivate a MIN Record as Transfer to Non-MERS Status on MERS® System:

1. An action or event occurs on the Servicer's or Subservicer's System of Record that requires a loan to be deactivated as **Transfer to Non-MERS Status**.

2. The Servicing Member ensures that an Assignment from MERS or UCC-3 is prepared and sent for Recordation except in instances where the Mortgage has been wiped out by the foreclosure of a prior lien or extinguished by a lien stripping action in bankruptcy.

3. The Servicer, or Subservicer if one is named, deactivates the MIN Record as **Transfer to Non-MERS Status** (see Transfer to Non-MERS Status QRG).


# System Actions: Transfer to Non-MERS Status Deactivation

- When a MIN Record is deactivated as Transfer to Non-MERS Status, its status changes to **Transfer to Non-MERS Status**, and the current date is set as the deactivation date.

- The **Transfer to Non-MERS Status** deactivation appears on the *Milestones* and *MIN Audit* pages for the MIN Record.

- Successful **Transfer to Non-MERS** deactivations are reported on the mandatory *Transfer to Non-MERS Status Verification (DL) Report* and optional *Deactivation Summary (DD) and MIN Milestones (VA) Reports.*

- Unsuccessful **Transfer to Non-MERS** deactivations submitted through the Flat-File Interface are reported on the mandatory *Transfer to Non-MERS Status Reject (DQ) Report.*

## *Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation*

## Requirements: Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation

- The Deactivate-Assigned from MERS for Default or Bankruptcy deactivation must be used to deactivate a MIN Record when:

  o An Assignment from MERS or UCC-3 is sent for Recordation due to the loan being in default, or

  o An Assignment from MERS or UCC-3 is sent for Recordation due to the borrower filing for bankruptcy protection and the Member intends to file Legal Proceedings.

- The MIN Record must be deactivated as **Deactivation-Assigned from MERS for Default or Bankruptcy** no later than seven (7) calendar days after the event or action in the Member's System of Record that represents the default or decision to initiate foreclosure or the decision to file Legal Proceedings, as applicable.

- The Assignment from MERS or UCC-3 associated with a **Deactivate-Assigned from MERS for Default or Bankruptcy** MIN Record deactivation must be:

  o Prepared and executed in accordance with the applicable document requirements (see MERS Documents),

  o Executed no later than seven (7) calendar days after the event or action that occurs in the Member's System of Record that represents the default or decision to initiate foreclosure or represents the decision to file Legal Proceedings, as applicable,

  o Executed before foreclosure is initiated or Legal Proceedings are filed, as applicable, and

  o Promptly sent for Recordation.

- If an Assignment from MERS or UCC-3 is sent for Recordation but foreclosure is not initiated (e.g., the loan reinstates), **and** the MIN Record status is still **Active**, the MIN Record must be deactivated as Transfer to Non-MERS Status (see Transfer to Non-MERS Status).

Each Member decides when it is appropriate to use the **Deactivation-Assigned from MERS for Default or Bankruptcy** transaction on their registered loans within the context of the requirements set forth in the Governing Documents, including the determination of when a loan is considered to be in default.

---

Note: Members should consult their legal counsel to determine when in a given jurisdiction foreclosure is said to be initiated.

---



## Procedure: Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation

To deactivate a MIN Record using the *Deactivate-Assigned from MERS for Default or Bankruptcy* transaction on MERS® System:

1. An action or event occurs on the Member's System of Record that requires the loan to be deactivated as **Deactivation-Assigned from MERS for Default or Bankruptcy**.

2. The Servicing Member ensures that an *Assignment from MERS* or *UCC-3* is prepared and executed *before* initiating foreclosure or filing Legal Proceedings.

3. The *Assignment from MERS* or *UCC-3* is promptly sent for Recordation.

4. The Servicer, or Subservicer if one is named, deactivates the MIN Record as **Deactivation-Assigned from MERS for Default or Bankruptcy** (see Deactivate-Assigned from MERS for Default or Bankruptcy QRG).

5. The Servicer or Subservicer may name a Property Preservation Company, or a Property Preservation Company may name itself, on a MIN Record with a status of **Deactivation -Assigned from MERS for Default or Bankruptcy** (see Property Preservation).

## System Actions: Deactivate-Assigned from MERS for Default or Bankruptcy Deactivation

- When a MIN Record is deactivated due to foreclosure or bankruptcy, its status changes to **Deactivation-Assigned from MERS for Default or Bankruptcy**, and the current date is set as the deactivation date.

- The **Deactivation-Assigned from MERS for Default or Bankruptcy** deactivation appears on the *Milestones* page.

- Changes to the Property Preservation Company field are listed on the *MIN Audit* page.

- Successful **Deactivation-Assigned from MERS for Default or Bankruptcy** deactivations are reported on the mandatory *Foreclosure Verification (DA) Report* and optional *Deactivation Summary (DD)* and *MIN Milestones (VA) Reports*.

- Unsuccessful **Deactivation-Assigned from MERS for Default or Bankruptcy** deactivations submitted through the Flat-File Interface are reported on the mandatory *Foreclosure Reject (DF) Report*.

## *Deactivation Reversals*

If a MIN Record is erroneously or incorrectly deactivated on MERS® System, the Servicer or Subservicer reverses the Deactivation using the Deactivation Reversal transaction. This section covers the reversal of the following Deactivation transactions:

- Paid in Full

- Transfer to Non-MERS Status

- Deactivate-Assigned from MERS for Default or Bankruptcy

---

Note: A *Paid Off – eReg* deactivation cascaded from MERS® eRegistry cannot be reversed using the *Deactivation Reversal* transaction on MERS® System. The *Paid Off* deactivation must be reversed on MERS® eRegistry, and the reversal will automatically cascade to the MIN Record on MERS® System if the Participant requesting the reversal has the **Cascade Transactions** option enabled in its Member Profile.

---



## Requirements: Deactivation Reversals

- If a Deactivation is performed erroneously, the Servicer or Subservicer must reverse it on MERS®
  System no later than seven (7) calendar days after the error is identified.

  o If a MIN Record was deactivated but no Lien Release, Assignment from MERS, or UCC-3 was sent
  for Recordation to release MERS's interest in the Mortgage, the erroneous Deactivation must be
  reversed to return the MIN Record's status to Active.

  o If a MIN Record was deactivated using a Deactivation transaction that does not correspond to the
  type of document sent for Recordation, the incorrect Deactivation status must be reversed, and then
  the MIN Record must be deactivated using the correct Deactivation transaction.

## Procedure: Deactivation Reversals

1. The Servicer or Subservicer verifies that the Deactivation should be reversed.

2. The Servicer or Subservicer processes the **Deactivation Reversal** to revert the MIN Record to an
   Active status on MERS® System (see Reversals QRG ).

3. Once the Deactivation is reversed, any corrections needed to the MIN Record are completed via a MIN
   Update (see MIN Update QRG), and any transfers that have occurred are reported to MERS® System
   (see Transfers).

## System Actions: Deactivation Reversals

- When a MIN Record Deactivation is reversed on MERS® System, its status changes to **Active
  (Registered)**.

- The **Deactivation Reversal** appears on the *Milestones* page.

- Successful **Deactivation Reversals** are reported on the corresponding mandatory Deactivation
  verification report.

- Unsuccessful **Deactivation Reversals** submitted through the Flat-File Interface are reported on the
  corresponding mandatory deactivation reject report.

# MERS® Automated Document Request Service

The *MERS® Automated Document Request* service provides MERS® System Members who also use
Simplifile® Document Builder with an API between the two applications to streamline the document
preparation process for supported document types. The initial supported document type, offered as the
*Automated Lien Release* service, provides participants with an automated solution to generate Lien Release
packages in Simplifile® Document Builder as part of their existing daily MERS® System workflow for Paid in
Full deactivations for loans that name Mortgage Electronic Registration Systems, Inc. ("MERS") mortgagee
(a "MERS Loan"). The Lien Release can satisfy applicable MERS Document requirements, including
appropriate language to identify MERS as Mortgagee.

When an *Automated Lien Release* participant successfully completes a *Paid in Full* deactivation for one of
its eligible MERS Loans, MERS® System uses an API to create a lien release package for the participant to
complete in Simplifile® Document Builder. Simplifile® Document Builder evaluates each lien release request
to ensure it is as electronic as possible—from all ink, to hybrid, to fully digital. The *Automated Lien Release*
service supports *Paid in Full* deactivations submitted from both the Online and Batch interfaces with no
additional development work needed from a Member.



The fee for each lien release package that MERS® System submits to Simplifile® Document Builder is specified on the MERS® System Pricing Schedule and is billed to the Member by Simplifile through their existing process.

# Automated Document Request Participant Requirements

- In order to use the *Automated Document Request* service, a Member must:
  - o Be an active client of the Simplifile® Document Builder product.
  - o Execute the *MERS® Automated Document Request Addendum*.
  - o Have its integration set up by MERSCORP between its Org ID on MERS® System and its Submitter ID in Simplifile® Document Builder.
  - o Complete an Integration phase during which the Member tests the *Automated Lien Release* functionality in a non-Production environment before using it in the Production environment.
- A Member using the Automated Document Request service is responsible for ensuring that:
  - o Any steps required to complete a lien release package in Simplifile Document Builder are performed as necessary, including a review of the information sent by MERS® System to ensure it is correct for the Lien Release being generated,
  - o The MERS Documents it generates from Simplifile Document Builder are prepared and executed in accordance with the applicable MERS Documents requirements, and
  - o Any MERS Document to be recorded is promptly sent for Recordation.

# Automated Lien Release Processing

The following steps are performed after a *Paid in Full* deactivation is successfully processed for an Automated Lien Release participant.

1. For deactivations processed online, MERS® System displays a message reminding the Member to check their MERS® System reports for the processing results of the lien release package request.

2. MERS® System determines if a lien release package request can be generated and sent to Simplifile® Document Builder. See System Actions for detailed process flow.

3. Simplifile® Document Builder processes the lien release package requests submitted by MERS® System and communicates the results back to MERS® System.

4. MERS® System generates the following reports to help an Automated Lien Release participant determine the next steps required to complete the lien release for the loan:
   - o The *Automated Document Request Verification (RV) Report* includes *Paid in Full* deactivations that resulted in the creation of a lien release package in Simplifile® Document Builder.
   - o The *Automated Document Request Rejects/Warnings (RR) Report* includes *Paid in Full* deactivations that did not result in the creation of a package in Simplifile® Document Builder.

5. The Member reviews the *RV* and *RR* reports to determine next steps to complete the lien release:
   - o For *Paid in Full* deactivations that result in the creation of a lien release package, the Member accesses Simplifile® Document Builder to complete the package.
   - o For *Paid in Full* deactivations that do not result in the creation of a lien release package, the Member must manually create the package in Simplifile® Document Builder.



6. If a *Paid in Full* deactivation is reversed by an Automated Lien Release participant, MERS® System returns a warning message to remind the Member to cancel the lien release package in Simplifile® Document Builder. The warning is included in the *RR Report* and displays to a user in the online confirmation message.

   o The Member must cancel the lien release package if it is pending in Simplifile® Document Builder, or

   o If the lien release was sent for Recordation, the Member must take the necessary steps to cancel the erroneous lien release in the applicable public land records in accordance with the requirements set forth in the Governing Documents.

# System Actions: Automated Lien Release Processing

The following actions occur for a successfully processed *Paid in Full* deactivation for a Member who is an Automated Lien Release participant:

1. MERS® System determines if the property state is excluded from the Automated Lien Release service by reviewing the **Lien Release States Excluded** field for the Member's Org ID.

2. If the state is part of the exclusion list for the Automated Lien Release service, MERS® System:

   o Does not create a lien release package request to submit to Simplifile® Document Builder and

   o Reports the non-creation of the lien release package on the Member's *RR Report*.

   o The Member must manually create the lien release package in Simplifile® Document Builder.

3. If the state is not excluded, MERS® System proceeds to analyze the data in the **County/Place Code** field for the loan.

   Note: While the **County/Place Code** field supports multiple county or place values per loan, registered loans infrequently have more than one value in the field.

   o If the field contains a single County Code, MERS® System generates a lien release package request that includes the county code.

   o If the field contains a single Place Code, MERS® System generates a lien release package request that includes the name associated with the place code and its state abbreviation.

   o If the field has a single **County Code** and **Place Code**, MERS® System generates a lien release package request that includes the county code.

   o MERS® System does not generate a lien release package request if the **County/Place Code** field:

     ▪ Contains a value of *County Unknown*,

     ▪ Contains multiple **County Codes**, or

     ▪ Contains multiple **Place Codes**.

4. MERS® System queues the lien release package requests it creates and submits them to Simplifile® Document Builder for processing every 60 minutes.

5. Simplifile® Document Builder uses its existing process to review each lien release package submitted by MERS® System. If all validations pass, Simplifile® Document Builder:

   o Creates a lien release package for the Member to complete in Simplifile® Document Builder,

   o Bills the Member for the lien release package through its existing process, and

   o Sends a response back to MERS® System to confirm the creation of the package:

     ▪ MERS® System reports the creation of the lien release package on the *RV Report*.

     ▪ MERS® System creates an audit entry on the *Milestones* page of the MIN Record to document the creation of the lien release package.



o The Member must take the necessary steps to complete the lien release package in Simplifile® Document Builder.

6. If Simplifile® Document Builder cannot create a lien release package based on the request from MERS® System, it sends a response to MERS® System confirming the package was not created.

   o Simplifile® Document Builder rejects lien release packages if it does not support the county in which the property is located or cannot uniquely identify said county.

   o No fee is billed for a request submitted by MERS® System that does not result in the creation of a lien release package in Simplifile® Document Builder.

   o MERS® System reports *Paid in Full* deactivations that did not result in the creation of a lien release package in Simplifile® Document Builder on the *RR Report*. The report includes the reason the lien release package was not created.

   o The Member must manually create the lien release package in Simplifile® Document Builder.

# Modification Agreements

The MIN Update transaction on MERS® System is used to report that a Lender and borrower(s) have entered into a Modification Agreement to change the terms of a Note and/or Mortgage.

## *Requirements: Modification Agreements*

- Any Modification Agreement executed for a MERS Loan to convert it from a Construction Loan to a permanent Mortgage loan must be reported to MERS® System no later than seven (7) calendar days after:

  o The Modification Agreement's effective date if the loan is registered on MERS® System,

  o The Registration Date if the Modification Agreement is being reported as part of a Re-registration, or

  o The Transfer Date if a Member has purchased a loan and the Modification Agreement was not previously reported to MERS® System.

- Members are not required to report any other type of Modification Agreement to MERS® System.

- Any MERS Document generated during the modification process must be prepared and executed in accordance with the applicable document requirements (see MERS Documents), and any MERS Document to be recorded must be promptly sent for Recordation.

## *Procedure: Modification Agreements*

1. A Lender and borrower(s) enter into a Modification Agreement. Any MERS Document that will be recorded in the public land records is promptly sent for Recordation.

2. For a MERS Loan that is converted from a Construction Loan to a permanent Mortgage loan, the Servicer or Subservicer reports the Modification Agreement to MERS® System (see Modification QRG).

## *System Actions: Modification Agreements*

When a MIN Update is used to report a Modification Agreement on MERS® System:

- The changes to the Modification Note Date and Modification Note Amount fields on the MIN Record are listed on the *MIN Audit* page.



- Successful modifications are reported on the optional *Maintenance Verification (MA)* and *MIN Milestones (VA) Reports*.

- Unsuccessful modifications submitted through the Flat-File Interface are reported on the mandatory *Maintenance Rejects/Warnings (MB) Report*.

# Construction and CEMA Loans

MERS® System supports the registration of both Construction Loans and Consolidation, Extension, and Modification Agreement Loans ("CEMA Loans").

- A Construction Loan is used to pay for the cost of building or renovating a home.

- A CEMA Loan may be used in the state of New York to consolidate or extend the term of an existing loan with or without additional funding to save the borrower from paying taxes associated with refinancing.

## *Requirements: Construction and CEMA Loans*

- Any Modification Agreement executed for a MERS Loan to convert it from a Construction Loan to a permanent Mortgage loan must be reported to MERS® System. See Modification Agreements for details.

- Any CEMA Loan that is a MERS Loan must be registered as a new loan on MERS® System. See Loan Registration for details.

- Any MERS Document generated during the CEMA Loan origination process (e.g., Modification Agreement, CEMA, gap Mortgage, consolidated Mortgage, Assignment) must be prepared and executed in accordance with the applicable document requirements (see MERS Documents), and any MERS Document to be recorded must be promptly sent for Recordation.

- The requirements for Construction Loans and CEMA Loans are the same as the corresponding loan type (i.e., MOM, Non-MOM, or iRegistration).

## *Procedures: Construction Loans*

In this section, the procedures for processing Construction Loans on MERS® System are organized into the following categories:

- Construction Loan Modified to Become Permanent: This procedure is used when a Construction Loan has been modified to become the permanent Mortgage loan.

- Construction Loan Paid off by Permanent Loan: This procedure is used when a Construction Loan is paid off by the permanent Mortgage loan.

## Procedure: Construction Loan Modified to Become Permanent

A Construction Loan previously registered on MERS® System may be modified to become the permanent Mortgage loan.

1. When construction is completed, the Lender and borrower enter into a Modification Agreement to convert the temporary Construction Loan to a permanent loan.

2. The Servicer or Subservicer performs a MIN Update to report the Modification Agreement (see Modification Agreements).

 **MERS**®

## Procedure: Construction Loan Paid off by Permanent Loan

A Construction Loan previously registered on MERS® System may be paid off by the permanent Mortgage loan. If the permanent loan is a MERS Loan, it must be registered on MERS® System as a new loan and will incur a separate Registration fee.

1. When construction is completed, the Lender and borrower close a permanent loan that includes the pay off of the temporary Construction Loan.

2. If the permanent loan is a MERS Loan, the registering Member uses a new MIN to register the permanent loan on MERS® System like any other loan (see Loan Registration).

3. The Servicer of the Construction Loan, or Subservicer if one is named, deactivates the MIN Record as **Paid in Full** once it has been paid off by the permanent loan (see Paid in Full).

## *Procedure: CEMA Loan Registration*

The following procedure is used to register a CEMA Loan on MERS® System if it is a MERS Loan.

1. The Lender and borrower close a CEMA Loan.

2. The registering Member uses a new MIN to register the CEMA Loan on MERS® System, entering the consolidated note amount in the Note Amount field (see Loan Registration).

3. If the original loan is registered on MERS® System, the Servicer of that loan, or Subservicer if one is named, deactivates the MIN Record as **Paid in Full** once it has been consolidated into the new CEMA Loan (see Paid in Full).

When a MIN Record is deactivated using the Paid in Full transaction because the loan has been consolidated into a new CEMA Loan, MERSCORP does not require the Recordation of a Lien Release.

## *System Actions: Construction and CEMA Loans*

- See System Actions: Loan Registration for details on the system actions associated with the registration of a loan on MERS® System.

- See System Actions: Paid in Full for details on the system actions associated with the Paid in Full deactivation on MERS® System.

- See System Actions: Modification Agreements for details on the system actions that occur when a MIN Update is used to report a Modification Agreement on MERS® System.

# Assumption of Mortgage

The Assumption transaction on MERS® System is used to report the acceptance of the obligations of a mortgagor under an existing Mortgage when:

- A new borrower assumes the outstanding Mortgage debt,

- A new borrower is added to the existing loan obligation, or

- An existing borrower is removed from the loan obligation.



## *Requirements: Assumption of Mortgage*

- The Assumption must be reported to MERS® System no later than seven (7) calendar days after the effective date of the assumption agreement or the Registration Date if the Assumption is reported as part of a Re-registration. The effective date of an assumption agreement is the date on which the debt obligation was assumed. For the purpose of satisfying this requirement, a Member may alternatively use the date upon which the assumption agreement is entered into its System of Record as the trigger for reporting the Assumption to MERS® System, which may include receipt of a *Release of Liability Letter* from the U.S. Department of Veterans Affairs.

- Any MERS Document generated during the Assumption process must be prepared and executed in accordance with the applicable requirements (see MERS Documents), and any MERS Document to be recorded must be promptly sent for Recordation.

## *Procedure: Assumption of Mortgage*

1. One (1) or more mortgagors enter into an agreement with a Lender to accept the obligations under an existing Mortgage for a loan registered on MERS® System.

2. The Servicer or Subservicer updates the borrower information for the MIN Record on MERS® System using the Assumption transaction (see Assumption QRG).

## *System Actions: Assumption of Mortgage*

- When an Assumption transaction is processed on MERS® System:

  - For the first Assumption of a registered Mortgage loan, the current borrower information is copied to the original borrower fields on the MIN Record.

  - All original borrower information is retained for the life of the loan.

