## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CONSTANTINE ANGUS,

      Plaintiff,

v.

MADISON MANAGEMENT
SERVICES, LLC and FREEMAN
MATHIS & GARY, LLP,

      Defendants.

Civil Action No.
1:24-cv-03626-LMM-LTW

## DEFENDANT MADISON MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Madison Management Services, LLC ("Madison"), by and through its undersigned counsel, hereby moves to dismiss the Amended Complaint filed by Plaintiff Constantine Angus ("Plaintiff") [ECF No. 15] for failure to state a claim upon which relief can be granted, respectfully showing this Court as follows:

## I. INTRODUCTION

The new conclusory allegations strewn throughout the Amended Complaint are a futile attempt to evade the fatal flaw in Plaintiff's case: that the loan at issue is *not* a consumer debt. Both statutes invoked by Plaintiff, the Fair Debt Collection Practices Act ("FDCPA") and the Georgia Fair Business

Practices Act ("GFBPA"), apply only to consumer debts undertaken primarily for personal, family, or household purposes. But as the factual material discussed herein demonstrates, the loan at issue is a *commercial* debt, undertaken for admitted investment and business purposes. Thus, just as this Court previously held that Plaintiff could not maintain an FDCPA claim against a party that was not a "debt collector" in *Angus I*[1], Plaintiff cannot maintain such a claim here in *Angus II* where the relevant loan is not a "debt."

Moreover, even if the relevant loan could be considered a consumer debt subject to the FDCPA or GFBPA (which it is not), Plaintiff has nevertheless failed to demonstrate that Madison plausibly engaged in any prohibited conduct under those statutes. The new material proffered in the Amended Complaint consists primarily of irrelevant, distracted musings, ranging from a discussion of comments made by the chief executive officer of non-party CWS Investments, Inc. ("CWS"), to the bankruptcy proceedings involving non-party Taylor Bean & Whitaker Mortgage Corp. ("TBW"). Consequently, for the reasons previously discussed in Madison's Motion to Dismiss the Original Complaint [ECF No. 12] (the "First Motion to Dismiss"), as well as those discussed herein, dismissal of all claims, with prejudice, is warranted.

---

[1] *Angus v. CWS Invs., Inc.*, No. 1:24-cv-00478-ELR (N.D. Ga. Jan. 2, 2025).

## II. RELEVANT FACTUAL BACKGROUND [2]

### A.     The Secondary Loan and Plaintiff's Business

Plaintiff is the chief executive officer and registered agent of Petra Realty, Inc. ("Petra"), a Georgia for-profit corporation incorporated in 2005. (*See* Petra Records; *supra* note 1 (defining all documents referenced herein)). On February 7, 2007, Plaintiff obtained two loans from Home America Mortgage, Inc. ("HAM") to purchase certain real property located at 2128 East

---

[2]     Although a motion to dismiss under Rule 12(b)(6) concerns only the well-plead allegations of a complaint, a court may properly consider a document not referred to or attached to that complaint if the document is: (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Accordingly, the following documents may be considered herein:

(1)     *Angus I* Original Complaint [*Angus I* ECF No. 1–1 at 3-57];
(2)     Security deed recorded at Deed Book 47597, Page 348 Gwinnett County, Georgia records [*Angus I* ECF No. 1–1 at 28-44], attached hereto for the Court's convenience as **Exhibit "1"** (hereinafter, the "Security Deed"),
(3)     *Angus I* Amended Complaint [*Angus I* ECF No. 12; *Angus II* ECF No. 3–1];
(4)     *Angus II* Original Complaint [*Angus II* ECF No. 1–1];
(5)     Certified copies of Petra Realty Inc. corporate filings [*Angus II* ECF No. 12–1] (hereinafter, the "Petra Records");
(6)     Quitclaim deed recorded at Deed Book 48030, Page 504 Gwinnett County, Georgia records [*Angus II* ECF No. 12–2] (hereinafter, the "Quitclaim Deed");
(7)     Uniform Residential Loan Application, attached hereto in redacted form as **Exhibit "2"** (hereinafter, the "Loan Application").

Each of these documents are central to Plaintiff's claims, and their authenticity is not challenged.

Main Street, Snellville, Georgia 30078 (the "Property"). (*Angus II* Am. Compl. ¶ 7; Angus *I* Am. Compl. ¶ 54). The second of these loans—the "secondary loan" at issue in this case—is evidenced by a promissory note signed by Plaintiff (the "Promissory Note"). (*See Angus II* Am. Compl. ¶ 9, Ex. 5 [ECF No. 15–6][3] at 3-5]. The secondary loan is further secured by the Security Deed, under which Plaintiff, as "Borrower," granted a security interest in the Property to HAM, as "Lender." (*Id.* ¶ 10).

