# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CONSTANTINE ANGUS,<br><br>  Plaintiff,<br><br>v.<br><br>MADISON MANAGEMENT SERVICES, LLC and FREEMAN MATHIS & GARY, LLP,<br><br>  Defendants. | Civil Action No.<br>1:24-cv-03626-LMM-LTW |

## DEFENDANT FREEMAN MATHIS & GARY, LLP'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR
## FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Freeman Mathis & Gary, LLP ("FMG"), by and through its undersigned counsel, hereby moves to dismiss the Amended Complaint filed by Plaintiff Constantine Angus ("Plaintiff") [ECF No. 15] for failure to state a claim upon which relief can be granted, respectfully showing this Court as follows:

## I. INTRODUCTION

Plaintiff's Amended Complaint does not present *any* additional factual material demonstrating that FMG can be considered a "debt collector" subject to the provisions of the Fair Debt Collection Practices Act ("FDCPA"). As demonstrated herein, all four of FMG's communications with Plaintiff were

delivered in an attempt to enforce CWS's valid and uncontested security interest under the relevant security deed. As detailed in FMG's Motion to Dismiss the Original Complaint [ECF No. 13] (the "First Motion to Dismiss"), those communications cannot support a finding that FMG is a "debt collector" subject to the FDCPA, as a matter of law. For this reason, among others, dismissal of all claims asserted against FMG, with prejudice, is warranted.

## II. RELEVANT FACTUAL BACKGROUND [1]

### A.   The Secondary Loan and Security Deed

On February 7, 2007, Plaintiff obtained two loans from Home America

---

[1]    Although a motion to dismiss under Rule 12(b)(6) concerns only the well-plead allegations of a complaint, a court may properly consider a document not referred to or attached to that complaint if the document is: (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Accordingly, the following documents may be considered herein:

  (1)   *Angus I* Original Complaint [*Angus I* ECF No. 1–1 at 3-57];
  (2)   Security deed recorded at Deed Book 47597, Page 348 Gwinnett County, Georgia records [*Angus I* ECF No. 1–1 at 28-44; *Angus II* ECF No. 16–1] (hereinafter, the "Security Deed");
  (3)   *Angus I* Amended Complaint [*Angus I* ECF No. 12; *Angus II* ECF No. 3–1];
  (4)   *Angus II* Original Complaint [*Angus II* ECF No. 1–1];
  (5)   Fair debt initial communication letter (the "Fair Debt Letter") and notice of default letter (the "Notice of Default"), sent to Plaintiff in a single packet via certified mail on October 2, 2023 [*Angus II* ECF No. 13–1] (hereinafter, the "Oct. 2, 2023 Packet").

Each of these documents are central to Plaintiff's claims, and their authenticity is not challenged. "*Angus I*" refers to Plaintiff's case against CWS: *Angus v. CWS Invs., Inc.*, No. 1:24-cv-00478-ELR (N.D. Ga. Jan. 2, 2025).

Mortgage, Inc. ("HAM") to purchase certain real property located at 2128 East Main Street, Snellville, Georgia 30078 (the "Property"). (*Angus II* Am. Compl. ¶ 7; Angus *I* Am. Compl. ¶ 54; *see also supra* note 1 (defining all documents referenced herein)). The second of these loans—the "secondary loan" at issue in this case—is evidenced by a promissory note signed by Plaintiff (the "Promissory Note"). (*See Angus II* Am. Compl. ¶ 9, Ex. 5 [ECF No. 15–6][2] at 3-5]. The secondary loan is further secured by the Security Deed, under which Plaintiff, as "Borrower," granted a security interest in the Property to HAM, as "Lender." (*Id.* ¶ 10).

The Security Deed granted HAM certain rights and interests in the Property, including the ability to accelerate the loan and foreclose on the Property in the event Plaintiff failed to cure any default on the secondary loan. (*Id.* ¶ 10; Security Deed at 9-10, § 21). HAM's rights and interests in the Security Deed were subsequently transferred to several parties, eventually being assigned to CWS in August 2023. (*Angus II* Am. Compl. ¶ 20; *Angus I* Original Compl. Ex. 8).

At some point during the transfer of the Security Deed, the Promissory Note was "misplaced, lost[,] or destroyed." (*Angus II* Am. Compl. ¶ 58, Ex. 5

---

[2]     Throughout the Amended Complaint, Plaintiff mislabels the numbering and contents of the exhibits attached thereto. For the Court's convenience, the ECF No. will be included in all citations to exhibits of the Amended Complaint.