  - Any borrower added with the Assumption transaction is reported as a current borrower for the loan, and any borrower removed is no longer reported as a borrower.

  - If multiple Assumptions occur, interim borrower(s) are not tracked.

- Assumptions are listed on the *MIN Audit* page.

  - The Assumption date is not stored on MERS® System.

  - The date the Assumption transaction was processed is listed on the *Milestones* page.

- Successful Assumptions are reported on the mandatory *Assumption Verification (AA) Report* and the optional *MIN Milestones Report for Associated Members (VA)*.

- Unsuccessful Assumptions submitted through the Flat-File Interface are reported on the mandatory *Assumption Rejects/Warnings (AB) Report*.

# Property Preservation

The Property Preservation Company field on MERS® System allows a Servicer or Subservicer to name up to four (4) Property Preservation Companies on a MIN Record with a vacant property. Other Members use the MIN Find or MERS® Link search features to identify these companies and retrieve their contact information.


## *Procedure: Property Preservation Member Updates*

1. The Servicer and Property Preservation Company create Property Preservation contacts in their Member Profile to be displayed on the MERS® System *Member Summary* and *MIN Summary* pages and in MERS® Link searches(see Member Information - Contacts).

2. A Servicer or Subservicer may establish a relationship with one or more Property Preservation Companies to allow these companies to add or remove their Org IDs from the MIN Records naming the Servicer or Subservicer (see Member Information – Relationships QRG).

3. Up to four (4) Property Preservation Company Org IDs may be added to a Member's Transaction Default Settings so they will be included by default on all loans registered by the Member using the MERS® System UI (see Transaction Default Settings QRG).

## *Procedure: Property Preservation MIN Updates*

If a MIN Record has a status of **Active**, **Deactivation-Assigned from MERS for Default or Bankruptcy**, or **Foreclosure Complete**:

1. The Servicer or Subservicer may add or remove a Property Preservation Company through a MIN Update regardless of whether a Property Preservation Company relationship exists in its Member Profile (see MIN Update QRG).

2. The Property Preservation Company may add or remove itself through a MIN Update if it has a Property Preservation Company relationship with the Servicer or Subservicer.

## *System Actions: Property Preservation*

- Changes to the Property Preservation Company fields on a MIN Record are listed on the *MIN Audit* page.

- Successful Property Preservation Company updates are reported on the optional *Maintenance Verification (MA) Report*.

- Unsuccessful Property Preservation Company updates submitted through the Flat-File Interface are reported on the mandatory *Maintenance Rejects/Warnings (MB) Report*.

- A Property Preservation Company has view-only access to the MIN Records on which it is named and is identified on the *MIN Summary* page and in MERS® Link searches.

- The Property Preservation Company receives the optional:

  o *MIN Milestones (VA)* and *Change Notification (VB)* reports for each MIN Record on which it is named, and

  o The *Maintenance Verification (MA) Report* if it adds or removes itself to/from a MIN Record.

- When the Servicer named on a MIN Record changes, all of the Property Preservation Company Org IDs are removed.

# MERS® System Quality Assurance Program

The intent of the MERS® System Quality Assurance ("QA") Program is to assure that each Member has processes in place to ensure compliance with the requirements set forth in the Governing Documents.

Key components of the MERS® System QA Program include the following:

- **QA Plan:** Confirms that a Member is compliant with the requirements set forth in the Governing Documents. For details, refer to MERS® System QA Plan.


- **Annual Report:** Confirms that a Servicer has processes and controls in place to ensure compliance with the requirements set forth in the Governing Documents and has integrated these requirements into its daily business practices. For details, refer to Annual Report.
- **Data Reconciliation:** Members reconcile all required and conditionally-required fields on MERS® System with their System of Record. For details, refer to Data Reconciliation.
- **QA Reviews:** Allows MERSCORP to monitor Member compliance with the requirements set forth in the Governing Documents. For details, refer to Quality Assurance Reviews.

# Requirements: MERS® System QA Program

- Each Member is required to have processes in place to ensure compliance with the requirements set forth in the Governing Documents and integrate these requirements into its daily business practices.
- Upon a Member becoming aware of any discrepancy between the information shown on MERS® System and the information in the applicable public land records or state agency records, the Member shall promptly correct the discrepancy.
- When a Member identifies a data mismatch between its System of Record and MERS® System, the Member must perform root cause analysis and document an action plan to remediate the mismatch and root cause issue within thirty (30) calendar days.

# MERS® System QA Plan

By submitting a QA Plan for its Org ID and any associated Affiliate Org ID, a Member confirms that it is compliant with the requirements set forth by the Governing Documents. MERSCORP notifies a Member when it is required to submit its first or updated QA Plan.

## Requirements: MERS® System QA Plan

Each Member with a Line of Business that provides it with the ability to perform MIN Record transactions on MERS® System **may be** required to:

- Have a current QA Plan in place for each active Org ID, which also covers any associated Affiliate Org ID, using MERSCORP's QA Plan template,
- Submit its completed QA Plan by the date specified by MERSCORP,
- Save a copy of its completed QA Plan for its records,
- Monitor its performance against its current QA Plan, and
- Use a random sample of its loans when self-auditing its performance against its QA Plan with the results meeting or exceeding the requirements in the Governing Documents.

## Procedure: MERS® System QA Plan Submission

Only individuals listed as MERS® System mandatory contacts for an Org ID are authorized to complete and submit a Member's QA Plan to MERSCORP using the **eQA Plan** tool on the Member website. The requirements presented in the QA Plan template are specific to a Member's membership type.

To help protect the confidentiality of Member information, the **eQA Plan** tool does not email a copy of an accepted QA Plan to a Member.


# *Annual Report*

By submitting the *Annual Report*, a Member acknowledges that even if a specific topic is not included in the *Annual Report* it must still comply with all of the requirements set forth in the Rules and Procedures.

An *Annual Report* covers activity since a Member's last *Annual Report* submission. A Member may submit its *Annual Report* to MERSCORP any time after receiving the initial notice that it is due for the current year.

## Requirements: Annual Report

- Servicers **may** be required to submit an *Annual Report* to MERSCORP. A Member's *Annual Report* covers activity under its Org ID and any Affiliate Org IDs it may have. The *Annual Report* is due by December 31st of the current year.

- A Member's Executive Sponsor must sign the *Annual Report*. To verify or change the Executive Sponsor for an Org ID, see the Member Information Contacts QRG.

- An internal or external Annual Report reviewer ("Reviewer") must work with the Member to complete and sign the *Annual Report*. Refer to the Annual Report Reviewer Recommendation Guide on the Member website for detailed information.

  o If a Member is named as the Servicer on 1,000 or more active MIN Records as of March 31st of the current year, the Reviewer must be an external entity.

    ▪ The external Reviewer must be a third-party review organization or audit firm with demonstrable expertise and experience with performing quality assurance audits of organizations in the mortgage industry.

    ▪ In the case of a CPA firm, MERSCORP may provide an exception to allow the letter of engagement to serve as a proxy for third-party sign-off. Please contact the Help Desk for further assistance.

  o If a Member is named as the Servicer on less than 1,000 active MIN Records as of March 31st of the current year, the Reviewer may be an internal resource of the Member organization or an external entity. For Members using an internal Reviewer:

    ▪ The Member's QA Officer or Legal MERS® System contacts are the only contacts who may serve as the internal Reviewer.

    ▪ Any other employee of the Member who is not affiliated with the Member's MERS® System operations may serve as the internal Reviewer.

  o Each Member must save a copy of its completed yearly *Annual Report* for its records.

## Procedure: MERS® System Annual Report Submission

An individual authorized to submit the *Annual Report* for a Member, and its Reviewer, completes and submits the *Annual Report* to MERSCORP electronically using the online eAnnual Report tool.

To help protect the confidentiality of Member information, the eAnnual Report tool does not return a copy of an accepted *Annual Report* to a Member.

# *Data Reconciliation*

Members named as Servicer on MERS® System are required to perform a periodic data reconciliation as detailed in this section. Please refer to Reconciliation Recommendations for details on the data standardization rules that MERSCORP uses during its Quality Assurance Data Reviews.



# Requirements: Data Reconciliation

- Each Member named as Servicer on at least one active MIN Record must perform a periodic two-way validation between its System of Record and MERS® System at the required frequency listed below:

  - Monthly, if the Servicer is named on 1,000 or more MIN Records, or

  - Quarterly, if Servicer is named on less than 1,000 MIN Records.

- The data on MERS® System must match the corresponding data on the Member's System of Record.

- The fields subject to the Data Reconciliation Requirement vary based on whether the loan is a MERS Loan or an iRegistration.

  - For MERS Loans, see MERS Loan Data Reconciliation Requirements.

  - For iRegistration loans, see iRegistration Data Reconciliation Requirements.

- Any other fields that contain data on MERS® System must be reconciled with the Member's System of Record as well except as follows:

  - Agency ID: Is not subject to the periodic data reconciliation requirement.

  - Funding Date: Is not subject to the periodic data reconciliation requirement.

  - Owner Occupied: Is not subject to the periodic data reconciliation requirement.

  - Original Borrower: If a Member's System of Record stores Original Borrower information after an Assumption occurs, the Member must reconcile this data on MERS® System. If the Member's System of Record does not store Original Borrower information, the Member is not required to reconcile this data on MERS® System.

# Member Reconciliation Extract (MRE)

The **Member Reconciliation Extract ("MRE")**, available upon request from MERSCORP, is a tool designed to help a Member perform its monthly or quarterly system-to-system reconciliation between its System of Record and MERS® System.

A Member can customize the MRE that MERS® System generates for its Org ID using the following options in its Member Profile:

- **Unmask MRE SSN:** Allows a Member to override the default masking of Borrower SSN/TIN in its MRE to receive complete unmasked Borrower SSN/TIN.

- **RSA Encryption for MRE:** Allows a Member to encrypt its MRE files using RSA public-key encryption to help safeguard the files from unauthorized access. Once encrypted with the Member's public key, the data in the MRE files can only be read after they have been decrypted using the Member's private key. MERSCORP recommends MRE encryption as a best practice, especially for Members who receive full Borrower SSN/TIN in their MRE.

A Member must contact helpdesk@mersinc.org to have the MRE scheduled for its Org ID. MERSCORP, in its sole discretion, determines the MRE schedule and reserves the right to change the schedule to maintain system performance and availability. Refer to the MRE Output File Layouts and the MRE QRG for further information about the MRE.

# MERS Loan Data Reconciliation Requirements

The MERS® System fields in the table below must be reconciled for MERS Loans. The following values are used in the **Required** or **Conditionally Required** column:



- **Required:** Must be present on all MIN Records.
- **Conditionally Required:** Must be present on all MIN Records if the data is present on the Member's System of Record and the corresponding Conditionally-Required Field Criteria is true.

| Field Name | Field Description | Required or Conditionally Required |
|---|---|---|
| MIN_NBR | MIN | Required |
| MIN_STAT | MIN Status Indicator | Required |
| LIEN_TYPE | Lien Type | Required |
| NOTE_AMT | Note Amount | Required |
| NOTE_DT | Note Date | Required |
| ORGNL_MRGTE_ID | Originating Org ID | Conditionally Required |
| NOTE_HLDR_NM | Original Note Holder | Conditionally Required |
| SERVR_ORG_ID | Servicer Org ID | Required |
| SUB_SERVR_ORG_ID | Subservicer Org ID | Conditionally Required |
| INVST_ORG_ID | Investor Org ID | Required |
| PPC1_ID | Property Preservation Co. 1 Org ID | Conditionally Required |
| BORR_CORP_NM | Borrower Corporate Name | Conditionally Required |
| BORR_FST_NM | Borrower First Name | Conditionally Required |
| BORR_MID_NM | Borrower Middle Name | Conditionally Required |
| BORR_LST_NM | Borrower Last Name | Conditionally Required |
| BORR_SSN | Social Security Number (SSN) | Required |
| BORR_CORP_NM | Co-Borrower Corporate Name | Conditionally Required |
| BORR_FST_NM | Co-Borrower First Name | Conditionally Required |
| BORR_MID_NM | Co-Borrower Middle Name | Conditionally Required |
| BORR_LST_NM | Co-Borrower Last Name | Conditionally Required |
| BORR_SSN | Co-Borrower SSN | Conditionally Required |
| PROP_NBR | Property Street Number | Conditionally Required |
| PROP_STRT | Property Street Name | Required |
| PROP_UNIT_NBR | Property Unit Number | Conditionally Required |
| PROP_CITY | Property City | Required |
| PROP_ST | Property State | Required |
| PROP_ZIP | Property Zip | Required |
| PROP_DESCR_VAL | Property County | Required |
| SI_IN_MERS | MOM Indicator | Required |
| INVST_LOAN_NBR | Investor Loan Number | Conditionally Required |
| FHA_VA_MI_NBR | FHA/VA/MI Loan Number | Conditionally Required |
| POOL_NBR | Pool | Conditionally Required |
| SECURITIZATION | Securitization | Conditionally Required |

Note: The PROP_DESCR_VAL field contains only one of the following: the county name where the property is located, or the corresponding FIPS Code, or ANSI Place Code.


## *Conditionally-Required Field Criteria*

The following table lists each conditionally-required field in MERS® System and the corresponding condition that makes the field required for a specific MIN Record:

| Field Name | Description | Conditional Requirement |
|---|---|---|
| ORGNL_MRGTE_ID | Originating Org ID | Required if the originator of a MOM or Non-MOM loan is a Member. |
| NOTE_HLDR_NM | Original Note Holder | Required if the originator of a Non-MOM loan is not a Member. |
| SUB_SERVR_ORG_ID | Subservicer Org ID | Required if a Servicer uses a Subservicer to service its loans, and the Subservicer needs to process transactions on MERS® System, or receive mail service on behalf of the Servicer. |
| BORR_CORP_NM | Borrower Corporate Name | Required if the borrower is a corporation or an individual borrower with only one name. |
| BORR_FST_NM | Borrower First Name | Required if the borrower is an individual. |
| BORR_MID_NM | Borrower Middle Name | |
| BORR_LST_NM | Borrower Last Name | |
| BORR_CORP_NM | Co-Borrower Corporate Name | Required if a corporation is listed as a co-borrower on a Member's System of Record. |
| BORR_FST_NM | Co-Borrower First Name | Required if an individual is listed as a co-borrower on a Member's System of Record. |
| BORR_MID_NM | Co-Borrower Middle Name | |
| BORR_LST_NM | Co-Borrower Last Name | |
| BORR_SSN | Co-Borrower Social Security number | |
| PROP_NBR | Property Street Number | Required if the property address includes a street number.

The value of the street number may be included in either the Property Street Number field or the Property Street Name field. |
| PROP_UNIT_NBR | Property Unit Number | Required if the property address includes a unit number. |
| INVST_LOAN_NBR | Investor Loan Number | Required if an Agency requires an Investor Loan Number for its loans in securities. |
| FHA_VA_MI_NBR | FHA/VA/MI Loan Number | Required if an Agency requires an FHA/VA Case Number or MI Certificate Number on its loans. |
| POOL_NBR | Pool Number | Required if an Agency requires a Pool Number for its loans in securities. |
| SECURITIZATION | Securitization | Required for loans that are part of a non-Agency securitization. |
| AGENCY_NBR | Agency ID | Required if an Agency requires an Agency ID for its loans in securities. |


# *Quality Assurance Reviews*

**MERSCORP** conducts periodic Quality Assurance ("QA") Reviews to evaluate compliance with the requirements set forth in the Governing Documents and monitor the effectiveness and accuracy of a Member's training, tools, processes, and procedures. These QA Reviews may include, but are not limited to, an assessment of the MERS Documents related to a Member's MERS Loans and a review of the data on the Member's System of Record related to these loans.

## Requirements: Quality Assurance Reviews

If a Member or an Affiliate Org ID is selected for one of the following QA Reviews, it must participate in good faith throughout the entire process, which includes addressing any items identified in a post-review action plan.

| QA Review | Description |
|---|---|
| Data Review | • A system-to-system comparison of active MIN Record data from MERS® System and the Member's System of Record that verifies all the required and conditionally-required fields on MERS® System match the Member's System of Record, including MIN Record status and the Servicer, Subservicer, and Investor fields. |
| | • A Member is selected for a Data Review because it is the current Servicer for MERS Loans. |
| | • The Member provides a set of tab-delimited text files containing data for its active MERS Loans from its System of Record as of a certain date, and MERSCORP compares this data to an extract from MERS® System as of the same date. |
| | • May include an action plan for the Member to remediate any cited findings. |
| | • iRegistration loans are not reviewed by MERSCORP during a Data Review. |
| Document Review | • Evaluates a Member's compliance with the MERS® System requirements concerning actions taken in the name of MERS and the transactions performed on MERS® System. |
| | • A Member may be selected for a Document Review based on the size of its active MIN Record portfolio, by random selection, or for adverse reasons. |
| | • MERSCORP selects a random sample of the Member's MIN Records and requests documentation based upon each MIN Record's status. |
| | • May include an action plan for the Member to remediate any cited errors. |
| Compliance Review | • May cover any aspect of a Member's MERS® System operations and may include a discussion on process improvement opportunities or required training. |
| | • Scheduled with a Member in advance and may be conducted on-site. |
| | • May be at the Member's expense. |
| | • May result in an Action Plan for the Member for non-compliance. |
| | • May result in a Certification submission, if requested. |
| | • MERSCORP reserves the right to examine the Purchase and Sale Agreement to determine if a transfer meets the Flow criteria or a sale of servicing occurred. |

# MERSCORP Mail Services

The MERSCORP Mail Center and Help Desk are responsible for ensuring that mail and service of process received by MERS as a result of being named as Mortgagee in the public land records is promptly forwarded to the Servicer or Subservicer identified in MERS® System for the relevant MIN Record. Mail may



continue to be sent to a Servicer or Subservicer after their membership has been resigned or terminated. If the memberships of both the Servicer and Subservicer are resigned and/or terminated, mail is forwarded to the current Investor identified in MERS® System for the relevant MIN Record.

Mail is indexed to the appropriate MIN, scanned, and the electronic image is sent to the email address of the Member's Primary Operational contact.

The MERSCORP Mail Center makes reasonable efforts to identify and forward:

- Urgent Mail to the designated Servicing Member within two (2) business days of receipt, and
- Non-Urgent Mail within five (5) business days of receipt.

MERS should never receive, and will not forward, mail or service of process for iRegistration loans unless the loan was previously a MERS Loan.

The MERS mail address should not be given to organizations that normally direct mail to a Servicer and Subservicer (e.g., hazard insurance companies, taxing authorities).

All paper mail is stored for 30 calendar days after imaging and then destroyed.

# Requirements: Service of Process and Other Mail

- A Member must maintain a valid email address for its Primary Operational contact that is monitored daily.
- A Member must review and respond to service of process documents forwarded by the Help Desk.
- A Member must ensure that all mail it receives that is subject to Rule 14 of the Rules is handled in accordance with the requirements set forth in the Rule (see Rules for details).
- If a Member receives imaged mail for a loan that it is no longer servicing, it must forward the imaged mail to the loan's new Servicer. If the Member does not have this information or the new Servicer is no longer in business, the imaged mail should be sent to the Help Desk.

# Procedure: Unidentified Mail

1. The MERSCORP Mail Center receives mail throughout the day and attempts to identify the MERS Loan associated with it based on information in the mail and/or by using MERS® System.

2. If a mail document cannot be matched to a MERS Loan, the Help Desk:

   o Creates a record to track the document as unidentified mail in a Microsoft Excel® workbook and
   o Contacts the sender of the mail for further identifying information.

3. The *Unidentified Mail* page on the Member website is refreshed daily with the current version of the unidentified mail workbook.

4. Members review the unidentified mail workbook to determine if any of the records pertain to one of their borrowers or properties.

   o The employee reviewing the workbook uses the link on the *Unidentified Mail* page to submit an online form to the Help Desk to claim an unidentified mail record.
   o Once an unidentified mail record is claimed, it is removed from future versions of the workbook.

5. If the Servicer remains unidentified, the Help Desk searches the public land records.

   o An external research fee is charged on a per-loan basis for this work as specified in the MERS® System Pricing Schedule.
   o If the loan belongs to a Resigning Member, this fee is charged to the active Member associated with the loan and/or requesting the research.


6. For items successfully routed to the Member, the Help Desk also handles the disposition of the original mail:

  o Original Mortgage documents and funds are forwarded to the Member.

  o For original Mortgage documents, the Help Desk reviews the Member Profile to determine how to forward the documents (regular mail or overnight delivery at the Member's expense).