Plaintiff obtained the secondary loan in order to purchase the Property for Petra's business use. In the Loan Application dated February 7, 2007, Plaintiff attested that upon its purchase, the Property would be used as an "*investment*." (Loan Application at 2, § II). Plaintiff expressly denied that the Property would be used as a "primary" or "secondary" residence; and, when asked "[d]o you intend to use the [P]roperety as your primary residence?," Plaintiff responded "No". (*Id.* at 2, § II & 5, § VIII). Additionally, by signing the Loan Application, Plaintiff certified that:

> (5) the [P]roperty will be occupied as indicated in this [A]pplication; … (7) the Lender and its agents, brokers, insurers, *servicers*, successors, and assigns may continuously rely on the information contained in the [A]pplication, and I am obligated to amend and/or supplement the information provided in this [A]pplication if any of the material facts that I have represented herein should change prior to closing of the Loan.

---

[3]     Throughout the Amended Complaint, Plaintiff mislabels the numbering and contents of the exhibits attached thereto. For the Court's convenience, the ECF No. will be included in all citations to exhibits of the Amended Complaint.

(*Id.* at 5, § IX (italics added)). Confirming the Property would be occupied as indicated in the Loan Application, Petra listed the Property address as its "corporation address" in its Corporate Annual Registration filed on March 1, 2007. (*See* Petra Records at 7). Thereafter, on June 21, 2007, Plaintiff conveyed the Property to Petra by virtue of the Quitclaim Deed.[4]

In each of Petra's Corporate Annual Registrations filed between 2007 and 2012, Petra lists its corporate address at the Property's address; while plaintiff lists his individual address at 1263 Pensacola Lane, Grayson, Georgia 30017 (the "Personal Address"). (*See id.* at 7-11). In its Corporate Annual Registrations filed between 2014 and 2021, Petra's corporate address is listed at the Personal Address. (*See id.* at 12-24). However, in each of those filings, the address of Petra's registered agent (*i.e.*, Plaintiff) is listed at the Property address; despite Plaintiff continuing to list his individual address at the Personal Address.[5] (*See id.*). Petra's Corporate Annual Registrations for 2022, 2023, and 2024 list both the corporation's principal office address and registered agent address at the Property address. (*See id.* at 25).

---

[4]     The Court may take judicial notice of the recording of the Quitclaim Deed. *Nazaire v. Deutsche Bank Nat'l Tr. Co.*, No. 1:20-cv-00979-AT-RGV, 2020 WL 10227649, at *3 n.4 (N.D. Ga. Mar. 13, 2020), *accord* FED. R. EVID. 901(7), 803(14).

[5]     In the 2016 Corporate Annual Registration, specifically, Plaintiff listed his individual address at both the Personal Address and the Property address. (*See* Petra Records at 18).

Accordingly, the Property is principally used for Petra's business.[6] Plaintiff likewise does <u>not</u> hold himself out as residing at the Property. For example, in his Chapter 13 bankruptcy petition filed in conjunction with the *Angus I* action, Plaintiff listed his residential address as 2214 Shane Drive, Midlothian, Texas 76065. *See In re Constantine Angus*, No. 24-bk-40432-ELM (Bankr. N.D. Tex. Feb. 8, 2024), Dkt. #1 at 2. Moreover, in each of Petra's Corporate Annual Registrations filed between 2007 and 2021, Plaintiff's individual address is listed at the Personal Address. (*See* Petra Records at 7-24). As such, the secondary loan was never intended to be used for Plaintiff's personal, family, or household purposes, but was instead always intended to be used for admitted investment and business purposes.

**B.     The Security Deed and Plaintiff's Default on the Secondary Loan**

As previously noted, the secondary loan is secured by the Security Deed, under which Plaintiff originally granted a security interest in the Property to HAM, as "Lender." (*Angus II* Am. Compl. ¶ 10; Security Deed). To that end, the Security Deed granted HAM certain rights and interests in the Property, including the ability to accelerate the loan and foreclose on the Property in the event Plaintiff failed to cure any default on the secondary loan. (*Angus II* Am.

---

[6]     Additionally, as certified in the Affidavit of E. Eliot Kramer filed in this action on January 30, 2025 [*see* ECF No. 12–3], the Property is zoned for commercial use, and Petra currently holds itself out as conducting business at the Property address.