[ECF No. 15–6] at 2). Indeed, on December 15, 2010, general counsel for then-holder of the Security Deed, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), filed an "Affidavit of Lost Note," certifying that "[a]fter a thorough and diligent search, [TBW] has been not able to locate the original note." (*Id.*). Accordingly, TBW's general counsel also executed an Allonge to Note. (*See id.* Ex. 5 [ECF No. 15–6] at 1).

## B.  Plaintiff's Default and Written Communications with FMG

Plaintiff eventually stopped paying amounts due under the secondary loan secured by the Security Deed, and accordingly defaulted thereupon. (*Angus II* Am. Compl. ¶¶ 201, § IV(B) (titled, in relevant part: Plaintiff's Default on Secondary Loan")). On October 2, 2023, CWS, through FMG as counsel, sent Plaintiff two (2) letters via certified mail in a single packet: a fair debt initial communication letter (the "Fair Debt Letter"), and a notice of default letter (the "Notice of Default"). (*See* Oct. 2, 2023 Packet; *Angus II* Am. Compl. ¶¶ 23, 27, Ex. 1 [ECF No. 15–1] at 1-3 (Notice of Default only[3])). The Notice of Default was a required notice under Section 21 of the Security Deed,

---

[3]  Throughout the pleadings in *Angus I* and *Angus II*, Plaintiff appears to conflate these two letters. To that end, <u>only</u> the Notice of Default is attached as an exhibit to the Amended Complaint. A true and correct copy of *both* the Notice of Default and Fair Debt Letter, as well as the relevant certified mailing information therefor, was filed as an exhibit to FMG's First Motion to Dismiss (*i.e.*, the Oct. 2, 2023 Packet). [*See* ECF No. 13–1].

and provided Plaintiff with an opportunity to cure the default by paying $75,743.53. (Oct. 2, 2023 Packet at 4-6; *see also* Security Deed at 9, § 21). The Fair Debt Letter was sent out of an abundance of caution, to ensure CWS's compliance with the FDCPA *in the unlikely event* that Plaintiff was entitled to notification pursuant to 15 U.S.C. § 1692g. (*See* Oct. 2, 2023 Packet at 2-3).

Plaintiff, through his retained counsel, responded to the Fair Debt Letter and Notice of Default by letter dated November 14, 2023, challenging CWS's rights as Plaintiff's secured creditor, among other contentions. (*Angus II* Am. Compl. ¶ 29, Ex. 10 [ECF No. 15–11]). CWS, through FMG as counsel, replied by letter dated December 4, 2023, producing documents and account statements therewith, and offering a loan modification to Plaintiff. (*Id.* ¶ 30, Ex. 1 [ECF No. 15–1] at 4-6). Because Plaintiff did not respond to CWS's December 4, 2023 letter, nor cure the default outlined therein, CWS, again through FMG as counsel, delivered to Plaintiff a "Notice of Foreclosure Sale and Acceleration of Loan" letter on January 5, 2024 (the "2024 Foreclosure Notice"). (*See id.* ¶ 33, Ex. 1 [ECF No. 15–1] at 7-13). The 2024 Foreclosure Notice provided that the Property was to be sold at a nonjudicial foreclosure sale on February 6, 2024, as authorized under the Security Deed. (*Id.* ¶ 37, Ex. 1 [ECF No. 15–1] at 7-13); Security Deed at 9-10, § 21).

## C.    The *Angus I* Action and Subsequent Occurrences

Plaintiff did not respond to the 2024 Foreclosure Notice, and instead

brought suit against CWS on January 19, 2024. In *Angus I*, Plaintiff asserted three (3) substantive causes of action against CWS: a federal statutory claim under the FDCPA, and state tort law claims for fraud and wrongful attempt to foreclose. (*See Angus I* Am. Compl. Counts A–C ¶¶ 86-114). On January 2, 2025, Judge Eleanor Ross issued a final Order [*Angus I* ECF No. 24], adopting in full the Magistrate Judge's Final Report and Recommendation [*Angus I* ECF No. 21].[4] Plaintiff's FDCPA claim was dismissed *with* prejudice because CWS "is not a 'debt collector,' [and] the FDCPA does not apply to CWS." [*Angus I* ECF No. 21 at 20]. The Court declined to exercise pendent jurisdiction over Plaintiff's state law fraud and wrongful attempt to foreclose claims, however, dismissing those claims *without* prejudice. [*Angus I* ECF No. 24 at 4].