# Corporate Resolution Management System

The Corporate Resolution Management System ("CRMS") is used for the certification and appointment of MERS Signing Officers. It can be accessed online at https://crms.mersinc.org. The Certification process consists of a prospective MERS Signing Officer, who must be an officer or officer-equivalent of the Member as defined by Rule 3, Section 3 of the Rules, reading the *MERS Signing Officer Primer* ("Primer") and then passing an examination (the "Certification Exam") in CRMS. Appointment refers to the issuance of a Corporate Resolution by MERS granting limited authority to those officers or officer-equivalents of the Member that have successfully completed the Certification process to act in the name of MERS as its officer(s). For more information on the authority of Signing Officers, see Appendix A.

During or after Integration, a Member may be set up with an account in CRMS. The same Org ID used to identify a Member in MERS® System is used to identify it in CRMS. Once its account has been set up in CRMS, a Member may also request a Signing Authority Agreement ("SAA") for the purpose of MERS issuing a Corporate Resolution granting authority to officers of a Vendor or law firm ("SAA Vendor") with which the Member has contracted to act in the name of MERS as its officer(s). A Member manages its SAA and related Corporate Resolutions in CRMS under an account referred to as an SAA Relationship.

Like MERS® System and MERS® eRegistry, CRMS uses ICE SSO for use authentication. ICE SSO login credentials consist of a user's Global ID (user's work email address) and password. Once a CRMS user account is created, email address is read-only. To change a user's email address, delete their current user account and create a new one with the new email address.

Within CRMS, a user's access to functionality and information depends on the user's assigned role(s). The table below provides an overview of the available CRMS user roles.

| Role | Description |
|---|---|
| CRMS Manager ("CM") | Manages an Org ID or SAA Relationship, including adding and removing users, editing certain user account information, and assigning CRMS roles. The CM role is assigned during Integration. The CM may later set up a second CM. |
| CRMS Manager Admin ("CMA") | Optional role that assists CM with management of an Org ID or SAA Relationship. Has access to the same functionality and information as a CM but is unable to submit requests for Corporate Resolutions and SAAs, request deactivation of Member's CRMS account, terminate an SAA, or perform the Quarterly Attestation. |
| Signing Officer ("SO") | An officer or officer equivalent selected for certification and appointment as an officer of Mortgage Electronic Registration Systems, Inc. with specified authorities. Able to retrieve Corporate Resolution(s) currently granting them authority. |
| View Only Contact ("VOC") | Optional role. Able to retrieve Corporate Resolutions and SAAs. |
| Member Signer ("MS") | Individual who reviews an SAA on behalf of the Member party and is authorized by the Member to sign the SAA on its behalf. |
| Vendor Signer ("VS") | Individual who reviews an SAA on behalf of the Vendor party and is authorized by the Vendor to sign the SAA on its behalf. |


A user guide is available from the CRMS *Help* menu that provides step-by-step guidance on using CRMS.

# Requirements: CRMS

- Only Signing Officers are permitted to act in the name of MERS. A Signing Officer's actions must comply with the Rules, the Procedures, applicable laws, rules and regulations, and the terms of the specific Corporate Resolution that is the source of their authority.

- Each Signing Officer must complete the Certification process prior to being appointed by a Corporate Resolution and must maintain their certification by recertifying annually during the recertification period, which occurs in the month of October. If a Signing Officer's certification expires then any authority granted to them by MERS is revoked.

- Each Signing Officer must be appointed by a Corporate Resolution. Any authority granted by a Corporate Resolution to a Signing Officer is revoked upon revocation of such Corporate Resolution.

- Only officers of a Member are eligible for appointment as Signing Officers pursuant to a Corporate Resolution issued to such Member. If a Member has no officers then, subject to review and approval of a Rule 3 Exception by MERSCORP and MERS submitted on CRMS, only employees of such Member who hold a position that would be considered equivalent to that of an officer and who possess a level of authority ordinarily reserved for such officers are eligible for appointment as Signing Officers pursuant to a Corporate Resolution issued to such Member. See Procedure: Rule 3 Exception for details.

- For Signing Officers appointed by a Corporate Resolution issued pursuant to an SAA:

  o If the SAA Vendor is a vendor (i.e., non-law firm) then only officers of the SAA Vendor are eligible for appointment as Signing Officers.

  o If the SAA Vendor is a law firm then only licensed attorneys employed by such law firm who are in good standing with a state bar are eligible for appointment as Signing Officers.

- Each SAA Vendor is required to have an active MERS® System membership.

- At least monthly, the Member must review its Corporate Resolution and attached list of Signing Officers to ensure that each is current and accurate. This is an internal check and is separate and apart from the Quarterly Attestation that Members are required to perform in CRMS.

- Each Member to which a Corporate Resolution has been issued, and has not been revoked, must perform the Quarterly Attestation in CRMS for its Org ID. If a Member manages an SAA Relationship in CRMS and a Corporate Resolution has been issued pursuant to an SAA, and has not been revoked, the Member must perform the Quarterly Attestation for such SAA Relationship. The Quarterly Attestation is due no later than the last day of the month that is three (3) months since the last Quarterly Attestation or request for Corporate Resolution.

- The following information is required to be provided and kept accurate and up-to-date in CRMS for each Signing Officer:

  o First Name: Must be the individual's full first name. May be a first initial only if a full middle name is provided.

  o Middle Name: Must be the individual's full middle name or middle initial. Not required only if the individual does not have a middle name.

  o Last Name: Must be the individual's full last name.

  o Job Title: Must be the title the individual holds with the Member making them eligible to be appointed as a Signing Officer (i.e., title as an officer or, if applicable, officer-equivalent).

  o Email Address: Must be issued to the individual by the Member for the purpose of business correspondence. Personal email addresses are not permitted. Must be unique to the individual, meaning it cannot be a shared inbox or distribution list.



- Each Member with an account in CRMS is responsible for designating an individual as its CM and maintaining accurate and up-to-date information for its CM in CRMS. This requirement also applies to any active SAA Relationships established by the Member in CRMS.

# Procedure: Requesting a Corporate Resolution Appointing Signing Officers

A CM may request from MERS a Corporate Resolution appointing Signing Officers. To update the list of Signing Officers for an Org ID or SAA Relationship, the CM must request a new Corporate Resolution, which becomes effective upon execution by MERS and replaces any prior Corporate Resolution. To request a Corporate Resolution, the CM must do the following:

1. The CM logs into CRMS and selects the Org ID or SAA Relationship for which a Corporate Resolution will be requested.

2. The CM navigates to the *Corporate Resolution* tab and selects *Create Corporate Resolution Request*.

   a) If the request pertains to an Org ID, not an SAA Relationship, and it is the first time that a Corporate Resolution is being requested then the CM will have the option to select *Request Rule 3 Exception*. This should only be selected if the Member does not have any officers in its organization. See Procedure – Rule 3 Exception.

   b) If the request pertains to an SAA Relationship, the CM will only be able to request a Corporate Resolution after an SAA has been fully executed.

   c) If this is not the first time that a Corporate Resolution is being requested then the CM will have the option of selecting *Use previous Signing Officer List as baseline for new Corporate Resolution*. This is the default option, and it allows the CM to add or remove Signing Officers from the list of Signing Officers appointed by the previous Corporate Resolution.

3. The CM can add users and assign them the role of Signing Officer from either the *Pending Signing Officers* pane appearing in the *Corporate Resolution* tab or from the *Manage Users* tab:

   a) From the *Pending Signing Officers* pane, the CM selects the *Add* button and a box spawns in which the CM must provide the required user information and assign the role of *SO*. The CM selects **Submit** when finished and closes out of the box.

   b) From the *Manage Users* tab, the CM selects the *Add User* button and a box spawns in which the CM must provide the required user information and assign the role of *SO*. The CM selects **Submit** when finished and closes out of the box.

4. The CM can remove Signing Officer users from either the *Pending Signing Officers* pane appearing in the *Corporate Resolution* tab or from the *Manage Users* tab:

   a) From the *Pending Signing Officers* pane, the CM selects the box beside the user to remove and selects *Remove*.

   b) From the *Manage Users* tab, the CM selects the box beside the user to remove and selects *Remove User*.

5. When the CM is finished adding or removing Signing Officer users, the CM selects *Request Corporate Resolution* from the *Pending Request* pane of the *Corporate Resolution* tab.

6. A box containing an attestation spawns. The CM must perform the attestation. The request is only fully submitted to MERS when all Signing Officer users have completed certification.

7. The CM is notified by email from CRMS when the request for a Corporate Resolution is approved or rejected.


a) If the request is approved, MERS issues a Corporate Resolution appointing the Signing Officers. The CM may retrieve the Corporate Resolution, which is saved as a PDF file and includes the list of appointed Signing Officers from the *Corporate Resolutions* pane of the *Corporate Resolution* tab of the Org ID or SAA Relationship.

b) If the request is rejected, the email from CRMS provides the rejection reason and no Corporate Resolution is issued by MERS.

Note: A CMA can also add or remove Signing Officer users, but only a CM can request a Corporate Resolution.

# Procedure: Signing Officer Certification

To complete the certification process, a Signing Officer user must do the following:

1. The Signing Officer logs into CRMS and selects *Download Signing Officer Primer* from the left-hand menu to download the current *MERS Signing Officer Primer*. The *MERS Signing Officer Primer* is also included in these *Procedures* as Appendix A.

2. The Signing Officer reads the *MERS Signing Officer Primer* and navigates to the *Certification* tab when ready to take the Certification Exam.

3. Within the *Certification* tab an attestation appears. The Signing Officer must complete the attestation before proceeding to the Certification Exam.

4. The Certification Exam is a ten (10) question exam that tests on the contents of the *MERS Signing Officer Primer*. To pass the Certification Exam, the Signing Officer must answer at least eight (8) questions correctly.

5. When the Signing Officer has answered all questions in the Certification Exam, CRMS displays the questions and selected answers for review. To change an answer, the Signing Officer selects the answer choice to return to that question and may then change that answer and select **Return to Answer Review** to return to the review screen.

6. The Signing Officer selects **Submit** to submit their Certification Exam answers to CRMS for scoring.

7. CRMS informs the Signing Officer if they passed or failed the Certification Exam on both the user interface and via email.

a) If the Signing Officer passed the Certification Exam then their certification status updates to *Test Passed* and they are certified until the end of the next recertification period, which occurs in October. The Signing Officer is not authorized to act for MERS until they have been appointed by a Corporate Resolution.

b) If the Signing Officer failed the Certification Exam, their certification status does not change and they must wait until the next day to retake the Certification Exam. Signing Officers only have three (3) attempts to pass the Certification Exam before their certification status becomes *Ineligible*. An *Ineligible* Signing Officer is permanently ineligible to be a Signing Officer for MERS and their access to CRMS in that role is denied.

Note: Signing Officer recertification consists of the same procedure as certification.

# Procedure: Rule 3 Exception

If a Member does not have officers, and therefore no one from its organization would be eligible to be a Signing Officer, the Member's CM must do the following if the Member wishes to obtain signing authority


from MERS for its employees who would be considered the equivalent of officers and who possess a level of authority ordinarily reserved for officers:

1. During the process of requesting an initial Corporate Resolution, the CM logs into CRMS using CRMS login credentials, navigates to the *Corporate Resolution* tab, and selects *Request Rule 3 Exception*.

2. MERS contacts the CM and requests documentation demonstrating that the Member does not have officers. Relevant documentation may include, but is not limited to, incorporating documents, internal board resolutions, and organizational charts.

3. MERS reviews and determines whether to approve or reject the Rule 3 Exception request.

   o The CM is notified by email of MERS's determination and may then follow the procedure for requesting a Corporate Resolution. Only if the Rule 3 Exception was approved may the CM assign the role of Signing Officer to users who are employees of the Member who hold a position that is equivalent to that of an officer.

## Procedure: Requesting a Signing Authority Agreement ("SAA")

To request an SAA, the Member's CM must do the following:

1. The CM logs into CRMS and selects the Member's Org ID.

2. The CM navigates to the *SAA* tab and selects *Request New SAA*.

3. From the box that spawns on the screen, the CM selects an SAA Vendor from the dropdown menu.

4. The CM provides information to identify the Member Signer in the fields that appear.

5. The CM provides information to identify the Vendor Signer in the fields that appear.

6. CRMS sends an email to the Member Signer and Vendor Signer, providing each of them with login credentials and the link to access CRMS and review the SAA.

   a) If either the Member Signer or Vendor Signer rejects the SAA then the CM is notified of such, no SAA is established and the procedure ends.

   b) If the Member Signer and Vendor Signer approve the SAA their electronic signatures are applied to it and the CM is notified that the SAA is awaiting signatures by MERSCORP and MERS.

7. CRMS notifies the CM via email when MERSCORP and MERS approve or reject the SAA.

   a) If either MERSCORP or MERS reject the SAA, no SAA is established and the procedure ends.

   b) If MERSCORP and MERS approve the SAA, they each electronically sign the SAA. The SAA is now fully executed and effective and the CM may follow the procedure for requesting a Corporate Resolution.

Note: Only after an SAA has been fully executed may the CM request a Corporate Resolution for an SAA Relationship. While the SAA is under review the CM can get a head start on the process of requesting a Corporate Resolution by identifying Signing Officer users so that they can access CRMS and complete their certification.

## Procedure: Terminating a Signing Authority Agreement ("SAA")

An SAA may be terminated via CRMS by a CM or by MERS or MERSCORP. To terminate an SAA, the CM must do the following:

1. The CM logs into CRMS and selects the SAA Relationship.

2. The CM navigates to the *Corporate Resolution* tab, selects *Terminate SAA*, and confirms.


3. The SAA is terminated, meaning it is no longer effective. Any Corporate Resolution issued pursuant to the SAA is revoked and any authority granted to Signing Officers is revoked as well.

4. The CM and any Signing Officers are notified of the termination and revocation via email.

5. The Member's access to the SAA Relationship in CRMS is denied.

Note: Once an SAA Relationship is terminated, the Member is unable to access it in CRMS. The CM should download copies of any SAAs and Corporate Resolutions for the Member's records prior to the termination of the SAA Relationship in CRMS.

# Procedure: Deactivating the Member's CRMS Account

If a Member determines that it does not need signing authority from MERS, it can request deactivation of its account in CRMS. To deactivate the CRMS account for an Org ID, the CM must do the following:

1. The CM logs into CRMS and selects the Org ID for which deactivation will be requested.

2. The CM navigates to the *Corporate Resolution* tab and selects *Deactivate CRMS Account*, which sends a request to MERS to approve deactivation of the Member's CRMS member account.

3. The CM is notified via email once MERS approves or rejects the deactivation request.

4. If a CRMS account is deactivated, any Corporate Resolution issued to the Member is revoked and any authority granted to Signing Officers is revoked as well.

5. The CM and any Signing Officers are notified of the revocation via email.

6. The Member's access to the Org ID in CRMS is denied.

Note: Once an Org ID in CRMS is deactivated, the Member is unable to access it in CRMS. The CM should download copies of any Corporate Resolutions for the Member's records prior to the deactivation of the Org ID in CRMS.

# Procedure: Quarterly Attestation

CRMS notifies the CM via email when the Quarterly Attestation becomes due for an Org ID or SAA Relationship. The CM can also track when the Quarterly Attestation is due and has been performed from the *Status* and *Report* tabs of the account. To fulfill the Quarterly Attestation requirement, the CM must do the following:

1. The CM logs into CRMS and selects the Org ID or SAA Relationship for which the Quarterly Attestation will be performed.

2. The CM retrieves the current Corporate Resolution by selecting the PDF file appearing beneath the text *Download your current Corporate Resolution* in the left-hand menu or by navigating to the *Corporate Resolution* tab, selecting the most recent Corporate Resolution, and selecting *Download Corporate Resolution*.

3. The CM reviews the Corporate Resolution and the attached list of Signing Officers to confirm that the list is accurate, up-to-date, and each individual listed continues to hold a position that makes them eligible to be a Signing Officer under the relevant Corporate Resolution.

   a) If the CM confirms that the list is accurate, up-to-date and the eligibility requirements are met, the CM navigates to the *Quarterly Attestation* pane of the *Status* tab, selects **Submit Attestation**, spawning a box containing an attestation, and completes the attestation.

   b) If the CM is unable to confirm that the list is accurate, up-to-date, and/or the eligibility requirements are met, the CM makes the necessary changes and follows the procedure for requesting a Corporate Resolution. The request for a new Corporate Resolution fulfills the Quarterly Attestation requirement.


## System Actions: CRMS Statuses for Org IDs and SAA Relationships

Each Org ID and SAA Relationship in CRMS has a CRMS status indicating what, if any, activity has occurred under that account concerning the certification and appointment of Signing Officers and the status of the Member's MERS® System membership. The table below provides a description of the CRMS statuses.

| CRMS Status | Description |
|---|---|
| New | A CM has not started the process for requesting a Corporate Resolution. |
| Draft | A CM has started, but not finished the process for requesting a Corporate Resolution. The option to add the SO role to a user account is only available when the CRMS Status is Draft. |
| Submission Pending | A CM has selected to request a Corporate Resolution, but CRMS has not advanced the request to MERS for approval or rejection because one or more SOs are not in a certification status of **Test Passed** or **Testing**. |
| Submitted | A CM has selected to request a Corporate Resolution and CRMS has advanced the request to MERS for approval or rejection because all SOs are in a certification status of Test Passed or Testing. |
| Auto-Submitted | CRMS has submitted a request for a Corporate Resolution due to the CRMS Status of an SO(s) changing to Ineligible or Expired, or if a name change for the Member has been submitted. A CM cannot cancel an auto-submitted request for a Corporate Resolution. |
| Approved | MERS approved a request for, and issued, a Corporate Resolution. |
| Rejected | MERS rejected a request for a Corporate Resolution. A Corporate Resolution was not issued. |
| Deactivation Pending | A request to deactivate the Org ID in CRMS was submitted and is pending approval or rejection by MERS. |
| Deactivated | MERS approved the request to deactivate the Org ID in CRMS. Access to the Org ID in CRMS is denied, and any Corporate Resolution is revoked. |
| Revoked | For an Org ID, MERS has revoked the Corporate Resolution. The Member retains its access to the Org ID. For an SAA Relationship, the SAA has been terminated and any Corporate Resolution has been revoked. Access to the SAA Relationship in CRMS is denied. |
| Resigned | The Member resigned its MERS® System membership or the membership status of the Org ID has changed from Member to Affiliate Org ID as set out in a Primary/Secondary Relationship Agreement. Access to the Org ID in CRMS is denied, and any Corporate Resolution is revoked. Any associated SAA is terminated and its Corporate Resolution is revoked. |
| Terminated | The Member's MERS® System membership was terminated. Access to the Org ID in CRMS is denied, and any MERS Corporate Resolution is revoked. Any SAA is also terminated and its Corporate Resolution is revoked. |

## System Actions: Changes in Status of MERS® System Membership

The resignation or termination of a Member's MERS® System membership results in the following:

- The CRMS status of the Member's Org ID updates to *Resigned* or *Terminated*, as appropriate, and the Member's access to the Org ID in CRMS is denied.


- Any Corporate Resolution issued to the Member is revoked and any authority granted to Signing Officers is revoked as well.

- The CRMS status of any SAA Relationship managed by the Member, or involving the Member as an SAA Vendor, updates to *Revoked* and the Member's access to such SAA Relationships is denied.

- Any SAAs to which the Member is a party are terminated. Any Corporate Resolutions issued pursuant to such SAAs are revoked and any authority granted to Signing Officers is revoked as well.

- CRMS notifies the Member and any affected Signing Officers via email about the resignation/termination and its consequences.

## *System Actions: Auto-Submission of Request for a Corporate Resolution*

If a Corporate Resolution has been issued, and has not been revoked, for an Org ID or SAA Relationship, CRMS will automatically submit a request for a Corporate Resolution, which cannot be canceled by the CM, upon the occurrence of any of the following:

- The Member informs MERSCORP of a change in its name. The list of Signing Officers submitted for appointment remains unchanged from the list of Signing Officers attached to the Member's existing Corporate Resolution. See Membership Changes.

- The certification status of a Signing Officer appearing on the list of Signing Officers attached to the Member's Corporate Resolution updates to *Expired*. The *Expired* Signing Officer is removed from the list of Signing Officers submitted for appointment.

- The certification status of a Signing Officer appearing on the list of Signing Officers attached to the Member's Corporate Resolution updates to *Ineligible*. The *Ineligible* Signing Officer is removed from the list of Signing Officers submitted for appointment.

# MERS Documents

A MERS Document is any document that creates or affects an interest held by MERS or that makes a representation by or about MERS; this includes, but is not limited to, Mortgages and other Security Instruments, Lien Releases (partial and full), Assignments to MERS, Assignments from MERS, Modification Agreements, substitutions of trustee, subordinations, and legal pleadings.

In this section, the requirements for MERS Documents are organized into three (3) categories:

- **General:** These requirements apply to all MERS Documents. Only in those instances where a general requirement conflicts with a document-specific or state-specific requirement does it not apply.