Compl. ¶ 10; Security Deed at 9-10, § 21). HAM styled the Security Deed as a "Georgia Security Deed—Single Family—Secondary Lien," and attached thereto a "Multistate 1–4 Family Rider—Fannie Mae/Freddie Mac Uniform Instrument" (hereinafter, the "Family Rider"). (*Angus II* Am. Compl. ¶¶ 11-12; Security Deed at 1, 12-14 (capitalization omitted)). HAM's rights and interests in the Security Deed were subsequently transferred to several parties, eventually being assigned to CWS in August 2023. (*Angus II* Am. Compl. ¶ 20; *Angus I* Original Compl. Ex. 8).

At some point during the transfer of the Security Deed, the Promissory Note was "misplaced, lost[,] or destroyed." (*Angus II* Am. Compl. ¶ 58, Ex. 5 [ECF No. 15–6] at 2). Indeed, on December 15, 2010, general counsel for then-holder of the Security Deed, TBW, filed an "Affidavit of Lost Note," certifying that "[a]fter a thorough and diligent search, [TBW] has been not able to locate the original note." (*Id.*). Accordingly, TBW's general counsel also executed an Allonge to Note. (*See id.* Ex. 5 [ECF No. 15–6] at 1).

Plaintiff eventually stopped paying amounts due under the secondary loan secured by the Security Deed, and accordingly defaulted thereupon. (*Angus II* Am. Compl. ¶¶ 201, § IV(B) (titled, in relevant part: Plaintiff's Default on Secondary Loan")). On October 2, 2023, CWS, through FMG as counsel, sent Plaintiff certain initial notices and communications regarding Plaintiff's default on the secondary loan. (*See id.* ¶¶ 23, 27, Ex. 1 [ECF No. 15–

1] at 1-3). Plaintiff, through his retained counsel, then responded by letter dated November 14, 2023, challenging CWS's rights as Plaintiff's secured creditor, among other contentions. (*Id.* ¶ 29, Ex. 10 [ECF No. 15–11]). CWS, through FMG as counsel, replied by letter dated December 4, 2023, producing documents and account statements therewith, and offering a loan modification to Plaintiff. (*Id.* ¶ 30, Ex. 1 [ECF No. 15–1] at 4-6).

Because Plaintiff did not respond to CWS's December 4, 2023 letter, nor cure the default outlined therein, CWS, again through FMG as counsel, delivered to Plaintiff a "Notice of Foreclosure Sale and Acceleration of Loan" letter (the "Foreclosure Notice") on January 5, 2024. (*See id.* ¶ 33, Ex. 1 [ECF No. 15–1] at 7-13). The Foreclosure Notice provided that the Property was to be sold at a nonjudicial foreclosure sale on February 6, 2024, as authorized under the Security Deed. (*Id.* ¶ 37, Ex. 1 [ECF No. 15–1] at 7-13; *see also* Security Deed at 9-10, § 21).

## C.     The *Angus I* Action

Plaintiff did not respond to the Foreclosure Notice, and instead brought suit against CWS on January 19, 2024. In *Angus I*, Plaintiff asserted three (3) substantive causes of action against CWS: a federal statutory claim under the FDCPA, and state law tort claims for fraud and wrongful attempt to foreclose. (*See Angus I* Am. Compl. Counts A–C ¶¶ 86-114). On January 2, 2025, Judge Eleanor Ross issued a final Order [*Angus I* ECF No. 24], adopting in full the

Magistrate Judge's Final Report and Recommendation [*Angus I* ECF No. 21].[7] Plaintiff's FDCPA claim was dismissed *with* prejudice because CWS "is not a 'debt collector,' [and] the FDCPA does not apply to CWS." [*Angus I* ECF No. 21 at 20]. The Court declined to exercise supplemental jurisdiction over Plaintiff's state law fraud and wrongful attempt to foreclose claims, however, dismissing those claims *without* prejudice. [*Angus I* ECF No. 24 at 4].

### III. CLAIMS ASSERTED AGAINST MADISON

Plaintiff alleges that under an existing agreement between Madison and CWS, Madison serves as CWS's *loan servicer* with regard to the secondary loan secured by the Security Deed. (*See Angus II* Am. Compl. ¶ 94). Madison is a Nevada limited liability company registered to do business in Georgia. (*Id.* ¶ 2). Plaintiff alleges, albeit in conclusory fashion, that Madison is regularly engaged in the business of collecting debts, and is thus a "debt collector" under the FDCPA. (*Id.* ¶ 152). Accordingly, Plaintiff claims that Madison's communications with Plaintiff in its role as CWS's loan servicer are actionable under the FDCPA and GFBPA. (*Id.* ¶ 155).