Upon dismissal of the *Angus I* action, CWS again initiated nonjudicial foreclosure proceedings by sending—through FMG as counsel—another "Notice of Foreclosure Sale and Acceleration of Loan" letter to Plaintiff on January 21, 2025 (the "2025 Foreclosure Notice"). (*See Angus II* Am. Compl. ¶ 51, Ex. 1 [ECF No. 15–1] at 14-20). The 2025 Foreclosure Notice provides that the Property will be sold at an upcoming nonjudicial foreclosure sale on March 4, 2025[5], as authorized under the Security Deed. (*Id.* Ex. 1 [ECF No. 15–1] at

---

[4]     Copies of the *Angus I* Order and R. & R. were previously filed in this action on January 9, 2025. [*See* ECF Nos. 9–1 and 9–2].

[5]     On the first page of the 2025 Foreclosure Notice, the date of the foreclosure sale is incorrectly stated as March 4, *2023*. This is a mere typo, and

7-13); *see also* Security Deed at 9-10, § 21). As of January 21, 2025, CWS calculated the total outstanding indebtedness under the secondary loan at $153,199.46. (*Angus II* Am. Compl. Ex. 1 [ECF No. 15–1] at 1-2).

## III. CLAIMS ASSERTED AGAINST FMG

As detailed above, four (4) written letters from CWS to Plaintiff between October 2, 2023 and January 21, 2025 were drafted and transmitted by CWS's retained counsel, FMG. FMG is a national law firm headquartered in Atlanta, Georgia, and operates as a Georgia limited liability partnership. (*See id.* ¶ 3). Plaintiff alleges, without factual support, that FMG is a "debt collector" subject to the FDCPA. (*Id.* ¶ 123). Accordingly, Plaintiff contends that the four communications received from FMG are actionable under the FDCPA and the related GFBPA. (*See generally id.* Counts I, III).

Specifically, Plaintiff alleges that FMG made certain false or misleading representations, and engaged in unfair practices prohibited by the FDCPA. (*Id.* ¶ 150). Plaintiff claims that FMG's communications, on behalf of CWS, falsely represented the legal status and amount of the relevant indebtedness, and threatened to take unauthorized action, in violation of 15 U.S.C. §§ 1692e and 1692f. (*Id.*). In this same fashion, FMG's communications ostensibly constitute

---

is clarified on the second page of the document, which provides that the foreclosure sale will occur on the first Tuesday in March, *2025* (that is, March 4, 2025). (*See Angus II* Am. Compl. Ex. 1 [ECF No. 15–1] at 14-15).

unfair and deceptive practices in violation of the GFBPA. (*Id.* ¶ 174). Beyond these statutory claims, Plaintiff also proceeds under a state tort law theory, alleging that FMG has wrongfully attempted to foreclose on the Property. (*See generally id.* Count IV).

## IV. ARGUMENT AND CITATION TO AUTHORITY

### A. Standard for Granting Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint shall be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (markings and citations omitted). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

To that end, a plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While the court must accept as true a plaintiff's factual allegations at the motion to dismiss stage, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555), *accord Papasan v. Allain*, 478 U.S. 265, 286 (1986). In short, a pleading fails to state a claim when it "does not contain allegations that support recovery under any recognizable legal theory." *Hous. Enter. Ins. Co., Inc. v. AmTrust Ins. Co. of Kan., Inc.*, 212 F. Supp. 3d 1330, 1334 (N.D. Ga. 2016) (May, J.).

Lastly, in evaluating a motion to dismiss for failure to state a claim, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

## B. Plaintiff Fails to State a Claim Against FMG for Violation of the FDCPA or GFBPA (Counts I and III)

To state a viable claim under the FDCPA, Plaintiff must adequately allege: (1) that he has been the object of collection activity arising from a consumer "debt"; (2) that FMG is a "debt collector" as defined by the statute; and (3) that FMG has engaged in an act or omission prohibited by the FDCPA. *Helman v. Bank of Am.*, 685 F. App'x 723, 725-26 (11th Cir. 2017). Moreover, because a violation of the FDCPA constitutes a violation of the GFBPA, a finding regarding the applicability of the FDCPA is largely determinative of the applicability of the GFBPA. *See Harris v. Liberty Cmty. Mgmt., Inc.*, 702

F.3d 1298, 1303 (11th Cir. 2012).