- **Document-Specific:** These requirements apply only to certain types of MERS Documents. Document-Specific Requirements exist for the following types of MERS Documents:

  - Security Instruments
  - Assignments from MERS
  - Assignments to MERS
  - UCC Financing Statements
  - Substitutions of Trustee
  - Lien Releases
  - Modification Agreements


- **State-Specific:** These requirements apply only to MERS Documents in certain states. Members are prohibited from applying the state-specific requirements in any other states or jurisdictions. State-Specific Requirements exist for the following states:

  - Colorado
  - Indiana
  - Mississippi
  - New York
  - Pennsylvania

  - Louisiana
  - Maine
  - Montana
  - Oregon
  - Washington

To assist Members by illustrating some of the MERS Document requirements, several sample MERS Documents are available on the Member website. The sample MERS Documents are only intended as guidance and do not necessarily adhere to any particular jurisdiction's requirements or address all requirements for each document type.

Members should contact MERSCORP if they become aware of any potential conflict between the MERS Document requirements and jurisdictional requirements.

# Requirements

Members are responsible for complying with the MERS Document requirements and for ensuring that MERS Documents comply with applicable laws, rules, and regulations.

## General Requirements

### Name and Role of MERS:

- MERS must be referred to by its full legal name: Mortgage Electronic Registration Systems, Inc. The acronym MERS may only be used after being defined (e.g., Mortgage Electronic Registration Systems, Inc. ("MERS")).

- Subject to state-specific requirements, MERS must be referred to as:

  o Mortgagee, if the Security Instrument is a Mortgage

  o Beneficiary, if the Security Instrument is a deed of trust

  o Grantee, if the Security Instrument is a security deed

- Subject to state-specific requirements, MERS may also be referred to as a nominee. When referring to MERS as a nominee, the language "its successors and assigns" must appear after the Lender for which MERS is identified as nominee.

  o For a MOM loan, the Lender identified should be the original Lender named on the Security Instrument.

  o For a Non-MOM loan, the Lender identified should be the Lender identified in the Assignment to MERS, but if no Lender was identified in the Assignment to MERS then the Lender identified should be the current Lender.

  o When assigning a Mortgage to MERS, MERS should be referred to as nominee for the Lender and Lender's successors and assigns, and the Lender identified should be the note owner or note holder.

Note: Even when referring to MERS as a nominee, the requirement to refer to it as mortgagee/beneficiary/grantee still applies. The only exception to this requirement is in Montana, Oregon, and Washington where MERS's role is as nominee of the beneficiary and beneficiary's successors and assigns. See State-Specific Requirements for details.



- Examples of proper ways for MERS's name to appear:
  - o Mortgage Electronic Registration Systems, Inc., as mortgagee
  - o Mortgage Electronic Registration Systems, Inc., as beneficiary
  - o Mortgage Electronic Registration Systems, Inc., as grantee
  - o Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for [Lender], its successors and assigns
  - o Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for [Lender], its successors and assigns
  - o Mortgage Electronic Registration Systems, Inc., as grantee, as nominee for [Lender], its successors and assigns
- MERS should not be referred to as:
  - o Servicer
  - o Lender
  - o Beneficial owner
  - o Investor
  - o Trustee
  - o Note owner
  - o Financial institution
- Do not use the term *beneficial interest* to describe the interest MERS holds in a Mortgage.
- MERS should only be referred to as *note holder* if in fact MERS is the promissory note holder and the Member can demonstrate such.

## *Address for MERS:*

- An address for MERS is required to appear on the Mortgage of any MOM loan and on any Assignment to MERS. An address for MERS may appear on any other MERS Document, but is not required unless required by the applicable jurisdiction.
- Subject to state-specific requirements where required or where it otherwise may appear, the address for MERS should appear as *P.O. Box 2026, Flint, MI 48501-2026.*
- The MERS address must not be used as the return address for documents sent for Recordation.

## *MIN:*

- For MERS Loans, the MIN is required on the first page of any recordable MERS Document (not including the cover page).
- The MIN may appear on the Note of a MERS Loan.
- The MIN is not required to appear in legal pleadings.

## *Phone Number for MERS:*

- For MERS Loans, the MERS Corporate Phone Number is required on any recordable MERS Document.
- The MERS Corporate Phone Number should appear in one of the following ways:
  - o (888) 679-6377
  - o (888) 679-MERS



- The MERS Corporate Phone Number is not required to appear in legal pleadings.

## *Documents Signed by MERS:*

- Documents signed by MERS should only be signed by Signing Officers acting within the scope of authority granted to them by MERS in a current MERS Corporate Resolution.

- When signing for MERS, Signing Officers must use a title granted to them by MERS in the applicable Corporate Resolution (i.e. Assistant Secretary, Assistant Vice President, or Vice President).

- The printed first and last name of a Signing Officer on a document they sign for MERS must exactly match their name on the MERS Corporate Resolution that is the source of their authority; the middle name is not required to appear in print on the document, but if it does then it too must match exactly to the name on the MERS Corporate Resolution. If only a first initial appears on the MERS Corporate Resolution (due to the Signing Officer's full middle name being provided as an alternative) then the printed name on the document must include first initial, middle name, and last name and match exactly to the MERS Corporate Resolution.

- The signature of a Signing Officer on a document they signed for MERS must be consistent with the printed name appearing for them on such document.

## *Corporate Seal:*

- If required by law or otherwise to apply a seal to a MERS Document signed by MERS, the MERS corporate seal must be used.



A JPG image of the MERS Corporate Seal is available for download from the Announcements section of CRMS and should be used when ordering a MERS Corporate Seal through the Member's office supply vendor.

## *Notarization:*

- MERS Documents are required to comply with any and all applicable laws, rules, and regulations pertaining to notarization.

# Document-Specific Requirements

## *Security Instruments:*

- The Security Instrument must convey legal title to MERS establishing it as the Mortgagee, as nominee for the note owner and its successors and assigns. Fannie Mae and Freddie Mac have published state-specific uniform Security Instruments with instructions for naming MERS as Mortgagee. These uniform Security Instruments generally contain three (3) sections pertaining to MERS: the Definitions Section, the Granting Clause, and the Disclosure Section. The sample language appearing in this subsection is only provided as guidance.



o   Definitions Section: Identifies the various parties to the Mortgage loan and explains their respective roles.

*"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.*

o   Granting Clause: Express conveyance of certain property rights by the borrower.

*Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property…*

o   Disclosure Section: Acknowledgment by the borrower of the interests held by MERS and MERS's authority to exercise rights given to a Mortgagee, including discharging the Mortgage and foreclosing.

*Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.*

## *Effective Date:*

- An Assignment that creates or affects an interest held by MERS in a Mortgage should not have an effective date that is different from the date it was signed.

## *Assignments from MERS:*

- Language indicating that MERS is assigning the Note (e.g., together with the note or together with the indebtedness) is prohibited in an Assignment from MERS.

- Use of the word *sells* to describe the action being taken by MERS is prohibited in an Assignment from MERS.

## *Assignments to MERS:*

- Language indicating that the Note is being assigned to MERS (e.g., together with the note or together with the indebtedness) is prohibited in an Assignment to MERS.

- Use of the word *sells* to describe the action being taken by the assignor to MERS is prohibited in an Assignment to MERS.

## *Substitutions of Trustee:*

- MERS should not be substituted as trustee.

## *Lien Releases:*

- Lien Releases should not indicate that the debt has been paid to MERS.



## Modifications:

- MERS should not sign a modification solely of the Note. Any modification of the Note should be signed by the Lender. MERS, as Mortgagee, may only sign a modification of the Mortgage. If a modification is of both the Mortgage and the Note, and MERS is Mortgagee, then both MERS and the Lender should sign the modification.

## UCC Financing Statements and Amendments

- MERS must be referred to by its full legal name "Mortgage Electronic Registration Systems, Inc." in the appropriate section of the UCC forms as noted in the table below.

- Because MERS's role is clearly stated on the UCC forms, no further reference to its role is required on the UCC forms.

- The address for MERS is subject to the general Address Requirements for all MERS Documents and must be included in the appropriate section of the UCC forms as noted in the table below subject to any jurisdictional requirements that requires the address to be placed in a different section of the UCC form.

| UCC Form Type | Location of MERS's Name and Address |
|---|---|
| UCC-1 naming MERS original secured party | Secured Party section |
| UCC-3 Assignment to MERS | Changed (New) or Added Information section |
| UCC-3 Assignment from MERS | Secured Party section |
| UCC-3 Termination (Paid in Full) | Secured Party section |

- The MIN is required in the *Optional Filer Reference Data* section of the UCC form.

- The MERS Corporate Phone Number is required in the *Optional Filer Reference Data* section of the UCC form.

# State-Specific Requirements

## Colorado:

- Members must request Lien Releases from public trustees in their own name, not as MERS. When requesting a Lien Release for a MOM loan secured by a deed of trust, the request form should identify "Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for *[Lender identified in the Security Instrument]*, its successors and assigns" as the original beneficiary.

## Indiana, Mississippi, New York, and Pennsylvania:

- Where required, the address for MERS should appear as 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026. This does not apply to UCC financing statements (e.g., UCC-1, UCC-3).

## Louisiana:

- MERS should not be referenced as a licensed financial institution in Lien Releases.

 MERS®

## *Maine:*

- Members should check with Investors regarding requirements for MERS Loans in Maine.

- See Policy Bulletin 2014-01 for recommendations regarding foreclosure of MOM loans.

## *Montana, Oregon, and Washington:*

- In Montana, Oregon, and Washington, MERS should not be referred to as the *beneficiary*. Instead, MERS must be referred to as the nominee of the beneficiary and beneficiary's successors and assigns.

- Examples of proper ways for MERS's name to appear in Montana, Oregon, and Washington:

  o Mortgage Electronic Registration Systems, Inc., as designated nominee for [*Lender*], beneficiary of the security instrument, its successors and assigns

  o Mortgage Electronic Registration Systems, Inc., as designated nominee for the beneficiary of the security instrument, [Lender], its successors and assigns

- Fannie Mae and Freddie Mac have published a Mortgage Electronic Registration Systems, Inc. Rider ("MERS Rider") (Form 3158) to modify the standard Security Instruments used in these states.

- The following language must appear in any Assignment to MERS:

  *MERS is appointed as the nominee for the Beneficiary to exercise the rights, duties and obligations of the Beneficiary as Beneficiary may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part the Security Instrument, foreclosing or directing the trustee to institute foreclosure of the Security Instrument, or taking such other actions as Beneficiary may deem necessary or appropriate under the Security Instrument.*

  *The Beneficiary designates MERS as the nominee for the Beneficiary and any notice required by applicable law or the Security Instrument to be served on the Beneficiary must also be served on MERS as the designated nominee for Beneficiary.*

# Borrower Disputes

If MERSCORP or MERS receives a dispute from an individual to correct personal information on MERS® System ("Borrower Dispute"), MERSCORP sends the individual's request to the Servicing Member named on the MIN Record from borrower_dispute@mersinc.org as an encrypted email.

Note: Members should whitelist borrower_dispute@mersinc.org to ensure that they receive communications sent from this email address.

## *Requirements: Borrower Disputes*

- When a Member receives a Borrower Dispute for a MERS Loan, it must investigate the disputed information and respond to the individual within 30 calendar days, in accordance with the Procedures, whether the Borrower Dispute is submitted directly to the Member by the individual or forwarded by MERSCORP on behalf of the individual.

- If the dispute involves an SSN discrepancy, the Member must update the SSN field on MERS® System for the individual with the temporary placeholder value of **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** to indicate that a Borrower Dispute involving an SSN discrepancy is occurring.

- The placeholder value of **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** must be updated on MERS® System no later than seven (7) calendar days after the conclusion of the Member's investigation.



## *Procedure: Borrower Disputes*

When a Member receives a borrower dispute for a MERS Loan, it must:

1. Investigate the disputed information reported by the individual.

2. Correct any disputed information on MERS® System that it determines is inaccurate or incomplete.

3. Respond directly to the individual with the results of its investigation.

4. Comply with any other provisions of applicable law.

# Disciplinary Actions

Rule 7 of the Rules governs the process by which MERSCORP may impose monetary penalties or otherwise sanction a Member for violations of the Rules or Procedures or for errors, delays or other conduct materially detrimental to the operation of MERSCORP or MERS, MERS® System, MERS® eRegistry, or other Members (each a "Violation").

MERSCORP uses the email address MERS-rulenotifications@theice.com to communicate with Members about Violations. Notifications pursuant to the Disciplinary Actions process are sent to the Executive Sponsor named on the Org ID. The following MERS® System contacts may also be included depending on the Violation: the CRMS Manager ("CM"), Legal Contact, Primary Operational Contact, and QA Officer.

Note: Members should whitelist MERS-rulenotifications@theice.com to ensure that they receive communications sent from this email address.

During the latter stages of the process (e.g., Penalty Imposition, Member Lockout, Termination of Membership) MERSCORP also sends the Rule Violation notifications to the Member's Executive Sponsor via certified mail.

When replying to Violation notices, or making payment for penalties, the Member must include the Case Number assigned to the Violation to ensure that its response is associated with the correct Violation in a timely manner.

## *Lockout Status*

MERSCORP may institute a Lockout of a Member from MERS® System under certain conditions as provided for in the *Rules* or *Procedures*. Lockout prevents a Member from accessing MERS® System to register loans, update its registered loans (including reporting transfers or deactivating MIN Records), or perform maintenance to its Member Profile or user accounts. Lockout does not block legal transfers of ownership and/or servicing rights, affect any signing authority granted by MERS to the Member or to third-parties acting on the Member's behalf, or prevent the Member from accessing CRMS.

Lockout does not relieve a Member from any of the obligations and requirements set out in the MERS® System Governing Documents.

- A Member with an Org ID in a Lockout status must work with MERSCORP to resolve the issue that resulted in the Lockout.

- Other active Members are unable to perform transactions on any MIN Records that name a locked out Org ID as a Primary Organization.

- If an active Member needs to perform transactions on a MIN Record with a Primary Organization in a Lockout status, the active Member should contact the Help Desk for assistance.



# MERSCORP Help Desk

The Help Desk serves as a point of contact for Members regarding the use of the MERS® products and services, including:

- Distribution of corporate communications from MERSCORP.
- Mailroom document processing.
- Functional and procedural questions about MERS® System.
- Technical support, including MERS® System connectivity.

Note: Members should whitelist the @mersinc.org and @ice.com email domains to ensure they receive communications concerning their MERS® System membership.

Other highlights of the Help Desk include:

- After-hours technical support for emergency technical issues.
- Support for MERS® ServicerID, MERS® Link, and the MERS Corporate Phone Number.

## *Contacting Help Desk*

- A Member contacts the Help Desk by phone at 1-888-680-MERS (6377) from 8 a.m. to 8 p.m. Eastern Time Monday through Friday or by email at helpdesk@mersinc.org.
- Once the Member provides its Org ID to the Help Desk representative, a Case Number is assigned to track the inquiry and ensure a timely resolution.
- Once a Case is created, it is reviewed immediately, worked as necessary, and a response is provided to the Member.
- The Help Desk confirms with the Member that it has received the response.

## *Receiving Email Communications from MERSCORP*

MERSCORP sends various types of messages to Members via email, including service of process requests. It is critical that these messages reach the correct people and departments in the Member's organization.

MERSCORP recommends that Members establish a dedicated email address on their corporate email system to receive official communications from MERSCORP. This email address is stored in MERS® System in the **Email** field of the Member's Primary Operational contact.

- A Member's Primary Operational contact information, including email address, is added to the Member Profile of an Org ID during new Member Integration.
- All communication and mail images sent by the Help Desk are sent to the email address of the Member's Primary Operational contact.
- Multiple individuals should have access to the email address associated with the Member's Primary Operational contact to ensure that incoming messages are monitored daily.
- The employees processing the email sent to the Member's Primary Operational contact should be trained to handle and distribute the communications received.

Member communications originating from the MERSCORP corporate office are generally sent to the following MERS® System contacts:

- Compliance Officer
- Executive Sponsor
- Customer Service - Primary
- Legal

---


- Operational - Primary
- QA Officer

- Operational - Secondary
- Technical

# *MERSCORP and MERS Email Messages*

Email messages from MERSCORP and MERS are usually sent to Members in an email template called the *MERS® Customer Notification*. When a *MERS® Customer Notification* is sent, it is generally delivered to all active Members except MERS® eRegistry Brokers. If a *MERS® Customer Notification* is appropriate for all Members to view, it is uploaded to the Member website once it has been sent. *MERS® Customer Notifications* are sent from MERS-Broadcast@mersinc.org.

In addition, the following table contains the list of subject line conventions used to forward mail received by MERSCORP and/or MERS to the current Servicer or Subservicer of a MIN Record.

| Subject Line Starts as… | Message Includes |
|---|---|
| Mail Document Type: Adversaries | Documents concerning an adversary proceeding |
| Mail Document Type: Bankruptcy | Any bankruptcy document not related to an adversary proceeding |
| Mail Document Type: Bills & Invoices | Any document requesting or demanding an actual dollar amount |
| Mail Document Type: City/County Code Lawsuits | Any complaint or lawsuit concerning a code violation |
| Mail Document Type: Eminent Domain | Documents concerning an eminent domain action |
| Mail Document Type: Foreclosure | Documents concerning a foreclosure, including tax foreclosures, mechanic's lien foreclosures, and homeowner's association foreclosures |
| Mail Document Type: Funds | All funds received |
| Mail Document Type: Government Documents | Documents sent by a government entity or official.  Most often a letter, notice, or memorandum of inquiry. |
| Mail Document Type: Lawsuit | Any document concerning a lawsuit, including foreclosure counterclaims and cross-claims |
| Mail Document Type: Notices & Requests | Notices not included in another category, and requests not naming a dollar amount |
| Mail Document Type: Recordable Docs | Any original recorded document, and all mobile home title documents |
| Mail Document Type: Rejected Discharge of Mtg | Recordable documents rejected by local recorder or clerk |
| Mail Document Type: Req for Discharge of Mtg | Any letter or notice concerning a request for a Lien Release |
| Mail Document Type: Subpoenas | All subpoenas |
| Mail Document Type: Title Policy | Any document concerning title insurance (unless lawsuit related) |



# Reporting

MERS® System provides monthly reconciliation reports, daily mismatch and confirmation reports, and on-request reports to help a Member verify that its transactions are processed correctly, and the data on MERS® System matches its System of Record.

- Reports reflect the previous day's processing and are not real-time, ad hoc reports.

- Reports can be accessed from the MERS® System UI or downloaded from the MERS® System Secure File Transfer Protocol ("SFTP") server.

- A report for a given day includes transactions from:

  o The Flat-File Interface that were submitted up until 10:00 PM ET Monday through Friday or 2:00 PM ET Saturday, and

  o MERS® System UI and the XML Interface that were submitted up until 11:00 PM ET (Monday through Friday) or 3:00 PM ET Saturday.

  Note: Members should place their Batch files in the appropriate SFTP folder at least 30 minutes before end of day to ensure those transactions are processed for that day.

- MERSCORP bills transactions on the last business day of the month. The two-character report mnemonic for the *Monthly Billing Transaction Report* is "LD".

- Once generated, the MERS® System reports are available to a Member for a minimum of ten (10) calendar days after the report date and then archived.

- All MERS® System reports that contain a field for Borrower SSN or TIN mask all but the last four digits of the data stored in the field (Example: XXXXX1234). Use the MRE to access the unmasked SSN.

MERSCORP recommends that each Member retrieve its reports before they are archived and retain them at least until the day's activity is reconciled.

Contact the Help Desk to retrieve any archived report but note that there is a fee for this service, which is covered in the MERS® System Pricing Schedule as a value-added service.

Additional information is available to help Members work with the MERS® System reports:

- For a detailed listing of the MERS® System reports, see the Reports Handbook.
- For a brief description of each report including its Text file layout, see the MERS® System Reports Page.
- For instructions on ordering a Portfolio Analysis Report, refer to the *Portfolio Analysis Report* section of the MERS® System User Guide or the Portfolio Analysis Report QRG.

## *Requirements: MERS® System Reports*

- Each Member must check daily for new reports generated by MERS® System.

- Each Member, including the registering Member, must manage to a timely, proper resolution all reject and warning messages in MERS® System reports generated for its Org ID using MERS® System reports or another reconciliation process or tool available to the Member.

- Each Member must have procedures in place to provide assurance that all reject and warning messages in MERS® System reports generated for its Org ID are researched and cleared, and any new or remaining items are tracked.