But as previously detailed in Madison's First Motion to Dismiss, the secondary loan obligation at issue is a <u>not</u> a consumer "debt" or "transaction" subject to the FDCPA or GFBPA. (*See* 1st Mot. to Dismiss at 12-15). In

---

[7]     Copies of the *Angus I* Order and R. & R. were previously filed in this action on January 9, 2025. [*See* ECF Nos. 9–1 and 9–2].

recognition of this fatal flaw, Plaintiff has littered the Amended Complaint with conclusory allegations, merely labelling the secondary loan as a "residential," "single family," and/or "consumer" transaction. (*Angus II* Am. Compl. ¶¶ 1, 7, 8, 114, 121, 200). These conclusions couched as factual allegations are insufficient to plausibly demonstrate that the secondary loan is a consumer debt sufficient to maintain any cognizable claim for relief.

The inapplicability of the cited statutes notwithstanding, Plaintiff alleges that Madison engaged in certain false or misleading representations and unfair practices in violation of the FDCPA, as well as unfair and deceptive practices in violation of the GFBPA. (*See generally id.* Counts II–III). But again, Plaintiff's allegations fail to plausibly allege any violation of the FDCPA or GFBPA, even if those statutes were actionable in this instance (which they are not). Accordingly, Plaintiff has failed to state any claim against Madison upon which relief can be granted.

### III. ARGUMENT AND CITATION TO AUTHORITY

A. **Standard for Granting Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint shall be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

added) (markings and citations omitted). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To that end, Plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While the court must accept as true Plaintiff's factual allegations at the motion to dismiss stage, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), *accord Papasan v. Allain*, 478 U.S. 265, 286 (1986). In short, a pleading fails to state a claim when it "does not contain allegations that support recovery under any recognizable legal theory." *Hous. Enter. Ins. Co., Inc. v. AmTrust Ins. Co. of Kan., Inc.*, 212 F. Supp. 3d 1330, 1334 (N.D. Ga. 2016) (May, J.).

Lastly, in evaluating a motion to dismiss for failure to state a claim, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

**B.** **Plaintiff Fails to State a Claim Against Madison for Violation of the FDCPA or GFBPA (Counts II and III)**

To state a viable claim under the FDCPA, Plaintiff must adequately allege: (1) that he has been the object of collection activity arising from a consumer "debt"; (2) that Madison is a "debt collector" as defined by the statute; and (3) that Madison has engaged in an act or omission prohibited by the FDCPA. *Helman v. Bank of Am.*, 685 F. App'x 723, 725-26 (11th Cir. 2017). Moreover, because a violation of the FDCPA constitutes a violation of the GFBPA, a finding regarding the applicability of the FDCPA is largely determinative of the applicability of the GFBPA. *See Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012).

Here, Plaintiff has failed to state any actionable claim under the FDCPA—and by extension, the GFBPA—because the secondary loan does not constitute a consumer "debt" or "transaction" under the FDCPA or the GFBPA, and because Madison has not engaged in any prohibited act or omission.

i)     The Secondary Loan is Not a "Debt" or "Consumer Transaction"

To recover under the FDCPA, Plaintiff must make a threshold showing that the money being collected qualifies as a "debt." *Argelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010)). Indeed, "the mere obligation to pay does not constitute a 'debt' under the FDCPA." *Id.* (quoting *Oppenheim*,

627 F.3d at 837). Rather, both the FDCPA and the GFBPA limit the definition of "debt" to obligations to pay money in which the subject of the transaction is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); O.C.G.A. § 10-1-392(a)(10). The FDCPA accordingly applies only to payment obligations of a (1) consumer arising out of (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes. *Oppenheim*, 627 F.3d at 837.

As a threshold matter, Plaintiff's assertions that the secondary loan is a "residential," "single family," and/or "consumer" transaction (*see Angus II* Am. Compl. ¶¶ 1, 7, 8, 114, 121, 200) are insufficient to meet the requisite pleading standard. Such allegations are conclusory, and as such this Court is not required to accept them as true. *See Twombly*, 550 U.S. at 555 (a plaintiff's pleading obligation "requires more than labels and conclusions"). Instead, the Court must evaluate the factual material proffered in the Amended Complaint, as well as in the documents properly incorporated by reference thereto. *See Iqbal*, 556 U.S. at 678; *Johnson*, 107 F.4th at 1300. That factual material clearly demonstrates that rather than obtaining the secondary loan primarily for personal, family, or household purposes, Plaintiff obtained the secondary loan for investment, business, and commercial purposes.