Here, Plaintiff has failed to proffer factual material sufficient to plausibly demonstrate *any* of the elements necessary to maintain an actionable claim under the FDCPA—and by extension, the GFBPA—because: (*i*) the secondary loan is <u>not</u> a consumer "debt" or "transaction"; (ii) FMG is <u>not</u> a "debt collector"; and (*iii*) FMG has <u>not</u> engaged in in any prohibited action.

     i)    <u>The Secondary Loan is Not a "Debt" or "Consumer Transaction" as a Matter of Law</u>

The provisions of the FDCPA and GFBPA apply only to *consumer* debt obligations that are incurred "primarily for personal, family, or household purposes." 15 U.S.C. 1692a(5); O.C.G.A. § 10-1-392(a)(10); *see also Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 893 (11th Cir. 2006) (per curiam) (finding FDCPA did not apply to business loan that was not for personal, family, or household purposes). In the Motion to Dismiss the Amended Complaint filed by Defendant Madison Management Services, LLC ("Madison") concurrently herewith, Madison demonstrates at length that the secondary loan is not a consumer "debt" or "transaction" subject to the FDCPA or GFBPA. [*See* ECF No. 16 at 12-18, § III(B)(i))]. Instead, the secondary loan was obtained for investment, business, and commercial purposes related to Plaintiff's business entity, Petra Realty, Inc. [*See id.*]. FMG hereby incorporates and adopts those arguments raised in the Madison MTD, which

foreclose Plaintiff's ability to maintain an actionable FDCPA or GFBPA claim.

ii)    <u>FMG is Not a "Debt Collector" as a Matter of Law</u>

Just as the secondary loan is not a consumer "debt," FMG is not a "debt collector" under the applicable statutory definition. The FDCPA defines a "debt collector," in relevant part, as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.[6]

15 U.S.C. § 1692a(6). The Amended Complaint presents scant factual matter demonstrating that FMG meets this statutory definition, and largely relies on the conclusory allegation that "FMG is a 'debt collector.'" (*Angus II* Am. Compl. ¶ 123). As a threshold matter, such conclusion couched as a factual allegation cannot satisfy Plaintiff's obligation to plausibly plead a cognizable FDCPA claim. *See Twombly*, 550 U.S. at 555 (a plaintiff's pleading obligation "requires more than labels and conclusions"). Such improper pleading aside, the minimal factual material presented demonstrates that FMG is not a "debt collector" under the FDCPA as a matter of law.

---

[6]    Plaintiff misquotes this definition in Paragraph 123 of the Amended Complaint by changing the beginning of the definition from "any person who uses any instrumentality of interstate commerce" to "any *law firm* that uses the instrumentality of interest commerce." The language cited by Plaintiff does <u>not</u> appear in 15 U.S.C. § 1692a(6), as alleged, and thus the Court cannot consider that allegation as true in deciding the instant motion.

The United States Supreme Court recently held that the FDCPA "*exempts* entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 481 (2019) (emphasis added). Indeed, with the sole exception of 15 U.S.C. § 1692f(6)—a provision that is not invoked by Plaintiff here—the FDCPA does not apply to those engaged only in security-interest enforcement. *Id.* at 477. It follows that, "but for § 1692f(6), those who engage in *only nonjudicial foreclosure proceedings* are not debt collectors within the meaning of the [FDCPA]." *Id.* (emphasis added).

In the instant case, Plaintiff attempts to extend his FDCPA claim to FMG based on four specific communications: (*i*) the Fair Debt Letter, (*ii*) the Notice of Default, (*iii*) the 2024 Foreclosure Notice, and (*iv*) the 2025 Foreclosure Notice. (*See Angus II* Am. Compl. ¶ 124)[7]. But all four of these allegedly improper communications (and, to the extent applicable, the

---

[7] Plaintiff also appears to suggest that FMG's December 4, 2023 reply letter to Plaintiff's counsel's November 14, 2023 letter constitutes an improper debt collection communication. (*Angus II* Am. Compl. ¶ 123). This facetious allegation completely overlooks the fact that the December 4, 2023 letter was not sent to Plaintiff directly (but instead to his counsel), and was sent at the *behest* of Plaintiff's counsel. Indeed, in the November 14, 2023 letter, Plaintiff's counsel specifically asked FMG to "provide all information establishing the truth of your statements concerning the character, legal status[,] and amount of the alleged debt." (*Id.* Ex. 10 [ECF No. 15–11] at 2). Plaintiff cannot in good faith contend that the December 4, 2023 letter somehow harmed him when his own counsel requested the information contained therein.