## *Procedure: Retrieving Reports*

To retrieve reports from the MERS® System UI:

1. Select *Reports* from the *Main Menu*.

2. Select the day associated with the report to be viewed.

3. Select the particular report to be viewed.

4. View, print, or save the report.

5. Review the report and reconcile it with the Member's System of Record.

6. Correct mismatches, warnings, and rejects on each report as needed.

7. Resolve and resubmit rejected transactions to MERS® System.

# Involuntary TOS to a MERS® System Member

The transactions discussed in this section are used infrequently and should not affect most Members in their daily MERS® System operations.

For an Option 2 Investor, an involuntary Servicing Rights Transfer is performed by MERSCORP on behalf of the Investor to report the transfer of servicing from the current Servicer to another Member due to the current Servicer's default or for other reasons.

For an Option 1 Agency Investor, an involuntary Servicing Rights Transfer can be performed directly by an Agency using the TOS Option 1 (Default by Servicer) transaction if the Agency is authorized by MERSCORP to use the transaction.

## *Procedure: Involuntary TOS (Option 2 Investor)*

- The Option 2 Investor contacts MERSCORP when it has decided to transfer servicing from one Servicer to another. The Investor identifies the current Servicer, new Servicer, Sale Date, Transfer Date, and the MIN Records involved in the transfer.

- MERSCORP initiates the TOS transaction based on the Investor's instructions. If the current Servicer has named a Subservicer, MERSCORP creates a separate TOS transaction on behalf of the Subservicer.

  o The Investor may ask MERSCORP to set a temporary Lockout Flag for the Servicer to prevent the Servicer from logging on to MERS® System or performing any transactions.

  o A broader Lockout may be set for all MIN Records associated with the Servicer that also name the Investor. MERSCORP notifies all Members impacted by the Lockout via email.

- If any MINs in the Involuntary TOS Batch also exist in other pending TOS Batches, the MINs are deleted from those other Batches. This is reported on the *Canceled Transfer of Servicing Rights (SG) Report*.

- The Investor confirms the TOS Batch if it has noted on its Member Profile that it wishes to approve servicing transfers.

- The new Servicer also confirms the TOS Batch.

- Reporting and milestones are identical to the TOS transaction.


# Procedure: Involuntary TOS (Option 1 Investor)

The TOS Option 1 (Default by Servicer) transaction allows an Agency Investor named on a MIN Record to complete a Servicing Rights Transfer without confirmation from the current or new Servicer.

MERSCORP grants an Agency Investor access to the TOS Option 1 (Default by Servicer) transaction through the Member Profile. The *Member Options* page indicates if a Member is authorized to perform this transaction.

- The TOS Option 1 (Default by Servicer) transaction can be initiated through the MERS® System UI or Flat-File Interface.
- An Option 1 TOS Batch cannot be confirmed, rejected, or modified, but it can be cancelled by the initiator if created in error.
- An Option 1 TOS cannot be performed for a MIN Record where:
  - The Servicer and Investor fields are populated with the same Org ID,
  - The MIN is in a pending TOB Option 1 Batch, or
  - The MIN is in a pending TOB Option 2 Batch initiated by the Investor.
- A MIN in an Option 1 TOS Batch is removed from any existing Transfer Batch, and cannot be included in any new TOB Option 2 or TOS Batch initiated by the current Servicer or Subservicer:
- A MIN is automatically deleted from a pending Option 1 TOS Batch if it is included in a new TOB Option 1 Batch.

# System Actions: Involuntary TOS Transaction

- If a MIN already exists in a TOB Option 2 Batch, and the new Investor Org ID for the TOB Batch equals the new Servicer Org ID in the TOS Batch, the MIN cannot be rejected from the TOS Batch.
- The transaction is billed to the Investor and leaves the MIN Record active.
- System processing for an Involuntary TOS Batch is otherwise identical to a standard TOS Batch (see System Actions: TOS Transaction).

# Glossary

| Term | Definition |
|------|------------|
| *Accounts Billing* | Mandatory MERS® System contact who receives a Member's monthly invoices from MERSCORP and responds to billing inquiries. |
| *Affiliate Org ID* | An additional Org ID issued to a Primary Member pursuant to a Primary/Secondary Relationship Agreement. An Affiliate Org ID may be used by a Primary Member to identify a department, line of business, or internal division of such Primary Member. An Affiliate Org ID shall not be used to identify a distinct legal entity. |
| *Agency ID* | A number assigned by a government agency to uniquely identify a Mortgage company. The Agency ID field identifies the organization that sold the loan to the Agency. |
| *Agency Investor* | An agency of the federal government involved in the mortgage industry. The three main agencies are Fannie Mae, Freddie Mac, and Ginnie Mae. |


| Term | Definition |
|------|------------|
| *ANSI Place Code* | A seven (7) digit numeric code used by MERS® System to identify the census-designated place, incorporated place, or county subdivision where a property address is located. |
| *Archived MIN Record* | A MIN Record that MERS® System has archived because it has been in an inactive status for ten (10) years with a limited subset of data retained on MERS® System for historical tracking purposes. |
| *Assignment* | A transfer to another of any property, real or personal, or of any rights or estates in said property. |
| *Assignment Date* | The date that an Assignment to MERS or an Assignment from MERS is executed. |
| *Assignment from MERS* | A legal instrument/document that transfers the interest held by MERS in a Mortgage from MERS to another entity. |
| *Assignment to MERS* | A legal instrument/document that transfers the interest held by an entity in a Mortgage from that entity to MERS. |
| *Associated Member* | A Member that has been granted inquiry-only access to a MIN Record of a registered Mortgage loan by the Servicer or Subservicer. |
| *Assumption* | A MERS® System transaction used to report the acceptance of the obligations of a mortgagor under an existing Mortgage. |
| *Authoritative Copy* | The unique, identifiable, and unalterable copy of the Transferable Record (eNote) registered on MERS® eRegistry that is maintained within the Control environment established by the Controller. |
| *Authorized Member Copy* | An exact digital copy of the Notary Retention Copy of an eClosing video that a Member elects to store on the MERS® RON Video Storage solution. |
| *Authorizing Member* | A Member that authorizes a Vendor or RON Closing Provider to perform certain transactions for and on its behalf pursuant to a contractual agreement. |
| *Batch Inquiry* | A MERS® System transaction used to look up information on MIN Records matching search criteria specified in the *Batch Inquiry Request*. |
| *Broker* | An LOB that allows a Member to originate Digital Assets for sale to a Participant that will act as Delegatee for Transfers for the Broker, registering the Digital Assets on MERS® eRegistry on behalf of the Broker and then immediately processing a Transfer of Control from the Broker to the Delegatee for Transfers. |
| *CEMA Loan* | A New York loan closed using a *Consolidation, Extension, and Modification Agreement* ("CEMA") to combine an existing promissory note(s) with a new promissory note and an existing Mortgage(s) with a new Mortgage to create a consolidated note and consolidated Mortgage evidencing a single loan obligation. |
| *Charge Off* | The action a Member takes on its System of Record to indicate that it expects that the borrower will make no further payments on their Mortgage loan. |
| *Check Digit* | The final digit of the MIN calculated using the MOD 10 Weight 2 algorithm. MERS® System uses the check digit during Registration to verify that the MIN is valid. |
| *Co-Borrower* | A borrower listed on the Member's System of Record who is not identified as the Primary Borrower for a loan. |
| *Collateral Agent* | An LOB and Associated Member field on MERS® System. The LOB is assigned to a Member that holds collateral on behalf of a Lender as security for performance of a borrower's obligations under a loan agreement. |



| Term | Definition |
|------|------------|
| *Compliance Officer* | Optional MERS® System contact who is responsible for regulatory internal requirements for the Member. |
| *Confirmation* | A MERS® System transaction used by an Investor, Servicer, or Subservicer to indicate if it accepts or rejects a pending or overdue TOS, TOB, or TOS/TOB Combo transaction. |
| *Construction Loan* | A loan used to pay for the cost of building or renovating a home. |
| *Control* | A Participant has control of a Transferable Record (eNote) or other Digital Asset if a system employed for evidencing the transfer of interests in the Transferable Record or other Digital Asset reliably establishes that Participant as the entity to which the Transferable Record or other Digital Asset was issued or transferred. |
| *Controller* | The Participant named on MERS® eRegistry that has Control of the Digital Asset, for example, the Authoritative Copy of the eNote or a copy of the Digital Asset if it is not an eNote. |
| *Conversion* | A MERS® System transaction that converts an iRegistration to a Non-MOM when the Mortgage is assigned to MERS. |
| *Corporate Resolution Management System ("CRMS")* | A web application (owned and operated by MERSCORP) used for the certification and appointment of MERS Signing Officers. |
| *County Recorder* | An LOB assigned to a Member that is a local government department in a county, parish, or other jurisdiction that maintains the public records and documents related to the ownership of real estate for that county, parish, or other jurisdiction. |
| *CRMS Manager ("CM")* | The Member contact responsible for managing and administering CRMS for the Member. |
| *Customer Service - Primary* | Mandatory MERS® System contact who handles public requests for information about a Member's loans registered on MERS® System. |
| *Customer Service - Secondary* | Optional MERS® System contact who acts as the back-up for the Member's Customer Service - Primary contact. |
| *Deactivate-Assigned from MERS for Default or Bankruptcy* | A MERS® System transaction used to deactivate a MIN Record when an Assignment from MERS or UCC-3 is sent for Recordation due to a loan being in default or due to the borrower filing for bankruptcy protection and the Member intends to file Legal Proceedings. |
| *Deactivation* | The process of making a MIN Record inactive on MERS® System when:<br>• MERS no longer holds an interest in the Mortgage, including in conjunction with a Member's Resignation or its Termination of membership, or<br>• A Member is no longer tracking an iRegistration on MERS® System. |
| *Deactivation Reversal* | A MERS® System transaction that reactivates a MIN Record for the same borrower, property, and lien type if it was deactivated in error or incorrectly. |
| *Deed-in-Lieu* | A legal instrument that conveys all interest in a property from a borrower to a Lender to satisfy a loan in default and thereby avoid foreclosure proceedings. |
| *Deidentified MIN Record* | A MIN Record for which MERS® System has deidentified each Borrower's SSN or TIN by replacing the first five (5) digits with the string "97000" because the MIN Record has been in an inactive status for seven (7) years. |
| *Digital Asset* | A financial instrument comprised of binary data in electronic/digital format that can be registered on MERS® eRegistry because it is subject to standards of |


| Term | Definition |
|---|---|
| | Control. Examples of Digital Assets include eNotes and electronic Home Equity Lines of Credit. |
| *Directing Member* | A Member that (i) has express permission to receive and retain an Authorized Member Copy of an eClosing video from the RON Notary or, if applicable in a particular state, the RON Closing Provider whose platform was used to create the eClosing video, and (ii) is a party to a record notarized in the eClosing video or the lender, title agent, settlement agent, or title insurer, or engaged the RON Notary for the underlying transaction, or a Member acting under the express authority of any such entity or an authorized assignee of such entity. |
| *Document Custodian* | An LOB assigned to a Member that holds and administers documents related to Mortgage loans for an Investor. |
| *Document Preparation Provider* | An LOB assigned to a Member that provides document preparation services. |
| *DTD* | Initialism for **Document Type Definition**. A file that defines the structure of an XML message and describes the data in the message. The MERS® System XML Interface is defined by a set of DTD files. |
| *eClosing* | An online Mortgage closing process supported by a platform provided by a RON Closing Provider that records the RON sessions associated with the closing in a video file. |
| *Electronic Record* | The data record created on MERS® eRegistry when a Participant registers a Digital Asset. |
| *eNote* | A Transferable Record that is registered on MERS® eRegistry. |
| *eRegistry Contact* | MERS® System contact who is responsible for responding to MERS® eRegistry questions on behalf of a Member. Required for MERS® eRegistry Participants. |
| *E-SIGN* | Abbreviation of **Electronic Signatures in Global and National Commerce Act**. A federal statute governing Transferable Records that establishes the legal validity and enforceability of electronic signatures, contracts, and other records in interstate and foreign commerce transactions, if not superseded by certain state laws otherwise authorizing such activities. |
| *Executive Sponsor* | Mandatory MERS® System contact who is a senior executive responsible for the MERS® System operations in the Member organization. The Executive Sponsor acts as the liaison between a Member and the MERS Entities and should have full authority to act on behalf of the Member in connection with MERS® System and the Member's dealings with the MERS Entities. |
| *FHLB/FRB* | An LOB and Associated Member field on MERS® System. The LOB is assigned to a Member that is one of the Federal Home Loan Bank cooperatives. |
| *FIPS Code* | A five (5) digit numeric code issued by the federal government that is used by MERS® System to identify the county where a property address is located. |
| *Flat-File Interface* | The asynchronous System-to-System interface that uses tab-delimited text files to transact with MERS® System over the Internet using SFTP. The Flat-File interface is recommended for transacting with MERS® System and retrieving the reports generated by MERS® System. Also known as the Batch Interface. |
| *Flow Registration* | A transaction descriptor on MERSCORP invoices and MERS® System Reports for a loan registered within 270 or fewer calendar days of the Note Date. |


| Term | Definition |
|------|------------|
| *Flow Servicing Transfer* | A transaction descriptor on MERSCORP invoices and MERS® System Reports for a Servicing Rights Transfer that occurred 270 or fewer calendar days after the loan's Note Date. |
| *Foreclosure Complete* | A legacy Deactivation transaction and MIN Status that indicates a MERS Loan was deactivated because foreclosure proceedings, initiated with MERS as Mortgagee, were completed. The *Foreclosure Complete* transaction is no longer used to deactivate MERS Loans because Members have been prohibited from initiating foreclosure in the name of MERS since July 22, 2011. Members may continue to use the *Foreclosure Complete* transaction to track iRegistration foreclosure activity. |
| *Funding Date* | The date the borrower becomes obligated for the debt and interest starts to accrue. In some states, this may be different from the date the borrower signs the Note, or the date on which the Note is drawn. |
| *General Member* | A Member that services MERS Loans. |
| *Governing Documents* | The Rules, Membership Application, Procedures, and any other legal services agreement a Member elects to execute that collectively govern the relationship between a Member, the MERS Entities, and the MERS® products and services. |
| *Government Housing Agency* | An LOB and Associated Member field on MERS® System. The LOB is assigned to a Member that is a state or federal housing agency. |
| *Hashed Authorized Member Copy* | An Authorized Member Copy of a RON video that had its MD5 hash value verified during the commit process to confirm that it was not altered during the multi-part file upload process due to an unexpected error. |
| *Help Desk* | The point of contact for Members regarding the use of the MERS® products and services. Phone: (888) 680-MERS, Email helpdesk@mersinc.org. |
| *Integration* | The process by which a Member completes procedural changes, training, and system testing of transactions prior to being live in the MERS® System production environment. |
| *Interim Funder* | An LOB on MERS® System used to identify a Member with an Interim Funding Interest in a loan prior to the sale of the loan to the permanent Investor. |
| *Interim Funding Interest* | The financial interest in a loan that an organization (e.g., warehouse lender, Wall Street firm, and other party that extends interim funding to originators) has prior to the sale of the loan to the permanent Investor. |
| *Intracompany Transfer* | A Servicing Rights Transfer reported to MERS® System between two Org IDs associated pursuant to a *Primary/Secondary Relationship Agreement*. |
| *Investor* | The entity that owns or holds the promissory note secured by a Mortgage. |
| *Investor Loan Number* | A unique number assigned by an Agency to a Mortgage loan that the Agency uses to locate its loans on MERS® System. |
| *iRegistration* | Loan for which MERS is not the Mortgagee and is registered on MERS® System for tracking purposes only. |
| *Legal Contact* | Mandatory MERS® System contact who is responsible for coordinating communication between the MERSCORP Law Department and the Member's legal counsel regarding litigation and other legal issues. |
| *Legal Proceedings* | A *Proof of Claim* or a *Motion for Relief from Stay* filed by a creditor during bankruptcy proceedings. |
| *Lender* | The payee on the Note. |


| Term | Definition |
|------|------------|
| *Lien Release* | An instrument/document releasing the security interest created by a Mortgage and recorded in the applicable public land records. This includes but is not limited to discharges, satisfactions, and reconveyances. |
| *Line of Business ("LOB")* | The types of business in which a Member is active on MERS® System. A Member's LOBs are assigned by MERSCORP during Integration, are listed in the Member's Profile, and control the functionality available to the Member in MERS® System. |
| *Lite Member* | A Member that closes MOM loans and sells and transfers all MERS Loans along with servicing rights within 120 days of the Note Date. |
| *Lite-R Member* | A Member that closes MOM loans for immediate sale to an Investor that will register the loans on MERS® System. Lite-R Members do not have the MERS® System access necessary to register loans or perform other loan transactions. |
| *Location* | The Participant named on MERS® eRegistry that maintains the Authoritative Copy of the eNote or a copy of the Digital Asset if it is not an eNote. |
| *Lockout* | Process whereby, and status with which, a Member's access to MERS® System is temporarily denied. Lockout prevents a Member from accessing MERS® System to register loans, update its registered loans (including reporting transfers or deactivating MIN Records), or perform maintenance to its Member Profile or user accounts. Lockout does not block legal transfers of ownership and/or servicing rights, affect any signing authority granted by MERS to the Member or to third-parties acting on the Member's behalf, or prevent the Member from accessing CRMS. |
| *Mail Room Contact* | Optional MERS® System contact who is responsible for handling mail received by the MERSCORP Mail Center for a Member. |
| *Master Servicer* | An LOB and Associated Member field on MERS® System. The LOB is assigned to a Member that services Mortgage loans pooled in a mortgage-backed security. |
| *Member* | A legal entity that has signed and submitted a Membership Application to MERSCORP, received an Org ID, and been approved for Integration, and whose membership has not been terminated or resigned. |
| *Member Profile* | Specifies a Member's transactional processing options, document handling preferences, configuration settings, billing options, contact information, address, URL, and other relevant information. The information in the Member Profile is required at the time of initial Integration with MERS® System. |
| *Membership Application* | The Governing Document used to apply for membership in MERS® System. |
| *MERS* | Acronym for **Mortgage Electronic Registration Systems, Inc.**, a Delaware corporation and wholly-owned subsidiary of MERSCORP. |
| *MERS Corporate Phone Number* | The MERS Corporate Phone Number (888-679-MERS (6377)) provides recorded information about MERS to the public, including guidance on locating the current Servicer of a loan registered on MERS® System using MERS® ServicerID. |
| *MERS Corporate Resolution ("Corporate Resolution")* | A resolution of MERS granting specifically-identified persons limited authority to take certain actions in the name of MERS as enumerated in the resolution. |
| *MERS Document* | Any document that creates or affects an interest held by MERS or that makes a representation by or about MERS; this includes, but is not limited to, Mortgages and other Security Instruments, Lien Releases (partial and full), Assignments to |


| Term | Definition |
|---|---|
| | MERS, Assignments from MERS, Modification Agreements, substitutions of trustee, subordinations, and legal pleadings. |
| **MERS Entities** | A reference to both MERSCORP and MERS. |
| **MERS Loan** | A Mortgage loan for which MERS is the mortgagee, beneficiary, grantee, nominee of the lender, or other secured party. |
| **MERS Signing Officer ("Signing Officer")** | An individual appointed by MERS through the issuance of a Corporate Resolution and granted limited authority to take certain actions in the name of MERS as enumerated in the *Corporate Resolution* on behalf of MERS. |
| **MERS Signing Officer Primer ("Primer")** | The required training material for all Signing Officers. The Primer is included in the Procedures as Appendix A. Members are responsible for ensuring that the actions of their Signing Officers comply with the Primer. |
| **MERS®** | The trademark used by MERSCORP in connection with certain products and/or services. |
| **MERS® Automated Document Request** | An optional service from MERSCORP that provides Members who also use Simplifile® Document Builder with an API between the two applications to streamline the document preparation process for supported document types. |
| **MERS® eDelivery** | A secure method for distributing eMortgage packages from one Participant to another, using the existing MERS® eRegistry infrastructure and transaction security requirements. |
| **MERS® eRegistry** | The system of record that identifies the Controller and Location of registered *Digital Assets*. |
| **MERS® eRegistry Participant** | A Member that has signed and submitted the *MERS® eRegistry Addendum* to MERSCORP and completed its integration with MERS® eRegistry. |
| **MERS® Link** | A service offered through MERS® System that allows Members to retrieve summary information regarding Mortgage loans registered on MERS® System, including the loan's current Servicer and any Property Preservation Company associated with the property. |
| **MERS® RON Video Storage** | Storage solution from MERSCORP that provides the mortgage industry a reliable, secure, long-term repository for digital copies of RON eClosing videos associated with Mortgage loans registered on MERS® System and/or Digital Assets registered on MERS® eRegistry. |
| **MERS® RON Video Storage Contact** | MERS® System contact responsible for responding to questions concerning a Member's use of the MERS® RON Video Storage solution. Required for Members using the MERS® RON Video Storage solution. |
| **MERS® ServicerID** | An online tool that allows the public to obtain contact information for the current Servicer of a registered Mortgage loan on MERS® System upon verification of certain identifying information related to the loan. A borrower of a loan may also optionally obtain the name of the Investor by providing additional self-identifying information. URL: mers-servicerid.org. |
| **MERS® System** | The electronic registry owned and operated by MERSCORP that tracks changes in servicing rights and beneficial ownership interests in registered Mortgage loans as reported by Members. |
| **MERS® System and MERS® eRegistry Penalty Schedule** | The schedule of certain monetary penalties related to (i) violations of the Governing Documents, (ii) errors, delays, or other conduct materially detrimental to the operation of MERSCORP, MERS, MERS® System, MERS® eRegistry, or other Members, or (iii) improper use of MERS® System or MERS® eRegistry. |