### a) The Secondary Loan Was Not Obtained for Personal, Family, or Household Purposes

Because the FDCPA and the GFBPA apply only to debts incurred primarily for personal, family, or household purposes, those statutes apply only to *consumer* debts, not business ones. *See Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 893 (11th Cir. 2006) (per curiam) (finding FDCPA did not apply to business loan that was not for personal, family, or household purposes). To that end, "[d]ebts incurred through activity … for *investment purposes* do <u>not</u> fall under the protection of the FDCPA." *Nwaizuzu v. Dunlap Gardiner Att'ys at Law, LLP*, No. 1:17-cv-03850-ELR-JCF, 2019 WL 2323611, at *4 (N.D. Ga. Jan. 22, 2019) (emphasis added), *R. & R. adopted* 2019 WL 2323586 (N.D. Ga. Feb. 7, 2019) (citing *Frazer v. IPM Corp. of Brevard, Inc.*, 767 F. Supp. 2d 1369, 1378 (N.D. Ga. 2010) ("[T]he FDCPA applies only to consumer debts and obligations; it does not apply to transactions having a business or commercial purpose.")).

Importantly, "[c]ourts construing the FDCPA have generally held that the relevant time for determining the nature of the debt is the time at which the debt was created." *Fischer v. Fed. Nat'l Mortg. Ass'n*, 302 F. Supp. 3d 1327, 1331 (S.D. Fla. 2018) (markings and citations omitted), *accord Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark LLC*, 214 F.3d 872, 874 (7th Cir. 2000) (the "relevant time" for determining the nature of the debt is "when

the debt first arises"); *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012) (the "relevant point in time" for determining the character of a loan obligation is "when the loan is made"). The relevant time for determining the nature of the secondary loan at issue here is therefore the date when it was executed: February 7, 2007.

This Court need not speculate as to the purpose behind obtaining the secondary loan on February 7, 2007, because Plaintiff expressly admitted to the purpose on that very date. Indeed, the *same day* the secondary loan was executed, Plaintiff attested that the loan was to be used to purchase the Property as an "investment." (Loan Application at 2, § II). Plaintiff also expressly denied that the Property would be used as a primary or secondary residence. (*Id.*). Moreover, to remove any doubt as to the intended use of the Property, Plaintiff certified that, "the [P]roperty will be occupied as indicated in this [A]pplication," and that Madison, as CWS's loan servicer, "may continuously rely on the information contained in the [A]pplication." (*Id.* at 5, § IX). Accordingly, at the determinative point when the secondary loan was executed, Plaintiff clearly intended to use the loan for investment and business purposes, thereby placing the debt obligation outside the ambit of the FDCPA and the GFBPA. *See Frazer*, 767 F. Supp. 2d at 1378; *Lingo*, 195 F. App'x at 893.

The continuous use of the Property for Petra's business operations since

February 7, 2007 further confirms the business purposes animating the execution of the secondary loan. On March 1 2007, Petra listed the Property address as its "corporation address" on its Corporate Annual Registration (*see* Petra Records at 7); and, on June 21, 2007, Plaintiff conveyed the Property to Petra (*see* Quitclaim Deed). In each of Petra's Corporate Annual Registrations filed since 2007, the Property address has either been listed as its corporate address or its registered agent's address. (*See* Petra Records at 7-25). By contrast, Plaintiff does <u>not</u> hold himself out as residing at the Property, listing his individual address at the Personal Address in Petra's Corporate Annual Registrations between 2007 and 2021. (*See id.* at 7-24). Furthermore, in his recent Chapter 13 bankruptcy petition, Plaintiff listed his personal residence at a location in Midlothian, Texas. *See In re Angus*, Dkt. #1 at 2.