December 4, 2023 reply letter, *see supra* note 7) were attempts by FMG to enforce CWS's *security interest* under the Security Deed. Turning first to the initial October 2, 2023 communications, CWS was required to send the Notice of Default pursuant to the Security Deed's notice provisions in Section 21. (*See* Security Deed at 9, § 21 ("Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.")). The Fair Debt Letter, for its part, was delivered in tandem with the Notice of Default out of an abundance of precaution, to comply with the FDCPA *in the unlikely event* that Plaintiff was entitled to notification pursuant to 15 U.S.C. § 1692g.

Similarly, the 2024 and 2025 Foreclosure Notices are required notices under Section 21 of the Security Deed—as well as Georgia law (*see* O.C.G.A. § 44-14-162.2)—for CWS to exercise the power of sale and other remedies contemplated thereby. (*See* Security Deed at 10, § 21 ("If Lender invokes the power of sale, Lender shall give a copy of a notice of sale …"). Thus, the Foreclosure Notices, Notice of Default, and Fair Debt Letter were communications authorized—and required—for FMG to enforce CWS's security interest granted by Plaintiff under the Security Deed.

Because the 2024 and 2025 Foreclosure Notices were attempts by FMG to engage in nonjudicial foreclosures on behalf of CWS, those communications cannot transform FMG into a "debt collector" under the FDPCA. *See Obduskey*,

586 U.S. at 477 ("[T]hose who engage in only nonjudicial foreclosure proceedings are not debt collectors"). The Notice of Default was likewise a required notice under the Security Deed, as well as a precondition for CWS to later exercise its right to seek nonjudicial foreclosure as a remedy. To that end, the exclusion of the "enforcement of security interests" from the ambit of the FDCPA also excludes the "the legal means required to do so." *Id.* at 480 (acknowledging that nonjudicial foreclosure may involve "antecedent steps *required under state law*," as well as "notice to the homeowner"). Thus, all efforts by FMG to enforce CWS's security interest, even including the antecedent steps of sending the Notice of Default and Fair Debt Letter, cannot provide a basis for finding that FMG is a "debt collector" under the FDCPA.

Perhaps in recognition of the above, Plaintiff has included additional immaterial allegations in the Amended Complaint in an attempt to evade these legal impediments. *First*, Plaintiff alleges that FMG is a "debt collector" because it identified itself as such in the Notice of Default, 2024 Foreclosure Notice, and 2025 Foreclosure Notice. (*Angus II* Am. Compl. ¶¶ 24, 34, 53)[8]. But

---

[8] Again, Plaintiff also incorrectly suggests that FMG identified itself as a "debt collector" in its December 4, 2023 reply letter to Plaintiff's counsel. (*See Angus II* Am. Compl. ¶ 123). But this allegation is directly contradicted by the content of the December 4, 2023 reply letter attached to the Amended Complaint in Exhibit 1. (*Id.* Ex. 1 [ECF No. 15–1] at 4-6). The Court need not accept Plaintiff's demonstrably false allegation as true at this stage. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[I]f the

"[w]hether a party is an FDCPA debt collector is governed by the statutory definition, <u>not</u> by any self-identification by the party." *Maddox v. Aldridge Pite, LLP*, No. 23-12853, 2024 WL 1475463, at *2 (11th Cir. Apr. 5, 2024) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1214-19 (11th Cir. 2012)), *contra Angus II* Am. Compl. ¶ 52 n.13. Accordingly, how FMG identified itself in the challenged communications is irrelevant to the analysis of whether FMG meets the statutory definition of a "debt collector."

*Second*, Plaintiff alleges that FMG's website provides that its attorneys "represent creditors in all types of collection proceedings," despite not including any reference to the particular internet location showcasing such quotation. (*Angus II* Am. Compl. ¶ 125). Plaintiff follows this allegation by citing the Supreme Court's decision in *Heintz v. Jenkins*, 514 U.S. 291 (1995), which held that the FDCPA can apply to attorneys who "*regularly*" engage in consumer debt collection. But Plaintiff's reliance on *Heintz* is unavailing twice over. As an initial matter, Plaintiff has not plead any allegations demonstrating that FMG is "regularly" engaged in consumer debt collection, aside from a single, vague sentence derived from an uncited webpage. *Cf. Iqbal*, 556 U.S. at 678 (complaint does not suffice if it tenders "naked assertions devoid of further factual enhancement").