| Term | Definition |
|---|---|
| ***MERS® System Pricing Schedule*** | The schedule of Pricing for MERS® System. |
| ***MERS® System Procedures Manual ("Procedures")*** | One of the Governing Documents that set out requirements pertaining to MERS® System membership including, but not limited to, the use of MERS® System, CRMS, and MERS® RON Video Storage, the MERS® System Quality Assurance Program, MERS Documents, and MERS Signing Officers. |
| ***MERS® System Rules of Membership ("Rules")*** | One of the Governing Documents that define the legal framework for the relationship between the Member and the MERS Entities. |
| ***MERSCORP Holdings ("MERSCORP")*** | MERSCORP Holdings, Inc. (formerly known as MERSCORP, Inc.), a Delaware corporation that owns and operates the various MERS® products and services, including MERS® System and MERS® eRegistry. MERSCORP is the parent company of and a service provider to MERS. |
| ***Milestone*** | A significant event that occurs to a MIN Record like a Registration, Transfer, or Reversal. The MERS® System *Milestones* page displays Milestone events and is only available to Members named on a MIN Record. Milestones reflect the internal operation of MERS® System and should not be provided to non-Members. Milestones can be an important resource for Members who need to reconcile the history of a MIN Record. |
| ***MIN*** | Acronym for **Mortgage Identification Number**, a unique 18-digit number permanently assigned to a Mortgage loan registered on MERS® System or a Digital Asset registered on MERS® eRegistry. |
| ***MIN Record*** | The data record created on MERS® System when a Member registers a loan. |
| ***MIN Status*** | The field reflecting the status of a MIN Record as reported by the Member. |
| ***MIN Update*** | The process used to update an active MIN Record on MERS® System. A MIN Update may be submitted through the MERS® System UI or Flat-File Interface. |
| ***Modification Agreement*** | An agreement between a Lender and one or more borrowers to change the terms of a Note and/or Mortgage. |
| ***MOM*** | A loan secured by a **MERS as Original Mortgagee** Security Instrument. The language written into a MOM Security Instrument establishes MERS as the Mortgagee and Nominee for the Lender, its successors and assigns. |
| ***Mortgage*** | An interest in or a lien against property created by written instrument providing security for the repayment of a debt and/or the performance of a duty. References herein shall include deed(s) of trust, Mortgages, and security deeds, and any other form of Security Instrument under applicable state law. See Security Instrument. |
| ***Mortgage Insurance Co.*** | An LOB and Associated Member field on MERS® System. The LOB is assigned to a Member that issues insurance policies that protect Lenders and Investors against potential loss in the event of borrower default on a Mortgage loan. |
| ***Mortgagee of Record ("Mortgagee")*** | The party that takes, holds, or receives a pledge of an interest in or lien against property as security for the payment of debt; the pledge is evidenced by a Mortgage and recorded in the applicable public land records. References to "Mortgagee" shall include the named beneficiary or nominee of the lender under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of Security Instrument under applicable state law. |


| Term | Definition |
|------|-----------|
| *My MERS®* | A feature that allows a Member to customize the Org IDs that display to its users in the pop-up lists on many MERS® System pages. |
| *Nominee* | A person or entity designated to act for another as their representative in a limited sense. The agency relationship specifically expressed in the terms of the Fannie Mae/Freddie Mac Uniform Security Instruments identifying MERS as Original Mortgagee ("MOM"). |
| *Non-MOM* | A loan secured by a Mortgage that names MERS as Mortgagee through an Assignment to MERS. |
| *Non-Urgent Mail* | The following postal or electronic mail received at the MERSCORP Mail Center with sufficient information to identify the Servicer or Subservicer of a registered loan that is forwarded to the Member within five (5) business days: Bills and Invoices (e.g., homeowners' association dues, and condo assessments), Notices and Requests, Recordable Documents, Title Policy, etc. |
| *Notary Retention Copy* | The original eClosing video that remains under exclusive control of the RON Notary or, if applicable in a particular state, the RON Closing Provider whose platform was used to create the video, as required by applicable notarial law. |
| *Note* | The paper or electronic evidence of indebtedness in a Mortgage loan. |
| *Note Date* | The date on the Note. In some states, the date the borrower signs the Note, or the date the Note is drawn, may or may not be the actual date on which interest begins to accrue (see Funding Date). |
| *Note Holder* | The person or entity: (i) who is entitled to enforce the Note under Article 3 of the Uniform Commercial Code, as enacted by the applicable jurisdiction, including the person or entity who controls an electronic Note under the federal Electronic Signatures in Global and National Commerce Act and/or Uniform Electronic Transactions Act, as enacted by the applicable jurisdiction and (ii) who is authorized to enforce the Note by the Note Owner if the Note Holder is not the Note Owner. |
| *Note Owner* | The person or entity with legal title to the Note (or Digital Asset). |
| *Operational - Primary* | Mandatory MERS® System contact that serves the following functions:<br><br>• The **Email** field of the Primary Operational contact identifies the email address the Member has established to receive communications from MERSCORP, including service of process, document and mail images, and correspondence pertaining to its use of MERS® System or MERS® System membership.<br><br>• The individual named the Primary Operational contact is responsible for overseeing or conducting the day-to-day MERS® System functions for the Member and keeping its Member Information, including contacts, current.<br><br>The Primary Operational contact displays on the *Member Summary* page and in MERS® Link search results. |
| *Operational - Secondary* | Optional MERS® System contact who acts as the back-up for the Member's Primary Operational contact. |
| *Org ID* | Abbreviation of **Organization Identification Number**, a 7-digit number uniquely identifying a Member or Affiliate Org ID on MERS® System. Org ID also identifies a Member or Affiliate Org ID on MERS® eRegistry if it is a Participant. |
| *Original Borrower* | The original borrower of the loan as identified in the Member's System of Record. May differ from the current borrower if the loan has been assumed. |


| Term | Definition |
|------|------------|
| *Original Note Holder* | The original Lender of the loan if that organization was not a Member when the loan was originated. See Originating Organization. |
| *Originating Org ID* | The original Lender of the loan if that organization was a Member when the loan was originated. See Originating Organization. |
| *Originating Organization* | A MERS® System field that identifies the original Lender of the loan.<br><br>• If the loan was originated by a Member, **Originating Organization** identifies the Lender based on data from the **Originating Org ID** field.<br><br>• If the loan was not originated by a Member, **Originating Organization** identifies the Lender based on data from the **Original Note Holder** field. |
| *Owner Occupied* | A MERS® System field indicating if a property is occupied by its owner at origination. |
| *Paid in Full* | A MERS® System transaction used to deactivate a MIN Record when the interest held by MERS in the Mortgage securing a loan has been released by the Recordation of a Lien Release or UCC-3, or when MERS's interest in a Mortgage is extinguished by a Deed-in-Lieu. |
| *Passive Investor* | An **Option 2 Investor** that does not actively confirm TOB Option 2 Batches on which it is either the current or new Investor because the Member has the **Approval of Option 2 Beneficial Transfer** option disabled in its Member Profile. |
| *Patron Member* | A Member that is an Investor, Subservicer, Warehouse Lender, or other Associated Member for MERS Loans, or a MERS® eRegistry Participant that does not originate MERS Loans. This membership category also applies to Vendors (including Signing Authority Agreement vendors or law firms) that provide services to other Members. |
| *Physical Transfer Date* | The date that a loan is reported as transferred on MERS® System by a Member. This date will be the same as the Transfer Date unless the buyer does not confirm the TOS, TOB, or TOS/TOB Combo transaction on time. |
| *Pool Number* | The number assigned to a group of loans by an Agency Investor; required for certain Agency securitizations. |
| *Post-Closing* | MERS® System *Registration* transaction used to activate a Mortgage loan previously registered as a Pre-Closing when the loan closes. |
| *Pre-Closing* | MERS® System *Registration* transaction used to initiate a Mortgage loan registration before closing. Once the loan closes, the MIN Record is made active using the Post-Closing transaction. |
| *Primary Borrower* | The person listed as the primary borrower for a loan on the Member's System of Record. Each additional borrower for a loan on the Member's System of Record is identified as a Co-Borrower on MERS® System. |
| *Primary Member* | The Member designated as the Primary Member on a *Primary/Secondary Relationship Agreement*. A Lite-R Member is prohibited from being a Primary Member in a *Primary/Secondary Relationship Agreement*. |
| *Primary/Secondary Relationship Agreement (PSRA)* | An agreement establishing a relationship between a Primary Member and a Secondary Member(s) and/or Affiliate Org ID(s) on MERS® System and creating certain obligations and benefits based on such relationship. |
| *Primary Organization* | A Member identified in one of the following fields on a MIN Record: Servicer, Subservicer, Investor, Custodian, Interim Funder. |


| Term | Definition |
|------|------------|
| *Production* | Name of the "live" MERS® System environment that Members use to register and maintain MOM, Non-MOM, and iRegistration Mortgage loans. |
| *Property Preservation Company* | An LOB and Associated Member field on MERS® System. The LOB is assigned to a Member that maintains and manages vacant properties on behalf of other Members. |
| *Property Preservation Contact* | Optional MERS® System contact responsible for handling property preservation for a Member. Displays in the *Member Summary* and *MIN Summary* pages for an Org ID and in MERS® Link search results. |
| *Purchase and Sale Agreement* | A contractual agreement between two (2) Members that sets forth the terms and conditions associated with the sale of the servicing rights and/or beneficial ownership interests in one or more Mortgage loans. |
| *Quality Assurance Officer* | Mandatory MERS® System contact responsible for the Member's MERS® System Quality Assurance Program. |
| *Quick Reference Guide* | A short guide on completing a specific action or task on MERS® System. |
| *Recordation* | The act of promptly sending an executed MERS Document for recording in the applicable public land records, or for a UCC financing statement, filing with the applicable state agency. |
| *Registrar* | A third-party to whom a Member has contracted certain business activities such that the Registrar is the initiator of the business activity that gives rise to a transaction on MERS® System on behalf of the Member. |
| *Registration* | A transaction used to enter the required information on MERS® System to report that a loan exists that is secured by a Mortgage with MERS as Mortgagee or to report an iRegistration. The result of a successful Registration is a MIN Record for the loan. |
| *Registration Date* | The date a loan was registered on MERS® System, and the associated MIN Record was created. The Registration Date is determined by MERS® System at *Registration* and is displayed as "Reg Date" on the MERS® System UI. |
| *Registration Reversal* | A transaction descriptor on MERSCORP invoices and MERS® System Reports for a transaction used to reverse a loan *Registration*. |
| *Remote Online Notarization (RON)* | A notarial act performed online where the Notary Public and the individual for which the notarial act is being performed are in different locations. |
| *Resignation* | The process by which a MERS® System membership is withdrawn pursuant to the Rules and Procedures. |
| *Resignation Requirements* | The tasks that a Member must fulfill to resign its membership from MERS® System as defined by the Rules and Procedures along with any other any other reasonable conditions that MERSCORP may set for the Deactivation of a Member's MIN Records on MERS® System. |
| *Resigned Member* | A Member whose membership has been withdrawn from MERS® System pursuant to the Rules and Procedures. |
| *Resigning Member* | A Member that has begun, but not completed, Resignation. A Resigning Member may still appear as a Primary Organization or Associated Member on MIN Records. |
| *RON Closing Provider* | A Member that provides RON audio-visual technology services and uploads its eClosing videos to the RON Video Storage solution. |



| Term | Definition |
|---|---|
| **RON Closing Provider LOB** | An LOB assigned to an Org ID to authorize that Member to upload eClosing videos to the RON Video Storage solution and download a copy of its previously uploaded videos for verification purposes. |
| **RON Notary** | The notary public that performed the RON notarial acts depicted in an eClosing video. |
| **SAA Relationship** | Analogous to an Org ID in CRMS. It represents the relationship among MERSCORP, MERS, a Member, and the Member's SAA Vendor or law firm. The Member's CM manages the SAA Relationship in CRMS. |
| **Sale Date (servicing rights)** | In a servicing transfer, the date stipulated in the Purchase and Sale Agreement upon which the contractual servicing rights are transferred to the new Servicer. |
| **Seasoned Intracompany Transfer** | A transaction descriptor on MERSCORP invoices and MERS® System Reports for a Seasoned Servicing Rights Transfer that qualifies as an Intracompany Transfer and occurred more than 270 calendar days after the loan's Note Date. |
| **Seasoned Registration** | A transaction descriptor on MERSCORP invoices and MERS® System Reports for a loan registered more than 270 calendar days after the Note Date. |
| **Seasoned Servicing Transfer** | A transaction descriptor on MERSCORP invoices and MERS® System Reports for a Servicing Rights Transfer that occurred more than 270 calendar days after the loan's Note Date, and the Transfer does not qualify as an Intracompany Transfer. |
| **Secondary Member** | The Member designated as the Secondary Member on a *Primary/Secondary Relationship Agreement*. |
| **Security Instrument (SI)** | A legal document creating an interest in or lien against property as collateral to protect or secure against non-payment of a debt; a mortgage, deed of trust, security deed, or any such other instrument. See Mortgage. |
| **Sequence Number** | The ten (10) digit number that uniquely identifies a MIN. The Sequence Number comprises digits 8 through 17 in the MIN. |
| **Servicer** | The entity that owns the Servicing Rights of a Mortgage loan. If the Investor is the owner of the Mortgage Servicing Rights, but another entity performs the primary servicing obligations for the loan, the entity that performs the primary servicing obligations for the loan is the Servicer for the purposes of this definition. |
| **Servicing Member** | The Servicer of a loan. If there is both a Servicer and Subservicer for a loan, both the Servicer and Subservicer are the Servicing Member. |
| **Servicing Rights** | The contractual ownership rights of the current Servicer for servicing loans. |
| **Servicing Rights Transfer** | The transfer of the Servicing Rights in a loan. Members are required to report these transfers on MERS® System using a TOS or TOS/TOB Combo transaction. |
| **SFTP** | Acronym for **Secured File Transfer Protocol**. Members connect to the MERS® System environment using SFTP to submit transactions via the Flat-File Interface, retrieve reports, and/or provide files during a Data Review. |
| **Signing Authority Agreement ("SAA")** | An agreement among MERSCORP, MERS, a Member, and that Member's SAA Vendor or law firm, entered into for the purpose of granting MERS signing authority to the vendor or law firm so that it may sign documents in the name of MERS relating to loans registered on MERS® System to the Member. The Member's vendor or law firm must have its own MERS® System membership. |


| Term | Definition |
|---|---|
| *Storage Period* | The period of time during which an eClosing video is stored and remains available on the MERS® RON Video Storage solution. The Storage Period is the greater of the two following time periods:<br><br>• Ten (10) years, if the associated loan remains active on MERS® System or MERS® eRegistry for 10 years or less, or<br><br>• Seven (7) years beyond the associated loan's deactivation date on MERS® System or MERS® eRegistry if the loan remains active for more than 10 years. |
| *Subservicer* | The entity that the Servicer of a loan has contracted with to perform certain servicing functions for the loan. |
| *System Administrator - Primary* | Mandatory MERS® System contact responsible for setting up a unique User ID for each employee of the Member that needs access to MERS® System or the Member website and maintaining User IDs and Roles. The Help Desk refers user security requests for the Member to this contact. |
| *System Administrator - Secondary* | Optional MERS® System contact who acts as the back-up for the Member's Primary System Administrator. |
| *System of Record* | The authoritative data source that a Member uses to store the data for its loans. Two (2) common examples of a System of Record in the Mortgage industry are a Loan Origination System ("LOS") and Loan Servicing System ("LSS"). |
| *System-to-System* | A method of transmitting data directly between a Member's or Vendor's system and MERS® System. The Batch and XML interfaces are supported. |
| *Technical Contact* | MERS® System contact responsible for ensuring that the Member's internal system(s) is compatible with MERS® System. Required for Members with a System-to-System interface. |
| *Termination of Membership* | The process by which MERSCORP revokes a Member's MERS® System membership as described in the Rules. |
| *Title Company* | An LOB assigned to a Member that performs title research and title curative services. |
| *TOB* | A MERS® System transaction used to report the transfer of beneficial rights in a registered loan (see TOB Option 1 and TOB Option 2). |
| *TOB Option 1* | A MERS® System transaction used by Agency Investors to report that the beneficial rights in a registered loan have been transferred to them. |
| *TOB Option 1 Batch* | The name of a Transfer Batch created when a *TOB Option 1* transaction is created on MERS® System. |
| *TOB Option 2* | A MERS® System transaction used to report the transfer of the beneficial rights in a registered loan to a non-Agency Investor. |
| *TOB Option 2 Batch* | The name of a Transfer Batch created when a TOB Option 2 transaction is created on MERS® System. |
| *TOS* | A MERS® System transaction used to report the transfer of Servicing Rights in a registered loan. See Servicing Rights Transfer. |
| *TOS Batch* | The name of a Transfer Batch created when a TOS transaction is created on MERS® System. |
| *TOS Option 1 (Default by Servicer)* | A MERS® System transaction used by an Option 1 Investor to report a transfer of servicing to a new Servicer due to a default of the current Servicer. |


| Term | Definition |
|------|------------|
| *TOS/TOB Combo* | A MERS® System transaction used to report the transfer of beneficial rights and servicing rights from one Option 2 Investor to another. |
| *TOS/TOB Combo Batch* | The name of a Transfer Batch created when a TOS/TOB Combo transaction is created on MERS® System. |
| *Training* | Name of the "Production-like" MERS® System environment that Members use for training purposes and to test changes to their applications that interface with MERS® System before promoting new code to their production systems. |
| *Transaction Default Settings* | MERS® System feature that allows a Member to define default values for its Primary Organizations and options on the *Registration*, *Create TOS*, and *Create TOS/TOB* pages. |
| *Transfer Batch* | A group of one or more MINs included in a TOS, TOB, or TOS/TOB Combo transaction, uniquely identified by the Batch Number assigned by MERS® System when the Transfer Batch is created. |
| *Transfer Creation Date* | The date on which a Member creates a Transfer Batch on MERS® System. |
| *Transfer Date (beneficial rights)* | The date on which the beneficial ownership of a loan transfers to the new Investor. In most cases, this is concurrent with the new Investor funding date. |
| *Transfer Date (servicing rights)* | Per the terms of the applicable *Purchase and Sale Agreement*, the date on which the responsibility for servicing a loan transfers to the new Servicer. |
| *Transfer Expiration Date* | The date on which a Transfer Batch expires on MERS® System if any of the MINs in the Batch are not accepted or rejected by all parties to the transaction. The Transfer Expiration Date is 31 calendar days after the Transfer Date or the Transfer Creation Date, whichever is later. |
| *Transfer to Non-MERS Status* | A MERS® System transaction used to deactivate a MIN Record as specified in Requirements: Transfer to Non-MERS Status. |
| *Transferable Record* | An Electronic Record under E-SIGN and UETA that (1) would be a note under the Uniform Commercial Code if the Electronic Record were in writing; (2) the issuer of the Electronic Record expressly has agreed is a Transferable Record; and (3) for purposes of E-SIGN, relates to a loan secured by real property. A Transferable Record is also referred to as an eNote. |
| *Trust* | A collection of mortgage loans, held by a Trustee, which are "pooled" together and sold in a rated mortgage-backed securities transaction. |
| *UCC* | Acronym for **Uniform Commercial Code**. |
| *UCC-1 Financing Statement* | A legal form that establishes a Lender's interest in or lien against shares in a co-operative housing corporation ("co-op") providing security for the repayment of the debt incurred by a borrower to purchase the shares. |
| *UCC-3 Financing Statement Amendment* | A legal form that tracks changes to a UCC-1 Financing Statement like the termination, continuation, and transfer of the Financing Statement. |
| *UETA* | Acronym for **Uniform Electronic Transaction Act**. A uniform form of statute governing Transferable Records that various states have enacted to establish the legal validity and enforceability of electronic signatures, contracts, and other records within the enforcing state. |
| *Urgent Mail* | The following postal or electronic mail received at the MERSCORP mail center with sufficient information to identify the Servicer or Subservicer of the loan that is forwarded to the Member within two (2) business days: |
| | • Adversary Complaints         • City/County Code Violations |



| Term | Definition |
|------|-----------|
|  | <ul><li>Foreclosure Documents</li><li>Government Correspondence</li><li>Discharge of Mortgage Requests</li></ul> <ul><li>Funds</li><li>Lawsuits</li><li>Subpoenas</li></ul> |
| ***Vendor*** | A Member that performs various transactions on MERS® System on behalf of another Member pursuant to a contractual agreement. |
| ***Vendor/Service Provider*** | An LOB assigned to a Member that performs transactions on MERS® System on behalf of other Members. |
| ***Warehouse/Gestation Lender*** | An LOB and Associated Member field on MERS® System. The LOB is used to identify a Member with an Interim Funding Interest in a loan prior to the sale of the loan to the permanent Investor. |
| ***XML Inquiry*** | A MERS® System transaction used to look up information on MIN Records matching the search criteria specified in the XML Inquiry Request. |
| ***XML Interface*** | The synchronous System-to-System interface that uses XML messages (Requests and Responses) to transact with MERS® System. The XML Requests and Responses are defined by the MERS® System DTDs. |