Aside from the aforementioned conclusory allegations, Plaintiff's contention that the secondary loan is "consumer" in nature relies solely on the assertion that HAM styled the Security Deed as "Single Family," and attached thereto a Family Rider. (*Angus II* Am. Compl. ¶¶ 11-12; Security Deed at 1, 12-14). This is a *red herring*. In determining whether a transaction is a "debt" under the FDCPA, federal courts have "elevated substance over form, holding that neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of th[e] inquiry." *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (markings omitted) (quoting *Bloom v. I.C.*

*Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992)). The relevant inquiry is "the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." *Id.* (quoting *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir. 1999)).[8]

Consequently, the format and title of the Security Deed chosen by HAM is immaterial to whether the secondary loan secured thereby constitutes a consumer "debt." At the time of the secondary loan's execution, Plaintiff admittedly sought to purchase the Property for "investment" purposes. (*See* Loan Agreement at 2, § II). Therefore, evaluating the "substance of the transaction" over the form of the Security Deed, it is clear that the secondary loan was intended for business and investment purposes, <u>not</u> personal, family, or household purposes. Plaintiff therefore cannot evade the true nature of the secondary loan by merely citing to the title and format of the Security Deed.

The Loan Application and subsequent public filings clearly demonstrate that the secondary loan was executed for Plaintiff's investment and business purposes related to Petra. The secondary loan is thus not a consumer "debt," such that Plaintiff has failed to establish the first element necessary to state a

---

[8]     *See also Seabolt v. Moore Ingram Johnston & Steele, LLP*, No. 1:09-cv-01772-JOF-JFK, 2010 WL 11647331, at *10 (N.D. Ga. Nov. 5, 2010), *R. & R. not adopted or rejected* (citing *Slenk*, *Bloom*, and *Riviere*, and noting that the use of the proceeds of a loan by the borrower is paramount to the court's determination of the borrower's purpose in obtaining the loan).

viable claim under the FDCPA or GFBPA, both of which do not apply.

ii) <u>Madison Has Not Engaged in Any Act or Omission Prohibited by the FDCPA as a Matter of Law</u>

Plaintiff alleges that he received nine (9) specific "collection communications" from Madison between August 15, 2023 and March 16, 2024.[9] (*Angus II* Am. Compl. ¶ 100). Plaintiff contends that all of these "communications" include false or misleading representations, and/or evidence of unfair debt collection practices, in violation of 15 U.S.C. §§ 1692e and 1692f. (*See, e.g., id.* ¶ 154). Moreover, because six (6) of these nine communications ostensibly occurred after Plaintiff's counsel sent Madison the November 14, 2024 letter, Plaintiff contends that those communications constitute improper direct communications with a debtor, and/or harassment and abuse, in violation of 15 U.S.C. §§ 1692c and 1692d. (*Id.* ¶ 101).

As a threshold matter, Plaintiff has not sufficiently detailed the nature of four of the nine ostensible "communications" sufficient to satisfy federal pleading requirements. Plaintiff simply alleges that he received "communications" from Madison on August 15, 2023, September 26, 2023,

---

[9]    Confusingly, one of these nine communications is alleged to have occurred on "January 5, 2024," and on "January 15, 2024" in different paragraphs of the Amended Complaint. (*Compare* ¶¶ 100-101 *with* ¶¶ 162-164). Based on the nature of the allegations, it appears that the "January 5, 2024" date is a typo, and that "January 15, 2024" is the date to which Plaintiff is attempting to refer.

November 9, 2023, and February 2, 2024, without detailing in any way the nature of such "communications," or attaching copies thereof as exhibits. (*See id.* ¶ 100). But a complaint does not suffice if it merely tenders "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (markings omitted) (quoting *Twombly*, 550 U.S. at 557). Instead, Plaintiff is *required* to give Madison "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (ellipses omitted), *accord* FED. R. CIV. P. 8(a)(2). Here, merely alleging that Plaintiff received certain improper communications on four dates is insufficient to provide Madison fair notice of the alleged wrongdoing contained therein.

As to the other five communications described in the Amended Complaint—allegedly received on (*i*) November 16, 2023; (*ii*) December 15, 2023; (*iii*) January 15, 2024 (*see supra* note 9); (*iv*) February 15, 2024; and (*v*) March 16, 2024—none of the material contained therein demonstrates any wrongdoing upon which to predicate an actionable FDCPA or GFBPA claim.

### a) Madison's Communications Do Not Violate 15 U.S.C. §§ 1692e or 1692f as a Matter of Law

Plaintiff alleges that Madison's purported communications generally violate the FDCPA—as well as the GFBPA—based on two principal contentions: (*i*) that Madison falsely represented that CWS is the holder of the Promissory Note, and (*ii*) that Madison falsely represented the amount of the

indebtedness owed by Plaintiff. (*See Angus II* Am. Compl. ¶¶ 156-57). But even accepting Plaintiff's allegations as true, Plaintiff has nonetheless failed to state a claim for relief as a matter of well-established Georgia law.