---

allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

Moreover, even taking Plaintiff's threadbare allegation as true, whether FMG is regularly engaged in consumer debt collection efforts is *irrelevant* in the instant case. In evaluating an FDCPA claim, only communications related to the collection of debt are actionable. *See Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1267 (11th Cir. 2022) (FDCPA requires "nexus between the communication and the collection of debt"). In the instant case, Plaintiff has only identified four—or at most, five, *see supra* notes 7-8—communications from FMG that he contends constitute debt collection efforts subject to the FDCPA. But as detailed above, all of those proffered communications were made in an attempt to enforce CWS's security interest, such that they are unactionable against FMG under the holding in *Obduskey*—decided twenty-four (24) years after *Heintz*. *See* 586 U.S. at 481.

Thus, accepting the allegations of Plaintiff's Amended Complaint as true, the Notice of Default, Fair Debt Letter, and Foreclosure Notices were mere attempts to enforce CWS's security interest under the Security Deed. Because the FDCPA "exempts entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions" (*see Obduskey*, 586 U.S. at 481), and because FMG's communications were limited to such enforcement, FMG cannot be a "debt collector" subject to the FDCPA.

### iii) <u>FMG Has Not Engaged in Any Prohibited Act or Omission as a Matter of Law</u>

Even assuming *arguendo* that the secondary loan can be considered a "debt" and that FMG can be considered a "debt collector" under the statutory definitions provided in the FDCPA, Plaintiff has nevertheless failed to proffer sufficient factual allegations demonstrating that FMG engaged in any prohibited conduct under the FDCPA or the GFBPA. Plaintiff's assertion that FMG engaged in wrongful conduct relies on two principal contentions: (*i*) that FMG falsely represented that CWS is the holder of the Promissory Note, and (*ii*) that FMG falsely represented the amount of the indebtedness owed by Plaintiff. (*Angus II* Am. Compl. ¶¶ 133, 140). But even accepting these tenuous allegations as true, neither is sufficient to plausibly plead a violation of the FDCPA or GFBPA, as a matter of well-established Georgia law.

### a) **As a Matter of Law, CWS is Authorized to Enforce the Security Deed Regardless of its Ownership of the Promissory Note**

Plaintiff first alleges that FMG misrepresented that CWS is the present holder of the Promissory Note evidencing the secondary loan obligation. (*See Angus II* Am. Compl. ¶ 140, Ex. 5 [ECF No. 15–6] at 3-5). As previously discussed, as some point during the various transfers of the Security Deed, the Promissory Note was "misplaced, lost[,] or destroyed." (*Id.* ¶ 58, Ex. 5 [ECF No. 15–6] at 2). Plaintiff acknowledges that a previous holder of the Security Deed,

TBW, prepared an Allonge to Note and Lost Note Affidavit, certifying in the latter that "[a]fter a thorough and diligent search, [TBW] has been not able to locate the original note." (*Id.* ¶ 57, Ex. 5 [ECF No. 16–5] at 1-2).

But in Georgia, "the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed *even if it does not also hold the note*." *You v. J.P. Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013) (emphasis added); *see also Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1343 (N.D. Ga. 2014) ("[U]nder Georgia law, possession of the promissory note is not required for the non-judicial foreclosure sale of a security deed."). The relevant state statute governing the transfer of security deeds "supports the conclusion that the deed holder possesses full authority to exercise the power of sale upon the debtor's default, *regardless* of its status with respect to the note." *You*, at 433 (italics added), *accord* O.C.G.A. § 44-14-64(b). It necessarily follows that "to the extent that Plaintiff is alleging that [CWS] failed to produce the original promissory note, Plaintiff has failed to state a claim upon which relief can be granted." *Tonea*, 6 F. Supp. 3d at 1343.

Plaintiff admits that CWS was assigned the Security Deed in August 2023, and is therefore the current holder thereof. (*Angus II* Am. Compl. ¶ 20). Plaintiff's allegations regarding CWS's failure to possess the Promissory Note are therefore *immaterial* to CWS's ability to exercise its remedies under the Security Deed. *See You*, 743 S.E.2d at 433; *Tonea*, 6 F. Supp. 3d at 1343.