# Appendix A: MERS Signing Officer Primer

## Mortgage Electronic Registration Systems, Inc.

## Signing Officer Primer

**INTRODUCTION** ...................................................................................................................1

MERS SIGNING OFFICER ELIGIBILITY, CERTIFICATION AND APPOINTMENT...............................1

*The Rule 3 Officer Requirement*.................................................................................... 1

*The Exception to the Rule 3 Officer Requirement*......................................................... 1

*Certification*................................................................................................................... 2

*Appointment*.................................................................................................................. 2

REQUIRED MERS SIGNING OFFICER INFORMATION IN CRMS.....................................................3

*Name* ............................................................................................................................. 3

*Email Address*............................................................................................................... 3

*Job Title* ........................................................................................................................ 3

THE MERS® BUSINESS MODEL..................................................................................................3

*MERS*............................................................................................................................. 4

*MERSCORP*.................................................................................................................. 4

*Members and the Governing Documents*...................................................................... 4

*The MERS® System* ..................................................................................................... 4

*Further Explanation of the Roles of MERS*................................................................... 5

*Recordation versus Registration* .................................................................................. 5

*Members versus Affiliate Org IDs*................................................................................. 5

HOW MERS BECOMES A MORTGAGEE .......................................................................................6

*MOM ("MERS as Original Mortgagee") Loans versus Non-MOM Loans* ...................... 6

*The MERS Provisions of the MOM Security Instrument* ............................................... 6

THE AUTHORITY OF MERS SIGNING OFFICERS ........................................................................8

*MERS Signing Authority is tied to Registration on the MERS® System* ........................ 8

*Lien Releases* ............................................................................................................... 8

*Assignments* ................................................................................................................. 8

*Substitutions of Trustee* ............................................................................................... 8

*Foreclosures and Bankruptcies* .................................................................................... 9

*Servicing and Indemnification Obligations*.................................................................... 9

*The Officer Titles of MERS Signing Officers* ................................................................ 9

*Limitations on the Authority of MERS Signing Officers and Disciplinary Actions*.............. 9

No Further Delegation of Authority.............................................................................10

Corrective Acts by MERS...........................................................................................10

Indemnification by MERS............................................................................................10

THIRD PARTY VENDORS AND LAW FIRMS .................................................................................10

*Signing Authority Agreements (each an "SAA")* ........................................................ 10


*Eligibility Requirements of MERS Signing Officers Associated with an SAA* .................................... 11

*The Scope of Authority Granted to MERS Signing Officers Associated with an SAA* ........................ 11

*Termination of an SAA* ................................................................................................................. 11

ADDITIONAL REQUIREMENTS FOR MERS DOCUMENTS ............................................................... 11

*Proper References to MERS* .......................................................................................................... 11

*The Printed Name of the MERS Signing Officer on a MERS Document* ......................................... 12

*Notarization of MERS Documents* ................................................................................................. 12

*Use of the MERS Corporate Seal* .................................................................................................. 12


## INTRODUCTION

This Mortgage Electronic Registration Systems, Inc. Signing Officer Primer ("Primer") is the required training material for all Mortgage Electronic Registration Systems, Inc. ("MERS") Signing Officers. It contains information from the MERS® System Rules of Membership (the "Rules") and the MERS® System Procedures Manual (the "Procedures"). It also instructs MERS Signing Officers on the scope of their authority to act for MERS and the proper use of that authority.

In accordance with Rule 3, MERS Signing Officers are officers of a MERS® System Member ("Member") who have been appointed by MERS through the issuance of a MERS Corporate Resolution as officers of MERS. MERS Signing Officers have limited authority to act in the name of MERS. Members submit requests for the appointment of MERS Signing Officers via a web-based application known as the Corporate Resolution Management System ("CRMS"). The training of MERS Signing Officers, which is referred to as certification and is explained herein, is also facilitated through CRMS.

## MERS SIGNING OFFICER ELIGIBILITY, CERTIFICATION AND APPOINTMENT[1]

To be eligible for appointment as a MERS Signing Officer, an individual must (1) be an officer of the Member requesting that a MERS Corporate Resolution be issued to it (per the Rule 3 Officer requirement) and (2) complete certification on CRMS. An individual only becomes a MERS Signing Officer after they have been appointed as such by MERS through the issuance of a MERS Corporate Resolution.

### The Rule 3 Officer Requirement

Rule 3 of the Rules provides that only officers of a Member are eligible for appointment as MERS Signing Officers. Employees or agents of a Member who are not its officers are not eligible. If a MERS Signing Officer ceases to be an officer of the Member, then they may no longer serve as a MERS Signing Officer. An individual who has been granted a power of attorney by a Member, but is not an officer of the Member, does not satisfy the Rule 3 officer requirement.

### The Exception to the Rule 3 Officer Requirement

If a Member's structure is such that it does not have any officers, then, upon approval by MERSCORP Holdings, Inc. ("MERSCORP"), which is granted via CRMS, the Member may request that MERS appoint

---

[1] This section deals only with MERS Signing Officers appointed by MERS Corporate Resolutions issued directly to Members; it does not deal with MERS Signing Officers who are appointed by MERS Corporate Resolutions issued to vendors or law firms pursuant to Signing Authority Agreements. For information concerning those MERS Signing Officers, please see the section of this Primer titled *Third Party Vendors and Law Firms*.



as MERS Signing Officers employees of the Member who hold positions equivalent to that of officers.[2] These *officer-equivalents* must still complete certification prior to appointment by MERS and are required to recertify annually to maintain their authority.

The Rule 3 exception is not available to Members that have too few officers to meet their MERS signing needs. Those Members may want to consider requesting a Signing Authority Agreement.

## Certification

Prior to their appointment by MERS, all MERS Signing Officers are required to complete a certification process in CRMS. Certification consists of reading the Primer and then passing an examination (the "Certification Exam"). To maintain their authority as officers of MERS, MERS Signing Officers must recertify annually during the month of October.

The Certification Exam is a ten (10) question exam consisting of true/false, yes/no and multiple choice questions that tests the individual's knowledge of the contents of the Primer. One must correctly answer eight (8) out of ten (10) questions to pass the Certification Exam. If an individual fails the Certification Exam on three (3) consecutive attempts, then they become permanently ineligible to serve as a MERS Signing Officer.

Passing the Certification Exam alone does not authorize an individual to act in the name of MERS. The individual only becomes authorized once they have been appointed by MERS through the issuance of a MERS Corporate Resolution.

## Appointment

Appointment refers to the issuance by MERS of a MERS Corporate Resolution granting limited authority to an individual(s) to act in the name of MERS as its officer(s). Appointment may only occur if an individual has first been certified and is an officer, or officer-equivalent under the Rule 3 exception, of the Member to which the MERS Corporate Resolution is being issued. Only MERS has the authority to appoint MERS Signing Officers which occurs after the Member submits a request through CRMS to appoint their officer a MERS Signing Officer and after MERS issues a Corporate Resolution appointing said officer a MERS Signing Officer. Only after an individual has been appointed as a MERS Signing Officer may they begin to act in the name of MERS.

An individual's appointment as a MERS Signing Officer is conditioned upon them remaining certified in CRMS. If a MERS Signing Officer's certification expires, then their authority as a MERS Signing Officer is revoked. To reestablish an individual's MERS signing authority after expiration, they have to recertify and be reappointed by MERS through the issuance of a new MERS Corporate Resolution. The recertification

---

[2] For more information regarding Rule 3 exceptions and CRMS, please see the section of the Procedures titled *Corporate Resolution Management System*.



alone is insufficient to permit the individual to act in the name of MERS; there must be a reappointment by MERS to make it effective.

Each MERS Corporate Resolution issued to a Member supersedes, or replaces, any MERS Corporate Resolution previously issued to it. Thus, an individual's authority as a MERS Signing Officer may be revoked upon issuance of a new MERS Corporate Resolution that does not appoint that individual. For example:

> MERS issues a MERS Corporate Resolution to Member ABC on January 1, 2018. Alex and Ryan are named on the attached list as MERS Signing Officers. On March 1, 2018, MERS issues Member ABC a new MERS Corporate Resolution. This time, the list of MERS Signing Officers only names Alex. This means that upon issuance of the March 1, 2018 MERS Corporate Resolution, Ryan's authority to continue to act as a MERS Signing Officer was revoked.

## *REQUIRED MERS SIGNING OFFICER INFORMATION IN CRMS*

Via CRMS, Members are required to provide the following information for each of their MERS Signing Officers: Name, Email Address, and Job Title.

## Name

Members are required to provide the first name, middle name, and last name of each of their MERS Signing Officers. A middle initial may be provided in lieu of a full middle name. CRMS allows a Member to indicate that an individual does not have a middle name by checking a box. The way that a MERS Signing Officer's name is input into CRMS is how their name will appear on a MERS Corporate Resolution.

If a Member wishes to provide only an initial in the first name field for one of its MERS Signing Officers, it may do so, but only if it provides a full middle name. For example, the name *A. Brian Smith* would be permitted. *A.B. Smith* would not.

## Email Address

For each MERS Signing Officer, Members are required to provide an email address that was issued to the MERS Signing Officer by the Member for the purpose of business correspondence. Personal email addresses are not permitted. Further, the email address provided must be one that is unique to the MERS Signing Officer, meaning it cannot be an email address that they share with another individual or group.

## Job Title

In the Job Title field in CRMS, Members are required to provide the title held by the MERS Signing Officer as an officer of the Member, such as the title used when the individual executes documents in the Member's name as an officer of the Member. This is not intended to be the title the MERS Signing Officer holds as an officer of MERS, unless that happens to be the same title they hold as an officer of the Member.



## *THE MERS® BUSINESS MODEL*

As officers of MERS, MERS Signing Officers should understand some fundamental concepts about MERS, its roles, and its relationship to MERSCORP, the MERS® System, and Members.

## MERS

MERS was incorporated in 1999 in the state of Delaware. MERS is a wholly-owned subsidiary of MERSCORP. MERS serves as the mortgagee of record for mortgage loans[3] that Members are required to register on MERS® System. As mortgagee, MERS also serves as a nominee (i.e., a limited form of agency) for the original promissory note owner/lender ("Lender") and that Lender's successors and assigns.

MERS is not a servicer of mortgage loans. MERS is not a debt collector. MERS does not lend money to borrowers. MERS is not entitled to payment on or to retain payment received of any funds owing in relation to mortgage loans where MERS serves as a mortgagee and nominee. MERS is not an investor, lender, beneficial owner, note owner, or trustee.

## MERSCORP

MERSCORP is the parent company of MERS. MERSCORP, like MERS, was incorporated in the state of Delaware and its corporate mailing address is 5660 New Northside Drive NW, 3rd Floor, Atlanta, GA 30328. MERSCORP owns and operates MERS® System, MERS® eRegistry, and all other MERS® products. MERS Signing Officers are not officers of MERSCORP.

## Members and the Governing Documents

Members include lenders, servicers, sub-servicers, vendors, brokers, investors, law firms, title companies, and government entities. Each Member is bound by the terms of its membership agreement with MERSCORP and MERS, which consists of the Rules, the Procedures, and the Membership Application (collectively, the "Governing Documents"). The Primer is included in the membership agreement as an appendix to the Procedures.

---

[3] Depending on the type of security instrument used to secure a mortgage loan, the role of MERS may be referred to differently. On a mortgage, MERS is properly referred to as the mortgagee. On a deed of trust, with limited exception, MERS is properly referred to as the beneficiary. On a security deed, MERS is properly referred to as the grantee. For simplicity, the terms "mortgage" and "mortgagee" are used throughout this Primer.



## MERS® System

MERS® System is a national electronic database that tracks changes in mortgage servicing rights and beneficial ownership interests in residential mortgage loans. MERS® System is not a replacement for the public land records, it is not a system of record, and no interests are created or transferred on MERS® System.

Each mortgage loan registered on MERS® System is assigned a unique eighteen (18) digit number, which is called a Mortgage Identification Number ("MIN"). The MIN, which is required by the Procedures to appear on various recorded documents, such as mortgages naming MERS as the mortgagee, MERS assignments and lien releases, enables one to identify a recorded mortgage to a mortgage loan registered on MERS® System. The Procedures and Rule 2 of the Rules set out the requirements governing the registration of mortgage loans and the various MERS® System transactions.

## Further Explanation of the Roles of MERS

As mortgagee of record, MERS holds the legal title to mortgage liens. When MERS serves as mortgagee of record, it does so as a nominee of the original Lender and that Lender's successors and assigns. It is through this nominee relationship that any separation or splitting of the mortgage from the note is prevented. In other words, if the Lender is succeeded in interest by another party (e.g., through a merger or acquisition) or if the Lender transfers the note to another party (e.g., the note is sold or negotiated) then MERS will continue to act as mortgagee on behalf of (i.e., as a nominee of) that new Lender or note-holder, which is a successor or assign of the previous Lender or note-holder. It is only when MERS actually releases or assigns the mortgage (i.e., a MERS Signing Officer executes a lien release or an assignment of mortgage) that MERS no longer holds any interest in the mortgage.

## Recordation versus Registration

Recordation is the process of recording documents (e.g., mortgages, deed of trusts, security deeds, assignments, etc.) in the public land records. Recording is done to perfect a security interest and to establish priority ahead of other secured creditors. Through recording, third parties (e.g., taxing authorities, lenders, condo associations, etc.) are put on notice of the existence of a mortgage lien on a particular property.

Registration is the process of registering mortgage loans on MERS® System. The purpose of registration is to track changes in servicing rights and beneficial ownership interests in mortgage loans on MERS® System.

## Members versus Affiliate Org IDs

To fully understand how MERS grants signing authority to MERS Signing Officers, it is important to understand the difference between a Member and an Affiliate Org ID. A Member is a legal entity (e.g., corporation, limited liability company, partnership) that has entered into a membership agreement with MERSCORP and MERS and otherwise meets the definition of a Member set out in the Rules and Procedures. By contrast, an Affiliate Org ID is an additional Org ID utilized by a Member for the purpose of


managing its loans registered on MERS® System and may be used to identify a department, line of business, or internal division of such Member. An Affiliate Org ID is not used to identify a distinct legal entity.

MERS Corporate Resolutions are only issued to Members. They are not separately issued to each of a Member's Affiliate Org IDs. The MERS Corporate Resolution authorizes MERS Signing Officers to take actions in the name of MERS for loans registered on MERS® System to the Member and its Affiliate Org ID(s).

To illustrate the difference between a Member and an Affiliate Org ID and how it pertains to the authority of MERS Signing Officers, here is an example:

> ABC Mortgage is a corporation and, therefore, a legal entity. It is a Member and its Org ID is 1. ABC Mortgage was issued a MERS Corporate Resolution, which appointed several of its officers as MERS Signing Officers. ABC Mortgage is primarily a servicer of mortgage loans, but it also has a warehouse lending line of business. The warehouse line is not a separate legal entity. ABC Mortgage uses Org ID 2, its Affiliate Org ID, to manage its warehouse line on MERS® System. The MERS Signing Officers appointed by the MERS Corporate Resolution issued to ABC Mortgage are authorized to act for MERS for loans registered on MERS® System to either Org ID 1 or Org ID 2.

## HOW MERS BECOMES A MORTGAGEE

## MOM ("MERS as Original Mortgagee") Loans versus Non-MOM Loans

MERS becomes a mortgagee in one of two ways: it is either the original mortgagee or it becomes the mortgagee via an assignment. Mortgage loans for which MERS is the original mortgagee are referred to as "MOM" loans. MERS becomes the mortgagee on a MOM loan by being named as such in the recorded mortgage. On the other hand, mortgage loans for which MERS is not the original mortgagee are referred to as "Non-MOM" loans. MERS becomes the mortgagee on a non-MOM loan through an assignment of the mortgage to MERS.

## The MERS Provisions of the MOM Security Instrument

There are three (3) sections of the MOM security instrument that specifically pertain to MERS. Those sections, which are explained below, are the Definitions Section, the Granting Clause, and the Disclosure Section. The language of those sections may vary slightly from one jurisdiction to another, but their substance and effect remains largely the same.

### Definitions Section

The Definitions Section of the MOM security instrument identifies the various parties to the mortgage loan and explains their respective roles.

Sample Definitions Section from a MOM mortgage:


"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Sample Definitions Section from a MOM deed of trust:

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

## *Granting Clause*

The Granting Clause of a MOM security instrument is the section in which the borrower expressly conveys the property to MERS as the mortgagee.

Sample Granting Clause from a MOM mortgage:

Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property…

The Granting Clause of a MOM deed of trust is slightly different from the Granting Clause appearing in a MOM mortgage. This is because in a MOM deed of trust, the borrower is granting the property to a trustee, not to MERS. The Granting Clause in a MOM deed of trust reiterates MERS's role as the beneficiary.

Sample Granting Clause from a MOM deed of trust:

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS…Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property…

## *Disclosure Section*

In the Disclosure Section of the MOM security instrument, the borrower acknowledges the interests held by MERS and MERS's authority to exercise rights given to a mortgagee, including discharging the mortgage and foreclosing. This section is typically the same regardless of whether the security instrument is a mortgage or a deed of trust.

Sample Disclosure Section from the MOM security instrument:

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.


## THE AUTHORITY OF MERS SIGNING OFFICERS

A MERS Corporate Resolution grants MERS Signing Officers limited authority to act in the name of MERS. They may only sign certain types of documents for MERS and when they act as officers of MERS they must do so in a manner that complies with the Rules, the Procedures, the Primer, the MERS Corporate Resolution (which is the source of their authority), and any and all applicable laws, rules, and regulations. Via CRMS, a MERS Signing Officer can access any current MERS Corporate Resolution authorizing them to act for MERS.

## MERS Signing Authority is tied to Registration on MERS® System

The authority granted by MERS to MERS Signing Officers is tied primarily to the registration of loans on MERS® System. With limited exception, MERS Signing Officers may only act for MERS in relation to loans registered to the Member with which they are associated (i.e., the Member whose MERS Corporate Resolution they appear on) or the Member's Affiliate Org ID(s).

## Lien Releases

MERS Signing Officers are authorized to sign documents in the name of MERS that are necessary to release the lien of a mortgage loan registered to the Member on whose MERS Corporate Resolution they appear or its Affiliate Org ID(s). This includes, but is not limited to, signing lien releases, satisfactions, discharges, partial releases and cancellations.

## Assignments

MERS Signing Officers are authorized to sign a MERS assignment of mortgage of a mortgage loan registered to the Member on whose MERS Corporate Resolution they appear or its Affiliate Org ID(s). In the alternative, if the mortgage loan is not registered to the Member or its Affiliate Org ID then the Member's MERS Signing Officer is authorized to sign a MERS assignment of mortgage if the Member is the current promissory note holder.

MERS assignments should not contain any language purporting to assign the note (e.g., "MERS assigns the mortgage, together with the note/indebtedness" is prohibited language). Before signing a MERS assignment, a MERS Signing Officer should confirm that it contains no note transfer language.

MERS assignments should not reference any effective date that is different from the date the MERS assignment was signed by a MERS Signing Officer. MERS assigns its interest in a mortgage on the date that a MERS Signing Officer executes an assignment of that mortgage.



## Substitutions of Trustee

MERS Signing Officers are authorized to sign a MERS substitution of trustee that relates to a mortgage loan registered to the Member on whose MERS Corporate Resolution they appear or its Affiliate Org ID(s). MERS should never be appointed as the substituted trustee, even if that appointment is only for the brief, limited purpose of reconveying the property to the trustor (e.g., "the undersigned MERS hereby appoints itself as trustee and reconveys…" is prohibited language).