*First*, as to CWS's lack of ownership of the Promissory Note, it is undisputed that CWS is the named assignee of the Security Deed. (*Id.* ¶ 20). In Georgia, "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed *even if it does not also hold the note.*" *You v. J.P. Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013) (emphasis added); *see also Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1343 (N.D. Ga. 2014) ("[U]nder Georgia law, possession of the promissory note is not required for the non-judicial foreclosure sale of a security deed."). The relevant statute governing the transfer of security deeds "supports the conclusion that the deed holder possesses full authority to exercise the power of sale upon the debtor's default, *regardless* of its status with respect to the note." *You*, at 433 (italics added), *accord* O.C.G.A. § 44-14-64(b). It necessarily follows that "to the extent that Plaintiff is alleging that [CWS] failed to produce the original promissory note, Plaintiff has failed to state a claim upon which relief can be granted." *Tonea*, 6 F. Supp. 3d at 1343.

*Second*, as to the amount of the indebtedness sought by CWS, Plaintiff alleges that that the secondary loan was "charged off" by a previous lender, HAM, following Plaintiff's admitted failure to make payments thereunder. (*Id.*

¶¶ 16, 201). But "charged off debt is <u>not</u> forgiven." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010) (emphasis added). Instead, a third-party purchaser of charged off debt "enjoys essentially the same prerogatives as did the original creditor," and may still attempt to collect upon the debt. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1298 (11th Cir. 2016). Accordingly, and contrary to Plaintiff's conclusory allegations, "attempting to collect a debt that has been charged off does <u>not</u> misrepresent the character, amount, or legal status of the debt." *Ervin v. Cap. Mgmt. Servs. LP*, No. 1:22-cv-01848-MLB-CMS, 2023 WL 9051459, at *6 (N.D. Ga. Nov. 6, 2023) (emphasis supplied), *R. & R. adopted* 2024 WL 1694075 (N.D. Ga. Jan. 26, 2024), *contra* 15 U.S.C. § 1692e(2)(A).

For these reasons, Plaintiff cannot, as a matter of law, predicate an FDCPA or GFBPA claim on allegations of CWS's lack of ownership of the Promissory Note, nor on the validity of the ostensibly "charged off" secondary loan obligation. CWS is authorized to exercise its remedies under the Security Deed regardless of whether it also holds the accompanying Promissory Note. *See You*, 743 S.E.2d at 433; *Tonea*, 6 F. Supp. 3d at 1343. Likewise, "charged off" debt is not forgiven, and CWS is entitled to collect thereupon. *See LeBlanc*, 601 F.3d at 1188 n.5; *Hinkle*, 827 F.3d at 1297-98. Accordingly, Plaintiff has failed to state any claim for relief under the FDCPA of GFBPA.

### b) Madison's Communications Do Not Violate 15 U.S.C. §§ 1692c or 1692d as a Matter of Law

As previously noted, Plaintiff alleges that six of Madison's nine communications are in violation of 15 U.S.C. §§ 1692c(a)(2) and 1692d, because they were made directly from Madison to Plaintiff, despite Plaintiff informing Madison of his retention of counsel in the November 14, 2023 letter. (*See Angus II* Am. Compl. Ex. 10 [ECF No. 15–11]). As previously noted, only five of these six ostensible communications are sufficiently described in the Amended Complaint, specifically excluding a purported communication on February 2, 2024. Those five communications are "Payment Statements," merely informing Plaintiff of the amount currently due under the secondary loan. (*See id.* Ex. 2 [ECF No. 15–2]). The Payment Statements are in fact periodic billing statements, which residential mortgage loan servicers are required to send to customers under Regulation Z of the Truth in Lending Act (TILA). *See* 12 C.F.R. § 1026.41(a)(2).

The nature of the Payment Statements therefore places Plaintiff in a *catch-twenty-two*. If, as Plaintiff alleges, the secondary loan is a residential, consumer "debt," then the Payment Statements are required under TILA and cannot be actionable under the FDCPA. *See* 12 C.F.R. pt. 1006 (Supp. I 2023) ("[A] mortgage servicer who is subject to the FDCPA with respect to a mortgage loan is <u>not</u> liable under the FDCPA for complying with certain servicing rule

provisions, including requirements to provide … a periodic statement for each billing cycle."). If, as the factual material demonstrates, however, the secondary loan was obtained for investment and business purposes, then the FDCPA does not even apply. (*See* discussion *supra* § III(B)(i)). Either way, Plaintiff has failed to state a claim relating to the Payment Statements upon which he may obtain any cognizable relief under the FDCPA.