Consequently, even accepting those allegations as true, Plaintiff cannot maintain a viable FDCPA or GFBPA claim against FMG based on the lack of ownership of the Promissory Note.

### b) As a Matter of Law, CWS is Authorized to Collect Upon the Purchased Secondary Loan Debt

Similarly, Plaintiff's contention that FMG misrepresented the total amount of indebtedness under the secondary loan is insufficient to plausibly demonstrate any statutorily-prohibited conduct. Specifically, Plaintiff alleges that FMG's communications contain false and misleading statements regarding the amount of Plaintiff's debt, in violation of 15 U.S.C. § 1692e(2)(A). (*Angus II* Am. Compl. ¶ 133). This contention rests on Plaintiff's allegation that the secondary loan obligation was "charged off" by a previous lender, HAM, following Plaintiff's admitted failure to make payments thereunder. (*Id.* ¶¶ 16, 201). But even assuming that the relevant debt was "charged off" as alleged, that does not impact CWS's ability to collect thereupon.

In short, "charged off debt is <u>not</u> forgiven." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010) (emphasis added). A third-party purchaser of charged off debt "enjoys essentially the same prerogatives as did the original creditor," and may still attempt to collect upon the debt. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1298 (11th Cir. 2016). Indeed, contrary to Plaintiff's allegations, "attempting to collect a debt that has

been charged off does <u>not</u> misrepresent the character, amount, or legal status of the debt." *Ervin v. Cap. Mgmt. Servs. LP*, No. 1:22-cv-01848-MLB-CMS, 2023 WL 9051459, at *6 (N.D. Ga. Nov. 6, 2023 (emphasis supplied), *R. & R. adopted* 2024 WL 1694075 (N.D. Ga. Jan. 26, 2024), *contra* 15 U.S.C. § 1692e(2)(A).

Consequently, whether the debt was charged off by HAM is *immaterial* to CWS's ability to collect thereupon following the assignment of the Security Deed. (*See Angus II* Am. Compl. ¶ 20). Plaintiff thus cannot maintain a viable FDCPA or GFBPA claim against FMG based on the purportedly "charged off" status of Plaintiff's secondary loan obligation. For this reason, and all those previously discussed, Plaintiff has failed to establish that the secondary loan is a "debt," that FMG is a "debt collector," or that FMG engaged in any prohibited conduct sufficient to maintain an FDCPA or GFBPA claim upon which any relief can be granted.

## C. Plaintiff Fails to State a Claim Against FMG for Wrongful Attempt to Foreclose (Count IV)

Under Georgia law, an attempted wrongful foreclosure claim exists when, in the course of a foreclosure action that was not completed, (1) a defendant makes a knowing and intentional publication of untrue and derogatory information (2) concerning the debtor's financial condition, and (3) damages were sustained as a direct result of the publication. *100 Lakeside*

*Trail Tr. v. Bank of Am., N.A.*, 804 S.E.2d 719, 725 (Ga. Ct. App. 2017) (citing

*Sparra v. Deutsche Bank Nat'l Tr. Co.*, 785 S.E.2d 78, 83 (Ga. Ct. App. 2016)).

Plaintiff contends that by publishing the Notice of Sale Under Power attached

to the 2024 and 2025 Foreclosure Notices, FMG published "untrue" and

"derogatory" information concerning Plaintiff's financial condition, and that

Plaintiff was harmed thereby. (*Angus II* Am. Compl. ¶ 205).

As with Counts I and III, Plaintiff's allegation that FMG published

"untrue" or "derogatory" information turns on CWS's lack of ownership of the

Promissory Note, and the purportedly "charged off" nature of the secondary

loan indebtedness. (*Id.* ¶¶ 206-07). For all of the reasons previously discussed,

any disputes as to ownership of the Promissory Note are irrelevant to CWS's

ability to foreclose on the Property under the Security Deed. *See You*, 743

S.E.2d at 433; *Tonea*, 6 F. Supp. 3d at 1343. Similarly, the allegation that FMG

falsely stated the amount Plaintiff owed to CWS is incorrect because even if

the debt was "charged off," it is <u>not</u> forgiven. *See Hinkle*, 827 F.3d at 1297;

*LeBlanc*, 601 F.3d at 1188 n.5.