## Foreclosures and Bankruptcies

Rule 8 of the Rules governs foreclosures and bankruptcies. Prior to initiating foreclosure proceedings (judicial or non-judicial), or filing a Proof of Claim or Motion for Relief from Stay in a bankruptcy, Members are required to have a MERS Signing Officer execute a MERS assignment of mortgage to the lender, the servicer, or the lender's designee.

## Servicing and Indemnification Obligations

Rule 13 of the Rules governs the indemnification obligations that exist among MERS, MERSCORP, and Members. The MERS Corporate Resolution authorizes MERS Signing Officers to act in the name of MERS as may be necessary to fulfill the Member's servicing obligations to the Lender or as may be necessary to fulfill the Member's indemnification obligations under the Rules. This authority includes, but is not limited to, verifying litigation documents, such as pleadings or discovery responses, for MERS when MERS has been named as a party to a lawsuit or has been subpoenaed as a non-party. MERS Signing Officers are also authorized to sign settlement agreements in the name of MERS, provided the settlement, in substance and process, complies with the Rules.[4] Finally, as officers of MERS, MERS Signing Officers may be asked to appear for MERS as a witness or deponent; the MERSCORP Law Department should be made aware of this before it occurs.

## The Officer Titles of MERS Signing Officers

MERS Signing Officers are appointed by MERS with three (3) titles: Assistant Secretary, Assistant Vice President, and Vice President. These titles can be found in the MERS Corporate Resolution that is the source of a MERS Signing Officer's authority. When signing for MERS, a MERS Signing Officer may sign with any one (1) of these three (3) titles, provided use of that title complies with applicable law. No other title is permitted for use by a MERS Signing Officer when they sign as an officer of MERS.

The term MERS Signing Officer is not a title; it is a generic term used to refer to the officers of Members who have been appointed as officers of MERS. MERS Signing Officers are not permitted to sign using the title "MERS Signing Officer".

---

[4] For more information on settlement of claims made against MERS, please see Rule 13, Section 2.


# Limitations on the Authority of MERS Signing Officers and Disciplinary Actions

Rule 7 of the Rules governs violations of the Rules and Procedures and the applicable disciplinary action process. MERS Signing Officers are required to act in accordance with the Rules, the Procedures, the Primer, and the MERS Corporate Resolution that is the source of their authority. Furthermore, MERS Signing Officers are required to abide by any and all applicable laws, rules, and regulations.

MERS may revoke the authority of a MERS Signing Officer who has acted outside the scope of their authority from MERS, or who has acted contrary to applicable laws, rules, or regulations. In addition, that individual may be made temporarily or permanently ineligible from serving as a MERS Signing Officer. A Member may be subject to monetary penalties and other sanctions, as set out in Rule 7, if its MERS Signing Officer acts in violation of the Rules, Procedures, the Primer, the MERS Corporate Resolution that is the source of their authority, or any applicable laws, rules, or regulations.

## No Further Delegation of Authority

MERS Signing Officers are prohibited from delegating their authority to act for MERS to other individuals or entities. This prohibition includes, but is not limited to, a MERS Signing Officer purporting to appoint an officer of MERS through the issuance of a corporate resolution and the appointment of an agent for MERS through a power of attorney.

## Corrective Acts by MERS

MERS Signing Officers are not authorized to ratify, affirm, or disavow the acts of MERS. For example:

- After MERS has assigned its interest in a mortgage to one company, and that interest has not been assigned back to MERS, a MERS Signing Officer is not authorized to execute a subsequent MERS assignment to purport to change or "correct" the assignee to be a different company.

- If someone who is not a MERS Signing Officer purports to act in MERS's name (e.g., signing a lien release or assignment) then upon discovery of the act by a Member, that Member must notify MERSCORP consistent with its self-reporting obligations under Rule 7 and shall refrain from taking any further actions to attempt to ratify, affirm, or disavow the act.

In jurisdictions where there is a legal basis for the reinstatement of a released lien through the recording of a rescission document, Members must obtain express permission from MERSCORP before a MERS Signing Officer may be authorized to sign such document.

In the situation of a MERS Loan for which a lien release was signed and recorded by a party other than MERS who did not have any recognized legal rights for doing so, a MERS Signing Officer's authority to sign a MERS lien release would not be affected by this prohibition because the initial lien release was not an act by MERS, resulting in the lien remaining outstanding until such action is taken by MERS.


## Indemnification by MERS

MERS Signing Officers are prohibited from signing agreements for MERS to indemnify Members or third-parties. The only exception to this prohibition is for instances where indemnity is required by law, such as in a jurisdiction requiring the signer of a lien release to indemnify the county recorder.

## *THIRD PARTY VENDORS AND LAW FIRMS*

## Signing Authority Agreements (each an "SAA")

An SAA is a contract signed by MERS, MERSCORP, a Member, and that Member's vendor or law firm ("Vendor"). The Vendor in an SAA, like the Member, is required to have its own MERS® System membership. Additionally, the Member and Vendor must have a pre-established contractual agreement whereby the Vendor performs services for the Member.

Once MERS, MERSCORP, a Member, and its Vendor have all signed an SAA, MERS may issue a MERS Corporate Resolution to the Vendor, appointing certain employees of the Vendor as MERS Signing Officers. Those MERS Signing Officers are granted limited authority to act in the name of MERS in relation to loans registered to the Member on MERS® System. No action may be taken in the name of MERS until after a MERS Corporate Resolution has been issued.

## Eligibility Requirements of MERS Signing Officers Associated with an SAA

If the Vendor is an organization other than a law firm, such as a title company or document preparation vendor, then only officers of the Vendor are eligible for appointment as MERS Signing Officers. If the Vendor is a law firm then only licensed attorneys in good standing with a state bar who are employed by the Vendor are eligible for appointment as MERS Signing Officers.

Like all other MERS Signing Officers, MERS Signing Officers associated with an SAA are required to complete certification and be appointed by MERS. They must also recertify annually to maintain their authority as officers of MERS.

## The Scope of Authority Granted to MERS Signing Officers Associated with an SAA

The scope of authority granted to MERS Signing Officers associated with an SAA is more limited than that which is granted to MERS Signing Officers who are appointed by a MERS Corporate Resolution issued directly to a Member. At the request of a Member that is a party to a fully executed SAA, MERS may grant the authority to sign one or several of the following types of documents to the MERS Signing Officers: (1) assignments, (2) lien releases, (3) Consolidation, Extension, and Modification Agreements ("CEMAs"), or


(4) modifications. MERS Signing Officers associated with an SAA may only sign documents that relate to loans registered to the Member or its Affiliate Org ID(s) on MERS® System.

## Termination of an SAA

Upon the termination of an SAA, any MERS Corporate Resolution issued pursuant to that SAA is also revoked, which revokes the authority of any MERS Signing Officers appointed thereby. An SAA may be terminated at the request of the Member, the Vendor, MERS or MERSCORP. Because an SAA is predicated upon an existing contract between the Member and the Vendor, if the Member and the Vendor terminate their own contract then the SAA they have with MERS and MERSCORP is also terminated. Finally, an SAA is terminated if either the Member or the Vendor ceases to be a MERS® System Member.

## *ADDITIONAL REQUIREMENTS FOR MERS DOCUMENTS*

## Proper References to MERS

Wherever MERS may be referenced (e.g., recorded document, legal pleading), its full legal name must be used: Mortgage Electronic Registration Systems, Inc. The acronym MERS may only be used after being defined (e.g., Mortgage Electronic Registration Systems, Inc. ("MERS")). Subject to state-specific requirements and depending on the type of security instrument, MERS must be referred to in documents as mortgagee, beneficiary, or grantee (e.g., "Mortgage Electronic Registration Systems, Inc. ('MERS'), as mortgagee"). When MERS is granted the mortgage lien as the mortgagee as nominee either through the Security Instrument or an assignment to MERS, the language "its successors and assigns" must appear after the Lender for which MERS is identified as nominee (e.g., Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for XYZ Bank, its successors and assigns). Once MERS is referred to in a document as mortgagee, beneficiary, or grantee, it is fine if subsequent references in that document only refer to MERS's role as nominee.[5]

## The Printed Name of the MERS Signing Officer on a MERS Document

The first name and last name of a MERS Signing Officer, as it appears in print on a document (e.g., assignment or lien release), must exactly match the first name and last name of that MERS Signing Officer on the MERS Corporate Resolution that is the source of their authority. If the MERS Signing Officer's middle name/initial also appears on the document then it too must match exactly to the middle name/initial that appears for them on the MERS Corporate Resolution.

If only the MERS Signing Officer's first initial appears on the MERS Corporate Resolution that is the source of their authority then their first initial, middle name, and last name are all required to appear in print on a

---

[5] Depending on the state, requirements regarding references to MERS's role may vary. Please see the *MERS Documents* section of the Procedures for more information.


document that they are signing for MERS. It is not permissible to only print the first initial and last name on the document.

To illustrate the printed name requirement, here are several examples:

Name on MERS Corporate Resolution: *John James Smith*
Acceptable name printed on document: *John Smith or John James Smith*

Name on MERS Corporate Resolution: *John J. Smith*
Acceptable name printed on document: *John Smith or John J. Smith*

Name on MERS Corporate Resolution: *J. James Smith*
Acceptable name printed on document: *J. James Smith*

## Notarization of MERS Documents

Members should consult their counsel to determine the applicable laws, rules, and regulations concerning notarization of documents. Any documents signed by a MERS Signing Officer must adhere to those laws, rules, and regulations.

## Use of the MERS Corporate Seal

MERS and MERSCORP do not require that a MERS Corporate Seal be affixed to all documents signed by MERS Signing Officers. However, if applicable laws, rules, or regulations require that a seal be affixed to a document, and a MERS Signing Officer is signing that document as an officer of MERS, then the MERS Corporate Seal should be affixed because it is MERS that is acting through its officer.

# Appendix B: Tracking iRegistration Loans

An iRegistration is a loan for which MERS holds no interest in the Mortgage. iRegistrations may be optionally registered on MERS® System for tracking purposes only.

Tracking iRegistrations on MERS® System allows Members to:

- Verify information during the loan origination process,

- Leverage information about the property offered as security for a loan during the pre-funding and post-funding phases of the loan origination process, and

- Track vacant properties to provide Property Preservation Contact information to code enforcement officials.

An iRegistration remains active so long as the Member intends to track it on MERS® System, and the Servicer and Investor remain Members.

An iRegistration loan may be registered using the MERS® System UI or the Flat-File or XML interfaces.



# Requirements: iRegistration Loans

In addition to the Registration requirements that apply to all loans registered on MERS® System (see Requirements: All Registered Loans), the following requirements apply to the maintenance of active iRegistration loans:

- The Servicing Member must ensure that the data in the MIN Record is maintained such that it matches the data on the Member's System of Record.

- If the contractual servicing rights or beneficial ownership interests of the loan are transferred to another Member, the transfer must be reported to MERS® System.

- If the contractual servicing rights or beneficial ownership interests of the loan are transferred to a non-Member, or the Servicer or Investor cease being Members, the MIN Record must be deactivated on MERS® System.

- When the tracking of an iRegistration is complete, the MIN Record must be deactivated on MERS® System.

- Members must self-audit their iRegistration loans for compliance with the following document requirements:

  o In order for a loan to be registered as an iRegistration loan, MERS must not be named as the current Mortgagee or assignee.

  o If MERS was Mortgagee at any time, an Assignment from MERS or UCC-3 must have been prepared and executed in accordance with the applicable document requirements (see MERS Documents) and sent for Recordation before the loan was registered as an iRegistration.

# Procedures: iRegistration Loans

In addition to registering MERS Loans, the *Registration* transaction is also used to enter the required information on MERS® System to register an iRegistration loan, convert an existing iRegistration MIN Record to a Non-MOM, and register an REO property.

In this section, the registration procedures applicable to an iRegistration are organized into the following categories:

- Procedure: iRegistration Loan Registration: This procedure applies to all iRegistration loan registrations unless another procedure in this section addresses a scenario particular to a specific registration.

- Procedure: iRegistration to Non-MOM Conversion: This procedure applies to all iRegistration MIN Records that are converted to a Non-MOM using the Conversion transaction.

- Procedure: iRegistration for REO Property: This procedure applies to all REO property registrations.

- Procedure: Completing a Pre-Closing iRegistration: This procedure applies to all iRegistrations that were initially registered using the Pre-Closing transaction.

- Procedure: iRegistration after Reversal: This procedure applies to all MIN Records with a status of Registration Reversal for which the loan is being re-registered using the same MIN and MERS is not the Mortgagee.

- Procedure: iRegistration after Deactivation: This procedure applies to all deactivated MIN Records for which the loan is being re-registered using the same MIN.



# Procedure: iRegistration Loan Registration

For step-by-step instructions on registering a Mortgage loan as an iRegistration online using the MERS® System UI, see the iRegistration QRG.

1. The registering Member enters the MIN assigned to the loan on the *Register a MIN* page.

2. The registering Member completes the fields on the *Registration Details* page, adhering to the following instructions as applicable:

   o Set the value of the MOM indicator to "iRegistration". This step is optional for a Pre-Closing.

   o System-required loan information must be provided at Registration. The Originating Organization is optional for iRegistration loans.

   o If the loan is being registered before it has closed, select the **Yes** Pre-Closing button.

   o Identify other Members with an interest in a loan as needed. This step is optional for a Pre-Closing.

   o Enter loan information exactly as it appears on the Member's System of Record as specified in Requirements: MERS® System Data Integrity except as follows:

   o Co-Borrower information is optional for an iRegistration.

   o None of the fields in the *Miscellaneous* section are required for an iRegistration. Enter **"1111"** in these fields to bypass them during registration.

3. The registering Member submits the Registration.

Refer to System Actions: Loan Registration for details on the system actions that occur after a loan is registered on MERS® System.

# Procedure: iRegistration to Non-MOM Conversion

When the Mortgage of an active iRegistration is assigned to MERS, it must be converted to a Non-MOM using the Conversion transaction (see iRegistration Conversion QRG).

1. Once the Mortgage has been assigned to MERS, the Servicer or Subservicer enters the loan's MIN on the *Register a MIN* page.

2. If the MIN is associated with an active iRegistration MIN Record, the *Conversion* page displays the existing loan information with the MOM indicator field set to "Non-MOM".

3. The Servicer or Subservicer verifies all loan information and updates it as needed to ensure that it matches the Member's System of Record and as specified in Requirements: MERS® System Data Integrity.

4. The Servicer or Subservicer submits the Conversion.

Refer to System Actions: Loan Registration for details on the system actions that occur after an iRegistration is converted to a Non-MOM on MERS® System.


# Procedure: iRegistration for REO Property

Because there is no Note or borrower currently associated with an REO property, the standard process for registering these loans on MERS® System is slightly modified as detailed in this section.

1. The registering Member enters the MIN assigned to the REO property on the *Register a MIN* page.

2. The registering Member completes the fields on the *Registration Details* page, entering the information exactly as it appears on the Member's System of Record and as specified in Requirements: MERS® System Data Integrity except as noted below:

| MERS® System Field | Enter |
|---|---|
| Lien type | '1st Lien' |
| Note Date | The current date |
| Note Amount | A value of one dollar ('1.00') |
| Owner Occupied | 'No' |
| MOM | 'iRegistration' |
| Pre-Closing | 'No' |
| Servicer | The Org ID of the Servicer |
| Investor | The Org ID of the Servicer |
| Property Preservation Company | The Org ID of the company managing the property |
| Borrower Information | 'Real Estate Owned' in the **Corporate Name** field |

3. The registering Member submits the Registration.

4. A Property Preservation Company can be updated as needed post-registration.

Refer to System Actions: Loan Registration for details on the system actions that occur after an REO property is registered on MERS® System as an iRegistration.

# Procedure: Completing a Pre-Closing iRegistration

If a loan was registered on MERS® System prior to closing using the Pre-Closing Registration transaction as an iRegistration, the Registration is completed using the Post-Closing Registration transaction once the loan has closed (see Procedure: Completing a Pre-Closing Registration).

# Procedure: iRegistration after Reversal

A loan with a MIN Status of **Registration Reversal** can be re-registered as an iRegistration. During the re-registration process, the loan information can be updated including the Servicer and Investor Org IDs (see Procedure: Re-registration after Reversal).



# Procedure: iRegistration after Deactivation

If a loan is correctly deactivated on MERS® System for any reason other than **Foreclosure Complete** or **Paid in Full** and subsequently needs to be re-registered and MERS is not the Mortgagee, it is re-registered as in iRegistration using the same MIN (see Procedure: Re-registration after Deactivation).

# *iRegistration Transfer Transactions*

iRegistration loan transfers are reported to MERS® System in the same manner as MERS Loans and are subject to the same requirements. For details, see Transfers.

# *iRegistration Loan Deactivation*

The primary Deactivation transactions on MERS® System for iRegistration loans are:

- **Transfer to Non-MERS Status:** Must be used to deactivate a Flow iRegistration MIN Record that will no longer be tracked (see Transfer to Non-MERS Status QRG).

- **Registration Reversal:** Must be used to deactivate a Seasoned iRegistration MIN Record that will no longer be tracked on MERS® System if the **Transfer to Non-MERS Status** transaction is not used to deactivate the MIN Record (see Reversals QRG).

- **Paid in Full:** Must be used to deactivate an iRegistration MIN Record when the Mortgage is released by the Recordation of a Lien Release or UCC-3 or extinguished by a Deed-in-Lieu (see Paid in Full QRG).

- **Foreclosure Complete:** Must be used when a Member opts to track iRegistration foreclosure activity on MERS® System and the foreclosure process is complete (see Tracking iRegistration Foreclosure Activity).

# Tracking iRegistration Foreclosure Activity

Members may, but are not required to, report foreclosure activity for iRegistration loans on MERS® System.

- If a Member opts to track iRegistration foreclosures on MERS® System, the following foreclosure requirements apply:

  - The **Foreclosure Pending (Option 3), iRegistration** option must be used to report the pending foreclosure no later than seven (7) calendar days after the event or action occurs in the Member's System of Record that represents the decision to initiate foreclosure.

  - The **Reinstated or Modified (Option 3), iRegistration** option must be used to report that the foreclosure has been averted and the loan has been reinstated.

  - The **Foreclosure Complete** option must be used to deactivate the loan on MERS® System if foreclosure is completed.

  - The **Foreclosure Status Reset** option must be used to return a MIN Record to an Active status if the **Foreclosure Pending Option 3** status was entered in error no later than seven (7) calendar days after the error is identified (see Reversals QRG).


- If a Member opts to **not** track iRegistration foreclosure activity on MERS® System, the MIN Record must be deactivated using the **Transfer to Non-MERS Status** or **Registration Reversal** Deactivation.

# iRegistration Data Reconciliation Requirements

The MERS® System fields in the table below must be reconciled for iRegistration loans. The following values are used in the **Required** or **Conditionally Required** column:

- **Required:** Must be present on all iRegistration MIN Records.
- **Conditionally Required:** Must be present on all iRegistration MIN Records if the field applies to the loan, borrower, or property, and the data is present on the Member's System of Record (see Conditionally-Required Field Criteria for details).

| Field Name | Field Description | Required or Conditionally Required |
|---|---|---|
| MIN_NBR | MIN | Required |
| MIN_STAT | MIN Status Indicator | Required |
| LIEN_TYPE | Lien Type | Required |
| NOTE_AMT | Note Amount | Required |
| NOTE_DT | Note Date | Required |
| SERVR_ORG_ID | Servicer Org ID | Required |
| SUB_SERVR_ORG_ID | Subservicer Org ID | Conditionally Required |
| INVST_ORG_ID | Investor Org ID | Required |
| PPC1_ID | Property Preservation Co. 1 Org ID | Conditionally Required |
| BORR_CORP_NM | Borrower Corporate Name | Conditionally Required |
| BORR_FST_NM | Borrower First Name | Conditionally Required |
| BORR_MID_NM | Borrower Middle Name | Conditionally Required |
| BORR_LST_NM | Borrower Last Name | Conditionally Required |
| BORR_SSN | Social Security Number | Required |
| PROP_NBR | Property Street Number | Conditionally Required |
| PROP_STRT | Property Street Name | Required |
| PROP_UNIT_NBR | Property Unit Number | Conditionally Required |
| PROP_CITY | Property City | Required |
| PROP_ST | Property State | Required |
| PROP_ZIP | Property Zip | Required |
| PROP_DESCR_VAL | Property County/FIPS Code/ANSI Code | Required |
| SI_IN_MERS | MOM Indicator | Required |

Note: The PROP_DESCR_VAL field contains only one of the following: the county name where the property is located, or the corresponding FIPS Code, or ANSI Place Code.