Perhaps in recognition of this logical barrier, Plaintiff takes specific aim at the December 15, 2023 and January 15, 2024 Payment Statements, claiming that they improperly seek payments of attorney's fees. (*Angus II* Am. Compl. ¶¶ 102, 164). Specifically, Plaintiff alleges that the December 15, 2023 Payment Statement demands payment of $720.00 for "Attorneys Fees INV 34057," in violation of 15 U.S.C. §§ 1692e(2)(B) and 1692f(1). (*Id.* ¶¶ 102, 104). But the copy of that Payment Statement attached to the Amended Complaint in Exhibit 2 does not include any such request for attorneys' fees. (*See id.* Ex. 2 [ECF No. 15–2] at 2). Accordingly, the Payment Statement directly contradicts Plaintiff's allegations, such that the Court need not accept such allegations as true. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

Plaintiff does not attach the January 16, 2024 Payment Statement to the Amended Complaint as an exhibit, but alleges that it similarly demands

payment of $720.00 for an "Attorney's Fees Invoice," in violation of 15 U.S.C. §§ 1692e(2)(A), (e)(5), and (e)(10). (*Angus II* Am. Compl. ¶ 164). Even assuming this Payment Statement actually includes the alleged language (unlike the December 15, 2023 Payment Statement), Plaintiff has nevertheless failed to demonstrate any wrongful conduct. Madison, as the loan servicer for CWS, was permitted to seek attorneys' fees under the agreement securing the secondary loan *signed by Plaintiff*—that is, the Security Deed. The Security Deed provides that if "Borrower fails to perform the covenants and agreements contained in this Security Agreement … then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property," which includes "paying reasonable attorneys' fees." (Security Deed at 6, § 8 (italics added)). Accordingly, CWS, and by extension Madison acting as its loan servicer, are authorized to seek reasonable attorneys' fees under the enforceable terms of the Security Deed agreed to by Plaintiff.

Plaintiff lastly suggests that Payment Statements received from Madison on February 15, 2024 and March 16, 2024 violate the automatic bankruptcy stay, and by extension the FDCPA. (*Angus II* Am. Compl. ¶ 106). As noted previously, Plaintiff filed a Chapter 13 bankruptcy petition on February 6, 2024. (*See id.* ¶ 105). That bankruptcy case was dismissed just *two (2) days* later, however, on February 8, 2024. *See In re Angus*, Dkt. 13 ¶ 5. Under 11 U.S.C. § 362(c)(2)(B), the automatic bankruptcy stay continues "until

the earliest of … the time the case is dismissed." As such, the automatic bankruptcy stay was lifted on February 8, 2024. Plaintiff's allegation that the February 15 and March 16, 2024 Payment Statements—both issued *after* the lifting of the automatic stay—violate the FDCPA is thus wholly unfounded and facetious, and fails to state any actionable claim for relief.

For all of the foregoing reasons, Plaintiff has failed to state a cognizable claim against Madison under the FDCPA or the GFBPA upon which any form of relief can be granted.

## C.   Plaintiff Fails to State a Claim Against Madison for Punitive Damages or Attorney's Fees and Costs (Counts V and VI)

Plaintiff asserts additional Counts for punitive damages and attorney's fees and costs. (Compl. Counts V–VI). These Counts are for specific *remedies*, however, and are therefore derivative of the substantive causes of action addressed above. Because Plaintiff has failed to state a plausible claim for relief on each of those substantive claims, Plaintiff has likewise failed to state a plausible claim for any of the remedies requested in Counts V and VI.

## IV. CONCLUSION

For the foregoing reasons, and those previously discussed in Madison's First Motion to Dismiss, dismissal of all Counts asserted against Madison in Plaintiff's Amended Complaint, with prejudice, is warranted.

Respectfully submitted this 27th day of February, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Madison*
*Management Services, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **DEFENDANT MADISON MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** has been prepared in compliance with Local Rule 5.1(C) in Century Schoolbook, 13-point font. I further certify that the foregoing brief is limited in length to twenty-five (25) pages, and complies with the Standing Order Regarding Civil Litigation issued by the Honorable Leigh Martin May.

This 27th day of February, 2025.

/s/ *Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Madison Management Services, LLC*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically submitted the foregoing **DEFENDANT MADISON MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF filing system, which will automatically send electronic notification of the same to the following counsel of record:

William R. Carlisle
CARLISLE LAW FIRM
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com
*Attorney for Plaintiff*

This 27th day of February, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Madison
Management Services, LLC*