In any event, regardless of Plaintiff's disputes as to the ownership of the

Promissory Note and amount of the indebtedness, Plaintiff has failed to allege

that FMG published information about his financial condition that was

"untrue." Plaintiff does <u>not</u> dispute that he has ceased paying amounts owed

under the secondary loan, nor that he is in default thereof. (*See, e.g., Angus II*

Am. Compl. ¶ 201 (admitting "[P]laintiff stopped making payments to the lender")). As such, the information contained in the 2024 and 2025 Foreclosure Notices cannot—as a matter of law—constitute untrue information regarding Plaintiff's financial condition. *See 100 Lakeside*, 804 S.E.2d at 725 (affirming dismissal of wrongful attempt to foreclose claim where it was "undisputed that the promissory note is in default"); *Sparra*, 785 S.E.2d at 83 (affirming dismissal of wrongful attempt to foreclose claim where plaintiff admitted he missed mortgage payments).

Additionally, even if—for the sake of argument—FMG published information about CWS's *security interest* that was untrue, "untrue information about the [secured creditor's] security interest … could not constitute untrue and derogatory information concerning [the debtor's] financial condition." *100 Lakeside*, 804 S.E.2d at 725. Accordingly, Plaintiff cannot demonstrate that FMG published any untrue information about <u>his</u> financial condition, as a matter of law.

These pleading defects aside, Plaintiff himself has suggested that Defendant's attempt to foreclose on the Property was not "wrongful" in recent papers filed in the *Angus I* action. In Plaintiff's Response to CWS's Motion for Attorney's Fees and Costs filed January 24, 2025, Plaintiff suggests that CWS "may have been lawfully permitted to foreclose its security interest under the [S]ecurity [D]eed," further declaring that he "is <u>not</u> challenging [CWS]'s rights

under the [S]ecurity [D]eed." [*Angus I* ECF No. 27 at 10, 13 (emphasis added)]. But CWS's ability to properly foreclose is derived *solely* from its security interest under the Security Deed. (*See* Security Deed at 9-10, § 21). Plaintiff thus tacitly acknowledges that CWS—the valid assignee of the Security Deed (*see Angus II* Am. Compl. ¶ 20)—is permitted to foreclose its security interest under the Security Deed, such that FMG's attempt to initiate nonjudicial foreclosure proceedings on CWS's behalf cannot be "wrongful."

For these reasons, Plaintiff has failed to proffer sufficient factual allegations demonstrating FMG's publishing of "untrue" or "derogatory" information concerning Plaintiff's financial condition. Additionally, Plaintiff acknowledges that CWS is permitted to foreclose on its security interest under the Security Deed, which it effectuated by and through FMG's publishing of the required Foreclosure Notices. Accordingly, Plaintiff fails to state a claim for wrongful attempt to foreclose upon which any relief can be granted, thereby warranting dismissal of Count IV with prejudice.

**D.    Plaintiff Fails to State a Claim Against FMG for Punitive Damages and Attorney's Fees and Costs (Counts V and VI)**

Plaintiff asserts additional Counts for punitive damages and attorney's fees and costs. (*Angus II* Am. Compl. Counts V–VI). These Counts are for specific *remedies*, however, and are therefore derivative of the substantive causes of action addressed above. Because Plaintiff has failed to state a

plausible claim for relief as to each of those substantive claims, Plaintiff has likewise failed to state a plausible claim for any of the remedies requested in Counts V and VI.

## IV. CONCLUSION

For the foregoing reasons, and those previously discussed in FMG's First Motion to Dismiss, dismissal of all Counts asserted against FMG in Plaintiff's Amended Complaint, with prejudice, is warranted.

Respectfully submitted this 27th day of February, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Freeman*
*Mathis & Gary, LLP*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **DEFENDANT FREEMAN MATHIS & GARY, LLP'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** has been prepared in compliance with Local Rule 5.1(C) in Century Schoolbook, 13-point font. I further certify that the foregoing brief is limited in length to twenty-five (25) pages, and complies with the Standing Order Regarding Civil Litigation issued by the Honorable Leigh Martin May.

This 27th day of February, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Freeman Mathis & Gary, LLP*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically submitted the foregoing **DEFENDANT FREEMAN MATHIS & GARY, LLP'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF filing system, which will automatically send electronic notification of the same to the following counsel of record:

William R. Carlisle
CARLISLE LAW FIRM
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com
*Attorney for Plaintiff*

This 27th day of February, 2025.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Brian.Goldberg@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Defendant Freeman Mathis & Gary, LLP*